1  SMITH PATTEN
SPENCER SMITH (SBN: 236587)
2  DOW W. PATTEN (SBN:135931)
LAUREN N. KUBOTA (SBN: 280333)
3  353 Sacramento St., Suite 1120
San Francisco, California 94111
4  Telephone (415) 402-0084
Facsimile (415) 520-0104

5

6  Attorney for Plaintiffs
ELDRIDGE JOHNSON, MARIO ECUNG, LEON MILLER, XAVIER PALMER, KENNETH
7  MONTGOMERY, ANNETTE GADSON, PAUL C. NOBLE, JOHNNIE E. JONES, Jr.,
FREDERICK ROBINSON, GLEN ROANE, DAVID RICKETTS, LESTER TOM, TERRY
8  HAYNIE, SAL CROCKER, ANTHONY MANSWELL,  KARL MINTER, ERWIN
WASHINGTON, DARRYL WILSON, LEO SHERMAN, KEN HANEY, RICHARD JOHN,
9  ODIE BRISCOE, and TERENCE HARTSFIELD

10

11  **UNITED STATES DISTRICT COURT**

12  **NORTHERN DISTRICT OF CALIFORNIA**

13  ELDRIDGE JOHNSON, MARIO ECUNG,          )   **Case No. 4:12-cv-02730-MMC**
LEON MILLER, XAVIER PALMER,               )
14  KENNETH MONTGOMERY, ANNETTE            )   **SECOND AMENDED COMPLAINT FOR**
GADSON, PAUL C. NOBLE, JOHNNIE E.        )   **DAMAGES AND INJUNCTIVE RELIEF**
15  JONES, Jr., FREDERICK ROBINSON,        )
GLEN ROANE, DAVID RICKETTS,              )   (1) RETALIATION (TITLE VII)
16  LESTER TOM, TERRY HAYNIE, SAL          )
CROCKER, ANTHONY MANSWELL,               )   (2) RETALIATION (FEHA)
17  KARL MINTER, ERWIN WASHINGTON,         )
DARRYL WILSON, LEO SHERMAN, KEN          )   (3) DISCRIMINATION BASED ON RACE
18  HANEY, RICHARD JOHN, ODIE BRISCOE,)   (TITLE VII)
and TERENCE HARTSFIELD                    )
19                                          )   (4) DISCRIMINATION BASED ON RACE
                                           )   (FEHA)
20                                          )
                                           )   (5) DISCRIMINATION IN VIOLATION OF
21          Plaintiffs,                     )   42 U.S.C. §1981
                                           )
22      v.                                  )
                                           )   (6) HARASSMENT (TITLE VII)
23  UNITED CONTINENTAL HOLDINGS,          )
INC.; UNITED AIR LINES, INC.;            )   (7) HARASSMENT (FEHA)
24  CONTINENTAL AIRLINES, INC.; and        )
DOES 1-10                                 )
25                                          )
                                           )   **JURY TRIAL DEMANDED**
26          Defendants.                     )
                                           )
27  —————————————————————— )

28

1

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs ELDRIDGE JOHNSON, MARIO ECUNG, LEON MILLER, XAVIER PALMER, KENNETH MONTGOMERY, ANNETTE GADSON, PAUL C. NOBLE, JOHNNIE E. JONES, Jr., FREDERICK ROBINSON, GLEN ROANE, DAVID RICKETTS, LESTER TOM, TERRY HAYNIE, SAL CROCKER, ANTHONY MANSWELL, KARL MINTER, ERWIN WASHINGTON, DARRYL WILSON,  LEO SHERMAN, KEN HANEY, RICHARD JOHN, ODIE BRISCOE, and TERENCE HARTSFIELD file this Second Amended Complaint, and complain of the named Defendants, and each of them, jointly and severally, and for causes of action, alleges as follows:

## INTRODUCTION

1.  Individual Plaintiffs Eldridge Johnson ("Johnson"), Mario Ecung ("Ecung"), Leon Miller ("Miller"), Xavier Palmer ("Palmer"), Kenneth Montgomery ("Montgomery"), Annette Gadson ("Gadson"), Paul C. Noble ("Noble"), Johnnie Jones, Jr. ("Jones"), Frederick Robinson ("Robinson"), Glen Roane ("Roane"), David Ricketts ("Ricketts"), Lester Tom ("Tom"), Terry Haynie ("Haynie"), Sal Crocker ("Crocker"), Anthony Manswell ("Manswell"), Karl Minter ("Minter"), Erwin Washington ("Washington"), Darryl Wilson ("Wilson"), Leo Sherman ("Sherman"),  Ken Haney ("Haney"), Richard John ("John"), Odie Briscoe ("Briscoe"), Terence Hartsfield ("Hartsfield") (collectively "Plaintiffs"), on behalf of themselves allege as follows:

## PRELIMINARY STATEMENT

2.  This action is brought by African-American Captains and Operations Supervisors ("Minority Employees") who are employees of Defendant United Continental Holdings and its related corporate entities. All Plaintiffs are highly competent long term African-American employees of Defendants who have been illegally passed over for promotions.

3.  United Continental Holdings, Inc. maintains a system for administering job vacancies, postings, applications, and responses at United Air Lines and Continental Airlines via an outsourced third-party vendor, Taleo.  Taleo maintains all of the records related to promotions. Taleo is located in Dublin, California, which is in the Northern District of California (the "Taleo System").  Accordingly, all of the records of  promotional vacancies,postings, applications

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  received and reviewed, and responses to such applications for the promotional positions for

2  which Plaintiffs were qualified are located in the Northern District of California.

3

4  **JURISDICTION AND VENUE**

5  4. This Court has jurisdiction over this action under 28 U.S.C. §1331 and 42 U.S.C. §2000e-5(f)

6  (3) and 42 U.S.C. §1981. The action presents federal questions under Title VII of the Civil

7  Rights Act of 1964, 42 U.S.C. §2000e, *et seq*., as amended, and 42 U.S.C. §1981.

8  5.  Venue is proper in this district pursuant to 42 U.S.C. §2000e5(f)(3), because (a) the

9  challenged unlawful employment practices occurred in the Northern District of California; (b) all

10  of the records related to companywide promotions are located in the Northern District of

11  California; and (c) the Plaintiffs would have worked in the State of California but for the

12  unlawful employment practices and/or the effects of discrimination were felt in the State of

13  California.

14  **THE PARTIES**

15  6. Plaintiff Eldridge Johnson is an African-American male individual currently employed by

16  Defendants as a Captain. Plaintiff Johnson has been employed by Defendants from

17  approximately April 1978 through the present.  Plaintiff Johnson is a 747 Captain domiciled in

18  San Francisco, which is located in the Northern District California.  In 2010, Plaintiff Johnson

19  travelled to the Northern District of California to meet with United executives to challenge

20  United's discriminatory promotion practices.  In 2011, Johnson applied for several management

21  positions throughout United.  Plaintiff Johnson filed the instant action to challenge Defendants'

22  continuing discriminatory and retaliatory practices, which result in African Americans being

23  underrepresented in management.  All of the records related to promotions at Defendants for

24  which Plaintiff was illegally passed over are maintained in the Northern District of California.

25  7.  Plaintiff Johnnie E. Jones,Jr. is an African American male individual currently employed by

26  Defendants as a Captain. Plaintiff Jones has been employed by Defendants from approximately

27  June 1988 through the present. Plaintiff Jones is a 767 Captain domiciled in Dulles, Virginia.  In

28  2010, Plaintiff Jones travelled to the Northern District of California to meet with United

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

executives to challenge United's discriminatory promotion practices.  In 2011, Plaintiff Jones applied for management positions located in the Northern District of California.  Plaintiff Jones filed the instant action to challenge Defendants' continuing discriminatory and retaliatory practices, which result in African Americans being underrepresented in management.  All of the records related to promotions at United for which Plaintiff was illegally passed over are maintained in the Northern District of California.

8.  Plaintiff Sal Crocker is an African American male individual currently employed by Defendants as a Captain. Plaintiff Crocker has been employed by Defendants from approximately February 1989 to the present. Plaintiff Crocker is an Airbus A320 Captain domiciled in Houston, Texas.   In 2010, Plaintiff Crocker travelled to the Northern District of California to meet with United executives to challenge Defendants' discriminatory promotion practices.  In 2011, Crocker applied for management positions located in the Northern District of California.  Crocker filed the instant action to challenge United's continuing discriminatory and retaliatory practices which result in African Americans being underrepresented in management. All of the records related to promotions at Defendants for which Plaintiff was illegally passed over are maintained in the Northern District of California.

9.  Plaintiff Darryl Wilson is an African American male individual currently employed by Defendants as a Captain. Plaintiff Wilson has been employed by Defendants from approximately September 1992 to the present. Plaintiff Wilson is an Airbus A320 Captain domiciled in Dulles, Virginia.  In 2010, Plaintiff  Wilson  travelled to the Northern District of California to meet with United executives to challenge United's discriminatory promotion practices.  In 2011, Wilson applied for management positions located in the Northern District of California. Wilson filed the instant action to challenge Defendants' continuing discriminatory and retaliatory practices which result in African Americans being underrepresented in management.   All of the records related to promotions at United for which Plaintiff was illegally passed over are maintained in the Northern District of California.

10.   Plaintiff Richard John is an African American male individual currently employed by Defendants as a Captain. Plaintiff John has been employed by Defendants from approximately

4

January 1993 to the the present. Plaintiff John is an Airbus A320 Captain domiciled in New York.  In 2010, Plaintiff John travelled to the Northern District of California to meet with United executives to challenge United's discriminatory promotion practices.  In 2011, John applied for several management positions throughout United.  Plaintiff John filed the instant action to challenge United's continuing discriminatory and retaliatory practices which result in African Americans being underrepresented in management.   All of the records related to the promotions at United Plaintiff was illegally passed over for are maintained in the Northern District of California.

11. Plaintiff Paul C. Noble is an African American male individual currently employed by Defendant UAL as a Captain. Plaintiff Noble has been employed by Defendants from approximately May 1988 to the the present.  Plaintiff Noble is a 757/767 Captain domiciled in New York.  In 2010, Plaintiff Noble travelled to the Northern District of California to meet with United executives to challenge United's discriminatory promotion practices.  In 2011, Noble applied for a management position based in Denver.  Noble filed the instant action to challenge United's continuing discriminatory and retaliatory practices which result in African Americans being underrepresented in management.   All of the records related to promotions at United for which Plaintiff was illegally passed over are maintained in the Northern District of California.

12.  Plaintiff Glen Roane is an African American male individual currently employed by Defendants as a Captain. Plaintiff Roane has been employed by Defendants from approximately October 1988 to the present. Plaintiff Roane is a A320 Captain domiciled in Dulles, Virginia In 2010, Plaintiff Roane travelled to the Northern District of California to meet with United executives to challenge United's discriminatory promotion practices.  In 2011, Plaintiff Roane applied for management positions throughout United. Plaintiff Roane filed the instant action to challenge United's continuing discriminatory and retaliatory practices, which result in African Americans being underrepresented in management. All of the records related to promotions at United for which Plaintiff was illegally passed over are maintained in the Northern District of California.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

13.   Plaintiff Lester Tom is an African American male individual currently employed by Defendants as a Captain. Plaintiff Tom has been employed by Defendants from approximately December 1988 to the  present. Plaintiff Tom is a 757/767 Captain domiciled in Illinois.  In 2010, Plaintiff Tom travelled to the Northern District of California to meet with United executives to challenge United's discriminatory promotion practices.  In 2011, Plaintiff Tom applied for management positions throughout United.  Plaintiff Tom filed the instant action to challenge United's continuing discriminatory and retaliatory practices, which result in African Americans being underrepresented in management. All of the records related to promotions at United for which Plaintiff was illegally passed over are maintained in the Northern District of California.

14.   Plaintiff Karl Minter is an African American male individual currently employed by Defendants as a Captain.  Plaintiff Minter has been employed by Defendants from approximately March 1992 to the present.  Plaintiff Minter is a 757/767 Captain domiciled in Dulles, Virginia. In 2010, Plaintiff Minter travelled to the Northern District of California to meet with United executives to challenge United's discriminatory promotion practices.  In 2011, Plaintiff Minter applied for management positions throughout United.  Plaintiff Minter filed the instant action to challenge United's continuing discriminatory and retaliatory practices which result in African Americans being underrepresented in management.   All of the records related to promotions at United for which Plaintiff was illegally passed over are maintained in the Northern District of California.

15.   Plaintiff Ken Montgomery is an African American male individual who has been employed by Defendants from approximately July 1986 to the present.   Plaintiff Montgomery is currently employed by Defendants as a Supervisor of Airport Operations and is based in Dulles, Virginia. In 2010, Plaintiff Montgomery travelled to the Northern District of California to meet with United executives to challenge United's discriminatory promotion practices.  In 2011, Plaintiff Montgomery applied for management positions throughout United.  Plaintiff Montgomery filed the instant action to challenge United's continuing discriminatory and retaliatory practices, which result in African Americans being underrepresented in management.   All of the records related to

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  promotions at United for which Plaintiff was illegally passed over are maintained in the Northern

2  District of California.

3  16.   Plaintiff Annette Gadson is an African American female individual who has been employed

4  by Defendants from approximately July 1986 to the present.  Plaintiff Gadson is currently

5  employed by Defendants as a Supervisor of Airport Operations in New Jersey.  In 2010, Plaintiff

6  Gadson travelled to the Northern District of California to meet with United executives to

7  challenge United's discriminatory promotion practices.  In 2011, Plaintiff Gadson applied for

8  management positions throughout United.  Plaintiff Gadson filed the instant action to challenge

9  United's continuing discriminatory and retaliatory practices, which result in African Americans

10  being underrepresented in management.   All of the records related to promotions for which

11  Plaintiff was illegally passed over at Defendants are maintained in the Northern District of

12  California.

13  17.   Plaintiff Mario Ecung is an African American male individual who has been employed by

14  Defendants from approximately June 1985 to the present.  Plaintiff Ecung is currently employed

15  by Defendants as a 767/757 Captain domiciled in Los Angeles, California.  Plaintiff Ecung filed

16  the instant action to challenge United's continuing discriminatory practices, which result in

17  African Americans being underrepresented in management.   All of the records related to

18  promotions at Defendants for which Plaintiff was illegally passed over  are maintained in the

19  Northern District of California.

20  18.   Plaintiff Leon Miller is an African American male individual who has been employed by

21  Defendants from approximately April 1995 through the present.  Plaintiff Miller is currently an

22  Airbus A320 Captain domiciled in Los Angeles, California.  Plaintiff Miller filed the instant

23  action to challenge United's continuing discriminatory practices, which result in African

24  Americans being underrepresented in management.   All of the records related to promotions for

25  which Plaintiff was illegally passed over at Defendants are maintained in the Northern District of

26  California.

27  19.   Plaintiff Xavier Palmer is an African American male individual who has been employed by

28  Defendants from approximately March 1991 to the the present. Plaintiff Palmer is currently

7

employed as an Airbus A320 Captain domiciled in Los Angeles, California.  Plaintiff Palmer filed the instant action to challenge United's continuing discriminatory practices which result in African Americans being underrepresented in management.   All of the records related to the promotions for which Plaintiff was illegally passed over are maintained in the Northern District of California.

