United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT
9        FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11   ELDRIDGE JOHNSON, et al.,              No. C-12-2730 MMC

12              Plaintiffs,                 **ORDER GRANTING IN PART AND
                                            DENYING IN PART DEFENDANTS'
13      v.                                  MOTION TO DISMISS; DENYING
                                            DEFENDANTS' MOTION TO STRIKE;
14   UNITED CONTINENTAL HOLDINGS, INC.,     AFFORDING PLAINTIFFS LEAVE TO
     et al.,                                FILE THIRD AMENDED COMPLAINT**
15
              Defendants.
16   _____/
17

18        Before the Court are two motions filed February 15, 2013 by defendants United

19   Airlines, Inc. ("United"), United Continental Holdings, Inc. ("UCH"), and Continental Airlines,

20   Inc. ("Continental"):  (1) Motion to Dismiss Second Amended Complaint With Prejudice; and

21   (2) Motion to Strike.  Plaintiffs have filed opposition to each motion; defendants have filed a

22   reply to each opposition.  Having read and considered the papers filed in support of and in

23   opposition to the motions, the Court rules as follows.[1]

24                              **BACKGROUND**

25        Plaintiffs are twenty-three African-Americans, nineteen of whom are employed by

26   United as Captains, two of whom are employed by Continental as Captains, and two of

27   whom are employed by United as Operations Supervisors.  Plaintiffs allege defendants

28   _____

              [1]By order filed March 20, 2013, the Court took the matters under submission.

violated (1) Title VII, (2) 42 U.S.C. § 1981, and (3) the California Fair Housing and Employment Act ("FEHA"), by failing to promote plaintiffs on account of plaintiffs' race. Plaintiffs also allege defendants violated Title VII and FEHA by failing to promote eleven of the plaintiffs, in retaliation for those plaintiffs' having engaged in protected activity. Plaintiffs further allege defendants violated Title VII and FEHA by subjecting one plaintiff to a hostile work environment on account of said plaintiff's race.

Specifically, the operative complaint, the Second Amended Complaint ("SAC"), contains seven causes of action, as follows:

(1) First Claim, titled "Retaliation in Violation of [Title VII]";

(2) Second Claim, titled "Retaliation in Violation of [FEHA]";

(3) Third Claim, titled "Race Discrimination in Violation of Title VII";

(4) Fourth Claim, titled "Violation of [FEHA]," in which plaintiffs allege race discrimination;

(5) Fifth Claim, titled "Violation of 42 U.S.C. § 1981," in which plaintiffs allege race discrimination;

(6) Sixth Claim, titled "Harassment in Violation of [Title VII]"; and

(7) Seventh Claim, titled "Harassment in Violation of [FEHA]."

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

1      In analyzing a motion to dismiss, a district court must accept as true all material

2   allegations in the complaint, and construe them in the light most favorable to the

3   nonmoving party.  See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

4   "To survive a motion to dismiss, a complaint must contain sufficient factual material,

5   accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

6   556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must

7   be enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at

8   555.  Courts "are not bound to accept as true a legal conclusion couched as a factual

9   allegation."  See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

10      Additionally, a "court may strike from a pleading . . . any redundant, immaterial,

11   impertinent, or scandalous matter."  See Fed. R. Civ. P. 12(f).

12                                 **DISCUSSION**

13   **A.  Motion to Dismiss**

14      Defendants argue that all claims, with the exception of the Sixth Claim, are subject

15   to dismissal against all defendants.  Additionally, defendants argue UCH should be

16   dismissed from the action for reasons specific to said defendant, which argument the Court

17   considers first.

18      **1.  All Claims:  UCH**

19      Each of plaintiffs' seven claims pertains to alleged wrongdoing by an employer.

20   Defendants argue plaintiffs have failed to allege any facts to support a finding that UCH is

21   plaintiffs' employer, and, with respect to the Title VII and FEHA claims, that plaintiffs have

22   failed to exhaust their administrative remedies as against UCH.

23               **a.  Sufficiency of Factual Allegations**

24      Plaintiffs do not allege UCH employs any plaintiff, but, rather, that United and

25   Continental are "wholly-owned subsidiaries" of UCH, which itself is a "holding company."

26   (See SAC ¶ 29.)  In their opposition, plaintiffs rely on their allegations that UCH shares

27   "common management," as well as "common control of labor relations" and "common

28   ownership and financial control," with United and Continental (see SAC ¶¶ 33, 35, 36), and

argue that such allegations are sufficient to support a claim that UCH and its two subsidiaries constitute a "single employer" under the "integrated enterprise" test. See Anderson v. Pacific Maritime Ass'n, 336 F.3d 924, 928 (9th Cir. 2003) (discussing purpose and application of "integrated enterprise" test).

As the Ninth Circuit has explained, the "integrated enterprise" test "does not determine joint liability, but instead determines whether a defendant can meet the statutory criteria of an 'employer' for Title VII applicability," see id., specifically, the statutory requirement that an "employer" have fifteen or more employees, see id. at 929. Under the "integrated enterprise" test, a "plaintiff with an otherwise cognizable Title VII claim against an employer with less than 15 employees may assert that the employer is so interconnected with another employer that the two form an integrated enterprise, and that collectively this enterprise meets the 15-employee minimum standard." See id. Where a plaintiff's employer has at least fifteen employees, however, the "integrated enterprise test is inapplicable." See id. Here, there is no dispute that United has fifteen or more employees and that Continental has fifteen or more employees. Consequently, plaintiffs' reliance on the integrated enterprise test is misplaced.

In sum, there being no factual allegations in the SAC to support a finding that UCH employs any plaintiff or is otherwise liable to any plaintiff, the claims in the SAC against UCH are subject to dismissal.

In their opposition, plaintiffs seek leave to amend in the event the Court finds any claim is subject to dismissal for failure to state a claim. With respect to their claims against UCH, plaintiffs rely on a declaration submitted by one of the named plaintiffs, and argue, based thereon, that plaintiffs can allege UCH "participated in the unlawful employment practices set forth in the [SAC]." (See Pls.' Opp to Defs.' Mot. to Dismiss, filed March 1, 2013 ["Pls.' Opp."], at 20:16-19.) In the cited paragraphs of said declaration, the declarant states he met with Continental's "senior management" during 2010, and that an individual named "Fred Abbott" stated at one such meeting that "none of the persons in the 'Minter group' would ever get promotions because they had decided to go the litigation route."

