United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  ELDRIDGE JOHNSON, et al.,              No. C-12-2730 MMC

12            Plaintiffs,                  **ORDER GRANTING IN PART AND
                                           DENIING IN PART DEFENDANTS'**
13      v.                                 **MOTION TO STRIKE; GRANTING IN
                                           PART AND DENYING IN PART**
14  UNITED CONTINENTAL HOLDINGS, INC.,     **DEFENDANTS' MOTION TO DISMISS;**
    et al.,                                **AFFORDING PLAINTIFFS LEAVE TO**
15                                         **FILE FOURTH AMENDED COMPLAINT**
              Defendants.
16  _____/

17

18      Before the Court are two motions filed June 27, 2013 by defendants United Airlines,

19  Inc. ("United"), United Continental Holdings, Inc. ("UCH"), and Continental Airlines, Inc.

20  ("Continental"):  (1) Motion to Strike Portions of Corrected Third Amended Complaint; and

21  (2) Motion to Dismiss Corrected Third Amended Complaint With Prejudice.  Plaintiffs have

22  filed opposition, to which defendants have replied.  Having read and considered the papers

23  filed in support of and in opposition to the motions, the Court rules as follows.[1]

24                            **BACKGROUND**

25      Plaintiffs are twenty-three African-Americans, twenty-one of whom are employed by

26  United as Captains,[2] and two of whom are employed by United as Operations Supervisors.

27  _____

28      [1]By order filed August 6, 2013, the Court took the matters under submission.

        [2]Two of the Captains were previously employed by Continental.

1  Plaintiffs allege defendants violated (1) Title VII of the Civil Rights Act of 1964, (2) 42

2  U.S.C. § 1981, and (3) the California Fair Housing and Employment Act ("FEHA"), by

3  subjecting plaintiffs to adverse employment actions on account of plaintiffs' race.  Plaintiffs

4  also allege defendants violated Title VII and FEHA by retaliating against eleven of the

5  plaintiffs who previously had engaged in protected activity.  Plaintiffs further allege

6  defendants violated Title VII and FEHA by subjecting one plaintiff to a hostile work

7  environment on account of said plaintiff's race.

8         On May 29, 2012, plaintiffs filed their initial complaint, and, on July 20, 2012, before

9  any defendant had been served, filed a First Amended Complaint ("FAC").  On August 29,

10  2013, defendants filed a motion to dismiss the FAC, or, in the alternative, to transfer, in

11  which motion they primarily argued that venue was improper and/or inconvenient with

12  respect to the majority of the claims alleged.  At a hearing on the motion, conducted

13  October 5, 2012, plaintiffs requested leave to amend, which request the Court granted and,

14  in light thereof, denied the motion to dismiss as moot.  Plaintiffs thereafter filed their

15  Second Amended Complaint ("SAC") and defendants again moved to dismiss, arguing the

16  claims alleged in the SAC were not pleaded in conformity with Rule 8(a) of the Federal

17  Rules of Civil Procedure, and, further, that certain claims had not been exhausted.  By

18  order filed April 24, 2013, the Court granted defendants' motion as to all but one claim, and

19  afforded plaintiffs leave to amend the majority of the dismissed claims.  On May 20, 2013,

20  plaintiffs filed their Third Amended Complaint, and, on June 21, 2013, their Corrected Third

21  Amended Complaint ("TAC").[3]

22         The TAC contains seven causes of action, as follows:

23         (1) First Claim, titled "Retaliation in Violation of 42 U.S.C. § 2000e [Title VII]";

24         (2) Second Claim, titled "Retaliation in Violation of [FEHA]";

25         (3) Third Claim, titled "Race Discrimination in Violation of Title VII";

26         (4) Fourth Claim, titled "Violation of [FEHA]" and based on race discrimination;

27  ─────────────────────

28         [3]The "Corrected" TAC corrects a number of typographical and other errors in the
   pleading as initially filed.

1    (5) Fifth Claim, titled "Violation of 42 U.S.C. § 1981" and based on race

2  discrimination;

3    (6) Sixth Claim, titled "Harassment in Violation of [Title VII]"; and

4    (7) Seventh Claim, titled "Harassment in Violation of [FEHA]."

5                              **LEGAL STANDARD**

6    Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be

7  predicated on the lack of a cognizable legal theory or the absence of sufficient facts alleged

8  under a cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699

9  (9th Cir. 1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of the

10 claim showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly,

11 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint

12 attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."

13 See id.  Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to

14 relief requires more than labels and conclusions, and a formulaic recitation of the elements

15 of a cause of action will not do."  See id. (internal quotation, citation, and alteration

16 omitted).

17    In analyzing a motion to dismiss, a district court must accept as true all material

18 allegations in the complaint, and construe them in the light most favorable to the

19 nonmoving party.  See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

20 "To survive a motion to dismiss, a complaint must contain sufficient factual material,

21 accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

22 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must

23 be enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at

24 555.  Courts "are not bound to accept as true a legal conclusion couched as a factual

25 allegation."  See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

26    Additionally, a "court may strike from a pleading . . . any redundant, immaterial,

27 impertinent, or scandalous matter."  See Fed. R. Civ. P. 12(f).

28 //

                                         3

**DISCUSSION**

**A. Motion to Strike**

Defendants argue that certain allegations in the TAC are immaterial or impertinent, and, consequently, should be stricken.  The Court considers the challenged allegations in turn.

First, defendants seek an order striking from the TAC all references to "87 new, allegedly applied-for positions not previously identified in [p]laintiffs' prior Second Amended Complaint."  (See Defs.' Mot. to Strike at 1:12-13.)  In support of such request, defendants rely on the Court's April 24, 2013 order, which order afforded plaintiffs leave to file a Third Amended Complaint, with the instruction that plaintiffs not "add new claims, new plaintiffs, or new defendants without leave of court."  (See Order, filed April 24, 2013, at 25:21-25.)  Contrary to defendants' understanding of the above-quoted language, the Court's reference to "new claims" did not refer to plaintiffs' identification of adverse employment actions on which plaintiffs based their existing claims of discrimination and retaliation.  Indeed, in the April 24, 2013 order, the Court expressly afforded plaintiffs leave to "identify the adverse employment action(s) to which each plaintiff was subjected."  (See id. at 10:19-21; see also id. at 16:19-21.)

Second, defendants seek an order striking from the TAC the disparate impact claim brought under FEHA by plaintiff Eldridge Johnson.  (See TAC at 91:12-23.)  As defendants correctly point out, the Court, in its April 24, 2013 order, dismissed said claim for failure to exhaust, and without leave to amend (see Order, filed April 24, 2013, at 21:9-25), and denied plaintiffs' motion for reconsideration of such dismissal (see Order, filed May 22, 2013, at 5:9-22).

Accordingly, the motion to strike will be denied to the extent defendants seek an order striking all references to positions not identified in the SAC, and will be granted solely to the extent defendants seek an order striking the disparate impact claim brought under FEHA on behalf of Eldridge Johnson.

//

**B. Motion to Dismiss**

Defendants argue that all claims in the TAC, with the exception of the Sixth Claim, are subject to dismissal in their entirety, and, further, that UCH should be dismissed from the action for reasons specific to said defendant.  The Court first turns to the claims against UCH.

**1. All Claims Alleged Against UCH**

Plaintiffs allege United and Continental are "wholly-owned subsidiaries" of UCH, which itself is a "holding company."  (See TAC ¶ 107.)  Plaintiffs name UCH as a defendant to four of the seven claims alleged in the TAC, specifically, the three claims alleging violations of Title VII (the First, Third, and Sixth Claims), and the claim alleging violations of § 1981 (the Fifth Claim).  Each claim asserted in the TAC, including the four claims alleged against UCH, pertains to alleged wrongdoing by plaintiffs' employer, which, depending on the plaintiff and the time of the alleged wrongdoing, is either United or Continental.  In its prior order, the Court dismissed the claims alleged against UCH, for failure to allege facts to support a finding that UCH is liable for decisions made by United and/or Continental, and afforded plaintiffs leave to amend to allege such facts.

In their motion to dismiss, defendants argue plaintiffs have failed to cure the above-described deficiency.

In the TAC, plaintiffs allege that UCH's "executive-level management is involved in the decision-making with respect to Operations promotions and Flight Operations promotions for all airline and airport operations, whether denominated Continental or United" (see TAC ¶ 120) and that "[a]ll management decisions [by] United [ ] are made and approved by [UCH] executives" (see TAC ¶¶ 123, 126).  In their opposition, plaintiffs argue the TAC includes sufficient factual allegations to support those conclusions.

