**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ELDRIDGE JOHNSON, et al.,

       Plaintiffs,

  v.

UNITED CONTINENTAL HOLDINGS, INC., et al.,

       Defendants.

_____/

No. C-12-2730 MMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

     Before the Court are two motions, filed January 31, 2014, by defendants United Airlines, Inc. ("United") and Continental Airlines, Inc. ("Continental"):  (1) Motion to Strike Portions of Plaintiffs' Fourth Amended Complaint; and (2) Motion to Dismiss Fourth Amended Complaint With Prejudice.  Plaintiffs have filed opposition, to which defendants have replied.  Having read and considered the papers filed in support of and in opposition to the motions, the Court rules as follows.[1]

## BACKGROUND

     Plaintiffs are twenty-three African-Americans.  Twenty-one of the plaintiffs are employed by United as Captains (collectively, "Captain Plaintiffs"), specifically, Odie Briscoe ("Briscoe"), Sal Crocker ("Crocker"), Mario Ecung ("Ecung"), Ken Haney ("Haney"), Terence Hartsfield ("Hartsfield"), Terry Haynie ("Haynie"), Richard John ("John"), Eldridge

---

[1]By order filed March 11, 2014, the Court took the matters under submission.

1    Johnson ("Johnson"), Johnnie E. Jones, Jr. ("Jones"), Anthony Manswell ("Manswell"),

2    Leon Miller ("Miller"), Karl Minter ("Minter"), Paul C. Noble ("Noble"), Xavier Palmer

3    ("Palmer"), David Ricketts ("Ricketts"), Glen Roane ("Roane"), Fredrick Robinson

4    ("Robinson"), Leo Sherman ("Sherman), Lester Tom ("Tom"), Erwin Washington

5    ("Washington"), and Darryl Wilson ("Wilson").  Two of the plaintiffs are employed by United

6    as Operations Supervisors (collectively, "Operations Supervisor Plaintiffs"), specifically,

7    Annette Gadson ("Gadson") and Ken Montgomery ("Montgomery").

8           Plaintiffs allege defendants violated (1) Title VII of the Civil Rights Act of 1964,

9    (2) 42 U.S.C. § 1981, and (3) the California Fair Housing and Employment Act ("FEHA"), by

10   discriminating against plaintiffs on the basis of race, under theories of disparate treatment

11   and disparate impact.  Plaintiffs also allege defendants violated Title VII by subjecting

12   plaintiff Haynie to a hostile work environment on account of said plaintiff's race.

13          On May 29, 2012, plaintiffs filed their initial complaint, and, on July 20, 2012, before

14   defendants had been served, a First Amended Complaint ("FAC").  On August 29, 2013,

15   defendants filed a motion to dismiss the FAC, or, in the alternative, to transfer, in which

16   motion they primarily argued that venue was improper and/or inconvenient with respect to

17   the majority of the claims alleged.  At a hearing on the motion, conducted October 5, 2012,

18   plaintiffs requested leave to amend, which request the Court granted and, in light thereof,

19   denied the motion to dismiss the FAC as moot.  Plaintiffs thereafter filed their Second

20   Amended Complaint ("SAC") and defendants again moved to dismiss, arguing the claims

21   therein were not pleaded in conformity with Rule 8(a) of the Federal Rules of Civil

22   Procedure, and, further, that certain claims had not been exhausted.  By order filed April

23   24, 2013, the Court granted the motion and, with one exception, dismissed all challenged

24   claims in the SAC and afforded plaintiffs leave to amend the majority of the dismissed

25   claims.  On May 20, 2013, plaintiffs filed their Third Amended Complaint, and, on June 21,

26   2013, their Corrected Third Amended Complaint ("TAC").  Defendants again moved to

27   dismiss.  By order filed December 5, 2013, the Court granted in part and denied in part

28   defendants' motion; to the extent the motion was granted, the Court dismissed some of the

2

1   claims without further leave to amend, and dismissed other claims with leave to amend,

2   where it did not appear that plaintiffs could not, given one further attempt, state a

3   cognizable claim.  On January 3, 2014, plaintiffs filed their Fourth Amended Complaint

4   ("4AC").

5          The 4AC contains the following four Claims:

6          (1) First Claim, titled "Race Discrimination in Violation of Title VII";

7          (2) Second Claim, titled "Violation of [FEHA]" and based on race discrimination;

8          (3) Third Claim, titled "Violation of 42 U.S.C. § 1981" and based on race

9   discrimination; and

10         (4) Fourth Claim, titled "Harassment in Violation of [Title VII]".

11                                      **LEGAL STANDARD**

12         Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be

13  predicated on the lack of a cognizable legal theory or the absence of sufficient facts alleged

14  under a cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699

15  (9th Cir. 1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of the

16  claim showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly,

17  550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint

18  attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."

19  See id.  Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to

20  relief requires more than labels and conclusions, and a formulaic recitation of the elements

21  of a cause of action will not do."  See id. (internal quotation, citation, and alteration

22  omitted).

23         In analyzing a motion to dismiss, a district court must accept as true all material

24  allegations in the complaint, and construe them in the light most favorable to the

25  nonmoving party.  See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

26  "To survive a motion to dismiss, a complaint must contain sufficient factual material,

27  accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

28  556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must

1   be enough to raise a right to relief above the speculative level[.]" <u>Twombly</u>, 550 U.S. at

2   555.  Courts "are not bound to accept as true a legal conclusion couched as a factual

3   allegation." <u>See</u> <u>Iqbal</u>, 556 U.S. at 678 (internal quotation and citation omitted).