20.   Plaintiff Fredrick Robinson is an African American male individual who has been employed by Defendants from approximately September 1988 to the present.   Plaintiff Robinson is currently a 767/757Captain domiciled in Colorado.   Plaintiff Robinson filed the instant action to challenge United's continuing discriminatory practices, which result in African Americans being underrepresented in management.   All of the records related to promotions for which Plaintiff was illegally passed over at Defendants are maintained in the Northern District of California.

21.   Plaintiff David Ricketts is an African American male individual who has been employed by Defendants from approximately November 1988 to the present. Plaintiff Ricketts is currently a 767/757 Captain domiciled in Dulles, Virginia. Plaintiff Ricketts filed the instant action to challenge United's continuing discriminatory practices, which result in African Americans being underrepresented in management.   All of the records related to promotions for which Plaintiff was illegally passed over at Defendants are maintained in the Northern District of California.

22. Plaintiff Terry Haynie is an African American male individual who has been employed by Defendants from approximately December 1988 to the present.  Plaintiff Haynie is currently employed by Defendants as a 767/757 Captain domiciled in Dulles, Virginia.  Plaintiff Haynie filed the instant action to challenge United's continuing discriminatory and retaliatory practices, which result in African Americans being underrepresented in management, and because of the harassment he faced in the workplace. All of the records related to promotions at United for which Plaintiff was illegally passed over are maintained in the Northern District of California.

23.   Plaintiff Anthony Manswell is an African American male individual who has been employed by Defendants from approximately August 1989 to the present. Plaintiff Manswell is currently employed by Defendants as a 767/757 Captain domiciled in Dulles, Virginia.  Plaintiff Manswell filed the instant action to challenge United's continuing discriminatory and retaliatory

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   practices, which result in African Americans being underrepresented in management.  All of the

2   records related to promotions for which Plaintiff was illegally passed over at Defendants are

3   maintained in the Northern District of California.

4   24.  Plaintiff Erwin Washington is an African American male individual who has been employed

5   by Defendants from approximately July 1992  to the present.  Plaintiff Washington is currently

6   an Airbus A320 Captain domiciled in Houston, Texas.  Plaintiff Washington filed the instant

7   action to challenge United's continuing discriminatory and retaliatory practices, which result in

8   African Americans being underrepresented in management.  All of the records related to

9   promotions at United for which Plaintiff was illegally passed over are maintained in the Northern

10  District of California.

11  25. Plaintiff Ken Haney is an African American male individual who has been employed by

12  Defendants from approximately November 1992 through the present.  Plaintiff Haney is

13  currently an Airbus A320 Captain domiciled in Houston, Texas.  Plaintiff Haney filed the instant

14  action to challenge United's continuing discriminatory and retaliatory practices, which result in

15  African Americans being underrepresented in management.   All of the records related to

16  promotions at United for which Plaintiff was illegally passed over are maintained in the Northern

17  District of California.

18  26. Plaintiff Terence Hartsfield is an African American male individual who has been employed

19  by Defendants from approximately October 1995 through the present.   Plaintiff Hartsfield is

20  currently an Airbus A320 Captain domiciled in San Francisco, California.  Plaintiff Hartsfield

21  filed the instant action to challenge United's continuing discriminatory and retaliatory practices

22  which result in African Americans being underrepresented in management  .All of the records

23  related to promotions for which Plaintiff was illegally passed over at Defendants are maintained

24  in the Northern District of California.

25  27.  Plaintiff Odie Briscoe is an African American male individual who has been employed by

26  Defendants from approximately October 1997 through the present.   Plaintiff Briscoe is currently

27  a 737 Captain domiciled in Houston, Texas.  Plaintiff Briscoe filed the instant action to challenge

28  United's continuing discriminatory and retaliatory practices, which result in African Americans

9

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

being underrepresented in management. All of the records related to promotions at Defendants for which Plaintiff was illegally passed over are maintained in the Northern District of California.

28.  Plaintiff Leo Sherman is an African American male individual who has been employed by Defendants from approximately January 1998 to the present.   Plaintiff Sherman is currently a 737  Captain domiciled in Houston, Texas.  Plaintiff Sherman filed the instant action to challenge United's continuing discriminatory and retaliatory practices, which result in African Americans being underrepresented in management.  All of the records related to promotions for which Plaintiff was illegally passed over at Defendants are maintained in the Northern District of California.

29.   Defendant United Continental Holdings, Inc., (together with its consolidated subsidiaries, "UAL") is a holding company and its principal, wholly-owned subsidiaries are United Air Lines, Inc. (together with its consolidated subsidiaries, "United") and Continental Airlines, Inc. (together with its consolidated subsidiaries, "Continental").  UAL is a Delaware Corporation, licensed to and doing business within this judicial district.

30.  Defendant United Air Lines, Inc. is a Delaware Corporation licensed to and doing business within this judicial district, 100% of whose stock is owned by Defendant United Continental Holdings, Inc.

31.  Defendant Continental Airlines, Inc. is a Delaware Corporation doing business within this judicial district, 100% of whose stock is owned by Defendant United Continental Holdings, Inc.

32.  On May 2, 2010, UAL corporation, Continental, and JT Merger Sub Inc., a wholly-owned subsidiary of UAL corporation, entered into an Agreement and Plan of Merger providing for a "merger of equals" business combination. On October 1, 2010, JT Merger Sub Inc. merged with and into Continental, with Continental surviving as a wholly-owned subsidiary of UAL Corporation (the "Merger").  Upon closing of the Merger, UAL corporation became the parent company of both Continental and United, and UAL Corporation's name was changed to United Continental Holdings, Inc.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

33.  Defendants United Continental Holdings, Inc., United Air Lines, Inc., and Continental Airlines, Inc. (collectively, "UAL") share common management, including the same management personnel.

34.  Defendants United Continental Holdings, Inc., United Air Lines, Inc., and Continental Airlines, Inc. perform services for one another including various aircraft maintenance services, aircraft ground handling, and jet fuel provisions at certain airports.

35.  Defendants United Continental Holdings, Inc., United Air Lines, Inc., and Continental Airlines, Inc. share common control of labor relations.

36.  Defendants United Continental Holdings, Inc., United Air Lines, Inc., and Continental Airlines, Inc.  share complete common ownership and financial control.

37.  Defendants United Continental Holdings, Inc., United Air Lines, Inc., and Continental Airlines, Inc.  exercise substantial control over the time, manner, and place of performance of Plaintiffs' work.

38.  After UAL's May 2010 merger announcement, the Air Line Pilots Association ("ALPA") opted to suspend negotiations at both United and Continental to focus on joint negotiations for a new collective bargaining agreement that would apply to the combined company.

39.  In July 2010, United and Continental reached agreement with ALPA on a Transition and Process Agreement that provides a framework for conducting pilot operations.

40.  In August 2010, United and Continental began joint negotiations with ALPA.

41.  As of December 31, 2010, UAL, including its subsidiaries, had approximately 86,000 active employees.

42.  In November 2011, UAL received a single operating certificate from the Federal Aviation Administration.

43.  On March 3, 2012, Continental and United merged their passenger service systems, frequent flier programs, and websites, which officially eliminated the Continental name and brand as far as the public was concerned.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**STATEMENT OF FACTS APPLICABLE TO ALL CLAIMS**

**A.     UCH And Its Related Corporate Entities Have A Long History of Racially Discriminatory Policies and Practices.**

44.  Since the early 1970s United has engaged in a pattern and practice of highly subjective decision making regarding employment matters related to the promotions of African-American Captains and Operations Supervisors to management positions.  While Defendants have policies designed to govern these matters, many of these policies involve uncontrolled subjective criteria and/or are applied by Defendants in an arbitrary and capricious manner.

45.  Defendants' system of subjective and arbitrary decision making has an disparate impact on African-American Captains and Operations Supervisors relative to their non-African-American coworkers with respect to: (a) temporary management positions, and (b) promotions to permanent management positions. This impact is not justified by business necessity.

46.  On April 16, 1973, the United States of America, through the Attorney General, brought suit against United, the International Association of Machinists and Aerospace Workers ("Machinists"), ALPA, and other named defendants charging United with patterns and practices of discrimination in employment opportunities.

47.  The unions were charged with entering collective bargaining agreements with United.  The collective bargaining agreements the unions and United entered into discriminated among employees based on race, national origin, and sex and perpetuated such discrimination, in violation of section 707(a) of Title VII of the Civil Rights Act of 1964.

48.  On April 1, 1974 the Equal Employment Opportunity Commission ("EEOC") was substituted as plaintiff, pursuant to section 707(d) of Title VII, which authorizes the transfer of pattern and practice functions from the Attorney General to the EEOC.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**B.      United To Hire African American Pilots Under a Consent Decree with The EEOC.**

49. On April 30, 1976, a mutually agreeable Consent Decree was entered resolving United's past discriminatory practices.

50.  The 1976 consent decree between the EEOC and United Airlines provided more than $1 million in back pay and broad affirmative relief, settling a lawsuit alleging race, national origin, and sex discrimination in the company's higher-paying jobs. The settlement provided for aggressive movement of minorities and women into upper-level jobs, including pilot, mechanic, agent, and management positions. The decree also provided for retroactive company-wide seniority, which replaced a former seniority system based on department in order to protect rights of minority and female workers transferring into higher level jobs.

51. On September 9, 1988, the EEOC filed an action against United seeking to enforce provisions of the Consent Decree pertaining to pilot hiring because United had failed to meet the 2:1 ratio of minority and female hires to applicants.

52.  After lengthy discovery, expert analysis, and settlement discussions, the EEOC, United, and ALPA agreed to resolve the enforcement action through four separate settlement agreements that were entered into between April 1993 and April 1994.

53. The EEOC, ALPA, and United resolved the enforcement action through settlement agreements regarding pilot hiring which were signed on April 27, 1993 (Agreement I), June 15, 1993 (Agreement II), September 24, 1993 (Agreement III), and April 12, 1994 (Agreement IV).

54.  Under the agreements, 83 pilot class members were offered approximately $1.8 million in monetary relief and some class members were offered job consideration and seniority adjustments.

55.  In May 1994, United, the defendant unions, and the EEOC approached the court seeking to terminate the 1976 Consent Decree through the entry of a Final Amended Consent Decree. The

13

parties represented that all the goals of the Consent Decree had been reached and that it should

be deemed an inappropriate vehicle for solving any current claims of discrimination

56.  The court determined that after 18 years, the Consent Decree's modes were outdated and the

Consent Decree was more a source of confusion than of progress in resolving discrimination

disputes. On March 2, 1995, the Consent Decree was terminated.  The Court's opinion was

careful to delineate the fact that the end of the Consent Decree was not a determination that no

discrimination existed at United:

> We caution that our conclusion is not a determination that employment
> discrimination may no longer be a problem  at United. Despite our best efforts and
> hopes, we have no delusions that such invidious behavior has entirely ceased to
> plague the workplace. Rather, it is the court's judgment that any current disputes
> are properly addressed through fresh complaints to United and the EEOC, and, if
> necessary, new actions under Title VII. Therefore, in order to promote the efficient
> resolution of current problems and future complaints, as well as abide by the
> parties express agreement, it is appropriate to terminate the original Consent
> Decree.

**C.     United Refuses To Promote African American Pilots Into Management**

57.  After the United-Continental merger, minorities and African Americans in particular,

continue to be underrepresented in the ranks of management in proportion to their total numbers

in the workforce.  Of the 434 upper level management positions available to Captains and First

Officers, only 13 of them (3%) are held by African Americans.

**D.     Defendants' CEO Admits That Continental Illegally Discriminated Against African**
**        American Pilots**

58.  On February 9, 2010, Jeff Smisek, current CEO of Defendants and then-CEO of

Continental, in a public relations event associated with the naming an aircraft after the ground-

breaking African-American pilot Marlon Green, admitted that Continental Airlines had a history

of discrimination against African Americans in aviation:

> There is part of Continental's history that I am not proud of. . . I had never heard
> of Continental Airlines, but Marlon Green had, and he wanted to work for us. . .
> Did we turn him down because the other candidates were more highly qualified
> than him? No.  We turned him down for one reason, and one reason only, because
> of the color of his skin.

14

**E.**     **Plaintiffs Eldridge Johnson, Kenneth Montgomery, Annette Gadson, Paul C. Noble, Johnnie E. Jones Jr., Glen Roane, Lester Tom,  Sal Crocker, Karl Minter, Darryl Wilson, and Richard John File EEOC Complaints Related to Discrimination in Promotions in June 2010.**

59.  In June 2010, eleven (11) Captains and two (2) Operations Supervisors who sought promotions into management, but were not promoted, filed EEOC complaints against United Airlines.

60.  Styling themselves as the "United Coalition for Diversity," the group included Captains–the highest rank available aboard an aircraft—who had progressed through the ranks only to have their career progress halted by a glass ceiling.  None of the United Coalition for Diversity were allowed to promote into management.

61.  As a direct result of these EEOC complaints, United quickly hired or promoted three African-American individuals over the next year into visible positions of power: Brett Harte, General Counsel; Diane Gist, Head of Employee Compliance; and James Simons, the so-called first African-American Chief Pilot.  The members of the Coalition have yet to be promoted, despite 109 applications for promotion in the last two years.

**F.**     **Defendants' Current Discriminatory Practices.**

62.  Since 2011, Defendants have engaged in a pattern and practice of highly subjective decision making regarding employment matters related to the promotions of African-American Captains and Operations Supervisors to management positions.  While Defendants have policies designed to govern these matters, many of these policies involve uncontrolled subjective criteria and/or are applied by Defendants in an arbitrary and capricious manner.

63.  Defendants' system of subjective and arbitrary decision making has an disparate impact on African-American Captains and Operations Supervisors relative to their non-African-American coworkers with respect to: (a) temporary management positions, and (b) promotions to permanent management positions. This impact is not justified by business necessity.