4

1   (See Sherman Decl. ¶ 12.)[2]

2        Although plaintiffs fail to explain how the statement allegedly made by such

3   individual is attributable to UCH or how UCH "participated" in any unlawful act, the Court

4   will afford plaintiffs leave to amend their Title VII and § 1981 claims against UCH to plead, if

5   they can do so, such additional facts.[3]   In any such amended pleading, if plaintiffs wish to

6   pursue claims against UCH, plaintiffs shall include sufficient factual allegations that, if true,

7   would support a claim that UCH can itself be held liable.  Moreover, in any amended

8   pleading, plaintiffs shall clearly identify the specific claims, and the specific plaintiffs, for

9   which plaintiffs seek to hold UCH liable.[4]

10              **b.  Failure to Exhaust**

11       Defendants correctly point out that none of the plaintiffs identified UCH as an alleged

12  wrongdoer in their respective administrative charges filed with the Equal Employment

13  Opportunity Commission ("EEOC") or the Department of Fair Employment and Housing

14  ("DFEH").  Based on said omission, defendants seek dismissal of the Title VII and FEHA

15  claims against UCH for failure to exhaust administrative remedies.[5]

16       As a "general rule," Title VII plaintiffs "may sue only those named in the EEOC

17  charge."  See Sosa v. Hiraoka, 920 F.2d 1451, 1458 (9th Cir. 1990).  The Ninth Circuit,

18  however, has identified exceptions to the general rule, such as where an entity named in

19  the EEOC charge and an unnamed entity are "substantially identical parties."  See id. at

20  _____

21       [2]In what appears to be a typographical error, the declarant states the meeting at
22  which Fred Abbott allegedly made the above-referenced comment occurred in November
    2011 (see id.); other paragraphs in the declaration appear to indicate the meeting occurred
23  in 2010 (see id. ¶¶ 11, 13).

24       [3]As discussed below, it would be futile for plaintiffs to amend their FEHA claims
    against UCH.

25       [4]The portions of the declaration on which plaintiffs rely appear, at best, to pertain to
26  plaintiffs' retaliation claims.

27       [5]Defendants do not seek dismissal of the § 1981 claim on this ground.  See Surrell v.
    California Water Service Co., 518 F.3d 1097, 1103 (9th Cir. 2008) (holding Title VII requires
28  exhaustion of administrative remedies "whereas § 1981 has no such requirement") (internal
    quotations and citation omitted).

1459-60 (holding where defendants unnamed in EEOC charge were trustees who "governed" employer named in charge, plaintiff's claims against trustees were not subject to dismissal at pleading stage, as it appeared "trustees and the [named entity] could well be 'substantially identical parties'").  Although plaintiffs herein fail to identify any such exception, the Court will afford plaintiffs leave to do so, in the event they amend to allege a Title VII claim against UCH.

With respect to FEHA, however, California courts have adopted the rule that if a defendant is not "listed in the administrative charge as an 'employer' or 'person' against whom the claim [is] made" or is not named "in the body of the [FEHA] complaint as the alleged perpetrator[ ]," the plaintiff has failed to exhaust administrative remedies with respect to such defendant.  See Medix Ambulance Service, Inc. v. Superior Court, 97 Cal. App. 4th 109, 115-18 (2002) (citing California court cases applying said rule).  Here, UCH was not mentioned in any administrative charge submitted by any of the plaintiffs.  (See Baldocchi Decl. ¶ 5, Exs. A-W.)  Accordingly, plaintiffs' FEHA claims, to the extent they are alleged against UCH, are subject to dismissal without leave to amend for failure to exhaust administrative remedies.

**2.  Retaliation Claims:  United**

Plaintiffs allege that eleven plaintiffs engaged in protected activity and that thereafter United retaliated against those eleven plaintiffs, specifically, Sal Crocker ("Crocker"), Annette Gadson ("Gadson"), Richard John ("John"), Eldridge Johnson ("Johnson"), Johnnie E. Jones, Jr. ("Jones"), Karl Minter ("Minter"), Ken Montgomery ("Montgomery"), Paul C. Noble ("Noble"), Glen Roane ("Roane"), Lester Tom ("Tom"), and Darryl Wilson ("Wilson").  In the First Claim, plaintiffs allege such conduct violated Title VII, and, in the Second Claim, plaintiffs allege such conduct violated FEHA.

Defendants argue the retaliation claims are subject to dismissal for failure to state a claim and, additionally, that certain portions of the claims are subject to dismissal for failure to exhaust administrative remedies.

//

6

### a. Sufficiency of Factual Allegations

To state a prima facie claim for retaliation under Title VII or FEHA, a plaintiff must allege: (1) the plaintiff engaged in protected activity; (2) the plaintiff's employer subjected the plaintiff to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action.  See Thomas v. City of Beaverton, 379 F.3d 802, 811 (9th Cir. 2004) (setting forth elements of prima facie Title VII retaliation claim); Flait v. North American Watch Corp., 3 Cal. App. 4th 467, 476 (1992) (setting forth elements of prima facie FEHA retaliation claim).

Plaintiffs allege that the above-identified eleven plaintiffs engaged in protected activity when (1) in 2010, each filed an EEOC charge against United "related to discrimination in promotions" (see SAC at 15:1-4), (2) after the filing of his/her respective 2010 EEOC charge, each "traveled to the Northern District of California to meet with United's executives to challenge United's discriminatory practices" (see SAC ¶¶ 6-16; see also, e.g., SAC ¶¶ 81, 96, 236), and (3) at some point thereafter, ten of the plaintiffs "continued to pursue changes . . . by meeting with mid and upper level management in order to establish protocols that would assist in the eradication of racial disparity in the promotional practices at [United]" (see SAC ¶¶ 82, 97, 109, 123, 141, 164, 178, 191, 205, 220).

Defendants do not argue that plaintiffs have failed to sufficiently allege protected activity.  Rather, defendants argue, plaintiffs have failed to give fair notice of the scope of each plaintiff's retaliation claim, given the SAC's failure to identify the particular adverse employment action(s) challenged by each plaintiff, and the SAC's failure to sufficiently allege a causal link between the protected activity and any adverse employment action.  As discussed below, the Court agrees.

### (i) Causal Link

Taking the issue of causation first, the Court observes that causation can be inferred from the proximity of the date the decision-maker learns of the protected activity and the date on which the adverse employment action occurs, see, e.g., Yartzoff v.