In that regard, with respect to plaintiffs' racial discrimination claims, plaintiffs rely on comments allegedly made by UCH executives at meetings attended by one or more of the plaintiffs.  Specifically, plaintiffs rely on the following:  (1) in 2011, plaintiff Johnnie E. Jones, Jr. and "NAACP Representative Mr. Dubois" met with two UCH executives to

"discuss opportunities for African-Americans in management at the merged Continental/
United," but, according to plaintiffs, "[r]ather than focus on change that would make the
promotional practices transparent and fair, [UCH] senior-level management sought to
ameliorate the NAACP and United Coalition for Diversity with pledges of monetary support"
(see TAC ¶ 150); and (2) in another meeting conducted in 2011, four plaintiffs and "others"
who previously had filed with the Equal Employment Opportunity Commission ("EEOC")
complaints against United met with three UCH executives "to further discussions of
diversity and promotional opportunities" (see TAC ¶ 151); at that meeting, according to
plaintiffs, one UCH executive stated he "'did not have a mind bending machine' to change
people in doing what was right" (see TAC ¶ 153), and a second UCH executive stated "his
view of diversity is not an 'Afro-Centric' view" (see TAC ¶ 154), and, further, that "he cannot
be blamed for the lack of African-American Captains in full time leadership positions and
that diversity programs will cost money" (see TAC ¶ 157).

Plaintiffs argue the above-referenced comments support a finding of racial animus
on the part of UCH.  As defendants argue, however, the alleged comments appear racially-
neutral.  Even assuming, arguendo, any or all of the above comments could support a
finding of racial animus on the part of UCH, plaintiffs fail to state employment
discrimination claims against UCH because plaintiffs allege no facts to support their
conclusory assertions that UCH either made the challenged employment decisions or
otherwise was responsible for the decisions made by its subsidiaries United and
Continental.  See Anderson v. Pacific Maritime Ass'n, 336 F.3d 924, 931 (9th Cir. 2003)
(holding third-party to employment relationship can be held liable for employment
discrimination only where third-party itself has "discriminated against and interfered with
the employees' relationship with their employer[ ]"); see also, e.g., Walden v. Georgia-
Pacific Corp., 126 F.3d 506, 515-16 (5th Cir. 1997) (holding, in context of motion for
summary judgment, statement evidencing "retaliatory animus," made by manager "in the
direct chain of command involved in the decision to fire plaintiffs," was not relevant to
establishing retaliatory animus on part of employer, as manager had not "recommended

1   the replacement of the plaintiffs" or otherwise "influenced [the employment] decision").

2       Additionally, with respect to their retaliation claims,[4] plaintiffs argue UCH can be held

3   liable based on a comment allegedly made a "Fred Abbott" in 2010.  According to the TAC,

4   plaintiff Leo Sherman and "other African-Americans" attended a meeting with Fred Abbott,

5   who at the time of the meeting was an executive with Continental, and who allegedly stated

6   "'the dirty dozen would never get promotions into management because they chose the

7   litigation route' or words to that effect."  (See TAC ¶¶ 146-48.)[5]  Plaintiffs fail to explain,

8   however, how the above-referenced comment, made by a Continental executive,[6] supports

9   a finding of retaliatory animus on the part of UCH, and, even if the comment could be

10  attributed to UCH, plaintiffs fail to allege any facts to support a finding that Fred Abbott, or

11  any other employee of UCH, made or otherwise was responsible for any decision to

12  retaliate against plaintiffs.

13      Accordingly, plaintiffs have failed to cure the deficiencies identified in the Court's

14  April 24, 2013 order as they pertain to UCH, and the claims against UCH will be dismissed

15  without further leave to amend.

16          **2.  Retaliation Claims:  United**

17      Plaintiffs allege that eleven plaintiffs engaged in protected activity and that United

18  thereafter retaliated against those eleven plaintiffs, specifically, Sal Crocker ("Crocker"),

19  Annette Gadson ("Gadson"), Richard John ("John"), Eldridge Johnson ("Johnson"), Johnnie

20  E. Jones, Jr. ("Jones"), Karl Minter ("Minter"), Ken Montgomery ("Montgomery"), Paul C.

21  Noble ("Noble"), Glen Roane ("Roane"), Lester Tom ("Tom"), and Darryl Wilson ("Wilson").

22

23  _____

24      [4]As set forth in greater detail in the Court's April 24, 2013 order, plaintiffs allege that
    certain of the plaintiffs employed by United engaged in protected activity when, in 2010,
    each filed an EEOC charge and, thereafter, met with United to challenge United's practices.

25      [5]Plaintiffs allege that "the dirty dozen" is a reference to "the United Coalition for
26  Diversity," thirteen United employees who had filed EEOC charges.  (See TAC ¶¶ 143-44.)

27      [6]Plaintiffs allege that after Fred Abbott made the comment on which plaintiffs rely,
    United and Continental merged, and Fred Abbott then became "Senior Vice President of
28  flight operations for the merged company" (see TAC ¶ 148); the TAC's reference to the
    "merged company" is a reference to UCH (see Pls.' Opp. at 12:10-11, 27).

1    In the First Claim, plaintiffs allege such conduct violated Title VII, and, in the Second Claim,

2    plaintiffs allege such conduct violated FEHA.

3          In its April 24, 2013 order, the Court dismissed the retaliation claims for failure to

4    state a claim, specifically, for failure to allege any facts to support a finding that a causal

5    link existed between plaintiffs' protected activity and any adverse employment actions.  See

6    Thomas v. City of Beaverton, 379 F.3d 802, 811 (9th Cir. 2004) (holding elements of prima

7    facie Title VII retaliation claim include "a causal link . . . between the protected activity and

8    the adverse employment action"); Flait v. North American Watch Corp., 3 Cal. App. 4th

9    467, 476 (1992) (holding elements of prima facie FEHA retaliation claim include "a causal

10   link between the protected activity and the employer's action").

11         In their motion to dismiss, defendants argue plaintiffs have failed to cure the above-

12   described deficiency.  Plaintiffs, in their opposition, argue that additional allegations made

13   in the TAC suffice; specifically, citing to six paragraphs in the TAC, plaintiffs argue that after

14   they engaged in protected activity, "[d]efendant subjected them to a pattern of antagonism

15   that included explicit references to their EEOC complaints."  (See Pls.' Opp. at 18:10-11,

16   28.)

17         As noted in the Court's prior order, courts have found causation can be inferred

18   where the decision-maker has engaged in a "pattern of antagonism following the protected

19   conduct."  See Porter v. California Dep't of Corrections, 419 F.3d 885, 895-96 (9th Cir.

20   2005) (holding causal link established where supervisors who knew of plaintiff's protected

21   activity had, prior to subjecting plaintiff to adverse employment action, engaged in "pattern

22   of antagonism," including "sneers," "intimidating glares," and "spitting" in plaintiff's food).[7]

23   The allegations in the TAC upon which plaintiffs rely, however, are insufficient to plead a

24   pattern of antagonism by any decision-maker.

25         Four of the six paragraphs in the TAC upon which plaintiffs rely pertain to the above-

26   _____

27         [7]In its prior order, the Court also noted that causation can be inferred from the
     proximity of the date the decision-maker learns of the protected activity and the date on
28   which the adverse employment action occurs.  Here, plaintiffs do not rely on temporal
     proximity with respect to any of the challenged adverse employment actions.

1  referenced comment by Fred Abbott at the time he was employed by Continental.  (See
2  TAC ¶¶ 148, 516, 517, 519.)  As discussed above, however, plaintiffs fail to allege Fred
3  Abbott played a part in any failure to promote plaintiffs within United, and, consequently, his
4  comment is insufficient to support a "pattern of antagonism" by a decision-maker.  See
5  Porter, 419 F.3d at 895-96.

6         The remaining two paragraphs upon which plaintiffs rely set forth statements made
7  by certain plaintiffs at meetings with UCH and/or United executives.  In the first of the two
8  paragraphs, plaintiffs allege four plaintiffs met with a UCH executive and "advised" him at
9  that meeting that defendants had employed "no African-American Captains in a full time
10 leadership job after being in business for over 80 years."  (See TAC ¶ 307.)  In the second
11 of the two paragraphs, plaintiffs allege that plaintiff Minter met with "senior-level
12 management at [d]efendants" and "addressed the long-standing problems with special
13 assignments being qualifiers for promotions and African-Americans being excluded from
14 management positions, though having more flight hours and greater seniority than the
15 Caucasian pilots selected for the positions."  (See TAC ¶ 367.)  Although, as compared
16 with the SAC, the two paragraphs provide more detail as to the protected activity upon
17 which certain plaintiffs rely, plaintiffs include therein no allegations of any conduct or
18 statements by United, or any other decision-maker, let alone conduct or statements that
19 would support a finding that a decision-maker engaged in a pattern of antagonism toward
20 one or more of the plaintiffs.

21        Accordingly, plaintiffs have failed to cure the deficiencies identified in the Court's
22 April 24, 2013 order with respect to the retaliation claims, and the retaliation claims will be
23 dismissed without further leave to amend.