4       Additionally, a "court may strike from a pleading . . . any redundant, immaterial,

5   impertinent, or scandalous matter." <u>See</u> Fed. R. Civ. P. 12(f).

6   **DISCUSSION**

7   **A. Motion to Strike**

8       Defendants argue that certain allegations in the 4AC are immaterial or impertinent,

9   and, consequently, should be stricken.  The Court considers the challenged allegations in

10  turn.

11      First, defendants seek an order striking from the 4AC the following:

12      (1) all disparate treatment claims brought pursuant to § 1981, to the extent based on

13  discriminatory "compensation" practices (<u>see</u> 4AC ¶ 637);

14      (2) the disparate treatment claim brought pursuant to Title VII, to the extent asserted

15  on behalf of plaintiff Sherman and based on his failure in May 2010 to receive a promotion

16  to the position of Line Check Airman in Houston, Texas (<u>see</u> 4AC ¶¶ 583, 595, 620);

17      (3) the disparate treatment claims brought pursuant to Title VII and FEHA, to the

18  extent asserted on behalf of plaintiff Miller and based on his failure in 2005 to receive a

19  special assignment as Flight Operations Supervisor in Los Angeles, California (<u>see</u> 4AC at

20  27:5-7, ¶¶ 181, 473, 624, 633);

21      (4) all disparate impact claims brought pursuant to Title VII and FEHA, to the extent

22  based on any asserted policy other than "[l]imiting the selection of prospective managers to

23  individuals with special assignment experience" (<u>see</u> 4AC ¶ 176);

24      (5) the disparate impact claims brought pursuant to Title VII, to the extent asserted

25  on behalf of plaintiffs Crocker, Gadson, John, Johnson, Jones, Montgomery, Noble, and

26  Roane (<u>see</u> 4AC at 93:1-3, ¶ 621); and

27      (6) the disparate impact claims brought pursuant to FEHA, to the extent brought on

28  behalf of plaintiffs Crocker, Gadson, Haynie, John, Johnson, Jones, Montgomery, Noble,

4

1    Roane, and Tom (see 4AC at 94:19, ¶ 630).

2          As defendants correctly point out, the Court, in its prior orders, dismissed the above-

3    identified claims without leave to amend.  Specifically, the claims identified above at (1)

4    through (4) were dismissed without leave to amend by order filed December 5, 2013 (see

5    Order, filed December 5, 2013, at 12:9-12, 15:15 - 16:11, 24:4-10, 28:3 - 29:22), and the

6    claims identified above at (5) and (6) were dismissed without leave to amend by order filed

7    April 24, 2013 (see Order, filed April 24, 2013 at 21:4-8, 21:1-25).  Consequently, the

8    claims identified above at (1) through (6) will be stricken.

9          Second, defendants seek an order striking "vague" allegations regarding plaintiffs'

10   alleged failure to receive unposted management positions (see Defs.' Mot. to Strike at 7:1,

11   7:14 - 8:13); according to defendants, the challenged allegations fail to sufficiently identify

12   any particular unposted management position.  The Court finds the sufficiency of such

13   allegations is not properly addressed by a motion to strike, but, rather, by a motion to

14   dismiss.  See Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 972-73 (9th Cir. 2010)

15   (holding where defendant argues claim is "precluded as a matter of law," defendant must

16   seek relief by way of motion to dismiss or for summary judgment, and not by way of motion

17   to strike).  Consequently, the Court, in addressing defendants' motion to dismiss, will

18   consider, in that context, whether plaintiffs have sufficiently pleaded claims based on

19   unposted management positions.

20         Accordingly, the motion to strike will be granted only to the extent defendants seek

21   an order striking the claims identified above at (1) through (6).

22   **B. Motion to Dismiss**

23         Defendants contend certain claims alleged in the 4AC are subject to dismissal.[2]  In

24   particular, defendants argue, certain claims are subject to dismissal for failure to allege

25

26         [2]Defendants do not challenge (1) the disparate treatment claims included in the First
     and Third Claims to the extent such claims are based on defendants' failure to select
27   sixteen plaintiffs for positions to which those plaintiffs applied (see 4AC ¶¶ 620, 634),
     (2) the disparate treatment claims included in the Second Claim to the extent such claims
28   are based on defendants' failure to select four plaintiffs for positions in California to which
     those plaintiffs applied (see 4AC ¶ 629), and (3) the Fourth Claim.

1  facts to state a claim upon which relief can be granted, for failure to exhaust administrative

2  remedies, and/or because they are barred by the applicable statute of limitations.

3         At the outset, the Court considers and finds unpersuasive plaintiffs' argument that

4  the instant motion relies on material outside the pleadings and thus should be treated as a

5  motion for summary judgment.  The Court agrees that a motion to dismiss "must be treated

6  as one for summary judgment" where "matters outside the pleadings are presented to and

7  not excluded by the court."  See Fed. R. Civ. P. 12(d).  Here, however, plaintiffs fail to

8  identify any material outside the pleadings presented by defendants.  Although defendants

9  have submitted copies of plaintiffs' administrative charges, those charges are not outside

10 the pleadings as said charges are specifically referenced in the 4AC (see, e.g., 4AC ¶ 569

11 (alleging plaintiff John submitted charge on February 7, 2012)), and plaintiffs do not

12 challenge the authenticity of the copies offered by defendants, see Branch v. Tunnell, 14

13 F.3d 449, 453-54 (9th Cir. 1994) (holding document is "not 'outside' the complaint if the

14 complaint specifically refers to the document and if its authenticity is not questioned").[3]

15        The Court next turns to defendants' arguments, which the Court considers in the

16 sequence in which they are addressed in the motion.