64.  Defendants also engage in intentional discrimination against African-American Captains and Operations Supervisors with respect to promotions to management positions.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

65.   Defendants have discriminated against Plaintiff Captains by use of a dual employment track.  For example, Defendants select some employees for temporary management positions.  The temporary positions are more lucrative and provide employees with more opportunities for advancement, greater job flexibility and security, and greater pay and benefits.  Defendants have a systematic pattern and practice of excluding qualified African-American employees from the temporary or "special assignment" positions, resulting in lesser job security, compensation, and opportunity for advancement for African-American employees.  Defendants typically reserve the higher wage positions for non-African-American employees.  Consistent with Defendants' long-standing discriminatory policies and practices, Defendant typically hires and promotes African-American employees only to positions outside of mid and upper-level management.

66.   Even when Defendants do promote African-American employees into permanent management positions, it does not promote them as quickly as their similarly situated non-African-American counterparts.   To be promoted from a Captain or Operations Supervisor into a permanent mid or upper-level management position, Defendants' employees must be handpicked for a position or apply through the Taleo system based in Dublin, California and go through an interview process.  During the review process, conducted by accessing the Taleo system located in Dublin, California, and any interview process, Defendants rely on discretionary decision making.  This discretionary decision making results in a disparate impact on African-American employees with respect to promotions, and which Defendants know has a statistically significant adverse impact on African Americans, and which has not been validated.  The discretionary decision making applies uniformly to all applicants.

67.   Virtually all African-American employees of Defendants occupy non-management positions.  Defendants disproportionately fail to promote qualified African-American employees to management positions in general and instead disproportionately promote similarly situated or less qualified non-African-American employees to those positions.

68.   Instead of promoting African Americans from within Defendants' ranks, the African Americans who are allowed into management are hired from outside firms and companies such

16

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

as Brett Hart, who was hired from Sara Lee in response to the United Coalition for Diversity's complaints made in San Francisco, California.

69.  The few African-American employees who are able to break into the management ranks are usually promoted in small numbers.  Such promotions, while merited, are  designed to give the appearance of commitment to diversity.  Once promoted, these African American managers, are themselves often subjected to discriminatory practices that minimize their opportunities for further advancement.  Such practices include exclusion of African-American managers from "informal" email communications and social gatherings that are used to communicate relevant operating procedures, discuss managerial issues, and post corporate advancement opportunities.

70. This pattern of denying African-American Captains and Operations Supervisors promotions is not the result of random or non-discriminatory factors. Rather, it is the result of an ongoing and continuous pattern and practice of intentional race discrimination in assignments, compensation and promotions.  It is the result of reliance on policies and practices that have an adverse impact on African-American employees that cannot be justified by business necessity, and for which alternative policies and practices with less discriminatory impact could be utilized that would equally serve any asserted business necessity.  Plaintiffs are informed and believe that such policies and practices continue up to the present and include, without limitation:

(a)     Failure to consistently post job and promotional openings to ensure that all African-American Captains and Operations Supervisors have notice of and opportunity to seek advancement, higher compensation, overtime, or more desirable assignments and training;

(b)     Reliance upon unweighted, arbitrary, and subjective criteria in making promotional decisions.  Even where Defendants' policies state objective requirements, these requirements are often applied in an inconsistent manner and ignored at the discretion of management;

(c)     Reliance on racial stereotypes in making employment decisions involving management promotions;

(d)     Pre-selection and "grooming" of non-African American employees for promotion, favorable assignments, higher pay, and more desirable positions;

(e)     Maintenance of largely racially segregated job categories and departments;

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

(f)      Deterrence and discouragement of African-American Captains and Operations Supervisors from seeking advancement, training, favorable assignments, and higher paying, more desirable positions.

71.  In addition to the positions for which Plaintiffs were allowed to apply, the Plaintiffs are challenging all management positions based in the Northern District of California that were filled via Defendants' handpicking individuals for the positions.  The Plaintiffs were precluded from applying for these positions and in each case, the Defendants hand-picked a non-African-American individual  who was not as qualified as Plaintiffs.

72.  The following management positions which are located in the Northern District of California are management positions identified by the Plaintiffs where a non-African American was handpicked for the position despite being less qualified than the Plaintiffs:  (1) SFO, Chief Pilot. Andy Allen was hand-selected for this position although he was less qualified than Plaintiffs; (2) Chase, Seniority #1961, received a special assignment on or around November 1, 2012 at SFO, the selected candidate was less qualified than Plaintiffs; (3) Metz, D.,Seniority #1969 received a special assignment on or around November 1, 2012 at SFO, the selected candidate was less qualified than Plaintiffs; (4) Corsello, SJ., Seniority #1084, received a special assignment on or around September, 2012 at SFO, the selected candidate was less qualified than Plaintiffs; (5) Wright,  Seniority #4176, received special assignments in or around April, September, and November, 2012 at SFO, the selected candidate was less qualified than Plaintiffs; (6) Plaskon, M., Seniority #4083, received a special assignment in or around April, 2012 at  SFO, the selected candidate was less qualified than Plaintiffs; (7) Mead, B.T.,  Seniority #2784, received a special assignment on or around October and November, 2012 at SFO, the selected candidate was less qualified than Plaintiffs; (8) Daley, G.J., Seniority #1570, received a special assignments in October and November, 2012 at SFO, the selected candidate was less qualified than Plaintiffs; (9) Flett, D.L., Seniority #2560, received special assignments in or around September and November, 2012 at SFO, the selected candidate was less qualified than Plaintiffs; (10) Liggett, G.J., Seniority #1184, received special assignments in or around September and October, 2012 at SFO, the selected candidate was less qualified than Plaintiffs; (11) Difeo, C., Seniority #2830,

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

received special assignments in April, 2012 at SFO, the selected candidate was less qualified than Plaintiffs; (12) Martinez, R.T. received a special assignment in September 2012 at SFO, the selected candidate was less qualified than Plaintiffs; (15) Rajacic, J.E. Received a special assignment in September 2012 at SFO, the selected individual was less qualified than Plaintiffs. All of the records related to these positions are maintained and stored in the Taleo system in Dublin, California, located in the Northern District of California.

73.   Plaintiffs are also challenging all other management positions based in California outside of the Northern District of California that were filled via Defendants' handpicking individuals for the position.   The Plaintiffs were precluded from applying for these positions and Defendants hand-picked a non-African-American individual who was not as qualified as Plaintiffs.   The following additional management positions are located in California outside of the Northern District of California are management positions where a non-African American was handpicked for the position despite being less qualified than the Plaintiffs: (1) LAX, Acting Chief Pilot, 2008.   Tad Gordon was hand-selected for this position and is less qualified than Plaintiffs; (2) LAX, Flight Manager, 2009.   Alberto Diaz was hand-selected for this non-posted position and is less qualified than Plaintiffs; (3) LAX, B737 Line Check Airman position.   The open Line Check Airman position was announced February 8, 2012 and the open position expired on February 15, 2012.   The short time period denied most pilots the opportunity to view the position because pilots are often away from their domicile for over a week; (4) LAX, B737 Line Check Airman position.   The open Line Check Airman position was announced on December 5, 2011 and the open position expired on December 16, 2011.   The short time period denied most pilots the opportunity to view the position because pilots are often away from their domicile for over a week; (5) Coles, A.W., Seniority #1086, received a special assignment in or around September, 2012 at LAX.   The selected candidate was less qualified than Plaintiffs; (6) Swint, M.S., received a special assignment in or around April, 2012 at LAX.   The selected candidate was less qualified than Plaintiffs;  (7)  Mayer, MV received a special assignment in or around April, 2012 at LAX. The selected candidate was less qualified than Plaintiffs; (8)  Lee, L.A ., received a special assignment in or around April, 2012 at LAX. The selected candidate was less qualified

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

than Plaintiffs; (9)  Brunette, R.D., received a special assignment in or around April, 2012 at LAX. The selected candidate was less qualified than Plaintiffs; (10) Lee, L.A.,  received a special assignment in or around May, 2012 at LAX. The selected candidate was less qualified than Plaintiffs; (11)Hareland, J.L., received a special assignment in or around May, 2012 at LAX. The selected candidate was less qualified than Plaintiffs; (12) Aiken, R.L., received a special assignment in or around May, 2012 and September, 2012 at LAX. The selected candidate was less qualified than Plaintiffs; (13)Koenig, G.L. received a special assignment in or around October, 2012 and November, 2012 at LAX. The selected candidate was less qualified than Plaintiffs.  (14) Garba, I.L. received a special assignment in or around November, 2012 at LAX. The selected candidate was less qualified than Plaintiffs; (15) Buehler, R.H., received a special assignment in or around November, 2012 at LAX. The selected candidate was less qualified than Plaintiffs.  All of the records related to these positions are maintained and stored in the Northern District of California.

74.  In addition to the positions for which Plaintiffs were allowed to apply, the Plaintiffs are also challenging all management positions based nationwide that were filled via Defendants' practice of hand-picking individuals for positions even though the selected candidates were less qualified than Plaintiffs.  The following additional management positions which are located throughout the nation are management positions identified by the Plaintiffs where a non-African American was handpicked for the position despite being less qualified than the Plaintiffs: (1) Houston, Texas, B737 Line Check Airman position. The open Line Check Airman position was announced in October, 2012.  The open position expired November 3, 2012; (2) Denver, Colorado,  B767 Standards Captain, July, 2011.  Micel Bruce received this position and is less qualified than Plaintiffs; (3) Denver, Colorado, B767 Standards Captain, July, 2010.  Melissa Ward and Mike Bonner were selected for these positions although they are less qualified than Plaintiffs; (4) Denver, Colorado, A320 Job Share Standards Captain, 2012.  Darius Pirzadeh was selected for this position.  He is less qualified than Plaintiffs; (5) Dulles, Virginia, Flight Operations Duty Manager, 2011.  John Quenn was selected for this position although he is less qualified than Plaintiffs; (6) Dulles, Virginia, Assistant Chief Pilot, 2011.  Omar Garcia was selected for this

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

position although he is less qualified than Plaintiffs; (7) Chicago, Illinois, Assistant Chief Pilot position, 2010.  Jim Barnes was hand-selected for the Assistant Chief Pilot position although he is less qualified than Plaintiffs; (8) Chicago, Illinois,   Managing Director of Flight Safety, 2009.  Claudia Gristle was a flight manager at the same time Plaintiff Minter was a flight manager.  Upper management selected Gristle for many special assignments that were not advertised, which is how she gained more experience despite being less qualified than Plaintiffs; (9) Washington, D.C., Flight Manager, 2012.  Lawrence Paneta received the position although he is less qualified than Plaintiffs; (10) Newark, New Jersey,  737 Line Check Airman, 2010-2011.  Bryan Green was selected for the position although he was less qualified than Plaintiffs; (11) Houston, Texas, Line Check Airman, 2010.  Marty Shoop was selected for the position although he was less qualified than Plaintiffs; (12) Houston, Texas,  Assistant Chief Pilot position, 2010.  Ray-Sean Silvera was selected for the position although less qualified than Plaintiffs; (13) Houston, Texas, Chief Pilot position, 2011. Pat Kreuger was selected for the position although he is less qualified than Plaintiffs; (14) Garcia, F.A., November, 2012 at Houston, Texas.  The selected candidate was less qualified than Plaintiffs. (15) Simpson, S.A., Seniority #2094, November, 2012 at Chicago.  The selected candidate was less qualified than Plaintiffs; (16) Sullivan, T.H., Seniority #2109, November, 2012 at Chicago.  The selected candidate was less qualified than Plaintiffs; (17) Lorentz, V., Seniority #2392, November, 2012 at Chicago.  The selected candidate was less qualified than Plaintiffs ; (18) Dulles, Virginia,  Area Manager position, 2009.  Debbie St. George was selected for the position although she was less qualified than Plaintiffs; (19) Dulles, Virginia,  Area Manager position, 2009. Dan Crellin was hand-selected for the position although he was less qualified than Plaintiffs; (20) Dulles, Virginia, Shift Manager Station Operations.  Dave Merriman was selected for the position although he was less qualified than Plaintiffs; (21) Dulles, Virginia,  Area Manager.  Becky Albert was selected for the position although she was less qualified than Plaintiffs; (22) Dulles, Virginia, Area Manager, 2010. Barbara Cobb was selected for the position. After she worked as an area manager, another position was created for Cobb (Leadership Development position).  Plaintiff Montgomery and Cobb had both applied for the  area manager position.  After Cobb transferred to the Leadership

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Development  position, the area manager position was never filled and Plaintiff Montgomery

was not invited to apply; (23) Dulles, Virginia, Area Manager, 2011. Jim Schake was selected for

this position from a shift manager position.  Plaintiff Montgomery applied for the shift manager

position and was not selected.  All of the employment records related to these positions are

maintained and stored in the Taleo system, located in Dublin, California in the Northern District

of California.

75.  As a proximate result of the racially discriminatory employment practices and other

wrongful acts alleged herein, Plaintiffs have suffered loss of income, loss of advancement and

promotion, loss of career opportunity, and/or loss of intangible job benefits.  As a proximate

result of the racially discriminatory employment policies, practices and other wrongful acts

alleged herein, Plaintiffs have experienced pain, suffering, severe emotional and mental distress,

shame, humiliation, embarrassment, and related physical ailments.

## ALLEGATIONS OF INDIVIDUAL PLAINTIFFS

### ELDRIDGE JOHNSON

76. Plaintiff Johnson was hired at United Air Lines on April 10, 1978 as a Flight Officer.

77.  Plaintiff Johnson became a Captain in 1990 in the Chicago Region.

78.  Plaintiff Johnson is currently a Boeing 747 Captain and is domiciled in San Francisco, which

is located in UAL's Northwest Region.

79.   In 2010, Plaintiff Johnson challenged United's illegal discriminatory promotion practices

along with Plaintiffs KARL MINTER, PAUL C. NOBLE, DARRYL WILSON, SAL

CROCKER, GLEN ROANE, RICHARD JOHN, JOHNNIE E. JONES, Jr., LESTER TOM,

KEN MONTGOMERY, and ANNETTE GADSON.

80. On June 14, 2010, Plaintiff Johnson filed an EEOC charge to challenge United's

discriminatory promotion practices.

81.   Later that year, United's top management traveled to San Francisco and Chicago to respond

to Plaintiff Johnson's and the other employees' claims of racial discrimination in promotions.