1   Thomas, 890 F.2d 1371, 1376 (9th Cir. 1987) (holding causation element established

2   where adverse employment action occurred "less than three months" after plaintiff filed

3   administrative claim), or from the decision-maker's having engaged in a "pattern of

4   antagonism following the protected conduct," see Porter v. California Dep't of Corrections,

5   419 F.3d 885, 895-96 (9th Cir. 2005) (holding causal link established where supervisors

6   who knew of plaintiff's protected activity had, prior to subjecting plaintiff to adverse

7   employment action, engaged in "pattern of antagonism," including "sneers," "intimidating

8   glares," and "spitting" in plaintiff's food).

9        Here, plaintiffs do not rely on temporal proximity or a pattern of antagonism.

10   Rather, plaintiffs argue they have pleaded direct evidence of a causal link, and, in support

11   thereof, rely on their allegation that some of the plaintiffs were told that a "Senior Vice

12   President" had stated, "No one from the original United Coalition who filed EEOC

13   complaints in 2010 will get promoted at UAL."  (See SAC ¶¶ 110, 124, 142, 165, 179, 192,

14   221;[6] see also SAC ¶¶ 83, 206 (similar comments).)  As defendants point out, however,

15   plaintiffs fail to allege the "Senior Vice President" or any other individual overheard to make

16   a similar comment had a connection to any alleged adverse employment action; plaintiffs

17   do not allege, for example, that any such speaker played a role in any decision not to

18   promote a plaintiff.  Cf. Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998)

19   (holding, in context of motion for summary judgment on gender discrimination claim,

20   plaintiff created triable issue of fact where decision-maker stated he "did not want to deal

21   with another female" and then hired male for position at issue).

22        Accordingly, plaintiffs have failed to sufficiently allege a causal link exists between

23   the protected activity and any adverse employment action.

24   //

25   //

26   ───────────────

27   [6]One plaintiff allegedly heard about the above-referenced statement from "another [p]laintiff" (see SAC ¶ 110), and four allegedly heard about it from "another Captain" (see

28   SAC ¶¶ 124, 142, 179, 192); other plaintiffs who allegedly heard about the statement do not identify the source in any fashion.

8

### (ii)  Adverse Employment Actions

In their Title VII retaliation claim, plaintiffs allege that United has "withheld all promotions and special assignments" from the eleven named plaintiffs "since February 2011." (See SAC ¶ 344.)  In an attempt to set forth the factual basis for such conclusory assertion, plaintiffs incorporate by reference 336 paragraphs alleged earlier in the SAC. (See SAC ¶ 337.)  In so doing, plaintiffs appear to rely primarily on two sections of the SAC, specifically, the section titled "Allegations of Individual Plaintiffs," in which plaintiffs set forth allegations specific to each named plaintiff, including allegations identifying at least one promotion for which each named plaintiff unsuccessfully applied (see SAC ¶¶ 76-336), and the section titled "Statement of Facts Applicable to All Claims,' in which plaintiffs set forth allegations that, generally, apply to all plaintiffs, including a list of fifty-three promotions and special assignments for which plaintiffs contend they "were precluded from applying" (see SAC ¶¶ 44-75).[7]

By incorporating the "Allegations of Individual Plaintiffs" section into their retaliation claims, plaintiffs have given sufficient notice as to the promotions identified in that section for which the eleven named plaintiffs unsuccessfully applied.  Defendants do not argue to the contrary.  Defendants do, however, correctly observe that in the "Individual" allegations applicable to plaintiff Gadson, plaintiffs fail to identify any promotion for which Gadson unsuccessfully applied after she engaged in protected activity (see SAC ¶¶ 230-36), and, consequently, challenge any retaliation claim Gadson is basing thereon.

Additionally, defendants challenge, in its entirety, the sufficiency of plaintiffs' incorporation of the "Statement of Facts Applicable to All Claims" section into the retaliation claims, and, in particular, plaintiffs' incorporation of the list of fifty-three promotions and special assignments as to which plaintiffs were allegedly "precluded from applying" because the positions either were not posted as open positions or were posted for short periods of time.  (See SAC ¶¶ 71-74.)  With respect to said incorporation, defendants

---

[7]Plaintiffs' FEHA retaliation claim is pleaded in a manner substantially similar to their Title VII retaliation claim.  (See SAC ¶¶ 347, 354.)

1    argue, plaintiffs fail to give sufficient notice as to which plaintiffs were "precluded" from

2    applying for which positions.  The Court agrees.

3        Plaintiffs imply in the SAC that each plaintiff was qualified for each of the listed fifty-

4    three positions and that each plaintiff wished to apply for each such position; no such

5    inference, however, can reasonably be drawn.[8]  Contrary to plaintiffs' argument, plaintiffs,

6    by relying on the "the hundreds of years of combined experience the[ ] [p]laintiffs have"

7    (see Pls.' Opp. at 15:16-20), cannot avoid alleging facts necessary to support a finding that

8    each of the named plaintiffs is or was qualified for a particular position.  Moreover, some of

9    the fifty-three positions were open before any plaintiff had engaged in protected activity

10   and, consequently, a decision not to post those positions when they became open cannot

11   have been motivated by retaliation.  (See, e.g., SAC ¶ 74 (identifying "Area Manager"

12   position available in 2009 at Dulles, Virginia).)  As to other positions, plaintiffs fail to provide

13   any dates or other facts to support a finding that the position became or remained open

14   after plaintiffs had engaged in protected activity.  (See, e.g., id. (identifying "Shift Manager

15   Station Operations" position filled at Dulles, Virginia on unspecified date).)

16       As stated above, plaintiffs seek leave to amend any claim found to be deficiently

17   pleaded.  The Court will afford plaintiffs leave to amend their retaliation claims, with the

18   one exception set forth in the following subsection, specifically, Johnson's claim under

19   FEHA.  In any amended pleading, if plaintiffs wish to pursue retaliation claims, plaintiffs

20   shall identify the adverse employment action(s) to which each plaintiff asserts he or she

21   was subjected because of retaliatory animus, and shall allege sufficient facts to support a

22   causal link between each such adverse employment action and each plaintiff's protected

23   activity.

24   //

25   //

26   ─────────────────

27       [8]For example, there are no factual allegations in the SAC to suggest that Gadson,
     who presently works as an Airport Operation Supervisor, is qualified for the position of
28   Assistant Chief Pilot, or that any plaintiff who is a Captain is qualified to be an Area
     Manager of an airport.

**b. Exhaustion**

Defendants argue that certain of plaintiffs' retaliation claims have not been exhausted, and, consequently, that such retaliation claims are subject to dismissal without leave to amend. The Court considers in turn each such category identified by defendants.