24        **3. Disparate Treatment/Intentional Discrimination: United and Continental**

25        Plaintiffs' Third Claim is based in part on a claim of "disparate treatment" (see TAC
26 ¶¶ 587-88), specifically, that defendants, in violation of Title VII, subjected plaintiffs to
27 "racially discriminatory employment practices" (see TAC ¶ 582) with respect to "(a) special
28 assignments; (b) promotion to management; and (c) compensation" (see TAC ¶ 575).  In

1   the Fourth Claim, plaintiffs likewise include a claim of "disparate treatment" (see TAC

2   ¶¶ 606-07), specifically, that defendants, in violation of FEHA, have subjected plaintiffs to

3   "racially discriminatory employment practices" (see TAC ¶ 602).  In the Fifth Claim,

4   plaintiffs allege that defendants, in violation of § 1981, engaged in "intentional

5   discrimination against [p]laintiffs with respect to special assignments, promotion, and

6   compensation."  (See TAC ¶ 611.)  Said claims are brought on behalf of the above-

7   identified eleven plaintiffs, and, additionally, on behalf of Odie Briscoe ("Briscoe"), Mario

8   Ecung ("Ecung"), Ken Haney ("Haney"), Terence Hartsfield ("Hartsfield"), Terry Haynie

9   ("Haynie"), Anthony Manswell ("Manswell"), Leon Miller ("Miller"), Xavier Palmer ("Palmer"),

10  David Ricketts ("Ricketts"), Fredrick Robinson ("Robinson"), Leo Sherman ("Sherman"), and

11  Erwin Washington ("Washington").

12       In its April 24, 2013 order, the Court, with one exception, dismissed the disparate

13  treatment claims for failure to a state a claim, finding plaintiffs had failed to allege sufficient

14  facts to support a claim that any plaintiff had been subjected to an adverse employment

15  action by reason of racial animus, and afforded plaintiffs leave to amend.[8]

16       In their motion, defendants argue that plaintiffs have not cured the deficiencies

17  identified in the Court's prior order because, defendants assert, the factual basis for each

18  plaintiffs' disparate treatment claims remains insufficiently pleaded.  Plaintiffs, in their

19  opposition, argue the TAC provides sufficient notice of such claims.

20       At the outset, the Court considers plaintiffs' reliance on statistics.  In their opposition,

21  plaintiffs, apparently in response to defendants' argument that plaintiffs have not given

22  sufficient notice as to the basis of their claims, point to their allegations comparing the total

23  number of African-Americans employed by defendants with the number of African-

24  Americans employed as managers.  (See, e.g., TAC ¶ 4 (alleging that although African-

25  Americans comprise "more than 13%" of the "total workforce," "less than 5% of the

26  ───────────────

27       [8]In said order, the Court found plaintiffs had sufficiently alleged Title VII and
    § 1981 disparate treatment claims on behalf of plaintiff Montgomery with respect to his
28  failure to be promoted in September 2011 to a position as Hub Operations Area Manager in
    Dulles, Virginia.

10

1   executive-level management positions and 8% of the first and mid-level management

2   positions are held by African-Americans")).)  Plaintiffs also cite Diaz v. AT&T, 752 F.2d 1356

3   (9th Cir. 1985), in which the Ninth Circuit stated that "[s]tatistical data is relevant because it

4   can be used to establish a general discriminatory pattern in an employer's hiring or

5   promotion practices" and that "[s]uch a discriminatory pattern is probative of motive and

6   can therefore create an inference of discriminatory intent with respect to the individual

7   employment decision at issue."  See id. at 1363.

8          To the extent that plaintiffs, by relying on the statistics alleged in the TAC and by

9   citing to the above-referenced statements in Diaz, argue that their statistical allegations,

10  standing alone, are sufficient to state a claim, the Court disagrees.  Although statistical data

11  may well be relevant with respect to the issue of whether any particular "individual

12  employment decision" was discriminatory, see id., a plaintiff nonetheless must provide

13  sufficient notice of the challenged employment decision.  Indeed, in Diaz, the plaintiff

14  challenged his employer's failure to promote him to a specified promotion at a specific

15  location during a specific month.  See id. at 1358 (describing plaintiff's claim as the failure

16  to promote him to "Operations Supervisor" at defendant's "Tucson facility" when position

17  became available in "March 1980").  In short, nothing in Diaz suggests that a plaintiff, for

18  pleading purposes, can state a claim for discrimination by relying solely on statistics and

19  without providing notice of the employment decision(s) being challenged.[9]

20         Accordingly, the Court finds plaintiffs' reliance on statistics, standing alone, is

21  insufficient to state a disparate treatment claim.  The Court proceeds to consider the other

22  allegations made on behalf of each plaintiff.

23  //

---

25  [9]In their opposition, plaintiffs request that, in the event the Court does not find their
    statistical allegations "sufficiently specific," the Court afford them leave to conduct discovery
26  "for the purpose of obtaining a finer granularity of data of the racial composition of
    [d]efendants' management ranks."  (See Pls.' Opp. at 20:26 - 21:4.)  As set forth below, to
27  the extent plaintiffs' disparate treatment claims are insufficiently pleaded, the deficiency is
    not a failure to allege sufficiently specific statistics, but, rather, a failure to sufficiently
28  identify the adverse employment action(s) on which each plaintiff bases his or her claim.
    Accordingly, plaintiffs' request for discovery at the pleading stage is DENIED.

### a.  Claims Based on Compensation Decisions

Plaintiffs allege they were subjected to disparate treatment with respect to "compensation," and identify such allegedly adverse actions as being distinct from a failure to promote or a failure to provide them with special assignments.  (See TAC ¶¶ 575, 611.) In its prior order, the Court dismissed the claims based on compensation because plaintiffs had failed to allege any facts to give notice as to the nature of the compensation decision(s) being challenged.  In the TAC, plaintiffs have added no new allegations pertaining to any assertedly discriminatory compensation decision.

Accordingly, plaintiffs have failed to cure the deficiencies identified in the Court's April 24, 2013 order with respect to disparate treatment claims based on compensation, and the disparate treatment claims, to such extent, are subject to dismissal without further leave to amend.

### b.  Claims Based on Posted Positions

Plaintiffs allege that some open management positions are posted on "the Taleo system" and that defendants thereafter consider the applications that are submitted in response to those postings.  (See TAC ¶ 162.)[10]  Eighteen of the twenty-three plaintiffs allege that, due to racial discrimination, they did not receive a promotion for which they applied.[11]

A plaintiff challenging a failure to receive a promotion states a prima facie case of discrimination by alleging "(1) he belongs to a statutorily protected class, (2) he applied for and was qualified for an available position, (3) he was rejected despite his qualifications, and (4) after the rejection, the position remained available and the employer continued to review applicants possessing comparable qualifications."  See Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002).

---

[10]As discussed below, plaintiffs allege that other open management positions are not posted.

[11]Plaintiffs do not allege any facts suggesting that the disparate treatment claims alleged on behalf of plaintiffs Ecung, Miller, Palmer, Ricketts and Washington are based on a failure to receive a position for which they applied.

1    As noted, defendants argue plaintiffs have failed to provide sufficient notice as to the

2    basis of their claims.  Additionally, defendants argue that certain claims are barred by the

3    applicable statute of limitations, and that certain claims brought pursuant to FEHA fail due

4    to lack of a sufficient connection to California.  The Court considers defendants' arguments,

5    in turn.

6                          **(1) Sufficiency of Allegations**

7    Each plaintiff belongs to a statutorily protected class, the first of the above-

8    referenced four elements.  Additionally, each has sufficiently pleaded the third and fourth

9    elements; in particular, those plaintiffs who are pilots sufficiently allege they were qualified

10   for the promotions sought, in that the persons who received the promotions had "less

11   seniority and fewer total flight hours" (see TAC ¶¶ 11, 16, 21, 26, 31, 36, 41, 46, 51, 73, 81,

12   85, 93), and those plaintiffs who are supervisors of airport operations sufficiently allege they

13   were qualified for the promotions sought, in that the persons who received the promotions

14   had less seniority and experience (see TAC ¶¶ 374-76, 386).

15   For purposes of pleading a prima facie case, the remaining issue is whether plaintiffs

16   have given sufficient notice as to the "available position(s)," see Lyons, 307 F.3d at 1112,

17   for which he/she applied.  In that respect, to the extent plaintiffs have identified the specific

18   position(s) for which each plaintiff applied, the location of the position(s), and the time

19   frame in which the plaintiff applied, plaintiffs have provided sufficient notice to enable

20   defendants to frame a response, and, consequently, have adequately complied with Rule 8.