17        **1. Disparate Treatment Claims Based on Unposted Management Positions**

18        In the First, Second, and Third Claims, plaintiffs allege, inter alia, they were

19 subjected to intentional discrimination on the basis of race when defendants did not

20 promote them to "vacant management positions" that defendants had not posted as

21 available.  (See, e.g., 4AC ¶¶ 619, 628; see also 4AC ¶ 178, 634, 637.)

22        **a. Identification of Unposted Management Positions**

23        By order filed December 5, 2013, the Court dismissed, with limited exception,

24 plaintiffs' claims based on unposted management positions, for the reason that plaintiffs

25 had failed to "identify a particular position, the location of the position, and/or a time frame

26

27        [3]Plaintiffs point to a declaration submitted by defendants in support of their motion to dismiss certain claims in the FAC on grounds of improper venue.  The declaration, however, was not offered in support of the instant motion, which does not challenge venue,

28 and, consequently, such evidence is not considered herein.

6

1   in which the position was available." (See Order, filed December 5, 2013, at 20:17-23.)  By

2   that same order, the Court afforded plaintiffs leave to amend.  Defendants argue plaintiffs

3   have failed to cure the above-referenced deficiencies.

4          Plaintiffs allege the Captain Plaintiffs were "precluded from participating in the filling

5   of the vacancies of the following managerial positions due to [d]efendants' practice and

6   policy of not posting these managerial positions:  all permanent executive management

7   positions, Chief Pilot, Assistant Chief, FODM, Director of Safety and Security, Director of

8   Pilot Recruitment and Development, and Standards Captain, from 2008 to the present in

9   every domicile." (See 4AC at 24:6-12.)  Similarly, plaintiffs allege the Operations

10  Supervisor Plaintiffs were "precluded from applying for the vacancies of the following

11  managerial positions due to [d]efendants' practice and policy of not posting these

12  managerial positions:  Leadership Development, Project Manager and General Manager,

13  from 2008 to the present in every domicile." (See 4AC at 27:4-7.)  To the extent such

14  allegations are intended by plaintiffs to identify the unposted management positions on

15  which they base their claims, the Court finds the allegations insufficient, as plaintiffs fail to

16  provide therein sufficient notice as to the location of any position, the time frame in which

17  any position was available, and, with respect to "all permanent executive management

18  positions" (see 4AC at 24:10), the particular position in question.

19         Plaintiffs have, however, sufficiently identified a number of unposted management

20  positions, given that, as to the positions identified below, plaintiffs identify the specific

21  plaintiffs who are basing claims thereon, the particular position, the location of the position,

22  and the time frame in which the position was available and filled by defendants:

23         (1) on behalf of all twenty-one Captain Plaintiffs, six unposted management positions

24  allegedly filled in 2011 or 2012 (see 4AC at 25:13-26:3), and of behalf of twelve of the

25  Captain Plaintiffs, specifically, Briscoe, Ecung, Haney, Hartsfield, Haynie, Manswell, Miller,

26  Palmer, Ricketts, Robinson, Sherman, Washington, an additional eight unposted

27  management positions allegedly filled in 2008, 2009, or 2010 (see 4AC at 24:16 - 25:12;

28  ¶¶ 615, 626, 635); and

7

1    (2) on behalf of the two Operations Supervisor Plaintiffs, two unposted management

2    positions allegedly filled in 2011 (see 4AC at 26:11-12, 15-16).[4]

3        Accordingly, to the extent the First, Second, and Third Claims are based on failures

4    to receive unposted management positions, and with the limited exception of the allegedly

5    unposted management positions identified above at (1) and (2), the Claims are subject to

6    dismissal for failure to sufficiently identify the positions at issue.

7            **b.  Exhaustion**

8        Defendants contend certain plaintiffs failed to exhaust their claims that they did not

9    receive an unposted management position, and, consequently, the First and Second

10   Claims should be dismissed to the extent they are brought of behalf of such plaintiffs.[5]

11       A district court has jurisdiction over employment discrimination claims arising under

12   either Title VII or FEHA only if the plaintiff has first raised those claims in an administrative

13   charge.  See EEOC v. Farmer Brothers Co., 31 F.3d 891, 899 (9th Cir. 1994) (Title VII);

14   Martin v. Lockheed Missiles & Space Co., 29 Cal. App. 4th 1718, 1724 (1994) (FEHA).

15   Where a plaintiff bases his complaint on "incidents not listed" in an administrative charge,

16   the court "may assume jurisdiction over the new claims" only "if they are like or reasonably

17   related to" the acts identified in the charge.  See Brown v. Puget Sound Electrical

18   Apprenticeship & Training Trust, 732 F.2d 726, 729 (9th Cir. 1984) (internal quotation and

19   citation omitted); see also Sandhu v. Lockheed Missiles & Space Co., 26 Cal. App. 4th 846,

20   859 (1994) (applying Title VII "like or reasonably related" standard to FEHA claims).