82.  Thereafter, Plaintiff Johnson continued to pursue changes to the unlawful employment

practices by meeting with mid and upper level management in order to establish protocols that

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  would assist in the eradication of racial disparity in the promotional practices at Defendant.  His

2  continued efforts and protected activities in this regard yielded no tangible results or

3  responsiveness from mid and upper level management at Defendants.

4  83.  Plaintiff Johnson became aware of statements made by senior upper-level management to

5  the effect that members of the United Coalition for Diversity would never be promoted into mid

6  and upper-level management due to the 2010 EEOC charges and their participation in the United

7  Coalition for Diversity meetings in San Francisco, California.

8  84.  Beginning in 2011, Plaintiff Johnson applied to five management positions. Plaintiff Johnson

9  applied for the Technology and Flight Test Managing Director which is based in UAL's Chicago

10  Region, Flight Operations Managing Director which is based in the Chicago Region, Flight

11  Operations Crew Resources Managing Director which is based in the Chicago Region, System

12  Chief Pilot which is based in the Chicago Region, and Fleet Standards Senior Manager which is

13  based in Houston, Texas.

14  85.  All of the records related to positions Plaintiff Johnson applied for are maintained in the

15  Taleo system, located in Dublin, California in the Northern District of California.

16  86.  In February 2012, Plaintiff Johnson was interviewed for the 778 Fleet Standards Senior

17  Manager position.  A month later, Defendants called Plaintiff Johnson and informed him that

18  someone else was chosen for the position.

19  87.  Plaintiff Johnson is informed and believes that he was passed over the five positions he

20  applied for in 2011 as a result of race discrimination and retaliation.

21  88.  In addition to the management positions he applied for and was illegally passed over for,

22  Plaintiff Johnson also challenges all of the management positions that were hand-picked by

23  Defendants as articulated in paragraphs 71-73 above.

24  89.  As a result of the continuing discriminatory promotion practices and retaliation he faced for

25  challenging UAL's discriminatory practices Plaintiff Johnson filed his second EEOC Charge on

26  February 27, 2012.  Plaintiff Johnson received his EEOC Right-to-Sue letter on June 15, 2012.

27  90.  Plaintiff Johnson received an immediate Right-to-Sue letter from the California Department

28  of Fair Employment and Housing on March 14, 2012.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**JOHNNIE E.  JONES, Jr.**

91.  Plaintiff Johnnie E. Jones, Jr. was hired at United Air Lines on June 27, 1988 as a Flight Officer.

92.  Plaintiff Jones became a Captain in 2000 in UAL's Northeast Region.

93.  Plaintiff Jones is currently a Boeing 757/767 Captain and is domiciled in the Northeast Region.

94.  In 2010, Plaintiff Jones challenged United's illegal discriminatory promotion practices along with Plaintiffs KARL MINTER, PAUL C. NOBLE, DARRYL WILSON, SAL CROCKER, GLEN ROANE, RICHARD JOHN, ELDRIDGE JOHNSON, LESTER TOM, KEN MONTGOMERY, and ANNETTE GADSON.

95.  On June 15, 2010, Plaintiff Jones filed an EEOC charge to challenge United's discriminatory promotion practices.

96.  Later that year, United's top management traveled to San Francisco and Chicago to respond to Plaintiff Jones's and the other employees' claims of racial discrimination in promotions.

97.  Thereafter, Plaintiff Jones continued to pursue changes to the unlawful employment practices by meeting with mid and-upper level management in order to establish protocols that would assist in the eradication of racial disparity in the promotional practices at Defendant.  His continued efforts and protected activities in this regard yielded no tangible results or responsiveness from mid and upper level management at Defendants.

98.  In 2011, Plaintiff Jones applied for 767 Standards Captain based in UAL's Denver Region, twice for the 767 Job Share Standards Captain based in the Denver Region, Flight Safety Investigator based in the Chicago Region, Supervisor of Airport Operations for Cargo, based in UAL's Southeast Region, twice for the Flight Operations Duty Manager based in San Francisco in UAL's Northeast Region, Senior Manager of Domestic Flight Operations based in the Chicago Region, twice for the Director of Flight Operations based in the Chicago Region, three times for the Assistant Chief Pilot based in the San Francisco/Seattle and Denver/Los Angeles in the Northeast Region, Flight Operations Safety Management System Manager based in the Chicago Region, Flight Operations Regulatory Compliance Manager based in the Chicago Region, Flight

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Operations Technical Project Manager in the Chicago Region, and Diversity Director based in the Chicago Region and Houston, Texas.

99. Plaintiff Jones is informed and believes that he was passed over the positions he applied for in 2011 as a result of race discrimination and retaliation.

100. In addition to the management positions he applied for and was illegally passed over for, Plaintiff Jones also challenges all of the management positions that were hand-picked by Defendants as articulated in paragraphs 71-73 above.

101. As a result of the continuing discriminatory promotion practices and retaliation he faced for challenging UAL's discriminatory practices Plaintiff Jones filed a second EEOC charge on February 10, 2012. Plaintiff Jones received his EEOC Right-to-Sue letter on March 16, 2012.

102. Plaintiff Jones obtained an immediate Right-to-Sue from the California Department of Fair Employment and Housing on April 17, 2012.

**SAL CROCKER**

103. Plaintiff Sal Crocker was hired by United Air Lines on February 20, 1989 as a 727 Flight Engineer.

104. Plaintiff Crocker became a Captain in 1995 in the Chicago Region.

105. Plaintiff Crocker is currently an Airbus A320 Captain and is domiciled in Houston.

106. In 2010, Plaintiff Crocker challenged United's illegal discriminatory promotion practices along with Plaintiffs KARL MINTER, PAUL C. NOBLE, DARRYL WILSON, JOHNNIE E. JONES, Jr. GLEN ROANE, RICHARD JOHN, ELDRIDGE JOHNSON, LESTER TOM, KEN MONTGOMERY, and ANNETTE GADSON.

107. In August 2010, Plaintiff Crocker, filed an EEOC charge to challenge United's discriminatory promotion practices.

108. Later that year, United's top management traveled to San Francisco and Chicago to respond to Plaintiff Crocker's and the other employees' claims of racial discrimination in promotions.

109. Thereafter, Plaintiff Crocker continued to pursue changes to the unlawful employment practices by meeting with mid and upper level management in order to establish protocols that would assist in the eradication of racial disparity in the promotional practices at Defendant. His

25

continued efforts and protected activities in this regard yielded no tangible results or

responsiveness from mid and upper level management at Defendants.

110.  In 2010, Plaintiff Crocker was told by another Plaintiff that a Senior Vice President of

Flight Operations stated that "No one from the original United Coalition who filed EEOC

complaints in 2010 will get promoted at UAL."

111.   In 2011, Plaintiff Crocker applied three times for the Assistant Chief Pilot position in the

San Francisco/Seattle Region, the Denver Region/Los Angeles Region, and the Chicago Region,

two times for the 767 Standards Captain in the Denver Region, A320 Temporary Job Share

Standards Captain position in the Denver Region, Flight Operations Duty Manager position in

the Chicago Region, Director of Flight Operations position in the Chicago Region, Senior

Manager of International Flight Operations position in the Chicago Region, Senior Manager of

Domestic Flight Operations position in the Chicago Region, Job Share Assistant Chief Pilot

position in the Northeast Region, Managing Director of Flight Operations in the Chicago Region,

Managing Director of Flight Standards in the Denver Region, Managing Director of Technology

and Flight Test position in the Chicago Region, Managing Director of Flight Training in the

Denver Region, System Chief Pilot in the Chicago Region, and A320 Standards Captain in the

Denver Region.

112.  Plaintiff Crocker is informed and believed that he was passed over the positions he applied

for in 2011 as a result of race discrimination and retaliation.

113. In addition to the management positions he applied for and was illegally passed over for,

Plaintiff Crocker also challenges all of the management positions that were hand-picked by

Defendants as articulated in paragraphs 71-73 above.

114.  As a result of the continuing discriminatory promotion practices and retaliation he faced for

challenging UAL's discriminatory practices Plaintiff Crocker filed his second EEOC charge on

February 17, 2012.  Plaintiff Crocker obtained his Right-to-Sue letter from the EEOC on July 17,

2012.

115.  Plaintiff Crocker obtained his immediate Right-to-Sue letter from the California

Department of Fair Employment and Housing on April 17, 2012.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**DARRYL WILSON**

116.  Plaintiff Wilson was hired at United Air Lines on September 14, 1992 as a 727 Flight Engineer.

117.  Plaintiff Wilson became a Captain in 2000 and was domiciled in the Denver Region.

118.  Plaintiff Wilson is currently an Airbus A320 Captain and is domiciled in the Northeast Region.

119.  Plaintiff Wilson has heard many derogatory comments regarding African Americans and experienced racial hostility in the workplace at UAL.

120.  In 2010, Plaintiff Wilson challenged United's illegal discriminatory promotion practices along with Plaintiffs KARL MINTER, PAUL C. NOBLE, SAL CROCKER, JOHN E. JONES, GLEN ROANE, RICHARD JOHN, ELDRIDGE JOHNSON, LESTER TOM, KEN MONTGOMERY, and ANNETTE GADSON.

121.  In July2010, Plaintiff Wilson filed an EEOC charge to challenge United's discriminatory promotion practices.

122.  Later that year, United's top management traveled to San Francisco and Chicago to respond to Captain Wilson's and the other employees' claims of racial discrimination in promotions.

123.  Thereafter, Captain Wilson continued to pursue changes to the unlawful employment practices by meeting with mid and upper-level management in order to establish protocols that would assist in the eradication of racial disparity in the promotional practices at Defendant.  His continued efforts and protected activities in this regard yielded no tangible results or responsiveness from mid and upper level management at Defendants.

124. In 2010, Captain Wilson was told by another Captain that a Senior Vice President of Flight Operations stated that "No one from the original United Coalition who filed EEOC complaints in 2010 will get promoted at UAL."

125.  In June 2011, Plaintiff Wilson applied for the A320 Fleet Training Senior Manager position and the A320 Fleet Standards Senior Manager position based in the Denver Region.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

126.  In July 2011, Plaintiff Wilson applied for the Assistant Chief Pilot position, Domestic Flight Operations Senior Manager, and International Flight Operations Senior Manager, and First Officer Flight Manager based in the Chicago Regions.

127.  In August 2011, Plaintiff Wilson applied four times for the Assistant Chief Pilot Region based in the San Francisco/Seattle Region, the Denver Region/Los Angeles Region, the Chicago Region, and the Northeast Region.  Also in August 2011, Plaintiff Wilson applied two times for the Flight Operations Duty Manager position based in San Francisco and Houston.

128.  Out of the 11 positions for which he applied, Plaintiff Wilson was invited to interview three times, and did not receive any promotion.

129.  Soon after Plaintiff Wilson filed his EEOC complaint, he was  called on a two-day short notice interview for two positions, Flight Operations Duty Manager and Standards Captain.

130.  Plaintiff Wilson had applied for an Operations Manager position and went through the Human Resources process. Plaintiff Wilson advanced to the final interview with Sean Donahue. Human Resources told Plaintiff Wilson that he had successfully advanced to the final stage of the process.  After Plaintiff Wilson's interview, Senior Vice President Steven Forte interjected himself and said he would be the final authority on who was awarded the job, altering the selection process after the final stage was reported by Sean Donohue and Human Resources. Defendants did not offer the position to Plaintiff Wilson.

131.  Plaintiff Wilson  is informed and believes that he was passed over the positions he applied for in 2011 as a result of race discrimination and retaliation.

132.  In addition to the management positions he applied for and was illegally passed over for, Plaintiff Wilson also challenges all of the management positions that were hand-picked by Defendants as articulated in paragraphs 71-73 above.

133.   As a result of the continuing discriminatory promotion practices and retaliation he faced for challenging UAL's discriminatory practices Plaintiff Wilson filed his second EEOC charge on February 22, 2012 and received his EEOC Right-to-Sue letter on May 10, 2012.

134.  Plaintiff Wilson obtained a Department of Fair Employment and Housing Right-to-Sue Letter in California on April 17, 2012.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**RICHARD JOHN**

135.   Plaintiff John was hired at United Air Lines on January 4, 1993 as a Flight Engineer.

136.   Plaintiff John became a Boeing 737/300 Captain in 2000 domiciled in Miami, Florida which was in the  former Southeast Region.  Plaintiff John is currently a Air Bus A320 Captain and is domiciled in the Northeast Region.

137.   Plaintiff John has heard of many instances of racial discrimination and harassment at United.

138.  In 2010, Plaintiff John challenged United's illegal discriminatory promotion practices along with Plaintiffs KARL MINTER, PAUL C. NOBLE, SAL CROCKER, JOHN E. JONES, GLEN ROANE, DARRYL WILSON, ELDRIDGE JOHNSON, LESTER TOM, KEN MONTGOMERY, and ANNETTE GADSON.

139.   On June 20, 2010 Plaintiff John filed an EEOC charge to challenge United's discriminatory promotion practices.

140.  Later that year, United's top management traveled to San Francisco and Chicago to respond to Plaintiff John's  and the other employees' claims of racial discrimination in promotions.

141.   Thereafter, Plaintiff John continued to pursue changes to the unlawful employment practices by meeting with mid and upper-level management in order to establish protocols that would assist in the eradication of racial disparity in the promotional practices at Defendant.  His continued efforts and protected activities in this regard yielded no tangible results or responsiveness from mid and upper-level management at Defendants.

142.  In 2010, Plaintiff John was told by another Captain that a Senior Vice President of Flight Operations, stated that "No one from the original United Coalition who filed EEOC complaints in 2010 will get promoted at UAL."

143.  In June 2011, Plaintiff John applied for the A320 Fleet Standards Senior Manager Position, based in the Denver Region.

144.  In June 2011, Plaintiff John applied for the 747 Fleet Standards Senior Manager Position, based in the Denver Region.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

145.  In June 2011, Plaintiff John applied for the 778 Fleet Standards Senior Manager position based in the Denver Region.

146.  In June 2011, Plaintiff John applied two times for the 756 Fleet Standards Senior Manager position twice based in the Denver Region.

147.  In June 2011, Plaintiff John applied for the A320 Fleet Training Senior Manager position, 747/778 Fleet Training Senior Manager position, and 737 Fleet Standards Senior Manager position based in the Denver Region and Houston, Texas.

148.  In July 2011, Plaintiff John applied for the International Flight Operations Senior Manager position, Domestic Flight Operations Senior Manager position, and Assistant Chief Pilot position based in the Chicago Regions.