First, defendants seek dismissal of plaintiff Johnson's FEHA retaliation claim in its entirety. The DFEH has "certif[ied]" that Johnson failed to submit an administrative charge to the DFEH. (See Baldocchi Decl. Ex. I). Consequently, Johnson's retaliation claim, to the extent such claim is brought under FEHA, is subject to dismissal without leave to amend. See Rojo v. Kliger, 52 Cal. 3d 65, 83 (1990) (holding "exhaustion of the FEHA administrative remedy is a precondition to bringing a civil suit on a statutory cause of action").

Second, defendants seek dismissal of all retaliation claims to the extent such claims are based on failures to receive "special assignments." (See SAC ¶ 344.) Defendants correctly point out that each of the plaintiffs on whose behalf such retaliation claims are brought had alleged in his/her respective administrative charge that he/she failed to receive one or more "promotions" or "positions" (see, e.g., Baldocchi Decl. Ex. M (Minter's EEOC charge alleging he had unsuccessfully applied for "promotions" to nine specified "positions"), id. Ex. R (Roane's EEOC intake questionnaire alleging he unsuccessfully applied for "24 positions")), but that no plaintiff had alleged in his/her administrative charge that such plaintiff failed to receive a "special assignment." As the Ninth Circuit has held, however, "incidents of discrimination not included in an EEOC charge" may be considered in a civil action where the "new claims are like or reasonably related to the allegations contained in the EEOC charge." See Sosa, 920 F.2d at 1456; see also Sandhu v. Lockheed Missiles & Space Co., 26 Cal. App. 4th 846, 859 (1994) (adopting, for purposes of FEHA, Title VII's "like or reasonably related" standard). In the SAC, plaintiffs allege that by failing to select them for "special assignments," defendants have denied plaintiffs the "opportunity for advancement" (see SAC ¶ 65), and, in their opposition, plaintiffs assert that defendants require "special assignment experience for management employees" (see Pls.'

11

1  Opp. at 12:3).  Although such additional assertion is not pleaded in the SAC, plaintiffs may

2  be able to allege facts showing failures to receive special assignments are "like or

3  reasonably related to," see Sosa, 920 F.2d at 1456, the allegations made in plaintiffs'

4  respective administrative charges.  Consequently, plaintiffs will be afforded leave to amend

5  plaintiffs' retaliation claims based on failures to receive special assignments.[9]

6        Third, defendants seek dismissal of the retaliation claims to the extent they are

7  based on adverse employment actions that occurred after each plaintiff filed his or her

8  administrative charge, which actions, given the timing thereof, could not have been alleged

9  in an administrative charge.  Contrary to defendants' argument, however, there is no bar to

10 basing a civil action on adverse employment actions that occur after the filing of an

11 administrative charge.  Rather, a plaintiff may base a civil action on later-occurring adverse

12 employment actions as long as they are "like or reasonably related to the allegations

13 contained in the EEOC charge."  See Lyons v. England, 307 F.3d 1092, 1104 (9th Cir.

14 2002) (internal quotation and citation omitted).[10]  Here, plaintiffs' administrative charges

15 arguably can be read as alleging United's continuing denial of promotions based on the

16 same retaliatory animus that motivated the denials identified in their administrative

17 charges, and, consequently, it would not necessarily be futile for plaintiffs to base their

18 retaliation claims on adverse employment actions occurring after plaintiffs filed their

19 respective administrative charges.  See, e.g., id. at 1104-05 (holding, where plaintiffs

20 alleged in 1996 administrative charge that defendant "systematically restricted the access

21 of African-American employees to positions at the GS-13 level or above," plaintiffs could

22 proceed in civil action with claims based on 1997 failures to promote them to available GS-

23

24        [9]Defendants also seek dismissal of the retaliation claims to the extent they are
25 based on "retaliatory compensation practices," noting the administrative charges do not
   identify such practices.  (See Defs.' Mot. at 20:15.)  The retaliation claims, however, are not
26 based, at least as presently pleaded, on a theory that plaintiffs were subjected to
   "retaliatory compensation practices."

27        [10]Defendants argue the Ninth Circuit's decision in Lyons is in error, and that the
28 Court should instead follow an Eighth Circuit decision that rejects the reasoning set forth in
   Lyons.  The Court, however, is bound by Ninth Circuit precedent.

1    13 positions).

2         Lastly, defendants seek dismissal of the retaliation claims to the extent they are

3    based on actions that occurred "before the relevant Title VII and FEHA limitations period

4    began." (See Defs.' Mot. at 20:16.)  Defendants are correct that a plaintiff cannot base a

5    retaliation claim on an adverse employment action that occurred outside the relevant

6    limitations period.  See National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 110

7    (2002) (holding that unless plaintiff files timely administrative charge identifying "discrete

8    retaliatory or discriminatory act," plaintiff will "lose the ability to recover for it").  At this stage

9    of the proceedings, however, defendants' argument is premature; as discussed above, the

10   SAC does not make clear which adverse employment actions are being asserted on behalf

11   of each plaintiff, and, further, the dates on which some of the adverse employment actions

12   occurred are not set forth in the SAC.

13        In sum, with the exception of Johnson's FEHA claim, the Court will not preclude

14   plaintiffs from amending their retaliation claims.  In any such amended pleading, however,

15   to the extent plaintiffs base their retaliation claims on adverse employment actions not

16   identified in an administrative charge, plaintiffs must set forth allegations sufficient to

17   support a finding that each such adverse action is like or reasonably related to the

18   allegations made in the administrative charge submitted by each plaintiff who is basing a

19   retaliation claim thereon.

20        **3. Disparate Treatment: United and Continental**

21        In the Third, Fourth, and Fifth Claims, plaintiffs include a claim of "disparate

22   treatment" (see SAC ¶ 382), specifically, that United and Continental subjected plaintiffs to

23   adverse employment actions, such as failing to promote them to managerial positions, on

24   account of discriminatory animus based on plaintiffs' race.  Said claims are brought on

25   behalf of the above-identified eleven plaintiffs, and, additionally, on behalf of Odie Briscoe

26   ("Briscoe"), Mario Ecung ("Ecung"), Ken Haney ("Haney"), Terence Hartsfield ("Hartsfield"),

27   Terry Haynie ("Haynie"), Anthony Manswell ("Manswell"), Leon Miller ("Miller"), Xavier

28   Palmer ("Palmer"), David Ricketts ("Ricketts"), Fredrick Robinson ("Robinson"), Leo

1    Sherman ("Sherman), and Erwin Washington ("Washington").  In the Third Claim, plaintiffs

2    allege such conduct violated Title VII, in the Fourth Claim, plaintiffs allege such conduct

3    violated FEHA, and, in the Fifth Claim, plaintiffs allege such conduct violated § 1981.