21   See, e.g., Oliver v. Ralphs Grocery Co., 654 F.3d 903, 908 (9th Cir. 2011) (holding Rule 8

22   requires plaintiff to provide "fair notice of what the [plaintiff's] claim is and the grounds upon

23   which it rests"; further holding, in context of complaint alleging discrimination under ADA

24   due to "architectural barriers," plaintiff must identify in complaint each "allegedly non-

25   compliant architectural barrier[ ]") (internal citation and quotation omitted).

26   Under such standard, the Court finds the following claims have been adequately

27   pleaded for purposes of Rule 8:  (1) Briscoe's claims based on the one position identified in

28   ¶ 503 of the TAC; (2) Crocker's claims based on the fourteen positions identified in ¶¶ 210-

23 of the TAC; (3) John's claims based on the thirty-seven positions identified in ¶¶ 246-54, 256-79, 282, 287-88, and 292 of the TAC; (4) Johnson's claims based on the five positions identified in ¶¶ 170-74 of the TAC; (5) Jones's claims based on the eleven positions identified in ¶¶ 188-89, 191-98, and 202 of the TAC; (6) Minter's claims based on the six positions identified in ¶¶ 358-63 of the TAC; (7) Roane's claims based on the two positions identified in ¶¶ 327 and 330 of the TAC; (8) Sherman's claims based on the three positions identified in ¶¶ 511, 531, and 535 of the TAC; and (9) Wilson's claims based on the ten positions identified in ¶¶ 233-37 of the TAC.

By contrast, the following claims have not been adequately pleaded, because plaintiffs fail to identify a particular position, a location, and/or a time frame in which the application was made:  (1) Jones's claims based on the allegations in ¶¶ 190 and 199-201 of the TAC; (2) Wilson's claims based on the allegations in ¶ 232 of the TAC; (3) John's claims based on the allegations in ¶¶ 245, 280, 283-86, and 289-91 of the TAC; (4) Noble's claims based on the allegations in ¶ 312 of the TAC; (5) Roane's claims based on the allegations in ¶¶ 325-26 and 328-29 of the TAC; (6) Tom's claims based on the allegations in ¶¶ 346 and 347 of the TAC; (7) Montgomery's claims based on the allegations in ¶¶ 374-76 of the TAC; (8) Gadson's claims based on the allegations in ¶ 386 of the TAC; (9) Robinson's claims based on the allegations in ¶ 426 of the TAC; (10) Manswell's claims based on the allegations in ¶¶ 465-67 of the TAC; (11) Hartsfield's claims based on the allegations in ¶ 500 of the TAC; (12) Briscoe's claims based on the allegations in ¶ 504 of the TAC; and (13) Sherman's claims based on the allegations in ¶¶ 521-30 and 532-34 of the TAC.

Accordingly, the claims identified in the above paragraph are subject to dismissal for failure to comply with Rule 8.  It is not clear, however, that plaintiffs, if afforded an opportunity to amend, would be unable to provide sufficient notice of the positions on which such claims are based, and, consequently, the Court will afford plaintiffs one further opportunity to comply with Rule 8.

//

14

**(2)  Statute of Limitations Re: Title VII/FEHA Claims**

Defendants argue that certain of the Title VII and FEHA claims are barred by the applicable statute of limitations.[12]  The Court considers this argument only to the extent it is made as to claims not subject to dismissal on Rule 8 grounds.

A discrimination claim based on a failure to promote accrues when the employer makes the decision not to promote the plaintiff.  See Lyons, 307 F.3d at 1106-07 (holding "disparate treatment" claim accrues on "the date on which the underlying act occurs").  Here, although plaintiffs identify the time frame in which they applied for the posted positions, plaintiffs, with one exception discussed below, do not allege the time frame in which defendants made their decision, and, consequently, determination of when the claims accrued is premature.  See Hofmann v. City and County of San Francisco, 870 F. Supp. 2d 799, 806 (N.D. Cal. 2012) (denying as premature motion to dismiss on grounds of untimeliness, where complaint did not "allege the dates when [plaintiffs] were passed over for promotion").

As noted, one exception exists.  With respect to plaintiff Sherman's claims alleging a failure to promote him to the position identified in ¶ 511 of the TAC, specifically "a full-time 737 Line Check Airman" in Houston, plaintiffs allege that defendants chose another person for said position in "2010" (see TAC ¶ 511), and, consequently, the claims accrued no later than December 31, 2010.

Where, as here, a plaintiff files a charge with a state agency prior to filing a charge with the EEOC, the plaintiff must file an EEOC charge no later than 300 days after the "alleged unlawful practice occurred."  See 42 U.S.C. § 2000e-5(e)(1).  Sherman filed his EEOC intake questionnaire on April 26, 2012.  (See Baldocchi Decl., filed June 27, 2013, Ex. T.)  Accordingly, his Title VII claim is time-barred to the extent it is based on his failure to be promoted in 2010 to the Houston position.  See National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002) (holding Title VII "claim is time barred" if EEOC charge

---

[12]Defendants do not argue that any of the § 1981 claims are barred by the statute of limitations.

1    not filed within time required under § 2000e-5(e)(1)).[13]

2          A plaintiff must file a charge with the Department of Fair Employment and Housing

3    ("DFEH") no later than one year after the "alleged unlawful practice . . . occurred."  See Cal.

4    Gov't Code § 12960(d).[14]  Sherman filed his charge with the DFEH on April 24, 2013 (see

5    Baldocchi Decl. Ex. T), and, accordingly, his FEHA claim is time-barred to the extent it is

6    based on his failure to be promoted in 2010.  See Romano v. Rockwell Int'l, Inc., 14 Cal.

7    4th 479, 492 (1996) ("The timely filing of an administrative complaint is a prerequisite to the

8    bringing of a civil action for damages under FEHA.").

9          Accordingly, Sherman's Title VII and FEHA claims, to the extent based on the

10   position identified in ¶ 511 of the TAC, are subject to dismissal without further leave to

11   amend.

12                    **(3) Application of FEHA to Non-Residents**

13         Defendants argue plaintiffs' FEHA claims, to the extent alleged on behalf of plaintiffs

14   not "domiciled in a California airport" (see Defs.' Mot. to Dismiss at 24:13-14), are subject

15   to dismissal because plaintiffs fail to allege unlawful conduct in California.  See Campbell v.

16   Arco Marine, Inc., 42 Cal. App. 4th 1850, 1860 (1996) (holding FEHA does not apply to

17   "nonresidents employed outside the state when the tortious conduct did not occur in

18   California").  As discussed above, the Court has dismissed certain of plaintiffs' FEHA

19   claims on Rule 8 or statute of limitations grounds.  Consequently, the Court considers

20   defendants' argument only to the extent it is made as to the other FEHA claims alleging a

21   failure to promote to a posted position.

22         In that regard, the following FEHA claims, alleged on behalf of plaintiffs domiciled in

23   _____

24         [13]Sherman filed his intake questionnaire prior to filing a formal "charge" with the
     EEOC.  (See Baldocchi Decl. Ex. T.)  The Supreme Court has held that, under some
25   circumstances, an EEOC intake questionnaire can be considered a "charge."  See Federal
     Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008).  The parties have not addressed
26   the subject of whether Sherman's earlier-filed intake questionnaire qualifies as a charge.
     Even if Sherman's intake questionnaire is considered a charge, however, Sherman's Title
27   VII claim based on the position identified in ¶ 511 of the TAC is time-barred.

28         [14]The one-year limitations period is subject to certain exceptions, see id., none of
     which is alleged to be applicable to any claim in the TAC.

states other than California, are not subject to dismissal, because, in each instance, the alleged failure to promote pertains to a position located in California: (1) Crocker's claims based on the two positions identified in ¶¶ 212 and 213 of the TAC; (2) John's claims based on the three positions identified in ¶¶ 273-75 of the TAC; (3) Jones's claims based on the three positions identified in ¶¶ 193 and 196-97 of the TAC; (4) Sherman's claim based on the one position identified in ¶ 535 of the TAC; and (5) Wilson's claims based on the three California positions identified in ¶ 237 of the TAC.[15]

The remaining FEHA claims that are brought on behalf of plaintiffs domiciled in states other than California and not subject to dismissal on either Rule 8 or statute of limitations grounds, however, are subject to dismissal without further leave to amend, because plaintiffs allege the positions were located in states other than California, and do not allege facts to support a finding that defendants' decision not to promote them was made in California: (1) Briscoe's claims based on the one position identified in ¶ 503 of the TAC; (2) Crocker's claims based on the twelve positions identified in ¶¶ 210-11 and 214-23 of the TAC; (3) John's claims based on the thirty-four positions identified in ¶¶ 246-54, 256-72, 276-79, 282, 287-88, and 292 of the TAC; (4) Jones's claims based on the eight positions identified in ¶¶ 188-89, 191-92, 194-95, 198, and 202 of the TAC; (5) Minter's claims based on the six positions identified in ¶¶ 358-63 of the TAC; (6) Roane's claims based on the two positions identified in ¶¶ 327 and 330 of the TAC; (7) Sherman's claim based on the one position identified in ¶ 531 of the TAC; and (8) Wilson's claims based on the four positions identified in ¶¶ 233-36 and on the three non-California positions identified in ¶ 237 of the TAC.