21       As defendants correctly point out, plaintiffs Crocker, Gadson, John, Johnson, Jones,

22   Montgomery, Noble and Roane did not include, in their respective administrative charges

23   submitted to the Equal Employment Opportunity Commission ("EEOC") and the

---

25   [4]Although plaintiffs, on behalf of the Operations Supervisor Plaintiffs, identify a third
26   unposted management position, specifically, a position allegedly filled in 2010 (see 4AC at 26:13-14), the Operations Supervisor Plaintiffs do not base their claims on said position (see 4AC ¶¶ 615, 626, 635).

27   [5]There is no exhaustion requirement for a claim brought under § 1981, i.e., for
28   plaintiffs' Third Claim.  See Surrell v. California Water Service Co., 518 F.3d 1097, 1103 (9th Cir. 2008).

8

1  Department of Fair Employment and Housing ("DFEH"), any allegation that they had

2  suffered discrimination because they did not receive a promotion to a position for which

3  they had not applied and which had not been posted; rather, said plaintiffs alleged therein

4  only claims of discrimination based on their respective failures to receive positions for

5  which they had applied.  (See Defs.'s Req. for Judicial Notice, filed February 3, 2014, Exs.

6  B, D, H, I, J, N, O, R.)  Additionally, as defendants correctly point out, plaintiffs Haynie and

7  Tom failed to include in their respective administrative charges submitted to the DFEH any

8  allegation that they suffered discrimination because they they did not receive a promotion

9  to a position for which they had not applied and which had not been posted; rather, said

10  plaintiffs, likewise, alleged therein only claims based on their respective failures to receive

11  positions for which they had applied.  (See id. Exs. G, U.)[6]

12      Plaintiffs, in their opposition, have not argued that their claims based on failures to

13  receive unposted management positions are like or reasonably related to their claims that

14  they did not receive a position for which they had applied.  Nevertheless, the Court, as set

15  forth below, has considered the issue.

16      As the Ninth Circuit has noted, "[i]t is only logical to limit the permissible scope of the

17  civil action to the scope of the EEOC investigation which can reasonably be expected to

18  grow out of the charge of discrimination."  See Brown, 732 F.2d at 730 (internal quotation

19  and citation omitted).  Here, there is no allegation in the 4AC nor does the record otherwise

20  suggest that the EEOC or DFEH, in the course of any investigation of the circumstances

21  under which the above-identified plaintiffs failed to receive positions for which they had

22  applied, would have additionally considered the circumstances under which defendants

23  selected persons for other positions for which plaintiffs had not applied.  For example, no

24  plaintiff has indicated, either to an administrative agency or the Court, that the same

25

26      [6]Defendants do not argue that Haynie and Tom failed to exhaust their Title VII
27  claims based on unposted management positions, and, indeed, those plaintiffs, in their
   respective charges submitted to the EEOC, did allege therein that defendants
28  discriminated against them by not promoting them to positions that had not been posted.
   (See id.)

1    individual who declined to promote a plaintiff to a posted position had, in addition, filled

2    other positions without a posting.

3          Accordingly, to the extent the First Claim is based on failures to receive unposted

4    management positions and is brought on behalf of plaintiffs Crocker, Gadson, John,

5    Johnson, Jones, Montgomery, Noble and Roane, the First Claim is subject to dismissal,

6    and to the extent the Second Claim is based on failures to receive unposted management

7    positions and is brought on behalf of Crocker, Gadson, Haynie, John, Johnson, Jones,

8    Montgomery, Noble, Roane, and Tom, the Second Claim is subject to dismissal.

9                        **c. Statute of Limitations**

10         Defendants argue that, to the extent such claims are based on failures to receive

11   unposted management positions, certain of the First and Second Claims are barred by the

12   applicable statutes of limitations.[7]  The Court considers such argument herein to the extent

13   it pertains to the Title VII and FEHA claims that are not subject to dismissal for failure to

14   sufficiently identify the position and/or for failure to exhaust administrative remedies.

15         A Title VII claim is barred by the statute of limitations if the plaintiff does not submit

16   an administrative charge to the EEOC within 180 days of the act of alleged discrimination,

17   or, where the plaintiff initially submits a charge to a state agency, within 300 days of the act

18   of alleged discrimination.  See 42 U.S.C. § 2000e–5(e)(1); National Railroad Passenger

19   Corp. v. Morgan, 536 U.S. 101, 109 (2002) (holding Title VII claim not filed within time

20   frame set forth in § 2000e-5(e) is "time barred").  A FEHA claim is barred if the plaintiff does

21   not submit an administrative charge to the DFEH within 365 days of the act of alleged

22   discrimination.  See Cal. Gov't Code § 12960(d).

23         A discrimination claim based on a failure to promote accrues when the employer

24   makes the decision not to promote the plaintiff.  See Lyons v. England, 307 F.3d 1092,

25   1106-07 (9th Cir. 2002) (holding "disparate treatment" claim accrues on "the date on which

26   ───────────────

27         [7]Defendants argue that, in addition, "certain claims under § 1981" based on
     unposted management positions are barred by the applicable statute of limitations (see
28   Defs.' Mot. to Dismiss at 11:11-12, 11:19-20), but do not further identify any such claim.
     Consequently, the Court does not further address such challenge herein.