149.  In August 2011, Plaintiff John applied to the Assistant Chief Pilot position, 747 Line Training Manager position, and 737 Line Training Manager position in the Denver Region and Houston.  Also in August 2011, Plaintiff John applied to the A320 Fleet Technical Flight Operations Manager position, and A320 Line Training Manager position based in the Denver Regions.

150.  In October 2011, Plaintiff John applied for the Chief Pilot position based in the Northeast Region.

151.  In November 2011, Plaintiff John applied for the A320 Temporary Job Share Standards Captain position and B-767 Standards Captain in the Denver Region. In December 2011, Plaintiff John applied for the Chief Pilot position based in the Northeast Region.

152.  In January 2012, Plaintiff John applied twice for the Assistant Chief Pilot position based in the Denver Region and Northeast Region.

153.  Plaintiff John is informed and believed that he was passed over the positions he applied for in 2011 and January 2012  as a result of race discrimination and retaliation.

154. In addition to the management positions he applied for and was illegally passed over for, Plaintiff John also challenges all of the management positions that were hand-picked by Defendants as articulated in paragraphs 71-73 above.

155.   As a result of the continuing discriminatory promotion practices and retaliation he faced for challenging UAL's discriminatory practices Plaintiff John filed his second EEOC charge on February 7, 2012 and obtained a Right-to-Sue letter from the EEOC on March 1, 2012.

156.  Plaintiff John obtained an immediate Right-to-Sue letter from the California Department of Fair Employment and Housing on April 17, 2012.

### PAUL C. NOBLE

157. Plaintiff Paul C. Noble was hired at United Air Lines on May 23, 1988 as a Flight Engineer. Plaintiff Noble is currently a 767/757 Captain and is based in the Northeast Region.

158.  Plaintiff Noble became Captain in 1997 in the Northeast Region.

159.  Plaintiff Noble has heard of many instances of racial discrimination and harassment at United.

160.  Throughout Plaintiff Noble's career he has worked in San Francisco, Northwest Region, Los Angeles Region, Denver Region, Chicago Region, and Northeast Regions in various positions.

161.  In 2010, Plaintiff Noble challenged United's illegal discriminatory promotion practices along with Plaintiffs KARL MINTER, ELDRIDGE JOHNSON, DARRYL WILSON, SAL CROCKER, GLEN ROANE, RICHARD JOHN, JOHNNIE E. JONES, Jr., LESTER TOM, KEN MONTGOMERY, and ANNETTE GADSON.

162. In June 2010, Plaintiff Noble, filed an EEOC charge to challenge United's discriminatory promotion practices.

163. Later that year, United's top management traveled to San Francisco and Chicago to respond to Plaintiff Noble's and the other employees' claims of racial discrimination in promotions

164.  Thereafter, Plaintiff Noble continued to pursue changes to the unlawful employment practices by supporting the meetings with mid and upper level management in order to establish protocols that would assist in the eradication of racial disparity in the promotional practices at Defendant.  His continued efforts and protected activities in this regard yielded no tangible results or responsiveness from mid and upper level management at Defendants.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

165.  In 2010, Plaintiff Noble was told that a Senior Vice President of United stated that "No one from the original United Coalition who filed EEOC complaints in 2010 will get promoted at UAL."

166.  In addition to the management positions he applied for and was illegally passed over for, Plaintiff Noble also challenges all of the management positions that were hand-picked by Defendants as articulated in paragraphs 71-73 above.

167.  In 2011, Plaintiff Noble applied for the Standards Captain position which is based in the Denver Region. All of the records related to applications for the Standards Captain position Plaintiff Noble applied for are maintained in the Northern District of California.

168. Despite being qualified for the the position Plaintiff Noble was not allowed to interview for the Standards Captain position.

169.  Plaintiff Noble is informed and believed that he was passed over the position he applied for in 2011 as a result of race discrimination and retaliation.

170.   As a result of the continuing discriminatory promotion practices and retaliation he faced for challenging UAL's discriminatory practices Plaintiff Noble filed his second EEOC charge on February 10, 2012 and received his EEOC Right-to-Sue letter on March 23, 2012.

171.  Plaintiff Noble obtained a Right-to-Sue from the California Department of Fair Employment and Housing on April 17, 2012.

**GLEN ROANE, Jr.**

172.  Plaintiff Glen Roane was hired at United on October 24, 1988 as a Flight Officer.

173.  In 1995, Plaintiff Roane was promoted to Captain and was domiciled in Chicago.

174.  Plaintiff Roane is currently an  A320 Airbus Captain domiciled in the Northeast Region.

175. In 2010, Plaintiff Roane challenged United's illegal discriminatory promotion practices along with Plaintiffs KARL MINTER, ELDRIDGE JOHNSON, DARRYL WILSON, SAL CROCKER, PAUL C. NOBLE, RICHARD JOHN, JOHNNIE E. JONES, Jr., LESTER TOM, KEN MONTGOMERY, and ANNETTE GADSON.

176.  On June 18, 2010, Plaintiff Roane filed an EEOC charge to challenge United's discriminatory promotion practices.

32

177. Later that year, United's top management traveled to San Francisco and Chicago to respond to Plaintiff Roane's and the other employees' claims of racial discrimination in promotions

178. Thereafter, Plaintiff Roane continued to pursue changes to the unlawful employment practices by pursuing meetings with mid and upper level management in order to establish protocols that would assist in the eradication of racial disparity in the promotional practices at Defendant.  His continued efforts and protected activities in this regard yielded no tangible results or responsiveness from mid and upper level management at Defendants.

179.  In 2010, Plaintiff Roane was told by another Captain that a Senior Vice President of Flight Operations, stated that "No one from the original United Coalition who filed EEOC complaints in 2010 will get promoted at UAL."

180.  In 2011,  Plaintiff Roane applied for the following positions: Standards Captain in the Denver Region, Duty Manager in the Northeast Region,  747, 778, and A320 Line Training Manager positions in the Denver Region, International Flight Operations Senior Manager and Domestic Flight Operations Senior Manager positions in the Chicago Region, Assistant Chief Pilot in the Northeast Region, A320 and 747 Fleet Technical Flight Operations Manager positions in the Denver Region. Plaintiff Roane also applied for 737, 747, 756, 778, and A320 Fleet Standards Manager positions in the Denver Region, and 737, 747/778, 756, and A320 Fleet Training Manager positions in the Denver Region and Northeast Region. Plaintiff Roane was passed over for all of the positions.

181.   In addition to the management positions he applied for and was illegally passed over for, Plaintiff Roane also challenges all of the management positions that were hand-picked by Defendants as articulated in paragraphs 71-73 above.

182.   As a result of the continuing discriminatory promotion practices and retaliation he faced for challenging UAL's discriminatory practices Plaintiff Roane filed his second EEOC charge on February 3, 2012 and received his EEOC Right-to-Sue letter on March 8, 2012.

183.  Plaintiff Roane obtained an immediate Right-to-Sue from the California Department of Fair Employment and Housing on April 17, 2012.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**LESTER TOM**

184.   Plaintiff Lester Tom was hired at United Air Lines in December 1988 as a Flight Officer.

185.  Plaintiff Tom became a Captain based in the Chicago Region in 1995.

186.  In 2001 Plaintiff Tom was promoted to a B767/757 Captain based in the Chicago Region.

187.  Throughout Plaintiff Tom's career he has worked in the Chicago Region in various positions.

188.  In 2010, Plaintiff Tom challenged United's illegal discriminatory promotion practices along with Plaintiffs KARL MINTER, ELDRIDGE JOHNSON, DARRYL WILSON, SAL CROCKER, PAUL C. NOBLE, RICHARD JOHN, JOHNNIE E. JONES, Jr., GLENN ROANE JR., KEN MONTGOMERY, and ANNETTE GADSON.

189.  In June 2010, Plaintiff Tom, filed an EEOC charge to challenge United's discriminatory promotion practices.

190.  Later that year, United's top management traveled to San Francisco and Chicago to respond to Plaintiff Tom's and the other employees' claims of racial discrimination in promotions

191.  Thereafter, Plaintiff Tom continued to pursue changes to the unlawful employment practices by supporting the meetings with mid and upper level management in order to establish protocols that would assist in the eradication of racial disparity in the promotional practices at Defendant.  His continued efforts and protected activities in this regard yielded no tangible results or responsiveness from mid and upper level management at Defendants.

192.  In 2010,  Plaintiff Tom was told by another Captain that a Senior Vice President of United stated that "No one from the original United Coalition who filed EEOC complaints in 2010 will get promoted at UAL."

193.  In February 2011, Plaintiff Tom applied for the Senior Manager Flight Safety Action Program and Event Review committee position which is based in the Chicago Region.

194.  In May 2011 Plaintiff Tom applied for the Manger of Flight Operations Regulatory Complaints which is based in the Chicago Region.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

195.  In addition to the management positions he applied for and was illegally passed over for, Plaintiff Tom also challenges all of the management positions that were hand-picked by Defendants as articulated in paragraphs 71-73 above.

196.  As a result of the continuing discriminatory promotion practices and retaliation he faced for challenging UAL's discriminatory practices Plaintiff Tom filed his second EEOC charge on February 13, 2012. Plaintiff Tom received a Right-to-Sue letter from the EEOC on June 29, 2012.

197.  Plaintiff Tom obtained an immediate Right-to-Sue letter from the California Department of Fair Employment and Housing on April 17, 2012.

### KARL MINTER

198.  Plaintiff Karl Minter was hired at UAL on March 30, 1992 as a Flight Officer.

199.  In 1999 Plaintiff Minter became a Captain  domiciled in the Northeast Region.

200.   Plaintiff Minter is currently a 767 Captain domiciled in the Northeast Region.

201.   Throughout his career, Plaintiff Minter has worked in various positions based in San Francisco, the Chicago Region, and the Northeast Region.

202.  In 2010, Plaintiff Minter challenged United's illegal discriminatory promotion practices along with Plaintiffs LESTER TOM, ELDRIDGE JOHNSON, DARRYL WILSON, SAL CROCKER, PAUL C. NOBLE, RICHARD JOHN, JOHNNIE E. JONES, Jr., GLENN ROANE JR., KEN MONTGOMERY, and ANNETTE GADSON.

203.  On June 18, 2010, Plaintiff Minter filed an EEOC charge to challenge United's discriminatory promotion practices.

204.  Later that year, United's top management traveled to San Francisco and Chicago to respond to Plaintiff Minter's and the other employees' claims of racial discrimination in promotions.

205.  Thereafter, Plaintiff Minter continued to pursue changes to the unlawful employment practices by engaging mid and upper-level management in order to establish protocols that would assist in the eradication of racial disparity in the promotional practices at Defendant.  His continued efforts and protected activities in this regard yielded no tangible results or responsiveness from mid and upper level management at Defendants.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

206. In 2010, Plaintiff Minter was told by multiple sources that a Senior Vice President of United stated that none of the African American Coalition group would ever become managers at United because they filed the EEOC complaint. Plaintiff Minter heard that this conversation occurred when there was a conversation going on about how to repair the relationship between African Americans and United Air Lines.

207. In February 2011, Plaintiff Minter applied for the Corporate and Community Affairs Director position based in the Chicago Region.

208. In March 2011, Plaintiff Minter applied for the Pilot Contract Administration Managing Director position in the Chicago Region.

209. In May 2011, Plaintiff Minter applied for the Flight Operations Regulatory Compliance Manager position in the Chicago Region.

210. In July 2011, Plaintiff Minter applied for the Assistant Chief Pilot position, Domestic Flight Operations Senior Manager position, and International Flight Operations Manager position in the Chicago Region.

211. In addition to the management positions he applied for and was illegally passed over for, Plaintiff Minter also challenges all of the management positions that were hand-picked by Defendants as articulated in paragraphs 71-73 above.

212. As a result of the continuing discriminatory promotion practices and retaliation he faced for challenging UAL's discriminatory practices Plaintiff Minter filed his second EEOC charge on February 13, 2012 and received his EEOC Right-to-Sue letter on March 23, 2012.

213. Plaintiff Minter obtained an immediate Right-to-Sue from the California Department of Fair Employment and Housing on April 17, 2012.

**KEN MONTGOMERY**

214. Plaintiff Ken Montgomery was hired at United Air Lines on July 6, 1986 as a Customer Service Representative in Columbus, Ohio based in the Midwest Region.

215. Plaintiff Montgomery is currently a Supervisor of Airport Operations at Dulles International Airport.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

216.  Throughout his career Plaintiff Montgomery has worked in the Denver Region, Midwest Region, and the Northeast Region.

217. In 2010, Plaintiff Montgomery challenged United's illegal discriminatory promotion practices along with Plaintiffs KARL MINTER, ELDRIDGE JOHNSON, DARRYL WILSON, SAL CROCKER, PAUL C. NOBLE, RICHARD JOHN, JOHNNIE E. JONES, Jr., LESTER TOM, GLENN ROANE JR., and ANNETTE GADSON.

218. On June 25, 2010, Plaintiff Montgomery filed an EEOC charge to challenge United's discriminatory promotion practices.

219. Later that year, United's top management traveled to San Francisco and Chicago to respond to Plaintiff Montgomery's and the other employees' claims of racial discrimination in promotions.

220.  Thereafter, Plaintiff Montgomery continued to pursue changes to the unlawful employment practices by supporting the meetings with mid and upper level management in order to establish protocols that would assist in the eradication of racial disparity in the promotional practices at Defendant.  His continued efforts and protected activities in this regard yielded no tangible results or responsiveness from mid and upper level management at Defendants.

221.  In 2010, Plaintiff Montgomery was told by many sources that a Senior Vice President of United stated that "No one from the original United Coalition who filed EEOC complaints in 2010 will get promoted at UAL."

222.  In March 2011, Plaintiff  Montgomery applied for the Niche Sales Manager position in the Northeast Region.

223.  In June 2011, Plaintiff Montgomery also applied for Country Sales Manager in Dubai.

224.  Plaintiff Montgomery applied for the Washington Dulles Airport Leadership Development Manager Position in June 2011.

225.  In September 2011, Plaintiff Montgomery applied for the Hub Operations Area Manager in Dulles, Virginia  and was interviewed for the position.  UAL  chose Debbie St. George, who is a poor performing employee and has been demoted previously in the same position.  Chris Branch and Alpha Diallo were also chosen for the position.  Two of the promoted individuals, Debbie St.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

George and Chris Branch, are  Caucasian individuals with no tenure, less education than Plaintiff Montgomery, and minimal experience.

226.  In addition to the management positions he applied for and was illegally passed over for, Plaintiff Montgomery also challenges all of the management positions that were hand-picked by Defendants as articulated in paragraphs 71-73 above.