4         Defendants argue the disparate treatment claims are subject to dismissal for failure

5    to state a claim and, additionally, that certain portions of the claims are subject to dismissal

6    for failure to exhaust administrative remedies.

7              **a. Sufficiency of Factual Allegations**

8         In order to sufficiently state a claim for intentional discrimination, a plaintiff must

9    allege facts sufficient to give the defendant "fair notice of what [the plaintiff's] claims are

10   and the grounds upon which they rest."  See Swierkiewicz v. Sorema N.A., 534 U.S. 506,

11   514 (2002).  Applying this standard, the Supreme Court has held that a plaintiff alleging he

12   was terminated due to discrimination on the basis of his age and national origin provided

13   sufficient notice to the defendant and "state[d] claims upon which relief could be granted

14   under Title VII and the ADEA," where the "complaint detailed the events leading to his

15   termination, provided relevant dates, and included the ages and nationalities of at least

16   some of the relevant persons involved with his termination," see id., specifically, the age

17   and national origin of the decision-maker and the person to whom "the bulk" of the plaintiff's

18   responsibilities had been transferred, see id. at 995-95.

19        Here, in support of their Title VII disparate treatment claim, plaintiffs allege

20   defendants have "engaged in a pattern and practice of intentional discrimination against

21   [p]laintiffs and the classes in promotions, assignments, and compensation" (see SAC

22   ¶ 383),[11] and immediately prior to such allegation, plaintiffs incorporate by reference the

23   prior paragraphs of the SAC (see SAC ¶ 382).[12]  The FEHA and § 1981 disparate

24   treatment claims are pleaded in a manner substantially similar to the Title VII claim.  (See

25

26        [11]The instant action is not brought on behalf of a putative class and, consequently,
     plaintiffs' reference to "the classes" is unclear.

27        [12]In ¶ 382 of the SAC, plaintiffs state they are incorporating, in their Title VII claim,
28   "paragraphs 1 through 321."  (See id.)  The reference to "321," however, appears to be a
     typographical error; the correct number would appear to be "381."

                                        14

1   SAC ¶¶ 404-05, 407, 410.)

2       With one exception, discussed below, the Court finds the prior paragraphs on which

3   plaintiffs rely do not provide sufficient notice to defendants of the factual basis for their

4   disparate treatment claims.

5       First, to the extent plaintiffs, by alleging they were subjected to disparate treatment

6   with respect to "compensation" (see SAC ¶¶ 383, 405, 410), intend to state a distinct claim

7   for relief, plaintiffs have failed to do so, for the reason that plaintiffs allege no facts in

8   support of such a theory.[13]

9       Second, to the extent the disparate treatment claims are based on each plaintiffs'

10  failure to receive one or more of the fifty-three promotions and special assignments listed in

11  the "Statement of Facts Applicable to All Claims" section of the SAC and as to which

12  plaintiffs claim they were "precluded" from applying (see SAC ¶¶ 71-74), the Court, for the

13  reasons stated above with respect to plaintiffs' retaliation claims, finds plaintiffs have failed

14  to give sufficient notice as to which plaintiffs were "precluded" from applying for particular

15  positions for which they were qualified.

16      Lastly, in the sections of the SAC in which allegations specific to each of the twenty-

17  three plaintiffs are set forth, plaintiffs fail, with one exception, to include sufficient facts to

18  state a disparate treatment claim on behalf of any plaintiff.  As to some plaintiffs, the SAC

19  fails to identify even one position or special assignment for which that plaintiff applied.

20  (See, e.g., SAC ¶¶ 331-36 (alleging facts specific to Sherman, but not alleging he applied

21  for any promotion or special assignment).)  Further, even in those instances in which the

22  SAC identifies a specific promotion for which a plaintiff unsuccessfully applied, the SAC

23  includes no facts to provide fair notice as to the basis of the claim that any such failure to

24  select was on account of intentional racial discrimination; rather, the SAC includes only

25

26      [13]The SAC could be read to allege disparate compensation as an element of
    damages, as opposed to a distinct adverse employment action.  In their opposition,
27  plaintiffs refer only once to their allegations regarding "compensation" (see Pls.' Opp. at
    15:10-11), and, in so doing, provide no clarity as to whether they are alleging differences in
28  "compensation" as damages or an independent adverse employment action.

1   conclusory allegations of discrimination.  (See, e.g., SAC ¶¶ 84, 87 (alleging Johnson

2   unsuccessfully applied for five positions and that he "is informed and believes that he was

3   passed over for the five positions he applied for in 2011 as a result of race

4   discrimination").)

5       As noted above, one exception exists.  In the section of the SAC specific to

6   Montgomery, plaintiffs allege that, in September 2011, said plaintiff applied and was

7   interviewed for a position as Hub Operations Area Manager at Dulles, Virginia, but that

8   three other persons, identified by name, were selected, two of whom are "Caucasian

9   individuals with no tenure, less education than [ ] Montgomery, and minimal experience."

10  (See SAC ¶ 225.)  The Court finds such allegations are sufficient to give defendants "fair

11  notice" of the basis of Montgomery's disparate treatment claims as based on said failure to

12  promote, and are sufficient to state a "claim[ ] upon which relief could be granted."  See

13  Swierkiewicz, 534 U.S. at 514.

14      Accordingly, with the exception of Montgomery's claim based on United's failure to

15  promote him to the above-referenced position at Dulles, Virginia, plaintiffs have failed to

16  allege sufficient facts to state a disparate treatment claim.

17      The Court will afford plaintiffs leave to amend their disparate treatment claims, with

18  the one exception set forth in the following subsection, specifically, Johnson's claim under

19  FEHA.  If plaintiffs wish to pursue disparate treatment claims in any such amended

20  pleading, plaintiffs shall identify the adverse employment action or actions to which each

21  plaintiff asserts he or she was subjected, and shall allege sufficient facts to provide fair

22  notice of the basis of plaintiffs' allegation that any such adverse employment action was on

23  account of discriminatory animus.

24          **b.  Exhaustion**

25      Defendants argue that claims based on certain of the alleged adverse employment

26  actions have not been exhausted, and, consequently, that plaintiffs' Title VII and FEHA

27  disparate treatment claims, to the extent based thereon, are subject to dismissal without

28  leave to amend.