//

---

[15]Defendants's reliance on <u>Rulenz v. Ford Motor Co.</u>, 2013 WL 2181241 (S.D. Cal. May 20, 2013) is unavailing. In <u>Rulenz</u>, the plaintiff challenged her termination from a Nevada position, and argued FEHA applied because she previously had been denied a promotion in California. The district court found the plaintiff had not sufficiently identified unlawful conduct in California, because the allegations regarding San Diego were "ancillary" to her claim. <u>See</u> id. at *4. Here, by contrast, plaintiffs' claims that they did not receive promotions in California are not ancillary to their claims, but, rather, constitute the claims themselves.

**(4) Conclusion as to Claims Based on Posted Positions**

The following claims, brought under Title VII, FEHA, and § 1981, are not subject to dismissal: (1) Crocker's claims based on the two positions identified in ¶¶ 212 and 213 of the TAC; (2) John's claims based on the three positions identified in ¶¶ 273-75 of the TAC; (3) Johnson's claims based on the five positions identified in ¶¶ 170-74 of the TAC; (4) Jones's claims based on the three positions identified in ¶¶ 193 and 196-97 of the TAC; (5) Sherman's claims based on the one position identified in ¶ 535 of the TAC; and (6) Wilson's claims based on the three California positions identified in ¶ 237 of the TAC.

The following claims, to the extent brought under Title VII and § 1981, are not subject to dismissal, but, to the extent brought under FEHA, are subject to dismissal without further leave to amend:  (1) Briscoe's claims based on the one position identified in ¶ 503 of the TAC; (2) Crocker's claims based on the twelve positions identified in ¶¶ 210-11, 214-23 of the TAC; (3) John's claims based on the thirty-four positions identified in ¶¶ 246-54, 256-72, 276-79, 282, 287-88, and 292 of the TAC; (4) Jones's claims based on the eight positions identified in ¶¶ 188-89, 191-92, 194-95,198, and 202 of the TAC; (5) Minter's claims based on the six positions identified in ¶¶ 358-63 of the TAC; (6) Roane's claims based on the two positions identified in ¶¶ 327 and 330 of the TAC; (7) Sherman's claims based on the one position identified in ¶ 531 of the TAC; and (8) Wilson's claims based on the four positions identified in ¶¶ 233 - 236 and on the three non-California positions identified in ¶ 237 of the TAC.

The following claims, to the extent brought under § 1981, are not subject to dismissal, but, to the extent brought under Title VII and FEHA, are subject to dismissal without further leave to amend:  (1) Sherman's claims based on the one position identified in ¶ 511 of the TAC.

The following claims, brought under Title VII, § 1981, and FEHA, are subject to dismissal with leave to amend to cure the deficiencies identified above, specifically, to allege the particular position, the location of the position, and the time frame in which the //

application was made:[16] (1) Jones's claims based on the allegations in ¶¶ 190, 199-201 of the TAC; (2) Wilson's claims based on the allegations in ¶ 232 of the TAC; (3) John's claims based on the allegations in ¶¶ 245, 280, 283-86, and 289-91 of the TAC; (4) Noble's claims based on the allegations in ¶ 312 of the TAC; (5) Roane's claims based on the allegations in ¶¶ 325-26 and 328-29 of the TAC; (6) Tom's claims based on the allegations in ¶¶ 346 and 347 of the TAC; (7) Montgomery's claims based on the allegations in ¶¶ 374-76 of the TAC; (8) Gadson's claims based on the allegations in ¶ 386 of the TAC; (9) Robinson's claims based on the allegations in ¶ 426 of the TAC; (10) Manswell's claims based on the allegations in ¶¶ 465-67 of the TAC; (11) Hartsfield's claims based on the allegations in ¶ 500 of the TAC; (12) Briscoe's claims based on the allegations in ¶ 504 of the TAC; and (13) Sherman's claims based on the allegations in ¶¶ 521-30 and 532-34 of the TAC.

### c. Claims Based on Unposted Positions

Plaintiffs allege that defendants do not post some open management positions, but, rather, fill them by a process plaintiffs refer to as "handpick[ing]." (See TAC ¶ 162.) With respect to said method of filling positions, plaintiffs allege defendants "passed over" African-Americans for unposted positions "in favor of non-African-Americans with less seniority, flight hours, and other relevant experience." (See TAC ¶ 2.)

To state a prima facie claim based on a failure to promote to an unposted position, the same elements required for a claim based on a failure to promote to a posted position apply, with the exception of the requirement that the plaintiff actually have applied for the position. See Williams v. Giant Food Inc., 370 F.3d 423, 430-31 (4th Cir. 2004) (holding "if the employer fails to make its employees aware of vacancies, the application requirement may be relaxed and the employee treated as if she had actually applied for a specific position").

---

[16]Additionally, to the extent plaintiffs re-allege any of said FEHA claims, plaintiffs must allege sufficient facts to support a finding that, with respect to each adverse employment action, defendants engaged in unlawful conduct in California.

**(1) Sufficiency of Allegations**

Plaintiffs allege that each plaintiff failed to receive, on account of racial discrimination, a promotion to one or more unposted management positions.  As noted above, each plaintiff belongs to a statutorily protected class; additionally, each plaintiff sufficiently alleges he or she was qualified for the unposted position(s).  (See TAC ¶¶ 2, 167.)  For purposes of pleading a prima facie case, the remaining issue is whether plaintiffs have given defendants sufficient notice as to the "available position(s)," see Lyons, 307 F.3d at 1112, for which each plaintiff would have applied had the position(s) been posted.

Under such standard, the Court finds the following claims have been pleaded in conformity with Rule 8; in particular, as to each such claim, plaintiffs identify the specific position for which each plaintiff would have applied, the location of the position, and the time frame in which the position was available and/or filled: (1) Haynie's claims based on the three positions identified in ¶¶ 446-48 of the TAC; (2) John's claims based on the one position identified in ¶ 255 of the TAC; and (3) Ricketts's claims based on the three positions identified in ¶¶ 435-37 of the TAC.

By contrast, the following claims have not been adequately pleaded, because plaintiffs fail to identify a particular position, the location of the position, and/or a time frame in which the position was available and/or filled: (1) Gadson's claims based on the allegations in ¶ 387 of the TAC; (2) Haynie's claims based on the allegations in ¶ 452 of the TAC; (3) John's claims based on the allegations in ¶ 281 of the TAC; (4) Noble's claims based on the allegations in ¶ 311 of the TAC; and (5) all twenty-three plaintiffs' claims based on the allegations in ¶ 167 of the TAC.

Accordingly, the claims identified in the above paragraph are subject to dismissal for failure to comply with Rule 8.  Nevertheless, as it is not clear that plaintiffs, if afforded an opportunity to amend, would be unable to provide sufficient notice of the positions to which they would have applied had they been posted, the Court will afford plaintiffs one further opportunity to comply with Rule 8.

### (2)  Statute of Limitations Re: Title VII Claims

Defendants argue that certain of the Title VII claims are barred by the statute of limitations.  As set forth above, a claim based on a failure to be promoted accrues when the employer makes the decision not to promote the plaintiff.  See Lyons, 307 F.3d at 1106-07.  As further set forth above, consideration of defendants' statute of limitations argument is premature, except to the extent plaintiffs identify in the TAC a date on which defendants made a decision to promote someone other than a plaintiff.

As to the claims for which such dates are provided, plaintiffs allege that, "[i]n or about April 2011," Haynie and Ricketts each "witnessed his non-African-American counterpart, Omar Garcia . . . had been promoted into management as Assistant Chief Pilot of the Northeast region."  (See TAC ¶¶ 435, 446.)  Title VII claims by Haynie and Ricketts based on their respective failures to receive said promotion are barred by the statute of limitations, because, as to each such plaintiff, the earliest document that could be considered a charge was filed with the EEOC more than 300 days after April 30, 2011.  See 42 U.S.C. § 2000e-5(e)(1); (Baldocchi Decl. Ex. G (Haynie's EEOC intake questionnaire, filed April 11, 2012); id. Ex. Q (Ricketts's EEOC intake questionnaire, filed May 4, 2012).)

Accordingly, to the extent Haynie's Title VII claim and Ricketts' Title VII claim are based on the failure to receive a promotion to the position of "Assistant Chief Pilot of the Northeast region" in April 2011, their claims are subject to dismissal without further leave to amend.

### (3) Application of FEHA to Non-Residents

Plaintiffs' FEHA claims that are not subject to dismissal on Rule 8 grounds, are, in each instance, based on the failure of a non-California resident to receive a position located in a state other than California, and plaintiffs do not allege facts to support a finding that defendants' decision not to promote was made in California.