                                        10

1  the underlying act occurs").  Here, the Captain Plaintiffs submitted their respective

2  administrative charges on various dates in 2012.  (See Defs.' Req. for Judicial Notice Exs.

3  A-C, E-M, O-W.)  Given that the longest limitations period applicable to any Title VII or

4  FEHA claim is, respectively, the 300-day period applicable to Title VII claims and the 365-

5  day period applicable to FEHA claims, the Title VII and FEHA claims based on unposted

6  management positions filled in 2008, 2009, and 2010 (see 4AC at 24:16- 25:12), which

7  claims are alleged on behalf of plaintiffs Ecung, Haney, Hartsfield, Manswell, Miller,

8  Palmer, Ricketts, Robinson, Sherman, and Washington, are barred by the statute of

9  limitations.

10      Further, with respect to the claim brought under Title VII and based on the failure to

11  receive the position of "Flight Operations Duty Manager of the Northeast region" that was

12  filled in "August 2011" (see 4AC at 25:16-18), the claim is barred by the statute of

13  limitations to the extent it is brought on behalf of plaintiff Hartsfield, for the reason that,

14  even assuming the position was filled on the last day of the month, said plaintiff did not

15  submit his charge to the EEOC until June 29, 2012 (see Defs.' Req. for Judicial Notice Ex.

16  F, I), and thus 303 days after August 31, 2011.

17              **d.  Geographic Scope**

18      By order filed December 5, 2013, the Court dismissed with leave to amend certain

19  FEHA claims based on failures to receive unposted management positions, and, in so

20  doing, directed plaintiffs to "allege sufficient facts to support a finding that, with respect to

21  each adverse employment action, defendants engaged in unlawful conduct in California."

22  (See Order, filed December 5, 2013, at 22:13-20, 27-28.)  Defendants argue plaintiffs'

23  FEHA claims based on unposted management positions are subject to dismissal on the

24  ground that plaintiffs have failed to cure said deficiency.

25      FEHA does not apply to "nonresidents employed outside the state when the tortious

26  conduct did not occur in California."  See Campbell v. Arco Marine, Inc., 42 Cal. App. 4th

27  1850, 1860 (1996).  In addition, although neither party has cited to any case authority

28  addressing the applicability of FEHA to California residents who allege tortious conduct

11

occurring outside California, the Court notes that "the presumption," as the California Supreme Court has held, "is that [the California Legislature] did not intend to give its statutes any extraterritorial effect."  See North Alaska Salmon Co. v. Pillsbury, 174 Cal. 1, 4 (1916).  Nothing in the language of FEHA suggests a legislative intent that the statute apply to tortious conduct occurring other than in California.  See, e.g., id. at 4 (holding California worker's compensation statute did not apply to plaintiff who entered into employment contract in California and was later injured while working in Alaska, where there was "nothing to indicate [in the worker's compensation statute] that the compensation provisions were intended to apply to injuries occurring in foreign jurisdictions").

The remaining FEHA claims based on unposted management positions, i.e., those FEHA claims not dismissed for failure to sufficiently identify the position, for failure to exhaust administrative remedies and/or as barred by the statute of limitations, are claims based on six unposted management positions allegedly filled outside of California in 2001 and 2012.  (See 4AC at 25:13 - 26:3.)[8]  Plaintiffs allege no facts suggesting that defendants, in selecting persons to fill those unposted management positions, engaged in any type of tortious conduct in California, and, consequently, plaintiffs have failed to cure the deficiencies previously identified by the Court.  Moreover, to the extent plaintiffs, in their opposition, assert they are entitled to conduct discovery to determine whether tortious conduct did occur in California, the Court disagrees.  Where a claim is "deficient under Rule 8, [the plaintiff] is not entitled to discovery, cabined or otherwise."  See Iqbal, 536 U.S. at 686.

Accordingly, the remaining FEHA claims, to the extent such claims are based on failures to receive unposted management positions, are subject to dismissal.

//

//

---

[8]Although plaintiffs, in the Second Claim, allege they are only challenging unposted positions "in California" (see 4AC ¶ 628), they later allege, in the same paragraph, they are challenging unposted positions "in every domicile" (see id.).

1

**e. Conclusion as to Claims Based on Unposted Management Positions**

2       To the extent the First Claim is based on failures to receive unposted management

3  positions, the First Claim is subject to dismissal, with the exception of the following claims:

4  (1) claims on behalf of Briscoe, Ecung, Haney, Haynie, Jones, Manswell, Miller, Minter,

5  Noble, Palmer, Ricketts, Roane, Robinson, Sherman, Tom, Washington, and Wilson,

6  based on the six positions identified in the 4AC at 25:13 - 26:3; and (2) claims on behalf of

7  Hartsfield based on the five positions identified in the 4AC at 25:13-15 and 25:19 - 26:3.

8       To the extent the Second Claim is based on failures to receive unposted

9  management positions, the Second Claim is subject to dismissal.

10      To the extent the Third Claim is based on failures to receive unposted management

11  positions, the Third Claim is subject to dismissal, with the exception of the following claims:

12  (1) claims on behalf of Briscoe, Ecung, Haney, Hartsfield, Haynie, Manswell, Miller, Palmer,

13  Ricketts, Robinson, Sherman, and Washington, based on the fourteen positions identified

14  in the 4AC at 24:16 - 26:3; (2) claims on behalf of Crocker, John, Johnson, Jones, Minter,

15  Noble, Roane, Tom, and Wilson, based on the six positions identified in the 4AC at 25:13 -

16  26:3; and (3) claims on behalf of Gadson and Montgomery, based on the two positions

17  identified in the 4AC at 26:11-12 and 26:15-16.