227.   As a result of the continuing discriminatory promotion practices and retaliation he faced for challenging UAL's discriminatory practices Plaintiff Montgomery filed his second EEOC complaint on February 3, 2012 and obtained his EEOC Right-to-Sue letter on March 2, 2012.

228.  Plaintiff Montgomery obtained a Right-to-Sue letter from the California Department of Fair Employment and Housing on April 17, 2012.

**ANNETTE GADSON**

229.   Plaintiff Annette Gadson was hired by United Air Lines on July 14, 1986 as a Reservation Agent in Rockleigh, New Jersey which is based in the Northeast Region.

230.  Plaintiff  Gadson became a Supervisor in 1988 at LaGuardia Airport, which is located in the Northeast Region.

231. Plaintiff  Gadson is currently the Airport Operation Supervisor in Newark in the Northeast Region.

232.  Throughout her career, Plaintiff Gadson has worked in the Northwest Region and the Northeast Region in various positions.

233. In 2009, Plaintiff Gadson applied for the Area Manager position based in Dulles, Virginia.

234.  In 2010, Plaintiff Gadson challenged United's illegal discriminatory promotion practices along with Plaintiffs KARL MINTER, ELDRIDGE JOHNSON, DARRYL WILSON, SAL CROCKER, PAUL C. NOBLE, RICHARD JOHN, JOHNNIE E. JONES, Jr., LESTER TOM, GLENN ROANE JR., and KEN MONTGOMERY.

235. In June 2010, Plaintiff Gadson filed an EEOC charge to challenge United's discriminatory promotion practices.

236. Later that year, United's top management traveled to San Francisco and Chicago to respond to Plaintiff Gadson and the other employees' claims of racial discrimination in promotions

38

237.  In addition to the management positions he applied for and was illegally passed over for, Plaintiff Gadson also challenges all of the management positions that were hand-picked by Defendants as articulated in paragraphs 71-73 above.

238.  As a result of the continuing discriminatory promotion practices and retaliation she faced for challenging UAL's discriminatory practices Plaintiff Gadson filed her second EEOC charge on May 1, 2012 and received her EEOC Right-to-Sue letter on June 12, 2012.

239.  Plaintiff Gadson obtained an immediate Right-to-Sue letter from the Department of Fair Housing and Employment in California on May 1, 2012.

**MARIO ECUNG**

240.  Plaintiff Ecung's career at United Air Lines began on June 18, 1985 as a B727 Second Officer.

241.  In 1993, Plaintiff Ecung became a Captain based in the Los Angeles Region.

242.  Plaintiff Ecung is currently a 757/767 Captain in Los Angeles, California located in the Los Angeles Region.

243.  For the past three years Plaintiff Ecung has watched as less qualified non-African-American Captains being hand-picked for management positions in California and in various other locations throughout the company that he is qualified for.

244. Plaintiff Ecung also challenges all of the management positions that were hand-picked by Defendants as articulated in paragraphs 71-73 above.

245.  As a result of the continuing discriminatory promotion practices at UAL  Plaintiff Ecung filed his EEOC Charge on May 7, 2012 and received his EEOC Right-to-Sue letter on June 22, 2012.

246.  Plaintiff Ecung obtained an immediate Right-to-Sue letter from the California Department of Fair Employment and Housing on April 23, 2012.

**LEON MILLER**

247.  Plaintiff Miller was hired at United Air Lines on April 3, 1995 as a Flight Engineer/Second Officer on the Boeing 727.

248.  In 2001,  Plaintiff Miller became a Captain in Seattle based in the Northwest Region.

39

249. Plaintiff Miller is currently an Airbus A320 Captain in Los Angeles, California located in the Los Angeles Region.

250.   Since becoming a Captain, Plaintiff Miller has watched as less qualified non-African-American Captains being hand-picked for management positions in California and in various other locations throughout the company that he is qualified for.

251. Plaintiff Miller challenges all of the management positions that were hand-picked Defendants as articulated in paragraphs 71-73 above.

252.  As a result of the continuing discriminatory promotion practices at UAL Plaintiff Miller filed his EEOC charge on April 26, 2012 and received his EEOC Right-to-Sue letter on June 5, 2012.

253. Plaintiff Miller obtained an immediate Right-to-Sue from the California Department of Fair Employment and Housing on April 24, 2012.

**XAVIER PALMER**

254.  Plaintiff Palmer began his career at United Air Lines on March 18, 1991 as a 727 Second Officer.

255.  In 1998 Plaintiff Palmer became a Captain in the Los Angeles, California.  Plaintiff Palmer is currently an Airbus A320 Captain in Los Angeles CA.

256.  Throughout his career Plaintiff Palmer worked in Honolulu and the Los Angeles Region.

257.  Plaintiff Palmer is informed and believes that in order to advance at United an employee must be willing to move throughout any of United's worldwide locations.

258.   Since becoming a Captain, Plaintiff Palmer has watched as less qualified non-African-American Captains being hand-picked for management positions in California and in various other locations throughout the company that he is qualified for.

259. Plaintiff Palmer challenges all of the management positions that were hand-picked Defendants as articulated in paragraphs 71-73 above.

260.  As a result of the continuing discriminatory promotion practices at UAL  Plaintiff Palmer filed his EEOC Charge on April 30, 2012. Plaintiff Palmer received his EEOC Right-to-Sue letter on June 29, 2012.

40

261. Plaintiff Palmer, obtained an immediate Right-to-Sue letter from the California Department of Fair Employment and Housing on April 24, 2012.

## FREDRICK ROBINSON

262. Plaintiff Fredrick Robinson was hired at United Air Lines September 26, 1988 as a Second Officer on the Boeing 727.

263. In 1995 Plaintiff Robinson became a Captain based in the Chicago Region.. Plaintiff Robinson is currently a 767 Captain in the Denver Region.

264.  Since becoming a Captain, Plaintiff Robinson has watched as less qualified non-African-American Captains are hand-picked for management positions in California and in various other locations throughout the company that he is qualified for.

265. Plaintiff Robinson challenges all of the management positions that were hand-picked Defendants as articulated in paragraphs 71-73 above.

266.  As a result of the continuing discriminatory promotion practices at UAL  Plaintiff Robinson filed his EEOC charge on April 25, 2012 and received his EEOC Right-to-Sue letter on June 7, 2012.

267. Plaintiff Robinson obtained an immediate Right-to-Sue letter from the California Department of Fair Employment and Housing on April 24, 2012.

## DAVID RICKETTS

268. Plaintiff David Ricketts was hired by United Air Lines on November 21, 1988 as a Second Officer 727.

269.  In 1996 Plaintiff Ricketts became a Captain domiciled in the Chicago Region.

270.  Plaintiff Ricketts is currently a 767 Captain domiciled in the Northeast Region.

271.  Since becoming a Captain, Plaintiff Ricketts has watched less qualified non-African-American Captains be hand-picked for management positions in California and in various other locations throughout the company that he is qualified for.

272. Plaintiff Ricketts challenges all of the management positions that were hand-picked Defendants as articulated in paragraphs 71-73 above.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

273.  As a result of the continuing discriminatory promotion practices at UAL  Plaintiff Ricketts filed his EEOC Charge on May 2, 2012 and received his Right-to-Sue Notice on June 19, 2012.

274.  Plaintiff Ricketts obtained an immediate Right-to-Sue letter from the California Department of Fair Employment and Housing on April 24, 2012.

**TERRY HAYNIE**

275. Plaintiff Terry Haynie was hired at United on December 5, 1988 as a Second Officer/Flight Engineer.

276.  In December 1997, Plaintiff Haynie became a Captain domiciled in New York.

277.  Plaintiff Haynie is currently a 767 Captain in the Northeast Region.

278.  Throughout his career Plaintiff Haynie has worked in the Chicago Region and the Northeast Region in various positions.

279.   Since becoming a Captain, Plaintiff Haynie has watched as less qualified non-African-American Captains are hand-picked for management positions in California and in various other locations throughout the company that he is qualified for.

280. Plaintiff Haynie challenges all of the management positions that were hand-picked Defendants as articulated in paragraphs 71-73 above.

281. When he was hired on December 5, 1988, Plaintiff Haynie was accused by many of "jumping the pool," which is skipping application steps, to become hired at United because he is African American.

282. During initial training at United, Plaintiff Haynie experienced open hostility and offensive comments by other pilots at the training center. Plaintiff Haynie became aware that the vast majority of pilots whose employment was terminated for failing check rides were people of color even though many non-minority pilots failed check rides.

283.   United hired a doctor to conduct a psychological evaluation of Plaintiff Haynie and another minority UAL employee, Frank Sharp.  Dr. Gary Kay diagnosed Plaintiff Haynie as mentally incompetent or mentally retarded.  Dr. Kay's examination was about 20 minutes in length.  After an extensive evaluation, another doctor, Robert Novelli, told Plaintiff Haynie that

42

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

his skin color may have played a major part in Dr. Kay's alleged diagnosis. Dr. Novelli was so perturbed by the erroneous diagnosis that he checked to see if Dr. Kay was actually a doctor.

284.  In 2005, Charles Lindberg was a First Officer assigned to Plaintiff Haynie's flight. It was reported to Plaintiff Haynie by flight attendants that Charles Lindberg was severely intoxicated and there was serious concern about his ability to fly the aircraft the next day. Plaintiff Haynie confronted Charles Lindberg about his condition and had him removed from the flight. Charles Lindberg's reply was, "fuck ALPA and fuck you, nigger!"

285.  In April 2000, JFK Domicile Chief Pilot told Plaintiff Haynie, "I'm the Chief Pilot and I own you!"

286.  From 2005 to the present, Plaintiff Haynie has seen racial epithets written on airplanes about him.

287.  From 2000 to present, United Air Lines has failed to take action to prevent the hostile work environment Plaintiff Haynie has been subject to for 12 years. Plaintiff Haynie has been subjected to threats of physical harm, racial epithets written inside company aircraft, the removal of his mailbox and harassing phone calls. UAL is aware of these incidents. UAL's persistent refusal to take any action regarding these extremely serious incidents amounts to discrimination, retaliation and creates a hostile work environment.

288.  Plaintiff Haynie continues to suffer retaliation, harassment, and discrimination in the workplace and is being subjected to unprecedented scrutiny and orders based upon his complaints of being targeted as the victim of racial harassment.

289. As a result of the continuing discriminatory promotion practices, racial harassment, and retaliation he has faced at UAL  Plaintiff Haynie filed his EEOC charge on April 10, 2012 and received his EEOC Right-to-Sue letter on June 6, 2012.

290.  Plaintiff Haynie obtained an immediate Right-to-Sue letter from the California Department of Fair Employment and Housing on March 28, 2012.

### ANTHONY MANSWELL

291. Plaintiff Manswell was hired by United Air Lines on August 7, 1989 as a B727 Flight Engineer.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

292. In 2000, Plaintiff Manswell became a Captain domiciled in New York.

293.  Plaintiff Manswell is currently a 757/767Captain domiciled in the Northeast Region.

294.  Throughout his career Plaintiff Manswell has been domiciled in San Francisco, the Chicago Region, and the Northeast Region.

295.  Plaintiff Manswell expected that for any mid or upper-level management position for which he applied he would either relocate or commute as do many of the persons in the promotional positions which he sought.

296.  Since becoming a Captain, Plaintiff Manswell has watched as less qualified non-African-American Captains are hand-picked for management positions in California and in various other locations throughout the company that he is qualified for.

297. Plaintiff Manswell challenges all of the management positions that were hand-picked Defendants as articulated in paragraphs 71-73 above.

298.  In 2011, Plaintiff Manswell applied for the position of Line Check Airman on the B-767/757 of which Plaintiff Manswell is currently the Captain. Plaintiff Manswell was promised the additional position of Line Check Airman on the Airbus A320, but the position did not materialize.

299.  As a result of the continuing discriminatory promotion practices at UAL  Plaintiff Manswell filed his EEOC charge on May 7, 2012 and received his EEOC Right-to-Sue letter on June 13, 2012.

300.  Plaintiff Manswell obtained an immediate Right-to-Sue from the California Department of Fair Employment and Housing on April 30, 2012.

**ERWIN WASHINGTON**

301. Plaintiff Erwin Washington was hired at United Air Lines on July 20, 1992 as a Flight Officer.

302.  In September 2005, Plaintiff Washington became a Captain in San Francisco, in the Northwest Region.  Plaintiff Washington is currently an Airbus A320 Captain in Houston, TX.

303.  Throughout his career Plaintiff Washington has worked in San Francisco, the Chicago Region, the Northeast Region, the Denver Region, and Los Angeles in various positions.

44

304.   Since becoming a Captain, Plaintiff Washington has watched as less qualified non-African-American Captains are hand-picked for management positions in California and in various other locations throughout the company that he is qualified for.

305. Plaintiff Washington challenges all of the management positions that were hand-picked Defendants as articulated in paragraphs 71-73 above.

306. As a result of the continuing discriminatory promotion practices at UAL  Plaintiff Washington filed his EEOC Charge on April 27, 2012. Plaintiff Washington received his EEOC Right-to-Sue Notice on June 29, 2012.

307. Plaintiff Washington obtained an immediate Right-to-Sue letter from the California Department of Fair Employment and Housing on April 26, 2012.

**KEN HANEY**

308. Plaintiff Ken Haney was hired at United on November 23, 1992 as First Officer.

309. In 2001,Plaintiff Haney became a Captain in the Chicago Region.  Plaintiff Haney is currently an Airbus A320 Captain in Houston, Texas.

310.  Throughout his career Plaintiff Haney has worked in San Francisco, Los Angeles, and the Northeast Region in various positions.

311.  Since becoming a Captain, Plaintiff Haney has watched as less qualified non-African-American Captains are hand-picked for management positions in California and in various other locations throughout the company that he is qualified for.

312. Plaintiff Haney has witnessed racial hostility at United. In June 1993, a captain asked Plaintiff Haney why black people say "ax" instead of "ask."  In May 2004 at the Employee Training Center, Haney overheard a white pilot say that black pilots got hired because of their race.  The pilot also stated that his friend was not hired "because of these black pilots."  In December 2011, three white pilots were not aware of  Plaintiff Haney's presence, and one said, "If they didn't start hiring all the 'niggers' we wouldn't be in this position."

313. Plaintiff Haney challenges all of the management positions that were hand-picked Defendants as articulated in paragraphs 71-73 above.

45

314.  As a result of the continuing discriminatory promotion practices at UAL  Plaintiff Haney filed his EEOC Charge on April 28, 2012 and received his EEOC Right-to-Sue letter on June 15, 2012.