16

1        As an initial matter, as discussed above with respect to plaintiffs' retaliation claims,

2  the Court will dismiss, without leave to amend, Johnson's disparate treatment claim under

3  FEHA, for the reason that Johnson failed to submit an administrative charge to the DFEH.

4  See Rojo, 52 Cal. 3d at 83.

5        Next, also as discussed above, to the extent defendants challenge plaintiffs' failure

6  to identify in their administrative charges either adverse employment actions occurring after

7  the filing of the charges or special assignments, the Court will afford plaintiffs leave to

8  amend, as it appears plaintiffs may be able to allege such actions are like or reasonably

9  related to the allegations contained in their administrative charges.  Additionally, as

10 discussed above, to the extent defendants contend plaintiffs cannot base their claims on

11 actions occurring outside the applicable limitations period, the Court finds their argument

12 premature.

13       Lastly, with respect to defendants' challenge to any claim based on disparate

14 compensation, the Court, as discussed above, finds the SAC is ambiguous as to whether

15 plaintiffs are asserting claims based on disparate compensation.  To the extent plaintiffs

16 wish to proceed with any such claim, plaintiffs, given that they did not allege any facts in

17 their administrative filings concerning the existence of unequal compensation for like work,

18 must include in their next amended complaint factual allegations sufficient to show that any

19 alleged discrimination based on such disparate compensation is like or reasonably related

20 to the allegations in the administrative charge of any plaintiff on whose behalf such claim is

21 alleged.

22       In sum, with the exception of Johnson's FEHA claim, the Court will not preclude

23 plaintiffs from amending their Title VII and FEHA disparate treatment claims.

24       **4.  Disparate Impact: United and Continental**

25       The Third, Fourth, and Fifth Claims also include a claim of disparate impact.

26 Defendants argue said claims are subject to dismissal for failure to state a claim and,

27 additionally, that certain portions thereof are subject to dismissal for failure to exhaust.

28 //

17

1

### a. Sufficiency of Factual Allegations

2   "[D]isparate-impact claims involve employment practices that are facially neutral in

3   their treatment of different groups but that in fact fall more harshly on one group than

4   another and cannot be justified by business necessity." Raytheon v. Hernandez, 540 U.S.

5   44, 52 (2003) (internal quotation and citation omitted). To sufficiently state a disparate

6   impact claim, a plaintiff must "allege facts identifying a specific, facially neutral employment

7   policy," as well as facts "to show a causal relationship between such a practice and its

8   adverse impact on [a protected group]." See Hines v. California Public Utilities Comm'n,

9   467 Fed. Appx. 639, 641 (9th Cir. 2012).

10      Defendants argue plaintiffs have failed to give sufficient notice of the basis for their

11   disparate impact claims. As discussed below, the Court agrees.

12      In the SAC, plaintiffs list two "policies and practices" upon which, it appears, the

13   disparate impact claims are based:[14]

14      [1] Failure to consistently post job and promotional openings to ensure that all
        African-American Captains and African-American Operations Supervisors have
15      notice of and opportunity to seek advancement, higher compensation, overtime, or
        more desirable assignments and training; [and]

16
        [2] Reliance upon unweighted, arbitrary and subjective criteria (used by a nearly all
17      non-African-American upper-managerial workforce) in making job assignments,
        compensation, and promotion decisions. Even where [d]efendants' policies state
18      objective requirements, these requirements are often applied in an inconsistent
        manner and ignored at the discretion of management.

19
   (See SAC ¶¶ 375(a)-375(b).)
20
        The first of the above-quoted "policies and practices" does not identify a specific
21
   policy. Rather, as pleaded, and particularly in light of plaintiffs' allegations that defendants
22
   allow employees to apply for "permanent mid or upper-level management position[s]"
23

---

24      [14]In a section of the SAC in which plaintiffs combine allegations of "intentional race
   discrimination" and "discriminatory impact," plaintiffs identify six "policies and practices."
25   (See SAC ¶ 375.) Four of said alleged policies are not facially neutral, specifically,
   "[r]eliance on racial stereotypes in making employment decisions," "[p]re-selection and
26   grooming of non-African-Americans for promotions," "[m]aintenance of largely racially-
   segregated job categories and departments," and "[d]eterrence and discouragement of
27   African-American Captains and African-American Operations Supervisors from seeking
   advancement" (see SAC ¶ 375(c)-375(f)), and thus appear to pertain solely to plaintiffs'
28   claims for intentional race discrimination.

1   through the "Taleo system" (see SAC ¶ 66), plaintiffs are merely alleging that some open

2   positions are posted and others are not.  Noticeably absent from the SAC is the

3   identification of a policy governing the circumstances under which certain jobs are posted

4   and others are not.  Additionally, plaintiffs fail to plead any facts to support their conclusory

5   allegation that African-Americans are adversely affected by the non-posting of some

6   positions, and such effect is not self-evident.  Indeed, as one district court has observed,

7   "[f]ailure to post a job would seem to make all applicants, regardless of race . . ., unaware

8   of the specific opening."  See Collette v. St. Luke's Roosevelt Hospital, 132 F. Supp. 2d

9   256, 278 (S.D. N.Y. 2001) (holding plaintiff failed to state disparate impact claim based on

10  employer's "failure to post available job openings" for management positions).

11        The second of the above-quoted "policies and practices" is that persons who make

12  employment decisions use subjective criteria and that such decision-makers "often" ignore

13  defendants' "objective requirements" or apply those requirements in an "inconsistent"

14  manner.  (See SAC ¶ 70(b).)  The Court finds said allegation is too vague to identify a

15  specific employment practice.  Indeed, as pleaded, plaintiffs appear to be alleging that

16  individual decision-makers are, at least in part, not following defendants' stated policies.

17        Consequently, plaintiffs have failed to allege sufficient facts to state a disparate

18  impact claim, and the Court will afford plaintiffs leave to amend their disparate impact

19  claims, with the exceptions set forth in the following subsection, specifically, certain

20  plaintiffs' disparate impact claims under Title VII or FEHA.  In any amended pleading, if

21  plaintiffs wish to pursue disparate impact claims, plaintiffs shall identify the specific facially

22  neutral employment policy or practice being challenged and shall allege facts sufficient to

23  show the existence of a causal relationship between such policy or practice and an adverse

24  impact on African-Americans.

25                    **b. Exhaustion**

26        Defendants argue that no plaintiff has exhausted a disparate impact claim, and,

27  consequently, the Title VII and FEHA disparate impact claims are subject to dismissal

28  without leave to amend.