Accordingly, all such FEHA claims are subject to dismissal without further leave to amend.

**(4) Conclusion as to Claims Based on Unposted Positions**

The following claims, to the extent brought under Title VII and § 1981, are not subject to dismissal, but, to the extent brought under FEHA, are subject to dismissal without further leave to amend: (1) Haynie's claims based on the two positions identified in ¶¶ 447-48 of the TAC; (2) John's claims based on the one position identified in ¶ 255 of the TAC; and (3) Ricketts's claims based on the two positions identified in ¶¶ 436-37 of the TAC.

The following claims, to the extent brought under § 1981, are not subject to dismissal, but, to the extent brought under Title VII and FEHA, are subject to dismissal without further leave to amend: (1) Haynie's claims based on the one position identified in ¶ 446 of the TAC; and (2) Ricketts's claims based on the one position identified in ¶ 435 of the TAC.

The following claims, brought under Title VII, § 1981, and FEHA, are subject to dismissal, with leave to amend to cure the deficiencies identified above, specifically, to allege the specific position, the location of the position, and the time frame in which the position was available:[17]  (1) Gadson's claims based on the allegations in ¶ 387 of the TAC; (2) Haynie's claims based on the allegations in ¶ 452 of the TAC; (3) John's claims based on the allegations in ¶ 281 of the TAC; (4) Noble's claims based on the allegations in ¶ 311 of the TAC; and (5) all twenty-three plaintiffs' claims based on the allegations in ¶ 167 of the TAC.

**d.  Claims Based on Failure to Receive Special Assignments**

According to plaintiffs, special assignments are "more lucrative and provide employees with more opportunities for advancement, greater job flexibility and security, and greater pay and benefits." (See TAC ¶ 161.)  Plaintiffs allege that defendants gave special assignments to other employees "without posting the assignment." (See TAC

---

[17]Additionally, to the extent plaintiffs re-allege any of said FEHA claims, plaintiffs must allege sufficient facts to support a finding that, with respect to each adverse employment action, defendants engaged in unlawful conduct in California.

¶¶ 12, 17, 22, 27, 32, 37, 42, 47, 52, 55, 58, 62, 66, 70, 74, 78, 82, 86, 90, 94, 98, 102, 106.)  Plaintiffs allege that each plaintiff failed to receive one or more special assignments on account of racial discrimination.

### (1) Compliance with Rule 8

As discussed above, to provide fair notice for the basis of a disparate treatment claim involving an unposted position, a plaintiff must give sufficient notice as to the "available position" on which the claim is based.  See Lyons, 307 F.3d at 1112.  In that respect, to the extent plaintiffs identify the specific special assignment(s) for which each plaintiff would have applied if posted, the location of the assignment(s), and the time frame in which any such assignment was not given to the plaintiff who would have sought it, plaintiffs have provided sufficient notice to enable defendants to frame a response, and, consequently, have adequately complied with Rule 8.

Applying the above-described standard, the Court finds the following claims have been adequately pleaded for purposes of Rule 8:  (1) Haynie's claims based on the "handling iPad implementation for United" special assignment in Chicago during 2012, identified in ¶ 484 of the TAC; and (2) Miller's claims based on the "Flight Operations Supervisor, 2005-2006" special assignment in Los Angeles, identified in ¶ 400 of the TAC.[18]

By contrast, plaintiffs have failed to provide sufficient notice of the basis for all other claims alleging a failure to receive a special assignment, because, as to each such claim, the particular special assignment, its location, and/or the time frame in which it was filled have not been identified.  Accordingly, with the two exceptions referenced in the above paragraph, all claims based on a failure to receive a special assignment are subject to dismissal for failure to comply with Rule 8.  Nevertheless, as it is not clear that plaintiffs, if afforded an opportunity to amend, would be unable to provide sufficient notice of the special assignments for which they would have applied had the positions been posted, as

---

[18]Plaintiffs adequately allege that Haynie and Miller were qualified for the special assignments they would have sought if posted.  (See TAC ¶¶ 484, 400.)

1   well as their qualifications for each such assignment, the Court will afford plaintiffs one

2   further opportunity to comply with Rule 8.

3   **(2)  Statute of Limitations Re: Title VII/FEHA Claims**

4   Although sufficiently pleaded for purposes of Rule 8, Miller's claim based on his

5   failure to receive a special assignment in "2005-2006" (see TAC ¶ 400), is, to the extent

6   brought under Title VII and FEHA, subject to dismissal without leave to amend.[19]

7   Specifically, said claims are time-barred because Miller filed his administrative charges with

8   the DFEH and the EEOC in 2012, a number of years after the subject special assignment

9   had been filled.  (See Baldocchi Decl. Ex. L (Miller's EEOC intake questionnaire, filed April

10  27, 2012; Miller's DFEH charge, filed April 24, 2012).)

11  **(3) Application of FEHA to Non-Residents**

12  The remaining FEHA claim not subject to dismissal on Rule 8 or statute of limitations

13  grounds is Haynie's claim based on his failure to receive a particular special assignment in

14  Illinois.  (See TAC ¶ 484.)  Because plaintiffs fail to allege any unlawful conduct in

15  California occurred with respect to the decision to fill such assignment with someone other

16  than Haynie, Haynie's FEHA claim is subject to dismissal without further leave to amend.

17  See Campbell, 42 Cal. App. 4th at 1860.

18  **(4)  Exhaustion of Administrative Remedies**

19  Defendants argue that plaintiffs have not exhausted their Title VII and FEHA claims

20  to the extent such claims are based on a failure to receive special assignments.

21  As discussed above, all Title VII and FEHA claims based on a failure to receive a

22  special assignment are subject to dismissal on other grounds, the sole exception being

23  Haynie's Title VII claim based on the special assignment "handling iPad implementation" in

24  Chicago.  (See TAC ¶ 484.)  The Court thus considers whether that one claim is subject to

25  dismissal on exhaustion grounds.

26  //

27  ─────────────────

28  [19]As noted above, defendants have not sought dismissal of any § 1981 claim on
    grounds of untimeliness.

1    In his administrative filings, Haynie did not specifically refer to his failure to be

2    selected for the above-described special assignment.  As the Ninth Circuit has held,

3    however, "incidents of discrimination not included in an EEOC charge" may be considered

4    in a civil action where the "new claims are like or reasonably related to the allegations

5    contained in the EEOC charge."  See Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir.

6    1990).  A district court "should consider [a] plaintiff's civil claims to be reasonably related to

7    allegations in the charge to the extent that those claims are consistent with the plaintiff's

8    original theory of the case."  See B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1100 (9th Cir.

9    2002).  In determining whether a civil claim is like or reasonably related to a claim made in

10   an EEOC charge, a district court "construe[s] the language of the EEOC charge[ ] with

11   utmost liberality."  See id. (internal quotation and citation omitted).

12   Here, Haynie, in his EEOC intake questionnaire, alleged "race" discrimination.  (See

13   Baldocchi Decl. Ex. G, third page.)  In response to the question, "What happened to you

14   that you believe was discriminatory?," Haynie, in relevant part, answered as follows:

15   Date: 2011 - present

16   Action: United Airlines has failed to promote me further than a Captain position.
     There have been several management positions which have been filled through a
17   'tap on the shoulder' method where the candidates chosen did not apply for the
     position.  These positions were not posted to all eligible employees such as myself.
18   Instead, these positions were given to Non-African American candidates.

19   (See id. Ex. G, sixth page.)

20   Haynie's "original theory of the case," see B.K.B., 276 F.3d at 1100, is that United,

21   on account of racial discrimination, did not select him for unposted management positions

22   for which he would have been eligible to apply, but, rather, selected non-African-

23   Americans.  In light of plaintiffs' allegations in the TAC that special assignments are

24   temporary management positions, that special assignment experience is a prerequisite to

25   any permanent management position, that the subject special assignment in Chicago was

26   not posted, that Haynie was eligible for such assignment, and that United selected a non-

27   African-American for the assignment, the Court finds Haynie's civil claim based thereon is

28   //

25

like or reasonably related to the claims in his EEOC intake questionnaire.[20]

Accordingly, defendants have failed to show that Haynie's Title VII disparate treatment claim, based on his failure to receive the special assignment identified in ¶ 484 of the TAC, is subject to dismissal for failure to exhaust administrative remedies.

### (5) Conclusion as to Claims Based on Special Assignments

The following claim, to the extent brought under Title VII and § 1981, is not subject to dismissal, but, to the extent brought under FEHA, is subject to dismissal without further leave to amend :  (1) Haynie's claim based on the special assignment identified in ¶ 484 of the TAC.

The following claim, to the extent brought under § 1981, is not subject to dismissal, but, to the extent brought under Title VII and FEHA, is subject to dismissal without further leave to amend:  (1) Miller's claim based on the "Flight Operations  Supervisor, 2005 - 2006" special assignment identified in ¶ 400 of the TAC.