18      **2.  Disparate Treatment Claims Based on Special Assignments**

19      The First, Second, and Third Claims are based in part on plaintiffs' allegation that

20  they failed to receive "special assignments a.k.a. temporary management positions" on

21  account of intentional racial discrimination.  (See 4AC ¶ 176, 622, 632, 637.)

22      **a.  Identification of Special Assignments**

23      By order filed December 5, 2013, the Court dismissed, with limited exception,

24  plaintiffs' claims based on failures to receive special assignments, for the reason that "the

25  particular special assignment, its location, and/or the time frame in which it was filled" was

26  not identified (see Order, filed December 5, 2013, at 23:19-22), and afforded plaintiffs leave

27  to amend.  Defendants argue plaintiffs have failed to cure the above-referenced

28  deficiencies.

1    Plaintiffs allege the Captain Plaintiffs were "precluded from participating in the filling

2  of the vacant special assignments" and, as examples thereof, identify fourteen "non-flying

3  management functions."  (See 4AC ¶ 180 (listing, inter alia,"Human Factors Facilitators," "I-

4  Pad Training/Trainer," "System Integration").)  Similarly, plaintiffs allege the Operations

5  Supervisor Plaintiffs were "precluded from applying for the vacant special assignments"

6  and, as examples thereof, identify three "operation management functions."  (See 4AC

7  ¶ 182) (listing, inter alia, "Leadership Development Program").)  Plaintiffs further allege that,

8  for purposes of the Title VII and § 1981 claims, they challenge "all non-posted special

9  assignment positions filled from 2008 to the present in all domiciles" (see 4AC ¶¶ 622, 634,

10  637), and, for purposes of the FEHA claims, that they challenge "all non-posted special

11  assignments in California filled from 2008 to the present" (see 4AC ¶ 632), with the

12  exception that eleven plaintiffs only challenge "actions occurring February 2011 and

13  thereafter" (see 4AC ¶¶  615, 626, 635).  To the extent such allegations are intended by

14  plaintiffs to identify challenged special assignments, the Court finds the allegations

15  deficient, as they fail to provide sufficient notice as to the location of any assignment or the

16  time frame in which any assignment was available.

17    Further, plaintiffs' allegation that plaintiff Robinson, in 2005, did not receive a special

18  assignment "in the Flight Office" (see 4AC ¶ 489), is insufficient, as plaintiffs fail to provide

19  sufficient notice as to the identification of the partial special assignment or the location

20  thereof.  Similarly, plaintiffs' allegation that plaintiff Washington, in "2009 through 2011,"

21  asked three identified individuals to consider him for any available special assignment in

22  "Denver and Chicago" (see 4AC ¶ 543), is insufficient, as plaintiffs fail to identify the

23  particular special assignments, if any, that he was not provided and fail to provide sufficient

24  notice as to the time frame during which any such assignment was available.

25    Plaintiffs have, however, sufficiently identified a number of special assignments,

26  given that, as to the special assignments identified below, plaintiffs identify the specific

27  plaintiffs who are basing claims thereon, the particular special assignment, the location of

28  the special assignment, and the time frame in which the special assignment was available

14

and filled by defendants:

(1) with respect to the First and Third Claims:

(a) on behalf of all twenty-one Captain Plaintiffs, forty-three special assignments allegedly filled in 2012 (see 4AC at 27:23 - 32:15); on behalf of plaintiffs Briscoe, Ecung, Haney, Hartsfield, Haynie, Manswell, Miller, Palmer, Ricketts, Robinson, Sherman, and Washington, an additional five special assignments allegedly filled in 2009 or 2010 (see 4AC at 27:8-22; ¶¶ 615, 626, 635); on behalf of plaintiffs Briscoe, Ecung, Haney, Hartsfield, Haynie, Manswell, Palmer, Ricketts, Robinson, Sherman, and Washington, an additional special assignment allegedly filled in 2005 (see 4AC at 27:5-7); on behalf of plaintiffs Briscoe and Sherman, an additional two special assignments allegedly filled in 2010 and 2011 (see 4AC ¶¶ 579, 610); and on behalf of plaintiff Sherman, an additional position allegedly filled in 2010 (see 4AC ¶ 583); and (b) on behalf of the two Operations Supervisor Plaintiffs, four special assignments allegedly filled in 2012 or 2013 (see 4AC ¶ 183); and

(2) with respect to the Second Claim, and on behalf of all twenty-one Captain Plaintiffs, twenty-one special assignments in California allegedly filled in 2012 (see 4AC at 28:11-19, 29:7-9, 29:13-15, 29:22 - 30:12, 30:25 - 31:6, 31:16 - 32:9); on behalf of plaintiffs Briscoe, Ecung, Haney, Hartsfield, Haynie, Manswell, Miller, Palmer, Ricketts, Robinson, Sherman, and Washington, an additional four special assignments in California allegedly filled in 2009 or 2010 (see 4AC at 27:8-22; 4AC ¶¶ 615, 626, 635); and on behalf of plaintiffs Briscoe, Ecung, Haney, Hartsfield, Haynie, Manswell, Palmer, Ricketts, Robinson, Sherman, and Washington, an additional two special assignments in California allegedly filled in 2005 or 2010 (see 4AC at 27:5-7).