315. Plaintiff Haney obtained an immediate Right-to-Sue from the California Department of Fair Employment and Housing on April 30, 2012.

**TERENCE HARTSFIELD**

316.  Plaintiff Terence Hartsfield was hired at United Air Lines on October 30, 1995 as a First Officer.

317.  In September 2006, Plaintiff Hartsfield became a Captain in San Francisco.  Plaintiff Hartsfield is currently an Airbus A320 Captain in San Francisco, which is in the Northwest Region.

318.  Throughout his career, Plaintiff Hartsfield has worked in Los Angeles, the Northeast Region, and the Chicago Region in various positions.

319.   Since becoming a Captain, Plaintiff Hartsfield has watched as less qualified non-African-American Captains are hand-picked for management positions in California and in various other locations throughout the company that he is qualified for

320.  In 2009, Plaintiff Hartsfield applied for a Line Check Airman – Instructor Pilot position. UAL did not contact him at all and he was not invited for an interview.

321. Plaintiff Hartsfield challenges all of the management positions that were hand-picked Defendants as articulated in paragraphs 71-73 above.

322.  As a result of the continuing discriminatory promotion practices at UAL  Plaintiff Hartsfield filed his EEOC charge on June 27, 2012 and received his EEOC Notice of Right to Sue on June 29, 2012.

323.  Plaintiff Hartsfield obtained an immediate Right-to-Sue from the California Department of Fair Employment and Housing on June 27, 2012.

**ODIE BRISCOE**

324. Plaintiff Odie Briscoe was hired at Continental Air Lines on October 19, 1997 as a First Officer.

46

325.  In 2004, Plaintiff Briscoe became a Captain domiciled in Newark, which is in the Northeast Region. Plaintiff Briscoe is currently a 737 Captain domiciled in Houston.

326.  Throughout his career, Plaintiff Briscoe has worked in the Northeast Region and Houston in various positions.

327.  In 2010, Plaintiff Briscoe applied for the Line Check Airman position in Houston and was never invited to interview.

328.  Plaintiff Briscoe challenges all of the management positions that were hand-picked Defendants as articulated in paragraphs 71-73 above.

329.  As a result of the continuing discriminatory promotion practices at UAL  Plaintiff Briscoe filed his EEOC Charge on April 25, 2012. Plaintiff Briscoe received his EEOC Right-to-Sue Notice on June 27, 2012.

330.  Plaintiff Briscoe obtained an immediate Right-to-Sue from the California Department of Fair Employment and Housing on April 24, 2012.

### LEO SHERMAN

331.  Plaintiff Leo Sherman was hired at Continental Airlines on January 3, 1998 as a Flight Officer.

332.  In 2005 Plaintiff Sherman became a Captain domiciled in Houston, Texas..  Plaintiff Sherman is currently a 737 Captain domiciled in Houston.

333.  Throughout his career Plaintiff Sherman has flown throughout the world, and has been based in Houston and in the Northeast Region in various positions.

334.   Plaintiff Sherman challenges all of the management positions that were hand-picked Defendants as articulated in paragraphs 71-73 above.

335.  As a result of the continuing discriminatory promotion practices at UAL  Plaintiff Sherman filed his EEOC Charge on April 25, 2012 and received his EEOC Right-to-Sue letter on June 7, 2012.

336.  Plaintiff Sherman obtained an immediate Right-to-Sue letter from the California Department of Fair Employment and Housing on April 24, 2012.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**FIRST CLAIM**
**RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e**
**(Alleged by Plaintiffs KARL MINTER, PAUL C. NOBLE, DARRYL WILSON, SAL CROCKER  GLEN ROANE, RICHARD JOHN, ELDRIDGE JOHNSON,  JOHNNIE E. JONES, Jr., LESTER TOM,  KEN MONTGOMERY, and ANNETTE GADSON (Against Defendants UNITED CONTINENTAL HOLDINGS, INC. and UNITED AIR LINES, INC.)**

337.  Plaintiffs re-allege as though fully set forth herein, the factual allegations of paragraphs 1 through 336 above.

338.  The allegations of the this First Claim are addressed to the period commencing February, 2011, unless and thereafter, unless otherwise specified.

339.  Title VII of the Civil Rights Act of 1964, codified as 42 U.S.C. §2000e, makes it unlawful for an employer to discriminate against an employee because "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. §2000e-3(a).

340.  Plaintiffs KARL MINTER, PAUL C.  NOBLE, DARRYL WILSON, SAL CROCKER, GLEN ROANE, RICHARD JOHN, ELDRIDGE JOHNSON, JOHNNIE E. JONES, Jr., LESTER TOM, KEN MONTGOMERY, and ANNETTE GADSON, each filed charges with the EEOC in or about 2010 (the "2010 Charges").

341.  The 2010 Charges constituted protected activity under Title VII, 42 U.S.C. §2000e-3(a).

342.  The 2010 Charges were communicated to upper-level management at Defendants.

343.  Defendants had actual and constructive knowledge of the 2010 Charges.

344.  With knowledge of and in direct retaliation for the filing the 2010 Charges and participating in the EEO process, Defendants have withheld all promotions and special assignments from Plaintiffs KARL MINTER, PAUL C.  NOBLE, DARRYL WILSON, SAL CROCKER, GLEN ROANE, RICHARD JOHN, ELDRIDGE JOHNSON, JOHNNIE E. JONES, Jr., LESTER TOM, KEN MONTGOMERY, and ANNETTE GADSON, since February 2011.

345. The withholding of all promotions and special assignments form Plaintiff KARL MINTER, PAUL C. NOBLE, DARRYL WILSON, SAL CROCKER, GLEN ROANE, RICHARD JOHN, ELDRIDGE JOHNSON, JOHNNIE E. JONES, Jr., LESTER TOM, KEN MONTGOMERY, and

ANNETTE GADSON since February 2011 is an adverse employment action which is reasonably likely to deter an employee from making a charge of discrimination.

346.  Plaintiffs request relief as provided in the Prayer for Relief below.

**SECOND CLAIM**
**RETALIATION IN VIOLATION OF**
**THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**
**(Alleged by Plaintiffs KARL MINTER, PAUL C. NOBLE, DARRYL WILSON, SAL CROCKER, GLEN ROANE, RICHARD JOHN, ELDRIDGE JOHNSON, JOHNNIE E. JONES, Jr., LESTER TOM, KEN MONTGOMERY, and ANNETTE GADSON against Defendants UNITED CONTINENTAL HOLDINGS, INC. and UNITED AIR LINES, INC.)**

347.  Plaintiffs re-allege as though fully set forth herein, the factual allegations of paragraphs 1 through 346 above.

348.   The allegations of this Second Claim are addressed to the period commencing February 2011 and thereafter.

349.   The California Fair Employment and Housing Act (California Government Code Section 12900 et. seq.) makes it unlawful for an employer to discriminate against an employee because "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.  For any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any

person because the person has opposed any practices forbidden under this part . . ."  Cal. Gov. Code §12940(h).

350.  Plaintiffs KARL MINTER, PAUL C. NOBLE, DARRYL WILSON, SAL CROCKER, GLEN ROANE, RICHARD JOHN, ELDRIDGE JOHNSON, JOHNNIE E. JONES, Jr., LESTER TOM, KEN MONTGOMERY, and ANNETTE GADSON each filed charges with the EEOC in or about 2010 for race discrimination under Title VII for failure to promote (the "2010 Charges").

351.  The 2010 Charges constituted protected activity under Cal. Gov. Code §12940(h).

352. The 2010 Charges were communicated to upper-level management at Defendants.

353.  Defendants had actual and constructive knowledge of the 2010 Charges.

49

354. With knowledge of and in direct retaliation for the filing the 2010 Charges and participating in the EEO process, Defendants have withheld all promotions and special assignments from Plaintiffs KARL MINTER, PAUL C. NOBLE, DARRYL WILSON, SAL CROCKER, GLEN ROANE, RICHARD JOHN, ELDRIDGE JOHNSON, JOHNNIE E. JONES, Jr., LESTER TOM, KEN MONTGOMERY, and ANNETTE GADSON since February 2011.

355. The withholding of all promotions and special assignments form Plaintiffs KARL MINTER, Paul C. NOBLE, Darryl WILSON, SAL CROCKER, GLEN ROANE, RICHARD JOHN, ELDRIDGE JOHNSON, JOHNNIE E. JONES, Jr., LESTER TOM, KEN MONTGOMERY, and ANNETTE GADSON since February 2011 is an adverse employment action which is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion.

### THIRD CLAIM
### RACE DISCRIMINATION IN VIOLATION OF TITLE VII
#### (Alleged by All Plaintiffs Against All Defendants)

356. Plaintiffs re-allege as though fully set forth herein, the factual allegations of paragraphs 1 through 355 above.

357. Plaintiffs  KARL MINTER, PAUL C.NOBLE, DARRYL WILSON, SAL CROCKER, GLEN ROANE, RICHARD JOHN, ELDRIDGE JOHNSON, JOHNNIE E. JONES, Jr., LESTER TOM, KEN MONTGOMERY, and ANNETTE GADSON, allege this cause of action only as to those actions occurring February 2011 and thereafter.

358. Defendants are employers engaged in industry affecting commerce and employing over 15 employees within the meaning of 42 U.S.C. §2000e(b).

359. Group 1 Plaintiffs are Plaintiffs that were allowed to apply for management positions in the State of California: JOHNNIE E. JONES, Jr., SAL CROCKER, DARRYL WILSON, and RICHARD JOHN.

360. Group 2 Plaintiffs are Plaintiffs that work in the state of California: XAVIER PALMER, TERENCE HARTSFIELD, MARIO ECUNG, and LEON MILLER.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

361.  Pursuant to 28 U.S.C. § 2000e-5(f)(3) venue is proper in the Northern District of California as Group 2 Plaintiffs felt the effects of the unlawful employment discrimination within this District.

362.  Group 2 Plaintiffs  KARL MINTER, PAUL C. NOBLE, DARRYL WILSON, SAL CROCKER, GLEN ROANE, RICHARD JOHN, ELDRIDGE JOHNSON, JOHNNIE E. JONES, Jr., LESTER TOM, KEN MONTGOMERY, and ANNETTE GADSON allege that Defendants have maintained a pattern of discrimination in employment based upon race.

363.  Pursuant to 28 U.S.C. § 2000e-5(f)(3) venue is proper in the Northern District of California as Group 2 Plaintiffs would have worked within the state of California but for the unlawful employment discrimination.

364.  Group 3 Plaintiffs are Plaintiffs that engaged in protected activity in February 2011 by meeting with upper level management concerning their EEOC charges:  KARL MINTER, PAUL C. NOBLE, DARRYL WILSON, SAL CROCKER, GLEN ROANE, RICHARD JOHN, ELDRIDGE JOHNSON, JOHNNIE E. JONES, Jr., LESTER TOM, KEN MONTGOMERY, and ANNETTE GADSON

365.  Pursuant to 28 U.S.C. § 2000e-5(f)(3) venue is proper in the Northern District of California as the protected activities of Group 3 Plaintiffs occurred in the City of San Francisco, in this judicial district.

366.  Group 4 Plaintiffs are Plaintiffs who work outside of California and were not allowed to apply for management positions in the State of California: KENNETH HANEY, TERRY HAYNIE, DAVID RICKETTS, ANTHONY MANSWELL, ERWIN WASHINGTON, LEO SHERMAN, ODIE BRISCOE, and FREDERICK ROBINSON.

367. Pursuant to 28 U.S.C. § 2000e-5(f)(3) venue is proper in the Northern District of California as Group 4 Plaintiffs would have worked in the State of California, and under 28 U.S.C. § 2000e-5(f)(3) venue is proper as to all Plaintiffs as all records of vacancies, promotions, applications, and responses to application s are maintained and administered within this Judicial District by the Taleo system, located in Dublin, California.

368. Defendants engage in a pattern and practice of highly subjective decision regarding employment matters that is discriminatory to African-American Captains and African-American Operations Supervisors and is manifested in assignments, promotions and compensation. While Defendants have policies designed to govern these matters, many of these policies involve uncontrolled subjective criteria and/or are applied by Defendant in an arbitrary and capricious manner.   As a result, racial biases and stereotypes enter into Defendant's employment decisions.

369.  Defendants' system of subjective and arbitrary decision making has an adverse impact on African-American Captains and African-American Operations Supervisors relative to their non-African-American peers with respect to (a) special assignments; (b) promotion to management; and (c) compensation. This impact is not justified by business necessity. Even if it could be so justified, less discriminatory alternatives exist that could equally serve any alleged necessity.

370. Defendants also engage in intentional discrimination against African-American Captains and African-American Operations Supervisors relative to their non-African-American peers with respect to (a) special assignments; (b) promotion to management; and (c) compensation through its system of subjective and arbitrary decision making, as demonstrated by anecdotal and statistical evidence.

371. The "special assignment" positions are more lucrative and provide employees with more opportunities for advancement, greater job security, and greater pay and benefits. By contrast, the non-special assignment positions are less desirable because they offer lower wages, lesser benefits, changing and inconsistent work hours, proportionately heavier responsibilities, and more difficult work conditions. Defendants have a systematic pattern and practice of relegating qualified African-American Employees to non-special assignment positions, with lesser job security, compensation, and opportunity for advancement. Consistent with Defendants' long-standing discriminatory policies and practices, Defendants typically do not allow African-American Employees to promote from within the company to any upper-management level positions.

372. Defendants also disproportionately fail to promote qualified African-American employees from Captain and Operations Supervisors to upper management  positions at the same rate as

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

their similarly situated non-African-American counterparts.   Even when Defendants do promote African-American Employees from Captains and Operations Supervisors to upper management positions, it does not promote them as quickly as their similarly situated non-African-American counterparts.

373.  Plaintiffs are further informed and believe that non-African-American employees are more likely to be assigned to positions that pay better than positions to which African-American Employees are assigned.

374.  Defendants have condoned the discriminatory conduct of its managers by failing to properly investigate formal complaints regarding discrimination.