1    As plaintiffs correctly point out in their opposition, some of the plaintiffs did include in

2    their administrative charges and/or their EEOC intake questionnaires allegations

3    challenging defendants' failure to post "all" open positions and/or defendant's selection of

4    persons for open positions "by a tap on the shoulder" or "hand-pick[ing]" without allowing

5    others to apply.  (See, e.g., Baldocchi Decl. Exs. E, L, M.)  Such allegations were made by

6    the following thirteen plaintiffs in their respective EEOC charges and/or EEOC intake

7    questionnaires, as well as in their respective DFEH charges:  Briscoe, Ecung, Haney,

8    Hartsfield, Manswell, Miller, Minter, Palmer, Ricketts, Robinson, Sherman, Washington,

9    and Wilson.  (See id. Exs. A, C, E, F, K, L, M, P, Q, S, T, V, W.)[15]  As discussed above,

10   plaintiffs are basing their disparate impact claims, at least in part, on defendants' not

11   posting all open positions, and the Court has afforded plaintiffs leave to amend their

12   disparate impact claims to, inter alia, specify the facially neutral practice or practices being

13   challenged.  Consequently, the Court finds, as to the above-identified thirteen plaintiffs, it is

14   premature to determine whether they have exhausted their federal and state administrative

15   remedies with respect to a disparate impact claim.

16        Equivalent allegations as to failures to post were made by an additional two

17   plaintiffs, specifically, Haynie and Tom, but those allegations were made only in their

18   respective EEOC charges and/or questionnaires, and not in their respective DFEH

19   charges;[16] rather, in their respective DFEH charges, said two plaintiffs only alleged claims

20   of intentional discrimination based on their respective failures to receive positions for which

21   they did apply and were not selected.  Plaintiffs have not argued that their allegations of

22

23        [15]Wilson's allegations were made in his EEOC charge, which charge Wilson
     requested the EEOC file with the DFEH (see id. Ex. W); the Court will assume, in the
24   absence of a showing to the contrary, said charge was sent to the DFEH.  See Downs v.
     Dep't of Water & Power, 58 Cal. App. 4th 1093, 1097 (1997) ("The EEOC and the DFEH
25   [have] each designated the other as its agent for receiving charges and agreed to forward
     to the other agency copies of all charges potentially covered by the other agency's
26   statute.").

27        [16]Neither Haynie nor Tom requested that the EEOC send his EEOC charge to the
     DFEH.  Rather, Haynie requested his EEOC charge be sent to a Connecticut state agency
28   (see Baldocchi Decl. Ex. G), and Tom requested his EEOC charge be sent to an Illinois
     state agency (see id. Ex. U).

1    intentional discrimination with respect to specified positions for which a plaintiff

2    unsuccessfully applied are "like or reasonably related to," see Lyons, 307 F.3d at 1104, a

3    disparate impact claim based on facially neutral policies pertaining to the staffing of

4    positions that are not posted.  Consequently, Haynie and Tom have failed to exhaust their

5    state administrative remedies with respect to plaintiffs' disparate impact claims, and further

6    amendment of the FEHA disparate impact claim on their behalf would be futile.  See

7    Schlosser v. Potter, 248 Fed. Appx. 812, 818 (9th Cir. 2007) (holding proposed amended

8    complaint was "futile" where plaintiff "failed to exhaust his administrative remedies").

9        The remaining eight plaintiffs, specifically, Crocker, Gadson, John, Johnson, Jones,

10    Montgomery, Noble, and Roane, did not allege in their respective EEOC charges, EEOC

11    intake questionnaires, or DFEH charges that defendants failed to post open positions

12    and/or filled unposted positions by a "tap on the shoulder" system; nor did any of those

13    eight plaintiffs include therein any other language indicating they were challenging a failure

14    to obtain a position for which they did not apply.[17]  Rather, in their administrative filings,

15    said eight plaintiffs only alleged claims of intentional discrimination based on their

16    respective failures to receive specific positions for which they did apply and were not

17    selected.  Consequently, for the reasons stated above, Crocker, Gadson, John, Johnson,

18    Jones, Montgomery, Noble, and Roane have failed to exhaust either their federal or state

19    administrative remedies with respect to plaintiffs' disparate impact claims, and further

20    amendment of the Title VII or FEHA disparate impact claim on their behalf would be futile.

21    See id.

22        In sum, with the exception of (1) the Title VII and FEHA claims of Crocker, Gadson,

23    John, Johnson, Jones, Montgomery, Noble, and Roane, and (2) the FEHA claims of Haynie

24    and Tom, the Court will afford plaintiffs leave to amend their Title VII and FEHA disparate

25    impact claims.

26    //

27

28        _____

[17]As discussed above, Johnson did not file a DFEH charge; all other plaintiffs did.

1

### 5.  FEHA: Application to Nonresidents of California

2      In reliance on the principle that FEHA does not apply to "nonresidents employed

3 outside the state when the tortious conduct did not occur in California," see Campbell v.

4 Arco Marine, Inc., 42 Cal. App. 4th 1850, 1860 (1996), defendants argue that any FEHA

5 claims brought on behalf of plaintiffs who do not reside in California must be dismissed

6 because plaintiffs have failed to sufficiently allege that the non-California plaintiffs were

7 subjected to tortious conduct in California.

8      Plaintiffs' FEHA claims are asserted in the Second Claim, which alleges retaliation

9 and is brought on behalf of eleven plaintiffs, the Fourth Claim, which alleges disparate

10 treatment and disparate impact and is brought on behalf of all twenty-three plaintiffs, and

11 the Seventh Claim, which alleges harassment and is brought on behalf of Haynie only.  As

12 discussed above, plaintiffs' retaliation, disparate treatment, and disparate impact claims, to

13 the extent such claims are brought under FEHA, have been dismissed, with the sole

14 exception of Montgomery's disparate treatment claim as based on his failure to receive a

15 promotion in 2011 to a position at Dulles, Virginia.  The Seventh Claim is based on

16 allegations that Haynie was subjected to a hostile work environment during the course of

17 his employment (see SAC ¶¶ 276, 281-87), and has not been addressed earlier herein.

18 Consequently, the Court next considers defendants' argument only to the extent it is made

19 as to said remaining disparate treatment and harassment claims under FEHA.

20      In their opposition, plaintiffs state their FEHA claims "only deal with promotions and

21 special assignments in the State of California."  (See Pls.' Opp. at 19:12-13.)  As pleaded,

22 however, the FEHA disparate treatment claim incorporates by reference all prior

23 allegations in the SAC, including the allegations pertaining to Montgomery's failure to

24 receive a promotion in Virginia.  In light of plaintiffs' above-quoted representation as to the

25 scope of their FEHA claims, however, the Court will dismiss without leave to amend the

26 FEHA claim brought on behalf of Montgomery pertaining to his failure to receive a

27 promotion in Virginia.

28      The Seventh Claim includes no facts suggesting that any allegedly harassing

1   behavior occurred in California; indeed, the only geographic locations identified in the claim

2   are outside California.  (See SAC ¶ 278 (alleging, "Throughout his career [p]laintiff Haynie

3   has worked in the Chicago region and the Northeast Region in various positions.").)

4   Consequently, the Seventh Claim is subject to dismissal, and the Court will afford plaintiffs

5   leave to amend, if they intend to proceed with the Seventh Claim, to allege the harassing

6   conduct occurred in California.

7        Finally, to the extent plaintiffs include in any amended pleading a FEHA claim on

8   behalf of other non-California residents, plaintiffs must include sufficient facts to support a

9   finding that any such plaintiff is challenging tortious conduct occurring in California.

10  **B. Motion to Strike**

11       As noted above, "redundant, immaterial, impertinent, or scandalous matter" may be

12  stricken from a complaint.  See Fed. R. Civ. P. 12(f).  Defendants argue that certain

13  allegations in the SAC are immaterial or impertinent and, consequently, should be stricken.

14  The Court considers the challenged allegations in turn.

15       First, defendants argue that all references to promotions or special assignments

16  should be stricken to the extent plaintiffs did not exhaust their administrative remedies

17  and/or to the extent plaintiffs fail to identify one or more plaintiffs who applied for said

18  positions or would have applied for said positions if posted.  The claims remaining in the

19  SAC, however, are Montgomery's disparate treatment claims under Title VII and § 1981

20  based on his failure to receive a specific promotion in Virginia in 2011, and Haynes' Title VII

21  harassment claim, which was not challenged in defendants' motion to dismiss other than

22  the inclusion therein of UCH as a defendant; both claims have been exhausted and are

23  sufficiently alleged.  Moreover, any argument that a claim is insufficiently pleaded must be

24  made pursuant to Rule 12(b)(6), not Rule (12(f).  See Whittlestone, Inc. v. Handi-Craft Co.,

25  618 F.3d 970, 971, 974-75 (9th Cir. 2010) (holding Rule 12(f) does not authorize district

26  courts to strike claims on the ground they are "precluded as a matter of law").

27       Second, defendants argue that all allegations in the SAC pertaining to earlier

28  incidents of discrimination by defendants should be stricken.  Said allegations are that

(1) defendants' current CEO stated, in 2010 at an event where an aircraft was named after an African-American pilot, that he was "not proud" of Continental's having failed to hire said pilot "because of the color of his skin" (<u>see</u> SAC ¶ 58), and that (2) United, as a result of a lawsuit filed in 1973, was subject to a "consent order" until 1995, at which time the consent decree was "terminated" without a finding that "employment discrimination" was "no longer a problem at United" (<u>see</u> SAC ¶ 49, 56; <u>see also</u> SAC ¶¶ 44-55 (alleging, as background, federal case in which consent decree was entered and subsequent lawsuit in which United was alleged to have violated terms of consent decree)). Irrespective of whether evidence to support such allegations ultimately will be held admissible at trial on the claims remaining in the SAC, or on any of the the dismissed claims if properly realleged, <u>see</u>, <u>e.g.</u>, Fed. R. Civ. P. 403, 404, the Court declines to find at the pleading stage that the background allegations identified above should be stricken as immaterial or impertinent. Under some circumstances, prior practices, even those occurring many years in the past, could conceivably shed some light on present practices. <u>See</u>, <u>e.g.</u>, <u>Pullman-Standard v. Swint</u>, 456 U.S. 273, 277-280 (1982) (observing that district court, in resolving Title VII claims alleged in complaint filed in 1971, made findings of fact as to workplace and union practices occurring 30 years prior, and determined challenged practice "grew out of historical circumstances" unrelated to discrimination).

Accordingly, the motion to strike will be denied.

**CONCLUSION**

For the reasons stated above:

1. Defendants' motion to dismiss is hereby GRANTED in part and DENIED in part, as follows:

a. The First Claim is DISMISSED in its entirety, with leave to amend.

b. The Second Claim is DISMISSED in its entirety. Such dismissal is with leave to amend except to the extent the claim is brought (i) on behalf of Johnson and (ii) against UCH.

//

1         c.  The Third Claim is DISMISSED, with the exception of Montgomery's

2 disparate treatment claim based on his failure to receive a promotion to Hub Operations

3 Area Manager at Dulles, Virginia, in September 2011.  Such dismissal is with leave to

4 amend, except to the extent the claim is based on a theory of disparate impact and is

5 brought on behalf of Crocker, Gadson, John, Johnson, Jones, Montgomery, Noble, and

6 Roane.

7         d.  The Fourth Claim is DISMISSED in its entirety.  Such dismissal is with

8 leave to amend except to the extent the claim is (i) based on Montgomery's failure to

9 receive a promotion to Hub Operations Area Manager at Dulles, Virginia, in September

10 2011, (ii) based on a theory of disparate impact and is brought on behalf of Crocker,

11 Gadson, Haynie, John, Jones, Montgomery, Noble, Roane, and Tom, (iii) brought on behalf

12 of Johnson, and (iv) brought against UCH.

13         e.  The Fifth Claim is DISMISSED, with the exception of Montgomery's

14 disparate treatment claim based on the failure to be promoted to Hub Operations Area

15 Manager at Dulles, Virginia, in September 2011.  Such dismissal is with leave to amend.

16         f.  The Sixth Claim is DISMISSED to the extent it is alleged against UCH, with

17 leave to amend.

18         g. The Seventh Claim is DISMISSED in its entirety.  Such dismissal is with

19 leave to amend except to the extent the claim is brought against UCH.

20    2.  Defendants' motion to strike is hereby DENIED.

21    3.  Any Third Amended Complaint shall be filed no later than May 20, 2013.  In any

22 Third Amended Complaint, plaintiffs may amend to cure the deficiencies noted in any or all

23 of the claims identified above that have been dismissed with leave to amend.  Plaintiffs may

24 not, however, add new claims, new plaintiffs, or new defendants without leave of court.

25 See Fed. R. Civ. P. 15(a)(2).

26    **IT IS SO ORDERED.**

27

28 Dated:  April 24, 2013

MAXINE M. CHESNEY
United States District Judge

25