All other disparate treatment claims based on a failure to receive a special assignment are subject to dismissal, with leave to amend to cure the deficiencies identified above, specifically, to identify the particular special assignment for which each plaintiff would have applied had it been posted, the location of the assignment, and the time frame in which the assignment was available.[21]

### 4.  Disparate Impact: United and Continental

In addition to claims of disparate treatment, the Third and Fourth Claims include claims of disparate impact brought under, respectively, Title VII and FEHA.  The disparate impact claims included in the Third Claim (Title VII) are brought on behalf of fifteen plaintiffs, specifically, Briscoe, Ecung, Haney, Hartsfield, Haynie, Manswell, Miller, Minter,

---

[20]As noted above, an EEOC intake questionnaire can, under some circumstances, be considered an EEOC charge.  The parties have not addressed the subject with respect to Haynie's EEOC intake questionnaire.  For purposes of the instant motion, the Court has assumed that Haynie's EEOC intake questionnaire qualifies as an EEOC charge.

[21]Additionally, to the extent plaintiffs re-allege any FEHA claims, plaintiffs must allege sufficient facts to support a finding that, with respect to each adverse employment action, defendants engaged in unlawful conduct in California.

1    Palmer, Ricketts, Robinson, Sherman, Tom, Washington, and Wilson; the disparate impact

2    claims included in the Fourth Claim (FEHA) are brought on behalf of each of those plaintiffs

3    with the exception of Haynie and Tom.[22]

4         "[D]isparate-impact claims involve employment practices that are facially neutral in

5    their treatment of different groups but that in fact fall more harshly on one group than

6    another and cannot be justified by business necessity." Raytheon v. Hernandez, 540 U.S.

7    44, 52 (2003) (internal quotation and citation omitted).  To sufficiently state a disparate

8    impact claim, a plaintiff must "allege facts identifying a specific, facially neutral employment

9    policy," as well as facts "to show a causal relationship between such a practice and its

10   adverse impact on [a protected group]."  See Hines v. California Public Utilities Comm'n,

11   467 Fed. Appx. 639, 641 (9th Cir. 2012).

12        In its April 24, 2013 order, the Court dismissed the disparate impact claims for failure

13   to state a claim, in particular, for failure to give sufficient notice of the policy or policies on

14   which the claim was based, and afforded plaintiffs leave to amend.  Defendants argue that

15   plaintiffs, in the TAC, have not cured such deficiency, and, additionally with respect to some

16   claims, that plaintiffs have not exhausted their administrative remedies.

17        In the TAC, plaintiffs identify three "policies and practices" upon which, it appears,

18   the disparate impact claims are based: (1) "[f]ailure to consistently post job and promotional

19   openings to ensure that all African-American Captains and African-American Operations

20   Supervisors have notice of and opportunity to seek advancement, higher compensation,

21   overtime, or more desirable assignments and training" (see TAC ¶ 580(a)); (2) "[r]eliance

22   upon unweighted, arbitrary and subjective criteria (used by a nearly all non-African-

23   American upper-managerial workforce) in making job assignments, compensation, and

24   promotion decisions[; e]ven where [d]efendants' policies state objective requirements,

25   these requirements are often applied in an inconsistent manner and ignored at the

---

27   [22]The TAC additionally alleges FEHA disparate impact claims on behalf of plaintiff
     Johnson.  As discussed above, the Court, in its prior order, dismissed without leave to
28   amend Johnson's FEHA disparate impact claims; consequently, said claims will be stricken
     from the TAC.

discretion of management" (see TAC ¶ 580(b)); and (3) "maintain[ing] a system requiring

special assignments as a requirement for promotions into management" (see TAC ¶ 585).

The Court addresses in turn each of those allegations.[23]

      With respect to the first of the three above-referenced "policies and practices," the

Court, in its April 24, 2013 order, found plaintiffs' allegations insufficient to identify a specific

employment policy, as well as insufficient to show an adverse impact on a protected group.

In particular, the Court noted:

> [A]s pleaded, and particularly in light of plaintiffs' allegations that defendants allow employees to apply for "permanent mid or upper-level management position[s]" through the "Taleo system" (see SAC ¶ 66), plaintiffs are merely alleging that some open positions are posted and others are not. Noticeably absent from the SAC is the identification of a policy governing the circumstances under which certain jobs are posted and others are not. Additionally, plaintiffs fail to plead any facts to support their conclusory allegation that African-Americans are adversely affected by the non-posting of some positions, and such effect is not self-evident. Indeed, as one district court has observed, "[f]ailure to post a job would seem to make all applicants, regardless of race . . ., unaware of the specific opening." See Collette v. St. Luke's Roosevelt Hospital, 132 F. Supp. 2d 256, 278 (S.D. N.Y. 2001) (holding plaintiff failed to state disparate impact claim based on employer's "failure to post available job openings" for management positions).

(See Order, filed April 24, 2013, at 18:21 - 19:10)  In the TAC, plaintiffs fail to allege any

additional facts pertaining to the circumstances under which certain available positions are

posted and others are not, and, as a consequence, have again alleged no more than that,

on occasion, some available positions are posted, and, on other occasions, some available

positions are not posted.  Further, plaintiffs have failed to allege any facts to support a

finding of the requisite causal connection between the failure to post some positions and

an adverse impact upon African-Americans as a group.  Consequently, plaintiffs have

---

[23]Although the TAC also identifies the following challenged "policies and practices," such policies/practices are, as described in the TAC, discriminatory on their face, and thus appear to pertain solely to plaintiffs' disparate treatment claims: "closing and reopening of job positions in order to ensure that African-Americans are not interviewed for the positions" (see TAC ¶¶ 166(c), 561); "[r]eliance on racial stereotypes in making employment decisions" (see TAC ¶ 580(c)); "[p]re-selection and 'grooming' of non-African-Americans Captains and Operations Supervisors for promotion, favorable assignments, higher pay, and more desirable positions" (see TAC ¶ 580(d)); "[m]aintenance of largely racially-segregated job categories and departments" (see TAC ¶ 580(e)); and "[d]eterrence and discouragement of African-American Captains and African-American Operations Supervisors from seeking advancement" (see TAC ¶ 580(f)).

1    failed to cure the previously-identified deficiencies, and the disparate impact claims will be

2    dismissed without further leave to amend to the extent such claims are based on a failure

3    to post available positions.

4         With respect to the second of the above-referenced "policies and practices," the

5    Court, in its April 24, 2013 order found plaintiffs' allegations likewise insufficient to identify a

6    specific employment policy, noting as follows:

> The second of the above-quoted "policies and practices" is that persons who make
> employment decisions use subjective criteria and that such decision-makers "often"
> ignore defendants' "objective requirements" or apply those requirements in an
> "inconsistent" manner.  (See SAC ¶ 70(b).)  The Court finds said allegation is too
> vague to identify a specific employment practice.  Indeed, as pleaded, plaintiffs
> appear to be alleging that individual decision-makers are, at least in part, not
> following defendants' stated policies.

11   (See Order, filed April 24, 2013, at 19:11-16.)  In the TAC, plaintiffs fail to allege any

12   additional facts as to the existence of a policy regarding use of subjective criteria, and, to

13   the extent plaintiffs point to their conclusory allegation that "subjective and arbitrary

14   decision making has a disparate impact on African-American[s]" (see TAC ¶ 129), plaintiffs'

15   reliance thereon is unavailing.  See Wal–Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541,

16   2555–56 (2011) (holding "bare existence of delegated discretion" does not suffice to

17   identify "specific employment practice" for purposes of disparate impact gender

18   discrimination claim; further holding, "[m]erely showing that [an employer's] policy of

19   discretion has produced an overall sex-based disparity does not suffice").  In short, plaintiffs

20   have failed to cure the previously-identified deficiency.  Accordingly, the disparate impact

21   claims will be dismissed without further leave to amend to the extent such claims are based

22   on the use of subjective criteria.

23        Lastly, the Court considers the question of whether plaintiffs can base their

24   disparate impact claims on defendants' alleged policy that employees, to be considered for

25   a promotion to a permanent management position, must have experience working in

26   "special assignments," also known as "temporary management positions."   (See TAC

27   //

28   //

1  ¶¶ 158-59.)[24]  Defendants argue plaintiffs have failed to exhaust their administrative

2  remedies with respect to a disparate impact claim based on any such policy.  As discussed

3  below, the Court agrees.

4       With respect to the plaintiffs on whose behalf disparate impact claims have been

5  alleged, and as discussed in detail in the Court's prior order, each such plaintiff included in

6  his administrative charge and/or intake questionnaire allegations challenging defendants'

7  failure to post "all" open positions and/or defendant's selection of persons to fill unposted

8  positions "by a tap on the shoulder" or "hand-pick[ing]."  (See, e.g., Baldocchi Decl. Exs. E,

9  L, M.)  In no such administrative charge or intake questionnaire did any plaintiff make any

10 reference to defendants' requiring him to have special assignment experience as a

11 condition to being promoted.

12      As discussed above, "incidents of discrimination not included in an EEOC charge"

13 may be considered in a civil action only where the "new claims are like or reasonably

14 related to the allegations contained in the EEOC charge."  See Sosa, 920 F.2d at 1456; see

15 also Sandhu v. Lockheed Missiles & Space Co., 26 Cal. App. 4th 846, 859 (1994)

16 (adopting, for purposes of FEHA, Title VII's "like or reasonably related" standard).

17      In their opposition, plaintiffs fail to address, in any manner, defendants' argument

18 that their disparate impact claims are not exhausted.  Further, it is not evident from the

19 allegations in the TAC that a claim challenging a policy of conditioning permanent

20 management positions on prior experience in temporary management positions is "like or

21 reasonably related" to a claim challenging the failure to post all open positions.

22 Consequently, the disparate impact claims, to the extent based on a challenge to a policy

23 requiring special assignment experience, are subject to dismissal for failure to exhaust

24 _____

25    [24]In their prior complaints, plaintiffs did not challenge such asserted policy, and,
   consequently, the Court herein considers such challenge for the first time.  In that regard,

26 the Court notes that plaintiffs make the inconsistent allegations that Minter and
   Montgomery have "never been selected" for special assignments (see TAC ¶¶ 365, 378),

27 and that Minter and Montgomery have each received special assignments (see TAC
   ¶¶ 366, 379).  As discussed below, the Court will afford plaintiffs leave to amend those two

28 plaintiffs' claims that are based on such policy, and, if plaintiffs choose to amend, plaintiffs
   are directed to clarify their inconsistent allegations regarding Minter and Montgomery.

administrative remedies.  See, e.g., McQueen v. City of Chicago, 803 F. Supp. 2d 892, 906

(E.D. Ill. 2011) (holding plaintiff failed to exhaust claim challenging "policy of not promoting

individuals with a recent history of discipline," where EEOC charge identified different

policy, specifically, "policy of granting discretion to [supervisors] without sufficient oversight

from human resources"; citing cases holding "[w]here an administrative charge fails to

identify or describe the neutral employment practice later alleged to disproportionally affect

a protected group, that policy cannot support a disparate impact claim"); see also Shah v.

Mt. Zion Hospital and Medical Center, 642 F.2d 268, 271-72 (9th Cir. 1981) (holding

plaintiff failed to exhaust Title VII claims alleging he was subjected to specified adverse

employment actions on account of "race, color and religious discrimination," because such

claims were not like or reasonably related to claims in EEOC charge alleging employer

subjected him to same adverse employment actions on account of "sex and national

origin").

　　　Nonetheless, the Court will afford plaintiffs leave to amend to allege, if they can,

facts to support a finding that a policy of requiring special assignment experience is like or

reasonably related to a claim challenging a failure to post all open positions.[25]

### 5.  Harassment Claim under State Law:  United and Continental

　　　In the Seventh Claim, plaintiffs allege, on behalf of plaintiff Haynie only, a claim of

---

[25]The Court notes, however, that plaintiffs allege they did not receive special assignments because of "intentional discrimination" (see TAC ¶¶ 160-61) and that defendants "know" that requiring special assignment experience causes a "statistically significant adverse impact on African-Americans" (see TAC ¶ 162).  In light of such allegations, it would appear that plaintiffs' challenge to a special assignment requirement is properly considered as part of plaintiffs' disparate treatment claim.  See, e.g., Wayne v. Dallas Morning News, 78 F. Supp. 2d 571, 584-85 (N.D. Tex. 1999) (holding claim that employer "habitually avoided assigning blacks to large accounts and has failed to promote them as compared to non-minorities," although denominated by plaintiff as "disparate impact," was "in actuality, more akin to a systemic disparate treatment claim because she alleg[ed] intentional discrimination, as opposed to a facially neutral policy that has a disparate, yet unintended impact on a minority group").  Nevertheless, because under limited circumstances, a policy can be challenged on both disparate impact and a disparate treatment grounds, see, e.g., Arnett v. California Public Employees Retirement System, 179 F.3d 690 (9th Cir. 1999); Wang v. Hoffman, 694 F.2d 1146 (9th Cir. 1982), and because defendants have not raised the above-noted issue, the Court does not further consider it at this time.

1    "harassment in violation of [FEHA]."  (See TAC at 95:2-4.)

2        In its prior order, the Court dismissed the claim because plaintiffs had failed to allege

3    the assertedly harassing conduct occurred in California, and afforded plaintiffs leave to

4    amend.  Defendants argue that plaintiffs have failed to cure such deficiency.

5        In the TAC, plaintiffs allege that Haynie is "domiciled in Dulles, Virginia."  (See TAC

6    ¶ 79).[26]  As in the SAC, the TAC identifies allegedly harassing acts, such as Haynie's

7    having "experienced open hostility and offensive comments by other pilots at the training

8    center" (see TAC ¶ 454), and Haynie's having witnessed, from 2005 to the present, "racial

9    epithets written on airplanes about him" (see TAC ¶ 458), but, with one exception, the TAC

10   contains no allegations as to where such conduct occurred.  As to the one exception,

11   plaintiffs allege that on a single occasion in "early 2012," Haynie "witnessed more graffiti

12   and racial epithets in the cockpit area as the aircraft he was assigned sat at the terminal in

13   San Francisco at SFO."  (See TAC ¶ 460.)  Plaintiffs do not allege that the graffiti and

14   epithets Haynie witnessed while waiting at the San Francisco airport were written while the

15   aircraft was in California.  Even assuming, however, someone wrote the allegedly offensive

16   comments in California or wrote the comments elsewhere knowing they would be read by

17   Haynie while in California, the one incident is insufficient, as a matter of California law, to

18   state a claim for harassment.  See Lyle v. Warner Brothers Television Productions, 38 Cal.

19   4th 264, 283 (2006) (holding, to establish harassment claim under FEHA, "employee must

20   show a concerted pattern of harassment of a repeated, routine, or a generalized nature").[27]

21       Accordingly, plaintiffs have failed to cure the deficiency identified in the Court's prior

22   order, and the Seventh Claim will be dismissed without further leave to amend.

23

24       [26]In the SAC, plaintiffs alleged that Haynie "has worked in the Chicago Region and
     the Northeast Region in various positions."  (See SAC ¶ 278.)  Plaintiffs have removed that
25   allegation in the TAC.

26       [27]If an employee is subjected to harassing conduct in more than one state, the
     plaintiff, even if unable to seek a remedy under the laws of the various states, has an
27   available remedy under Title VII.  Indeed, defendants have not challenged, at the pleading
     stage, the sufficiency of the Sixth Claim alleging harassment in violation of Title VII, other
28   than by their argument, discussed above, that UCH is not a proper defendant to any claim.

**CONCLUSION**

For the reasons stated above:

1. Defendants' motion to strike is hereby GRANTED in part and DENIED in part as follows:

a. To the extent defendants seek an order striking from the TAC the FEHA disparate impact claims alleged on behalf of plaintiff Johnson, the motion is GRANTED.

b. In all other respects, the motion is DENIED.

2. Defendants' motion to dismiss is GRANTED in part and DENIED in part as follows:

a. Plaintiffs' claims against UCH are DISMISSED, without further leave to amend.

b. The First, Second, and Seventh Claims are DISMISSED, without further leave to amend.

c. The Third and Fourth Claims, to the extent they include disparate impact claims, are DISMISSED.  Said dismissal is without further leave to amend, with the exception that plaintiffs are afforded leave to amend to the extent their disparate impact claims are based on an alleged policy requiring special assignment experience as a precondition to promotion.

d. The Third and Fourth Claims, to the extent they include disparate treatment claims, and the Fifth Claim, are DISMISSED in part, as set forth above on pages 12:9-12, 18:1 - 19:12, 22:1-20, and 26:5-18.

3. Any Fourth Amended Complaint shall be filed no later than January 3, 2014.  In any Fourth Amended Complaint, plaintiffs may amend to cure the deficiencies noted in any or all of the claims identified above that have been dismissed with leave to amend. Plaintiffs may not, however, add new claims, new plaintiffs, or new defendants without first obtaining leave of court.  See Fed. R. Civ. P. 15(a)(2).

4. If plaintiffs do not file a Fourth Amended Complaint by the date specified, the instant action will proceed on the remaining claims in the TAC, and defendants are

directed to file a response to the remaining claims in the TAC no later than January 31, 2014.

**IT IS SO ORDERED.**

Dated:  December 5, 2013

MAXINE M. CHESNEY
United States District Judge