Accordingly, to the extent the First, Second, and Third Claims are based on failures to receive special assignments, the Claims, with the exception of the special assignments identified above at (1) and (2), are subject to dismissal for failure to identify the special assignments at issue.

//

1

**b.  Exhaustion**

2         Defendants contend certain plaintiffs failed to exhaust their claims that they did not

3   receive special assignments, and thus, according to defendants, the First and Second

4   Claims are subject to dismissal to the extent those claims are brought of behalf of such

5   plaintiffs.

6         As discussed above, plaintiffs allege defendants do not post special assignments.

7   As also discussed above, plaintiffs Crocker, Gadson, John, Johnson, Jones, Montgomery,

8   Noble and Roane failed to include, in their respective administrative charges submitted to

9   the EEOC and the DFEH, any  allegation that they suffered discrimination as a result of

10  their not receiving unposted positions, and plaintiffs Haynie and Tom failed to include, in

11  their respective administrative charges submitted to the DFEH, any allegation that they

12  suffered discrimination as a result of their not receiving unposted positions.

13        Accordingly, for the reasons discussed above in connection with plaintiffs' claims

14  based on failures to receive unposted management positions, to the extent the First Claim

15  is based on failures to receive special assignments and is brought on behalf of plaintiffs

16  Crocker, Gadson, John, Johnson, Jones, Montgomery, Noble and Roane, the First Claim is

17  subject to dismissal, and to the extent the Second Claim is based on failures to receive

18  special assignments and is brought on behalf of Crocker, Gadson, Haynie, John, Johnson,

19  Jones, Montgomery, Noble, Roane, and Tom, the Second Claim is subject to dismissal.

20

**c.  Statute of Limitations**

21        As noted, a discrimination claim based on a failure to promote accrues when the

22  employer makes the decision not to promote the plaintiff.  Defendants argue that certain of

23  the Title VII, FEHA, and § 1981 claims that are based on failures to receive special

24  assignments, i.e., temporary management positions, are barred by the applicable statute of

25  limitations.  The Court considers the argument to the extent it pertains to claims that are not

26  subject to dismissal for failure to sufficiently identify the special assignment and/or for

27  failure to exhaust administrative remedies.

28  //

16

1    As set forth above, a Title VII claim is barred by the statute of limitations if the

2  plaintiff does not submit an administrative charge to the EEOC within 180 days of the act of

3  alleged discrimination or, in some circumstances, within 300 days of the act of alleged

4  discrimination, and a FEHA claim is barred if the plaintiff does not submit an administrative

5  charge to the DFEH within 365 days of the act of alleged discrimination.  Given that the

6  Captain Plaintiffs submitted their respective charges to the EEOC and the DFEH on various

7  dates in 2012 (see Defs.' Req. for Judicial Notice Exs. A-W), and given that the longest

8  limitations period applicable to any Title VII or FEHA claim is, respectively, the 300-day

9  period applicable to Title VII claims and the 365-day period applicable to FEHA claims, the

10 Title VII and FEHA claims based on unposted special assignments filled in 2005, 2009 and

11 2010 (see 4AC at 27:5-22, ¶¶ 579, 583, 610), which claims are alleged on behalf of

12 plaintiffs Ecung, Haney, Hartsfield, Manswell, Miller, Palmer, Ricketts, Robinson, Sherman,

13 and Washington, are barred by the statute of limitations.

14   Further, because the longest potential statute of limitations period applicable to a

15 § 1981 claim is four years, see 28 U.S.C. § 1658(a),[9] the § 1981 claim based on the

16 unposted special assignment filled in 2005 (see 4AC at 27:5-7), which claim is alleged on

17 behalf of plaintiffs Briscoe, Ecung, Haney, Hartsfield, Haynie, Manswell, Palmer, Ricketts,

18 Robinson, Sherman, and Washington, is barred by the statute of limitations.

19                   **d.  Geographic Scope**

20   To the extent the Second Claim is based on failures to receive special assignments,

21 plaintiffs have limited the scope to special assignments in California.  (See 4AC ¶ 632-33;

22 see also 4AC ¶ 3(c) (alleging "[p]laintiffs would have worked in the State of California but

23 for the unlawful employment practices").)  Consequently, said claims are not subject to

24 dismissal for failure to allege a sufficient connection to California.

25 //

26

27    [9]Under some circumstances, a § 1981 claim is subject to a two-year statute of
limitations.  See Lukovsky v. City and County of San Francisco, 535  F.3d 1044, 1048 n.2
28 (9th Cir. 2008).  For purposes of the instant motion, however, defendants rely only on the
four-year statute of limitations.  (See Defs.' Mot. at 11:11-12, 17-19.)

**e.  Conclusion as to Claims Based on Special Assignments**

To the extent the First Claim is based on failures to receive special assignments, the First Claim is subject to dismissal, with the exception of the following claims:  (1) claims on behalf of Briscoe, Ecung, Haney, Hartsfield, Haynie, Manswell, Miller, Minter, Palmer, Ricketts, Robinson, Sherman, Tom, Washington, and Wilson based on the forty-three special assignments identified in the 4AC at 27:23 - 32:15; and (2) claims on behalf of Briscoe and Sherman based on the special assignment identified in the 4AC at 87:23-25 and 92:14-18.

To the extent the Second Claim is based on failures to receive special assignments, the Second Claim is subject to dismissal, with the exception of the claims alleged on behalf of plaintiffs Briscoe, Ecung, Haney, Hartsfield, Manswell, Miller, Minter, Palmer, Ricketts, Robinson, Sherman, Washington, and Wilson based on the twenty-one special assignments identified in the 4AC at 28:11-19, 29:7-9, 29:13-15, 29:22 - 30:12, 30:25 - 31:6, 31:16 - 32:9.

To the extent the Third Claim is based on failures to receive special assignments, the Third Claim is subject to dismissal, with the exception of the following claims: (1) claims on behalf of Briscoe, Ecung, Haney, Hartsfield, Haynie, Manswell, Miller, Palmer, Ricketts, Robinson, Sherman, and Washington based on the forty-eight special assignments identified in the 4AC at 27:8 - 32:15; (2) claims on behalf of Crocker, John, Johnson, Jones, Minter, Noble, Roane, Tom, and Wilson based on the forty-three special assignments identified in the 4AC at 27:23 - 32:15; and (3) claims on behalf of Gadson and Montgomery based on the four positions identified in the 4AC at 32:26 - 33:9.

**4.  Disparate Impact: Special Assignment Requirement**

The First and Second Claims are based in part on a claim of disparate impact predicated on defendants' alleged policy that, when considering applicants for management positions, defendants limit "the potential successful applicant pool to only

//

//

18

1    those who have special assignment experience."  (See 4AC ¶¶ 623, 631).[10]

2        "[D]isparate-impact claims involve employment practices that are facially neutral in

3    their treatment of different groups but that in fact fall more harshly on one group than

4    another and cannot be justified by business necessity."  Raytheon v. Hernandez, 540 U.S.

5    44, 52 (2003) (internal quotation and citation omitted).  To sufficiently state a disparate

6    impact claim, a plaintiff must "allege facts identifying a specific, facially neutral employment

7    policy," as well as facts "to show a causal relationship between such a practice and its

8    adverse impact on [a protected group]."  See Hines v. California Public Utilities Comm'n,

9    467 Fed. Appx. 639, 641 (9th Cir. 2012).

10       Defendants argue plaintiffs have failed to cure the deficiencies previously identified

11   with respect to the disparate impact claim.  The Court agrees.  The Court previously

12   dismissed the disparate impact claim, which had not been expressly exhausted by any

13   plaintiff, with leave to amend to allege said claim was like or reasonably related to a claim

14   that any such plaintiff had exhausted.  In the 4AC, however, plaintiffs include no new facts

15   pertinent to the disparate impact claim, nor do plaintiffs, in their opposition, show said claim

16   is like or reasonably related to any claim that has been exhausted.  Consequently, plaintiffs

17   have failed to cure the deficiency previously identified.  Although plaintiffs, in their

18   opposition, assert they should be entitled to conduct discovery, the Court again disagrees.

19   Where, as here, a plaintiff fails to state a claim, such plaintiff, as noted, is "not entitled to

20   discovery, cabined or otherwise."  See Iqbal, 556 U.S. at 686.

21       Accordingly, to the extent the First and Second Claims are based on a disparate

22   impact theory, the First and Second Claims are subject to dismissal.

23   //

24   //

25

26       [10]The disparate impact claim in the First Claim is brought on behalf of fifteen
27   plaintiffs, specifically, Briscoe, Ecung, Haney, Hartsfield, Haynie, Manswell, Miller, Minter,
     Palmer, Ricketts, Robinson, Sherman, Tom, Washington, and Wilson; the disparate impact
28   claim in the Second Claim is brought on behalf of each of those plaintiffs with the exception
     of Haynie and Tom.

1

**CONCLUSION**

2    For the reasons stated above:

3    1. Defendants' motion to strike is hereby GRANTED in part and DENIED in part as

4 follows:

5    a. To the extent defendants seek an order striking from the 4AC the claims set

6 forth above on pages 4:12 - 5:1, the motion is GRANTED.

7    b. In all other respects, the motion is DENIED.

8    2. Defendants' motion to dismiss is hereby GRANTED in part and DENIED in part

9 as follows:

10    a. To the extent the First, Second and Third Claims are based on failures to

11 receive unposted management positions,

12    (i) the First Claim is DISMISSED, with the exception of the claims set forth

13 above on page 13:4-7,

14    (ii) the Second Claim is DISMISSED, and

15    (iii) the Third Claim is DISMISSED, with the exception of the claims set forth

16 above on page 13:12-17.

17    b. To the extent the First, Second and Third Claims are based on failures to

18 receive special assignments,

19    (i) the First Claim is DISMISSED, with the exception of the claims set forth

20 above on page 18:3-8,

21    (ii) the Second Claim is DISMISSED, with the exception of the claims set forth

22 above on page 18:10-14, and

23    (iii) the Third Claim is DISMISSED, with the exception of the claims set forth

24 above on page 18:17-22.

25 //

26 //

27 //

28 //

1          c.  To the extent the First and Second Claims are based on disparate impact, the

2   First and Second Claims are DISMISSED.

3          **IT IS SO ORDERED.**

4

5   Dated:  June 27, 2014

6                                                    MAXINE M. CHESNEY
                                                     United States District Judge