375.  This pattern of denying African-American Captains and Operations Supervisors equal assignments, promotions,  and compensation is not the result of random or non-discriminatory factors.  Rather, it is the result of an ongoing and continuous pattern and practice of intentional race discrimination in assignments, compensation and promotions. It is further the result of reliance on policies and practices that have an adverse impact on African-American Captains and African-American Operations Supervisors which cannot be justified by business necessity, and for which alternative policies and practices with less discriminatory impact could be utilized that would equally serve any asserted business necessity. Plaintiffs are informed and believe that such policies and practices continue up to and including the present and include, without limitation:

(a) Failure to consistently post job and promotional openings to ensure that all African-American Captains and African American Operations Supervisors have notice of and opportunity to seek advancement, higher compensation, overtime, or more desirable assignments and training;

(b) Reliance upon unweighted, arbitrary and subjective criteria (used by a nearly all non-African-American upper-managerial workforce) in making job assignments, compensation, and promotion decisions. Even where Defendants' policies state objective requirements, these requirements are often applied in an inconsistent manner and ignored at the discretion of management;

(c) Reliance on racial stereotypes in making employment decisions involving job assignments, promotions, and compensation;

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

(d) Pre-selection and "grooming" of non-African-American Captains and Operations Supervisors for promotion, favorable assignments, higher pay, and more desirable positions;

(e) Maintenance of largely racially-segregated job categories and departments; and

(f) Deterrence and discouragement of African-American Captains and African American Operations Supervisors from seeking advancement, favorable assignments and higher paid, more desirable positions.

376.  As a proximate result of the racially discriminatory employment practices  and other wrongful acts alleged herein, Plaintiffs have suffered loss of income, loss of advancement and promotion, loss of career opportunity, and/or loss of intangible job benefits. As a proximate result of the racially discriminatory employment policies, practices and other wrongful acts alleged herein, Plaintiffs have experienced pain, suffering, emotional and mental distress, shame, humiliation, embarrassment, and related physical ailments.

377.  Plaintiffs, and each of them, have experienced such racially discriminatory employment practices and other racially discriminatory actions by Defendants including, without limitation, the practices and actions described herein.

378.  The foregoing conduct violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000(e), et seq.

**A.  Disparate Impact**

379.   As to disparate impact, Plaintiffs incorporate by reference the allegations of paragraphs 1 through 321 above, as though fully set forth herein.

380.  Defendants have maintained a system for making decisions about promotions, assignments, and compensation, which is excessively subjective and which has had a disparate impact on Plaintiffs.   This system cannot be justified by business necessity, but even if it could be so justified, less discriminatory alternatives exist that could equally serve any alleged necessity. Defendant's policies and practices have a disparate impact on Plaintiffs.

381.  Defendants' discriminatory policies and practices as described above have denied Plaintiffs promotions, desirable job assignments, and compensation to which they were and are entitled,

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   resulting in the loss of past and future wages and other job benefits; and have caused Plaintiffs to

2   suffer humiliation, embarrassment and emotional distress.

3   **B.  Disparate Treatment**

4   382.  As to disparate treatment, Plaintiffs incorporate by reference the allegations of paragraphs 1

5   through 321, above, as though fully set forth herein.

6   383.   Defendants have engaged in a pattern and practice of intentional discrimination against

7   Plaintiffs and the classes in promotions, assignments, and compensation.

8   384.  Plaintiffs request relief as to both their disparate impact and disparate treatment claims as

9   provided in the Prayer for Relief below.

10                                          **FOURTH CLAIM**
    **VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**
11                      **(Alleged by All Plaintiffs Against All Defendants)**

12  385.  Plaintiffs re-allege as though fully set forth herein, the factual allegations of paragraphs 1

13  through 384 above.

14  386.  Plaintiffs  KARL MINTER, PAUL C. NOBLE, DARRYL WILSON, SAL CROCKER,

15  GLEN ROANE, RICHARD JOHN, ELDRIDGE JOHNSON, JOHNNIE E. JONES, Jr.,

16  LESTER TOM, KEN MONTGOMERY, and ANNETTE GADSON, allege this cause of action

17  only as to those actions occurring February 2011 and thereafter.

18  387.  Defendants are employers employing over five employees within the meaning of the

19  California Fair Employment and Housing Act.

20  388.  Plaintiffs allege that Defendants maintain a pattern of discrimination in employment based

21  upon race.

22  389.  Defendants engage in a pattern and practice of highly subjective decision making regarding

23  employment matters that is discriminatory to African-American Captains and African-American

24  Operations Supervisors and is manifested in assignments (as to African-American Employees

25  only), promotions and compensation. While Defendants have policies designed to govern these

26  matters, many of these policies involve uncontrolled subjective criteria and/or are applied by

27  Defendant in an arbitrary and capricious manner.   As a result, racial biases and stereotypes enter

28  into Defendant's employment decisions.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

390.   Defendants' system of subjective and arbitrary decision making has an adverse impact on African-American Captains and African-American Operations Supervisors relative to their non-African-American peers with respect to (a) special assignments; (b) promotion to management; and (c) compensation. This impact is not justified by business necessity. Even if it could be so justified, less discriminatory alternatives exist that could equally serve any alleged necessity.

391.   Defendants also engage in intentional discrimination against African-American Captains and African-American Operations Supervisors relative to their non-African-American peers with respect to (a) special assignments; (b) promotion to management; and (c) compensation  through its system of subjective and arbitrary decision making, as demonstrated by anecdotal and statistical evidence.

392.   The "special assignment" positions are more lucrative and provide employees with more opportunities for advancement, greater job security, and greater pay and benefits. By contrast, the non-special assignment positions are less desirable because they offer lower wages, lesser benefits, changing and inconsistent work hours, proportionately heavier responsibilities, and more difficult work conditions. Defendants have a systematic pattern and practice of relegating qualified African-American Employees to non-special assignment positions, with lesser job security, compensation, and opportunity for advancement. Defendants typically reserve the full-time, permanent, higher wage positions for non-African-American employees. Consistent with Defendants' long-standing discriminatory policies and practices, Defendants typically do not allow African-American Employees to promote from within the company to any upper-management level positions.

393.   Defendants also disproportionately fail to promote qualified African-American employees from Captains and Operations Supervisors to upper management  positions at the same rate as their similarly situated non-African-American counterparts.   Even when Defendants do promote African-American Employees from Captains and Operations Supervisors to upper management positions, it does not promote them as quickly as their similarly situated non-African-American counterparts.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

394.  Defendants also use uniform performance evaluations that have adverse impact and have not been validated, and that are the basis for promotion and compensation decisions under Defendants' policies.

395.  Plaintiffs are further informed and believe that non-African-American employees are more likely to be assigned to positions that pay better than positions to which African-American Employees are assigned.

396.  Defendants have condoned the discriminatory conduct of its managers by failing to properly investigate formal complaints regarding discrimination.

397.  This pattern of denying African-American Captains and Operations Supervisors equal assignments, promotions,  and compensation is not the result of random or non-discriminatory factors.  Rather, it is the result of an ongoing and continuous pattern and practice of intentional race discrimination in assignments, compensation and promotions. It is further the result of reliance on policies and practices that have an adverse impact on African-American Captains and African-American Operations Supervisors which cannot be justified by business necessity, and for which alternative policies and practices with less discriminatory impact could be utilized that would equally serve any asserted business necessity. Plaintiffs are informed and believe that such policies and practices continue up to and including the present and include, without limitation:

(a) Failure to consistently post job and promotional openings to ensure that all African-American Captains and African American Operations Supervisors have notice of and opportunity to seek advancement, higher compensation, overtime, or more desirable assignments and training;

(b) Reliance upon unweighted, arbitrary and subjective criteria (used by a nearly all non-African-American upper-managerial workforce) in making special assignments, compensation, and promotion decisions. Even where Defendants' policies state objective requirements, these requirements are often applied in an inconsistent manner and ignored at the discretion of management;

(c) Reliance on racial stereotypes in making employment decisions involving job assignments, promotions, and compensation;

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

(d) Pre-selection and "grooming" of non-African-American Captains and Operations Supervisors for promotion, favorable assignments, higher pay, and more desirable positions;

(e) Maintenance of largely racially-segregated job categories and departments; and

(f) Deterrence and discouragement of African-American Captains and African American Operations Supervisors from seeking advancement, favorable assignments and higher paid, more desirable positions.

398.  As a proximate result of the racially discriminatory employment practices  and other wrongful acts alleged herein, Plaintiffs have suffered loss of income, loss of advancement and promotion, loss of career opportunity, and/or loss of intangible job benefits. As a proximate result of the racially discriminatory employment policies, practices and other wrongful acts alleged herein, Plaintiffs have experienced pain, suffering, emotional and mental distress, shame, humiliation, embarrassment, and related physical ailments.

399.  Plaintiffs, and each of them, have experienced such racially discriminatory employment practices and other racially discriminatory actions by Defendants including, without limitation, the practices and actions described herein.

400.  The foregoing conduct violates the California Fair Employment and Housing Act (Cal. Gov. Code § 12900 *et. seq.*).

**A.  Disparate Impact**

401.  As to disparate impact, Plaintiffs incorporate by reference the allegations of paragraphs 1 through 321 above, as though fully set forth herein.

402.  Defendants have maintained a system for making decisions about promotions, assignments, and compensation, which is excessively subjective and which has had a disparate impact on Plaintiffs.   This system cannot be justified by business necessity, but even if it could be so justified, less discriminatory alternatives exist that could equally serve any alleged necessity. Defendants' policies and practices that have a disparate impact on Plaintiffs.

403.  Defendants' discriminatory policies and practices as described above have denied Plaintiffs promotions, desirable job assignments, and compensation to which they were and are entitled,

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

resulting in the loss of past and future wages and other job benefits; and have caused Plaintiffs to suffer humiliation, embarrassment and emotional distress.

**B.  Disparate Treatment**

404.  As to disparate treatment, Plaintiffs incorporate by reference the allegations of paragraphs 1 through 321, above, as though fully set forth herein.

405.   Defendants have engaged in a pattern and practice of intentional discrimination against Plaintiffs and the classes in promotions, assignments, and compensation.

406.  Plaintiffs request relief as to both their disparate impact and disparate treatment claims as provided in the Prayer for Relief below.

**FIFTH CLAIM**
**VIOLATION OF 42 U.S.C. §1981**
**(Alleged by all Plaintiffs Against All Defendants)**

407.  Plaintiffs re-allege as though fully set forth herein, paragraphs 1 through 406 above.

408.  Plaintiffs  KARL MINTER, PAUL C. NOBLE, DARRYL WILSON, SAL CROCKER, GLEN ROANE, RICHARD JOHN, ELDRIDGE JOHNSON, JOHNNIE E. JONES, Jr., LESTER TOM, KEN MONTGOMERY, and ANNETTE GADSON, allege this cause of action only as to those actions occurring February 2011 and thereafter.

409.The Civil Rights Act of 1866, codified as 42 U.S.C. §1981, prohibits race discrimination in the making and enforcing of contracts.  "Making and enforcing" contracts includes the "making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. §1981(b).

410.   Defendants have engaged in a pattern and practice of intentional discrimination against Plaintiffs with respect to special assignments, promotion, and compensation.

411.  The foregoing conduct constitutes illegal intentional discrimination with respect to the making, performance, modification, and termination of contracts prohibited by 42 U.S.C. §1981.

412.  Plaintiffs request relief as provided in the Prayer for Relief below.

**SIXTH CLAIM**
**HARASSMENT IN VIOLATION OF 42 U.S.C. § 2000e**
**(Alleged by Plaintiff TERRY HAYNIE Against Defendants)**

59

413.   Plaintiff HAYNIE incorporates by reference the factual allegations set forth in paragraphs 1 through 412 herein.

414.   While working for Defendants, Plaintiff was subjected to wrongful, severe and pervasive harassment, discrimination on account of his race, African-American, by Defendants.

415.    This severe and pervasive harassment violated Haynie's rights under  The California Fair Employment and Housing Act.

416.   Plaintiff HAYNIE is part of a protected class (African-American).

417.   At all relevant times, Defendants had actual and constructive knowledge of the hostile work environment and acts of harassment described and alleged herein, and condoned, ratified and failed to remedy the hostile environment and such acts of harassment.  As a result of the hostile and offensive work environment perpetrated and maintained by Defendants, and Defendants' failure to protect plaintiff from further harassment, Plaintiff HAYNIE suffered severe emotional distress, humiliation, indignity and loss of income.

418.    As a direct and proximate result of the willful, knowing, and intentional harassment against Plaintiff HAYNIE, and defendant's failure to act, plaintiff has suffered mental distress, anguish, and indignation, loss of income, loss of advancement and promotions, loss of career opportunity and loss of tangible job benefits, all in amounts to be proven at trial.

419. Plaintiff HAYNIE requests relief as provided in the Prayer for Relief below.

## SEVENTH CLAIM
## HARASSMENT IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT
### (Alleged by Plaintiff TERRY HAYNIE Against Defendants)

420.   Plaintiff HAYNIE incorporates by reference the factual allegations set forth in paragraphs 1 through 419 herein.

421.   While working for Defendants, Plaintiff was subjected to wrongful, severe and pervasive harassment, discrimination on account of his race, African American, by Defendants.

422.    This severe and pervasive harassment violated Haynie's rights under The California Fair Employment and Housing Act.

423.   Plaintiff HAYNIE is part of a protected class (African-American).

60

424.  At all relevant times, defendants had actual and constructive knowledge of the hostile work environment and acts of harassment described and alleged herein, and condoned, ratified and failed to remedy the hostile environment and such acts of harassment.  As a result of the hostile and offensive work environment perpetrated and maintained by defendants, and defendants' failure to protect plaintiff from further harassment, Plaintiff HAYNIE suffered severe emotional distress, humiliation, indignity and loss of income.

425.     As a direct and proximate result of the willful, knowing, and intentional harassment against Plaintiff HAYNIE, and defendant's failure to act, plaintiff has suffered mental distress, anguish, and indignation, loss of income, loss of advancement and promotions, loss of career opportunity and loss of tangible job benefits, all in amounts to be proven at trial.

426.  Plaintiff HAYNIE requests relief as provided in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.  A mandatory injunction directing Defendants to cease and desist in discriminating against Plaintiffs on the basis of race; and providing for proactive procedures and the monitoring of same to remedy the pattern and practice of racial discrimination and retaliation;

2.  General damages in amounts according to proof and in no event in an amount less than the jurisdictional limit of this court;

3.  For special damages in amounts according to proof;

4.  For back pay and front pay;

5.  For punitive damages sufficient to punish defendant for the conduct alleged herein, and to deter such conduct in the future;

6.  For attorneys' fees as provided by law;

7.  For interest as provided by law;

8.  For costs of suit herein;

9.  For such other and further relief as the Court deems fair and just.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**JURY DEMAND**

Plaintiffs hereby demand trial by jury of all matters so triable.


Respectfully submitted this 30th day of November, 2012.

SMITH PATTEN


___/s/ Dow W. Patten_____
DOW W. PATTEN
Attorneys for Plaintiffs

62

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF