1  DONNA M. MELBY (SB# 86417)
donnamelby@paulhastings.com
2  JENNIFER S. BALDOCCHI (SB# 168945)
jenniferbaldocchi@paulhastings.com
3  JI HAE KIM (SB# 275020)
jihaekim@paulhastings.com
4  PAUL HASTINGS LLP
515 South Flower Street, Twenty-Fifth Floor
5  Los Angeles, CA  90071-2228
Telephone:  1(213) 683-6000
6  Facsimile:  1(213) 627-0705

7  GARY T. LAFAYETTE (SB# 088666)
glafayette@lkclaw.com
8  LAFAYETTE & KUMAGAI LLP
101 Mission Street, Suite 600
9  San Francisco, CA 94105-1738
Telephone:  1(415) 357-4600
10  Facsimile:  1(415) 357-4605

11  Attorneys for Defendants
UNITED AIRLINES, INC.;
12  AND CONTINENTAL AIRLINES, INC.

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15  ELDRIDGE JOHNSON, MARIO ECUNG,          CASE NO. 3:12-CV-02730-MMC
    LEON MILLER, XAVIER PALMER,
16  KENNETH MONTGOMERY, ANNETTE            **DEFENDANTS' NOTICE OF MOTION**
    GADSON, PAUL C. NOBLE, JOHNNIE E.      **AND MOTION TO SEVER PARTIES AND**
17  JONES, Jr., FREDERICK ROBINSON,        **CLAIMS; POINTS AND AUTHORITIES**
    GLEN ROANE, DAVID RICKETTS,            **IN SUPPORT THEREOF**
18  LESTER TOM, TERRY HAYNIE, SAL
    CROCKER, ANTHONY MANSWELL,
19  KARL MINTER, ERWIN WASHINGTON,         **[DECLARATION OF JENNIFER S.**
    DARRYL WILSON, LEO SHERMAN, KEN        **BALDOCCHI; [PROPOSED] ORDER**
20  HANEY, RICHARD JOHN, ODIE              **FILED CONCURRENTLY HEREWITH]**
    BRISCOE, and TERENCE HARTSFIELD,
21                                         Date:          December 5, 2014
            Plaintiffs,                    Time:          9:00 a.m.
22                                         Courtroom:     7
         vs.
23                                         Judge:         Hon. Maxine M. Chesney
    UNITED AIR LINES, INC.;
24  CONTINENTAL AIRLINES, INC.; and        Complaint filed:    May 29, 2012
    DOES 1-10,                             FAC filed:          July 20, 2012
25                                         SAC filed:          November 30, 2012
            Defendants.                    TAC filed:          May 20, 2013
26                                         Corrected TAC filed: June 21, 2013
                                           4AC filed:          Jan. 3, 2014
27

28

1
## **NOTICE OF MOTION**

2
TO PLAINTIFFS AND TO THEIR ATTORNEYS OF RECORD, SPENCER SMITH, DOW W.

3
PATTEN AND THE LAW OFFICES OF SMITH PATTEN:

4
   PLEASE TAKE NOTICE that on December 5, 2014, at 9:00 a.m., or as soon thereafter as

5
the matter may be heard in Courtroom 7 of this Court, located at 450 Golden Gate Avenue, 19th

6
Floor, San Francisco, California, before the Honorable Maxine M. Chesney, Defendants United

7
Airlines, Inc. ("United") and Continental Airlines, Inc. ("Continental") (collectively

8
"Defendants") will and hereby do move the Court, pursuant to Federal Rules of Civil

9
Procedure 20, and 21, for severance of the parties and claims into separate lawsuits.

10
   This motion is made on two separate and independent grounds.  Specifically, this motion

11
is made on the ground that Plaintiffs are not properly joined under Federal Rules of Civil

12
Procedure 20 and 21.  Second, the court has inherent authority to manage this litigation, including

13
without limitation, pursuant to Federal Rule of Civil Procedure 21, through the separation of these

14
twenty-three individual lawsuits in the interests of justice.

15
   There is no relief sought which arises out of the same transaction, occurrence, or series of

16
transactions or occurrences.  Neither is there common question of fact or law arising out of the

17
individual claims of twenty-three plaintiffs.  Finally, the interests of justice require severance.

18
The intentional bad faith misjoinder of Plaintiffs together, results, by design, in the

19
unmanageability of the litigation, confusion of the issues, and undue waste of time and resources,

20
all to the extreme prejudice of the Defendants.

21
   This Motion is based upon this Notice and Memorandum of Points and Authorities in

22
support thereof, the accompanying Declaration of Jennifer S. Baldocchi ("Baldocchi Dec."), the

23
Court's record in this action, all matters of which the Court may take judicial notice, and any

24
other matters as may be presented to the Court at the time of the hearing.

25
DATED:  October 3, 2014    PAUL HASTINGS LLP

26
      By: _____/s/ Donna M. Melby_____
           DONNA M. MELBY

27

28
      Attorneys for Defendants UNITED AIRLINES, INC.;
      AND CONTINENTAL AIRLINES, INC.

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................ 1

II.    PROCEDURAL AND FACTUAL BACKGROUND ..................................... 4

    A.   After Multiple Opportunities To Amend, Plaintiffs Filed A Deficient Ninety-Nine Page Complaint On Behalf Of Twenty-Three Plaintiffs ................... 4

    B.   Plaintiffs Work In Eight Cities, In Seven States .................................... 5

    C.   Plaintiffs Allege Discrimination In Connection With Different Posted Positions,  Different Unposted Positions, And Different Special Assignments ................................................................................................ 6

    D.   Plaintiffs' Claims Implicate Many Different Time Periods ................... 9

    E.   Plaintiffs Present Different Backgrounds, Training, Qualifications, And Experiences .............................................................................................. 10

    F.   Plaintiffs' Legal Claims Are Different ................................................. 12

III.   SEVERANCE IS MANDATED WHERE TWENTY-THREE PLAINTIFFS ARE IMPROPERLY JOINED IN A SINGLE LAWSUIT ...................................... 13

    A.   Plaintiffs' Claims Fail The First Prong Of Permissive Joinder –The Transactional Relatedness Test – Because They Do Not Arise Out Of The Same Transaction Or Occurrence .......................................................... 14

        1.   Unrelated Claims Arising Out Of Different Factual Backgrounds Do Not Meet The Transactional Relatedness Test ................................... 14

        2.   Plaintiffs' Claims Arise Out Of Many Separate Occurrences ................. 16

            a)   The alleged discrimination involves different positions and special assignments ........................................................................ 16

            b)   The alleged discrimination involves different time periods and is not geographically connected ............................................. 17

            c)   The alleged discrimination involves different evidence ............... 17

            d)   The alleged discrimination involves different witnesses ............. 19

    B.   Plaintiffs' Claims Fail The Second Prong Of Permissive Joinder Because No Common Question Of Fact Or Law Arises .................................... 20

    C.   Bare Allegations Of A Common Discriminatory Policy Or Practice Do Not Tilt The Balance In Favor Of Joinder ................................................. 22

IV.    THE INTERESTS OF JUSTICE REQUIRE SEVERANCE ......................... 23

    A.   Severance Is Necessary To Prevent Unfair Prejudice To Defendants ................. 24

# TABLE OF CONTENTS
(continued)

**Page**

    1.    Plaintiffs' Misjoinder Has Already Caused Prejudice .............................. 24

    2.    Answering The Fourth Amended Complaint Is Impossible .................... 24

    3.    Initial Disclosures And Discovery Will Prejudice Defendants................ 25

    4.    Motions And Rulings Will Be Unmanageable ........................................ 26

    5.    Absent Severance Now, The Risk Of Unfair Bias, Prejudice and Error Is Acute ........................................................................................... 27

  B.    Severance Is Necessary To Prevent Confusion.................................................... 28

V.    CONCLUSION ............................................................................................................ 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applewhite v. Reichhold Chems., Inc.*,
  67 F.3d 571 (5th Cir. 1995) ................................................................................23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .....................................................................................22, 26

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................................22

*Bhaya v. Westinghouse Elec. Corp.*,
  922 F.2d 184 (3d Cir. 1990) ...............................................................................27

*Byers v. Illinois State Police*,
  2000 WL 1808558 (N.D. Ill. Dec. 6, 2000) ......................................................15

*Coalition for a Sustainable Delta v. U.S. Fish & Wildlife Serv.*,
  2009 WL 3857417 (E.D. Cal. Nov. 17, 2009) ...................................................20

*Coleman v. Blockbuster, Inc.*,
  2008 U.S. Dist. LEXIS 49957 (E.D. Pa. June 30, 2008) ...................................27

*Coleman v. Quaker Oats Co.*,
  232 F.3d 1271 (9th Cir. 2000) ......................................................................23, 27

*Coughlin v. Rogers*,
  130 F.3d 1348 (9th Cir. 1997) ..................................................................... passim

*Desert Empire Bank v. Ins. Co. of N. Am.*,
  623 F.2d 1371 (9th Cir. 1980) ............................................................................23

*Gammons v. Real Property Investment Services, Inc.*,
  2010 U.S. Dist. LEXIS 139930 (D. Ariz. Aug. 9, 2010) ...................................15

*Grayson v. K Mart Corp*,
  849 F. Supp. 785 (N.D. Ga. 1994) .....................................................................15

*Gunn v. Wild*,
  2002 U.S. Dist. LEXIS 3628 (N.D. Cal. Feb. 26, 2002) ...................................23

*Hatai v. Dep't of Transp.*,
  214 Cal. App. 4th 1287 (2013), *review denied*, 2013 Cal. LEXIS 4848 (June
  12, 2013) ............................................................................................................28

*Henderson v. AT&T Corp.*,
  918 F. Supp. 1059 (S.D. Tex. 1996) ..................................................................28

*Johnson v. Indopco, Inc.*,
  846 F. Supp. 670 (N.D. Ill. 1994) ......................................................................15

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Kaiser Found. Health Plan v. Superior Court*,
   2012 Cal. App. Unpub. LEXIS 2092 (Cal. Ct. App. 2012 .......................................28

*Lyons v England*,
   307 F.3d 1092 (9th Cir. 2002)..............................................................................17

*Reyna v. City of Portland*,
   270 F. App'x 682 (9th Cir. 2008) .........................................................................28

*Robinson v. Geithner*,
   2011 U.S. Dist. LEXIS 2054 (E.D. Cal. Jan. 7, 2011)....................................22, 23

*Smith v. N. Am. Rockwell Corp.–Tulsa Div.*,
   50 F.R.D. 515 (N.D. Okla. 1970)..........................................................................15

*Thompson v. Sanderson Farms, Inc.*,
   2006 U.S. Dist. LEXIS 62745 (S.D. Miss. Sept. 1, 2006) .....................................15

*Union Paving Co. v. Downer Corp.*,
   276 F.2d 468 (9th Cir. 1960)................................................................................14

*Weir v. Litton Bionetics, Inc.*,
   1986 U.S. Dist. LEXIS 24884 (D. Md. May 29, 1986) ..........................................15

*Wynn v. NBC*,
   234 F. Supp. 2d 1067 (C.D. Cal. 2002) ........................................................ *passim*

**Statutes**

42 U.S.C. § 1981 .................................................................................12, 13, 29

**Other Authorities**

Fed. R. Civ. P.
   8...............................................................................................................4, 26
   20.........................................................................................13, 20, 23, 29
   20(a) ..............................................................................................1, 13, 15, 23
   20(b) .......................................................................................................23
   21.................................................................................................13, 23

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.      **INTRODUCTION**

Plaintiffs' claims are intentionally misjoined in a 99-page, 659-paragraph Fourth Amended Complaint ("4AC"), with a transparent design to create and maintain unmanageability, confusion of the issues, and unavoidable prejudice.  Through pursuit of a misjoined action, Plaintiffs bear a burden that they cannot carry:  demonstration that their claims arise from the same transaction or occurrence and involve common questions of fact and law.  After multiple opportunities to amend the Complaint, Plaintiffs have repeatedly failed to live up to the responsibility that is clearly theirs.

Plaintiffs are 21 pilots and 2 airport supervisors, each claiming discrimination on the basis of race in connection with multiple diverse lists of promotions and placement in temporary, "special" assignments.  Their disjointed allegations provide no opportunity for the Court or a jury to draw reasoned conclusions about the claims as a whole.  The unique facts and circumstances which surround each Plaintiff as well as the myriad of alleged occurrences reveal a case in which individualized issues necessarily predominate.  Plaintiffs fail the test for permissive joinder under Federal Rule of Civil Procedure 20(a), which requires that their claims arise out of the same transaction or occurrence and involve a common question of fact and law.[1]

In stark contrast to any common occurrence, Plaintiffs' claims implicate:

- Different promotions and special assignments.  Because they allege interest in different positions, a distinct individualized alleged adverse employment action is at issue.  Some Plaintiffs challenge posted positions for which they allegedly applied, while others challenge only allegedly unposted positions or temporary, special assignments.  Each presents his or her own particular list of jobs.[2]

---

[1] "Persons may join in one action as plaintiffs if:  (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."  Fed. R. Civ. Proc. 20 (a).
[2] Some Plaintiffs allege that he/she was denied the same promotion as another Plaintiff.  This circumstance presents another separately challenging issue for the Court and counsel which Defendants reserve the right to separately brief.

- **Different time periods.** The relevant timeframes for Plaintiffs' claims vary by months and years. Some complain of incidents in 2010, others focus on 2012. Some limit all claims to post-February 2011, others do not. There is no consistency as to the time periods at issue.

- **Different evidence.** The evidence that must be evaluated for each Plaintiff's claims differs according to the facts, circumstances, history, jobs sought, and application process which relate to that particular Plaintiff.

- **Different witnesses.** Plaintiffs' allegations focus on alleged discriminatory animus exhibited by different individuals, in situations unique to each Plaintiff. Each alleged incident is separate and unrelated.

- **Different decision-makers.** Plaintiffs do not allege a common decision-maker, nor can they.

- **Different geographic locations.** The Plaintiffs are dispersed throughout the country, as are the promotions and special assignments they seek. Only two Plaintiffs are based at an airport in this judicial district, Hartsfield and Johnson.[3] In all, Plaintiffs are based at eight different airports, in eight different cities, in seven different states.

- **Different job requirements and qualifications.** Whether a particular Plaintiff meets the job requirements for an allegedly denied promotion is central to this case. Not only do the jobs vary greatly, but the individual Plaintiffs each present a unique background, with, for example, different levels of flight experience, different education, and different job histories.

- **Different employers.** Two of the Plaintiffs worked for Continental before its 2010 merger with United. The rest worked for United before the merger. Alleged pre-merger incidents with different employers are clearly separate occurrences.

---

[3] Plaintiffs Haynie and Johnson are no longer employed by Defendants. However, for purposes of this motion, the factual references are based on Plaintiffs' pleadings. Thus, references to Haynie and Johnson relate to their positions as set forth in the Fourth Amended Complaint ("4AC") at the time it was filed.

1          Plaintiffs' claims likewise fail to present any common question of fact or law.  As

2  discussed below, the Ninth Circuit has been clear that a singular legal theory, such as

3  discrimination, does not suffice to satisfy the common question of fact or law requirement.

4  Instead, each promotion and each placement into a special assignment is a discreet action which

5  must be analyzed individually.  Further, Plaintiffs do not assert the same claims.  The legal basis

6  for each person's action depends on his or her circumstances, relevant dates, and the positions at

7  issue.  No common facts or law can answer the relevant inquiries as to each Plaintiff.

8          Finally, severance is necessary in the interests of justice for multiple other compelling

9  reasons:  to prevent unfair prejudice, to provide a fair and manageable trial, and to avoid

10  confusion of the issues, to avoid delay, and waste of time and resources.  Plaintiffs' improper

11  procedural tactics have orchestrated chaos from the inception of this case, leading to the intended

12  result:  significant inconvenience, prejudice, and wasted time and resources of the parties, the

13  Court, and counsel.  It is inconceivable to imagine any manageable trial absent severance; neither

14  is a manageable discovery process reasonably contemplated given the current procedural posture.

15  Indeed, the 4AC leaves the court and counsel with a procedural and substantive morass.

16  Defendants have already devoted countless hours to motions to dismiss deficient claims in the

17  operative pleading.  Still, even now, the 4AC does not reflect the remaining claims of each

18  plaintiff.  Positions that may be at issue for some are dismissed for others.  A similar onerous

19  investment in time and resources will be necessary throughout this case in order to decipher the

20  precise scope and nature of claims asserted by each Plaintiff and to reflect accurately what has

21  been dismissed and stricken.  Motion practice will continue to be unmanageable, with a

22  correspondingly disproportionate time and expense burden on the Defendants.

23          Finally, above and beyond the discovery nightmare which will most certainly materialize

24  absent severance, Defendants cannot receive a fair trial if this case is not severed.  At minimum, a

25  trial involving twenty-three persons' unrelated claims inevitably means unfair bias and confusion.

26  The substantial prejudice created by Plaintiffs' unfortunate tactics will increase tenfold if this case

27  continues without immediate severance.

28

## II.    <u>PROCEDURAL AND FACTUAL BACKGROUND</u>

Plaintiffs are twenty-three African-Americans.  Plaintiffs Gadson and Montgomery are airport operations supervisors and the remaining Plaintiffs are pilots.  4AC[4] ¶¶ 450, 432-434.  Defendants United Airlines and Continental Airlines became two wholly owned subsidiary airlines of United Continental Holdings, Inc. as a result of a 2010 merger.  4AC ¶ 130.  United Airlines and Continental now operate all flights under the United name.  4AC ¶¶ 139, 140.  All Plaintiffs were employed before the merger and many assert claims related to pre-2010, pre-merger occurrences.  *E.g.*, 4AC ¶¶ 525, 563, 593, 594; *see also* 4AC at 25:4-6, 27:8-10.  Briscoe and Sherman worked for Continental prior to the merger, whereas the remaining Plaintiffs worked for United.  Second Amended Complaint  ¶¶ 324, 332.

### A.    <u>After Multiple Opportunities To Amend, Plaintiffs Filed A Deficient Ninety-Nine Page Complaint On Behalf Of Twenty-Three Plaintiffs.</u>

Plaintiffs filed this lawsuit on May 29, 2012 and then voluntarily amended the complaint on July 20, 2012.  Since then, Defendants have been required to file several motions to dismiss and strike the operative complaint; challenging numerous deficiencies, including Plaintiffs' failure to meet the minimum pleading standards of Federal Rule of Civil Procedure 8.

On January 3, 2014, Plaintiffs filed the 4AC.  Defendants moved to dismiss and strike, and the Court granted in part and denied in part their motions.  *See* 6/27/2014 Order, Dkt. 110, amended by 8/5/2014 Order, Dkt. 117.  The Court dismissed many claims without leave to amend.  *Id.*  While the 4AC remains the operative pleading, it is not possible to determine what claims remain or are dismissed without undertaking the arduous and time consuming task of reading nearly one hundred pages differently twenty-three times, each time with the Court's August 5, 2014 Order in hand.  Indeed, it is necessary to interlineate the 4AC for each Plaintiff in order to reference a complaint that accurately reflects the claims which remain for each of the twenty-three plaintiffs.  *Id.*  Even the interlineation process is made more difficult by the existence of common allegations, some of which apply to some Plaintiffs, some of which do not, and still others about which no determination can be easily made.

---

[4] For the Court's convenience, the First, Second and Fourth Amended Complaints are attached to the Jennifer S. Baldocchi Declaration ("Baldocchi Decl.") filed concurrently herewith.

For the purposes of this motion only, Defendants rely on and assume as true certain factual allegations in Plaintiffs' pleadings.  All rights to dispute the factual and legal allegations in the Plaintiffs' pleadings are reserved.

**B.      Plaintiffs Work In Eight Cities, In Seven States.**

Of the twenty-three Plaintiffs, only five are domiciled in California.  Miller, Palmer, and Ecung are domiciled in Los Angeles.  Hartsfield and Johnson are domiciled in San Francisco. 4AC ¶¶ 7, 68, 73, 78, 113.  The remaining Plaintiffs are based in Dulles, Virginia; Denver, Colorado; Newark, New Jersey; Houston, Texas; Chicago, Illinois; and New York, New York. 4AC ¶¶  13, 19, 25, 31, 37, 43, 49, 55, 60, 64, 83, 88, 93, 98, 103, 108, 118, 123.  The following chart shows each Plaintiff's domicile according to the 4AC:[5]

| Name | City | State |
|---|---|---|
| Robinson | Denver | Colorado |
| Haynie | Dulles | Virginia |
| Roane | Dulles | Virginia |
| Wilson | Dulles | Virginia |
| Jones | Dulles | Virginia |
| Manswell | Dulles | Virginia |
| Minter | Dulles | Virginia |
| Ricketts | Dulles | Virginia |
| Montgomery | Dulles | Virginia |
| Haynie | Dulles | Virginia |
| Crocker | Houston | Texas |
| Haney | Houston | Texas |
| Washington | Houston | Texas |
| Briscoe | Houston | Texas |
| Sherman | Houston | Texas |
| Tom | Chicago | Illinois |
| Gadson | Newark | New Jersey |
| John | New York | New  York |
| Noble | New York | New  York |
| Miller | Los Angeles | California |
| Palmer | Los Angeles | California |
| Ecung | Los Angeles | California |
| Hartsfield | San Francisco | California |
| Johnson | San Francisco | California |

---

[5] 4AC 7, 13, 19, 25, 31, 37, 43, 49, 55, 60, 64, 68, 73, 78, 83, 88, 93, 98, 103, 108, 113, 118, 123.

C.      **Plaintiffs Allege Discrimination In Connection With Different Posted Positions,  Different Unposted Positions, And Different Special Assignments.**

Plaintiffs allege that they applied for or were interested in various promotions and special assignments, based in locations across the country, at different times, with dissimilar duties and responsibilities.  The many promotions and special assignments potentially at issue implicate an array of separate occurrences, which differ by Plaintiff, geography, time, witnesses, and evidence.

Seven Plaintiffs (Ecung, Haney, Haynie, Miller, Palmer, Ricketts, and Washington) do not allege that they applied for a single position.  *See generally* 4AC ¶¶ 68-83, 88-97, 103-112, 8/5 Order, Dkt. 117.  They challenge no posted positions, instead claiming discrimination with respect to an array of allegedly unposted positions and temporary, special assignments.  *See generally id.*

The remaining Plaintiffs challenge a range of posted positions, in addition to alleged unposted positions and special assignments.  For example, Johnson claims discrimination in connection with posted positions in Chicago in 2010 and in Houston in 2011.  4AC ¶¶ 188-192.  His challenged posted positions include:  Managing Director - Technology and Flight Test; Managing Director - Flight Operations; Managing Director - Flight Operations Crew Resources; Managing Director - System Chief Pilot; and Senior Manager - Fleet Standards - 787.  4AC ¶¶ 188-192.  The alleged recipients of these positions include Joseph Burns, Jim Starley, Chip Benton, Bo Ellis, and Dave Lundy.  *Id.*

Jones challenges posted positions in Chicago, Denver, Atlanta, San Francisco, Dulles, Los Angeles, and Houston.  4AC ¶¶ 211-225.  The positions include:  Senior Staff Representative Quality Assurance Audit Regulatory Compliance & FAA Liaison; Standards Captain - B767; Temporary - Job Share Standards Captain B767; Investigator - Flight Safety; Supervisor - Airport Operations Cargo; Flight Operations - Duty Manager; Director - Domestic Flight Operations; Assistant Chief Pilot - Captain - United; Job Share Assistant Chief Pilot - United; Manager - Flight Operations Safety Management; Manager - Flight Operations Regulatory Compliance; Project Manager - Flight Operations Technician; and Director of Diversity.  *Id.*  The alleged recipients of these positions include:  Darwin West, Michael Carpenter, Van Pinter, Paul

Swanson, Steven Cloud, Thomas Sully, George Cartwright, Jenifer Duce, Martin Near, John Quinn, Rulon Starley, James Bell, Michael Coyle, Tad Gordon, Alberto Diaz, Laura Logan, Christopher Dird, Omar Garcia, Jeffrey Greenman, Darwin West, Jon Merritt, and Diedra Fontaine. *Id.*

Crocker challenges posted positions in Denver, Los Angeles, San Francisco, Seattle, Dulles, New York, and Chicago. 4AC ¶¶ 239-252. The positions include 767 Pilot Instructor; A320 Temporary - Job Share Standards Captain; Assistant Chief Pilot; Director of Flight Operations; Domestic Flight Operations - Senior Manager; International Flight Operations - Senior Manager; Managing Director - Flight Operations; Managing Director - Flight Training; Managing Director - System Chief Pilot; Managing Director - Technology and Flight Test; A320 Standards Captain; and 767 Standards Captain. *Id.*

Wilson challenges posted positions in Denver, Houston, Chicago, Los Angeles, the Northeast Region; and the San Francisco/Seattle Region. 4AC ¶¶ 265-269. The positions include: Job Share Standards Captain A320; Flight Operations - Duty Manager; International Flight Operations - Senior Manager; Senior Manager - Fleet Training - A320; Assistant Chief Pilot; and Flight Operations Duty Manager. *Id.*

John challenges posted positions in Denver, Houston, Newark, Chicago, Dulles, San Francisco, and New York. 4AC ¶¶ 301-330. The positions include Line Training Manager - 777/787; Line Training Manager - A320; Flight Operations Duty Manager ("FODM"); Director - Flight Training Support; Assistant Chief Pilot; Flight Ops Leadership Development Associate; Job Share Standards Captain A320; Program Manager - Flight Ops Fleet Training B787; Chief Pilot; Standards Captain - B767; Senior Manager Int'l Flight Operations; Senior Manager Domestic Flight Operations; and Line Check Airman A320. *Id.* The alleged recipients include: Troy Maddox, Ron Davis, Scott Klein, Richard Howard, Mo Morsey, Martin Neary, John Quinn, Michael Weber, Jim Sasser, Kevin Harrigan, Jenifer Duce, James Abell, Steve Adams, Clark Clodfelder, Rob Pikowski, Laszlo Horanyi, Dave Sambrano, Mike McCasky, Omar Garcia, Carol Difeo, Robert Fuschino, Darius Pirzadeh, Lynn Nelson, Bob Early, Mike Bowers, Jeffrey De Paolis, Andy Jost, James C. White, and Jeffery Barath. *Id.*

1        Noble challenges a single posted position in Denver, 767 Standards Captain.  4AC ¶ 355.

2        Roane alleges discrimination in connection with positions in Denver, Dulles, Houston,

3 and New York.  4AC ¶¶ 371-376.  The alleged recipients include Carol Cameron, Emil Lassen,

4 Omar Garcia, Brad Peterson, Troy Maddox, and Johnie Quinn.  *Id.*

5        Tom challenges two posted positions in Chicago, Senior Manager - Flight Safety Action

6 Program and Event Review and Flight Operations Regulatory Compliance.  4AC ¶¶ 393-94.  The

7 alleged recipients were Bob Mackay and John Ogard.  *Id.*

8        Minter challenges positions in Chicago, Dulles, and New York.  4AC ¶¶ 410-415.  The

9 positions include Director - Corporate & Community Affairs; Managing Director - Pilot Contract

10 Administration - Flight Operations; Manager - Flight Operations Regulatory Compliance; Job

11 Share Assistant Chief Pilot - Captain - United; International Flight Operations - Senior Manager;

12 and Domestic Flight Operations - Senior Manager.  *Id.*

13        Montgomery challenges the Area Manager position in Dulles.  4AC ¶¶ 432-434.  The

14 alleged recipients were Chris Branch, Debbie St. George, and Alpha Diallo.  *Id.*

15        Gadson challenges a single posted position in Newark:  Manager of Airport Operations.

16 4AC ¶ 450.

17        Robinson challenges one posted position in Denver:  737 Fleet Captain.  The alleged

18 recipient was Dan Danahauer.  4AC ¶ 488.

19        Manswell challenges four posted positions in Dulles, 756 Line Check Airman; A-320 Line

20 Check Airman; Line Check Airman B-767/757; and Line Check Airman on Airbus A320.  4AC

21 ¶¶ 525-527.  He alleges recipients of only two positions; they are Mike Perun and Mike Tucker.

22 *Id.* ¶¶ 525-526.

23        Hartsfield challenges one posted position in San Francisco:  Line Check Airman -

24 Instructor Pilot.  4AC ¶ 563.

25        Briscoe challenges two posted positions in Houston for Line Check Airman.  4AC ¶ 574.

26        Sherman challenges posted positions in Houston, San Francisco, and Chicago.  4AC ¶¶

27 583, 593-610.  They include 737 Line Check Airman; 737 Chief Pilot; 777 Flight Instructor; 737

28 Flight Instructor; 777 Flight Instructor; 737 Line Check Airman; Assistant Chief Pilot; 737 Flight

Instructor; 737 Line Check Airman; and FODM.  *Id.*  The recipients include Marty Shupp, Tom Stivala, Jeff Pierce, David Gruss, Jessica Bader, Todd Beckman, Bryan Green, Ray Sean Silvera, Chris Dowell, Bill Sabesalk, Steve Adams, Nancy Barteczko, Sara Bull.  *Id.*

Plaintiffs allege similarly diverse lists of allegedly unposted positions and temporary, special assignments.  4AC ¶¶ 178-183; 8/5 Order, Dkt. 117.  Each Plaintiff challenges a collection of allegedly unposted positions and special assignments, located in geographic areas that span the United States.  The list of recipients for each of the unposted positions and special assignments is diverse and varied.  *Id.*

**D.**     **Plaintiffs' Claims Implicate Many Different Time Periods.**

The relevant time frame for each Plaintiff's claims varies considerably.  According to the complaint, for example, Plaintiffs allege discriminatory failure to promote in connection with their applications to posted positions on or about the following dates:

- Johnson:  December 2010, December 2011.  4AC ¶¶ 188-192.
- Jones:  April 29, 2011; March 1 and 2, 2011; June 12, 17, and 27, 2011; July 5, 2011; September 19 and 24, 2011.  4AC ¶¶ 211-225.
- Crocker:  2010-2011.  4AC ¶¶ 239-252.
- Wilson:  April 11, 2011; June 14 and 29, 2011; August 2011; March 29, 2012. 4AC ¶¶ 265-269.
- John:  February 4, 2011; April 18, 2011; June 14, 15 and 20, 2011; July 22, 2011; August 25, 2011; September 6 and 19, 2011; October 3, 2011; December 8, 2011; January 16, 2012; March 30, 2012; April 2, 2012; July 30, 2012, October 19, 2012.  4AC ¶¶ 283-316, 324.
- Noble:  November 1, 2011.  4AC ¶ 355.
- Roane:  April 18, 2011; June 18 and 27, 2011; July 4, 2011.  4AC ¶¶ 371-376.
- Tom:  January 29, 2011; April 29, 2011.  4AC ¶¶ 393-394.
- Minter:  February 28, 2011; March 8, 2011; May 2, 2011; July 12 and 13, 2011.
- Montgomery:  September 2011.  4AC ¶¶ 432-434.
- Gadson:  2011.  4AC ¶ 450.

- Robinson:  1999.  4AC ¶ 488.

- Manswell:  May 2009; January 2001; February 1, 2011.  4AC ¶¶ 525-527.

- Hartsfield:  February 1, 2009.  4AC ¶ 563.

- Briscoe:  2010 and 2012.  4AC ¶¶ 574-575.

- Sherman:  November 16, 2009;  September 29, 2009; 2010; June 13 and 30, 2011; August 12, 2011; November 14, 2011; June 16, 2012; July 25, 2012.  4AC ¶¶ 583, 593-604, 610.

E.    **Plaintiffs Present Different Backgrounds, Training, Qualifications, And Experiences.**

Plaintiffs' qualifications and experience are unique and varied, demonstrating further variability among their claims.  A few examples are the following:

Gadson and Montgomery work in airport operations.  They are not pilots.  United first hired Gadson in 1986 as a Reservation Agent.  First Amended Complaint ("FAC") ¶ 102.  She currently works as an Airport Operations Supervisor.  4AC ¶ 64.  United hired Montgomery on July 6, 1986 as a Customer Service Representative.  FAC ¶ 90.  Since then, he has received a number of promotions, including Sales Representative, Sales Account Executive, and Supervisor of Airport Operations.  *Id* ¶¶ 93, 94.  Montgomery also has held a number of special assignments, including Team Leader Supervisor at Baltimore Airport, Acting United Air Lines General Manager of the Richmond Airport, and Ramp Supervisor at Washington Dulles International Airport.  *Id.* ¶¶ 93-95.  Montgomery alleges that Director Bill Watts tried to persuade him to transfer to San Francisco so that he would not continue applying for the Area Manager position at Dulles.  *Id.* ¶ 99.

In contrast, United hired Johnson as a pilot about 36 years ago, and he has in excess of 20,000 flight hours.  4AC ¶ 6, 8.  Throughout Johnson's career he has received several promotions, including:  727 Second Officer, 727 First Officer, DC-10 First Officer, 737 Captain, and 757/767 Captain.  FAC ¶ 57.

Ecung is a 767/757 Captain and has been employed about 29 years and has over 15,000 flight hours.  4AC ¶¶ 68, 69.  Ecung has held several positions at United, including management

positions.  FAC ¶ 67.  In 1995, he was allegedly approached by Flight Manager Gregory Colliton and Chief Pilot Gary Meermans to sit in as an acting Flight Manager in the Los Angeles office.  *Id.* ¶ 68.  He then interviewed for a full time Flight Manager position, which he received.  *Id.*  He also assumed the position of Flight Operations Duty Manager and Flight Manager.  *Id.*  However, in 2002, he left the management team of his own accord.  *Id.*

In contrast, Roane has been employed for about 26 years, but has about 9,500 flight hours.  4AC ¶¶ 42-44.  He is an A320 Captain.  4AC ¶ 43.  Previously, he worked for Air Lincoln Airlines and Comair Airlines.  FAC ¶ 139.  Roane received several promotions since joining United.  *Id.* ¶ 140.  He also worked at Air Arabia while employed by United.  *Id.* ¶ 141.

Haynie was employed about 26 years and has about 18,000 flight hours.  4AC ¶¶ 93, 94.  Prior to working for United, he worked for Bar Harbor Commuter Airline.  FAC ¶¶ 170.  Haynie alleges that United hired a doctor to conduct a psychological evaluation, and his skin color may have played a part in his diagnosis as mentally incompetent or mentally retarded.  *Id.* ¶ 174.  Haynie further alleges that he has been subject to racial epithets, such as when he confronted First Officer Charles Lindberg about being intoxicated and Lindberg allegedly directed a racial slur towards him.  *Id.* ¶¶ 175, 178.   Haynie's most recent position was 767/757 Captain.  *Id.* ¶ 93.

Crocker alleges a very different experience.  He has been employed for about 25 years and has in excess of 15, 000 flight hours.  4AC ¶¶ 18, 20.  Crocker is an Airbus A320 Captain.  *Id.* at 19.  Crocker has over 10 years' Line Check Airman experience on the Airbus, allegedly more than most current Line Check Airman.  FAC ¶ 184.

In contrast to the other Plaintiffs, who were hired by United, both Briscoe and Sherman initially worked for Continental.  FAC ¶¶ 259, 288.  Briscoe and Sherman are 737 Captains.  *Id.* ¶¶ 118, 123.  Continental hired Briscoe in 1997 as a First Officer.  FAC ¶ 288.  Briscoe also worked for Eastern, Sun Bird, Triax, Rich International, and Pan Am Airlines.  *Id.* ¶ 291.  Sherman was hired by Continental as a Flight Officer in 1998.  FAC ¶ 259.  Prior to joining Continental, he worked at L'Express Airlines, U.S. Airways, and Trans World Airlines.  *Id.* ¶¶ 261-264.

1    These are just a few examples of the different range in experience among the Plaintiffs.

2    The remaining Plaintiffs have similarly divergent backgrounds.  *See generally* FAC ¶¶ 72-89,

3    108-136, 152-167, 192-258, 270-287, 297-307.

4    **F.    Plaintiffs' Legal Claims Are Different.**

5    Plaintiffs allege that Defendants discriminated against them by failing to promote them or

6    to place them in temporary, special assignments.  However, each Plaintiff asserts a unique

7    combination of legal claims, depending on the positions and special assignments he or she

8    challenges.

9    A few examples show the diversity of claims.  Plaintiff Briscoe alleges:  (1) violations of

10   Title VII, 42 U.S.C. § 1981 ("Title VII") and Section 1981 of the 1866 Civil Rights Act,

11   42 U.S.C. § 1981 ("Section 1981") based on his alleged failure to receive posted and unposted

12   positions; and (2) claims under Title VII, Section 1981, and FEHA based on special assignments.

13   4AC ¶¶ 178 (24:16-26:3), 181 (27:8-32:15), 572-577, 579-580; 8/5 Order, Dkt. 117.  In contrast,

14   plaintiff Crocker alleges:  (1) Title VII, Section 1981, and FEHA based on posted positions; and

15   (2) a Section 1981 claim based on unposted positions and special assignments.  4AC ¶¶ 178

16   (25:13-26:3), 181 (27:23-32:15), 236-254, 256-257; 8/5 Order, Dkt. 117.

17   Plaintiff Ecung does not allege any claims based on posted positions.  Instead, he alleges:

18   (1) violations of Title VII and Section 1981 based on alleged unposted positions; and (2) claims

19   under Title VII, Section 1981, and FEHA based on special assignments.  4AC ¶¶ 462-465; 8/5

20   Order, Dkt. 117, 7:23-8:6.  Plaintiff Gadson alleges:  (1) violation of Title VII and Section 1981

21   based on posted positions; and (2) violation of Section 1981 for unposted positions and special

22   assignments.  4AC ¶ 65 26:11-12, 15-16; 8/5 Order, Dkt. 117.  Plaintiff Haney has no claims

23   based on posted positions.  He alleges:  (1) a Title VII and Section 1981 claim based on unposted

24   positions; and (2) violations of Title VII, Section 1981, and FEHA in connection with his alleged

25   failure to be placed in special assignments.  4AC ¶¶ 178 (24:16-26:3), 181 (27:8-32:15), 549-57,

26   614-39; 6/27 Order, Dkt. 110.  Plaintiff Hartsfield alleges:  (1) Title VII and Section 1981 claims

27   based on posted positions and unposted positions; and (2) Title VII, Section 1981, and FEHA

28   claims based on special assignments.  4AC ¶¶ 178 (24:16-26:3), 181 (27:8-32:15), 561-68, 614-

1    39; 6/27 Order, Dkt. 110.  Plaintiff Haney has no claims based on posted positions.  He alleges:

2    (1) a Title VII and Section 1981 claim based on unposted positions; and (2) violations of Title

3    VII, Section 1981, and FEHA in connection with his alleged failure to be placed in special

4    assignments.  4AC ¶¶ 178 (24:16-26:3), 181 (27:8-32:15), 549-57, 614-39; 6/27 Order, Dkt. 110.

5    Plaintiff Hartsfield alleges:  (1) Title VII and Section 1981 claims based on posted positions and

6    unposted positions; and (2) Title VII, Section 1981, and FEHA claims based on special

7    assignments.  4AC ¶¶ 178 (24:16-26:3), 181 (27:8-32:15), 561-68, 614-39; 6/27 Order, Dkt. 110.

8    Plaintiff, Haynie brings a claim for harassment under Title VII in addition to his claims for failure

9    to promote or place him in special assignments.  4AC ¶¶ 641, 643-659.

10         The rest of the Plaintiffs similarly assert divergent combinations of claims depending on

11   the type of position or special assignment at issue for each individual at any given time or

12   location.  *See generally* 4AC ¶¶ 178-183, 185-611, 614-39; 8/5 Order, Dkt. 117.

13   **III.    SEVERANCE IS MANDATED WHERE TWENTY-THREE PLAINTIFFS ARE
         IMPROPERLY JOINED IN A SINGLE LAWSUIT**
14

15         Rule 20 allows for potential permissive joinder of multiple plaintiffs only if (1) they assert

16   a right to relief jointly, severally, or in the alternative with respect to or arising out of the same

17   transaction or occurrence, or series of transactions or occurrences; *and* (2) any question of law or

18   fact common to all the plaintiffs will arise in the action.  Fed. R. Civ. P. 20(a).  Both prongs must

19   be met.  *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997) (affirming severance of

20   plaintiffs seeking to compel the INS to rule on pending applications because general allegations

21   of delay did not create common transaction or occurrence).[6]

22         Should a court determine that the parties or claims are misjoined, the court may at any

23   time sever any party's claims or "drop" (that is, dismiss) all but the first named plaintiff so that

24   the other plaintiffs may each pursue their own lawsuits.  Fed. R. Civ. P. 21 ("On motion or on its

25   own, the court may at any time, on just terms, add or drop a party.  The court may also sever any

26

---

27   [6] Significantly, Federal Rule of Civil Procedure 20 makes clear that joinder is permissive and not
     mandatory even when all criteria are satisfied.  Importantly, Federal Rule of Civil Procedure
28   Rule 21 clarifies the inherent discretion of the court to do what is just under all circumstances.

1   claim against a party."); *Coughlin*, 130 F.3d at 1350 (all of the plaintiffs except first named

2   plaintiff may be dismissed without prejudice to the institution of new, separate lawsuits).

3       **A.**    <u>**Plaintiffs' Claims Fail The First Prong Of Permissive Joinder –The**</u>
        <u>**Transactional Relatedness Test – Because They Do Not Arise Out Of The**</u>
4       <u>**Same Transaction Or Occurrence.**</u>

               **1.**    **Unrelated Claims Arising Out Of Different Factual Backgrounds Do**
5                     **Not Meet The Transactional Relatedness Test.**

6         In *Coughlin v. Rogers*, the Ninth Circuit described the test for transactional relatedness,

7   the first prong for permissive joinder.  In that case, forty-nine plaintiffs alleged that the

8   Immigration and Naturalization Service unreasonably delayed their separate applications.  130

9   F.3d at 1349.  The Ninth Circuit found the claims were not sufficiently related to arise out of the

10  same transaction or occurrence.  *Id.*  First, each plaintiff waited a different length of time,

11  suffering a different duration of delay.  Second, the delay was disputed in some instances, and

12  varied from case to case.  Third, there were different reasons for the delay.  *Id.*

13        As explained in *Coughlin*, whether multiple plaintiffs' claims arise from the same

14  transaction or occurrence requires a fact-specific, case-by-case analysis.  The Ninth Circuit

15  defines the term "transaction or occurrence" to mean "similarity in the factual background of a

16  claim."  *Coughlin*, 130 F.3d at 1350; *see also Union Paving Co. v. Downer Corp.*, 276 F.2d 468,

17  470 (9th Cir. 1960) (claims that have "very definite logical relationship" arise out of same

18  transaction and occurrence).  The mere allegation, however, that all of the plaintiffs allegedly

19  faced similar problems is "not enough to create a common transaction or occurrence."  *Coughlin*,

20  130 F.3d at 1350.

21        Not surprisingly, multi-party discrimination cases often fail the transactional relatedness

22  prong because each employee's claim of mistreatment is a discrete employment action which

23  focuses on *that* employee's particular circumstances.  For example, in *Wynn v. NBC*, 234 F. Supp.

24  2d 1067, 1085-90 (C.D. Cal. 2002), the district court denied the joinder of multiple plaintiffs

25  asserting claims against fifty defendants on the basis of age discrimination.  The court examined

26  the following factors:  (1) whether the discrimination took place at roughly the same time;

27  (2) whether the discrimination involved the same people; (3) whether there was a relationship

28  between the discriminatory actions; (4) whether the discriminatory action involved the same

supervisor or occurred within the same department; and (5) whether there was geographic proximity between the discriminatory actions. *Wynn*, 234 F. Supp. 2d at 1087 (quoting *Byers v. Illinois State Police*, 2000 WL 1808558 (N.D. Ill. Dec. 6, 2000)). The *Wynn* court concluded that the plaintiffs' claims did not constitute the same transaction or occurrence, despite their evidence related to a pattern and practice of discrimination. *Id.* at 1078-79.

Similarly, in *Gammons v. Real Property Investment Services, Inc.,* 2010 U.S. Dist. LEXIS 139930 (D. Ariz. Aug. 9, 2010), two joined plaintiffs were employed to clean residential apartments owned by the defendant. The first alleged sexual harassment, and the second plaintiff asserted racial harassment. The two plaintiffs had at least one supervisor in common who committed the alleged discriminatory acts. However, the court found that the transactional relatedness test was not met because general claims of discrimination are not enough to create a common transaction or occurrence. The court pointed to the multiple factual differences between the two claims, including that they had: (1) different job positions; (2) different supervisors; (3) named different principal offenders; (4) asserted different reasons for leaving their employment; (5) different performance issues; and (6) suffered different adverse employment actions when they complained about the conduct. *Id.* at *10-12. Many other courts have reached the same result.[7]

---

[7] *See e.g. Thompson v. Sanderson Farms, Inc.*, 2006 U.S. Dist. LEXIS 62745, at *9 (S.D. Miss. Sept. 1, 2006) (joinder of plaintiffs improper where they alleged disparate treatment race discrimination claims, including for failure to promote); *Grayson v. K Mart Corp*, 849 F. Supp. 785, 789 (N.D. Ga. 1994) (joinder improper where plaintiffs alleged discriminatory demotions); *Smith v. N. Am. Rockwell Corp.–Tulsa Div*., 50 F.R.D. 515, 524 (N.D. Okla. 1970) ("Whether a defendant unlawfully discriminated against one plaintiff with respect to promotion or job assignment in a given department is not common with the question whether defendant unlawfully discriminated against another plaintiff in a separate department."); *Johnson v. Indopco, Inc.*, 846 F. Supp. 670, 676 (N.D. Ill. 1994) (denying joinder where current employee claimed race discrimination in denial of promotion, former employee claimed that sexual harassment and race motivated denial of promotion, and claims arose at different times); *Weir v. Litton Bionetics, Inc.*, 1986 U.S. Dist. LEXIS 24884, at *15-18 (D. Md. May 29, 1986); (severing claims of two age discrimination plaintiffs who were terminated at different times and worked in two divisions that operated independently of one another); *Smith*, 50 F.R.D. at 521-22 (court concluded that plaintiffs were misjoined in one action under Rule 20(a), noting that plaintiffs "have attempted to join in one action what are in reality four separate lawsuits arising out of four separate series of transactions or occurrences involving four disparate sets of facts").

2.      **Plaintiffs' Claims Arise Out Of Many Separate Occurrences.**

Applying the law to the facts at hand compels severance.  Plaintiffs have improperly attempted to join in one action what in reality are twenty-three separate lawsuits arising out of many separate alleged occurrences.  The claims are diverse and fragmented, bearing no logical relation to one another.  They do not arise from the same transaction or occurrence.

a)      **The alleged discrimination involves different positions and special assignments.**

Because Plaintiffs applied for or were interested in different positions, each allegedly suffered a distinct adverse employment action.  Each Plaintiff presents a separate list of posted positions, alleged unposted positions, and special assignments based in different cities — each of which involves its own set of relevant decision-makers and recipients.  *See supra,* Sections II.B-F.  The jobs range from positions such as Area Manager and 737 Fleet Captain, to Line Check Airman and Chief Pilot.  Some Plaintiffs, such as Manswell, Minter, and Sherman, challenge posted positions, unposted positions, and special assignments.  4AC ¶¶ 57-59, 100-102, 125-127.  Others, like Palmer and Ricketts, challenge only allegedly unposted positions and special assignments, but no posted positions.  *Id*. ¶¶ 478-483, 497-503.  Some Plaintiffs challenge a long list of jobs, like plaintiff John, who alleges forty-six instances of discrimination involving posted jobs.  *Id.* ¶¶ 283-330.  Others challenge fewer:  Jones attacks twenty posted positions, Crocker fourteen, and Roane six.  *Id.* ¶¶ 188-225, 239-252, 283-330.  Still others, such as Noble, Gadson, Hartsfield, and Robinson, challenge only one posted position.  *Id.* ¶¶ 355, 450, 488, 563.[8]

The simple fact that this case involves twenty-three different careers of twenty-three different Plaintiffs with twenty-three different backgrounds, training, experience, facts and circumstances is testament to the compelling need to sever these parties and claims into the individual cases that they are.

---

[8] To the extent more than one plaintiff seeks the same position, Plaintiffs are faced with a conflict of interest in establishing their claims.  Defendants reserve all rights to later raise the conflict of interest issue as this case proceeds.

b) **The alleged discrimination involves different time periods and is not geographically connected.**

Because Plaintiffs challenge different positions, the relevant timeframes are, of course, significantly varied. *See supra,* Section II.D.  For example, Johnson identifies December 2010 and December 2011 as his relevant application dates.  4AC ¶¶ 188-192.  Wilson identifies June 14 and 29, 2011; April 11, 2011; August 2011; and March 29, 2012. *Id.* ¶¶ 265-269.  Robinson identifies 1999. *Id.* ¶ 488.  Manswell identifies January 2001; May 2009; and February 1, 2011. *Id.* ¶¶ 525-527.  Some Plaintiffs (Crocker, Gadson, John, Johnson, Jones, Montgomery, Minter, Noble, Roane, Tom, and Wilson), place a blanket time restriction on their claims, challenging only adverse employment actions that occurred after February 2011. *See* 4AC ¶¶ 615, 626, 634. The rest do not place this limitation. *See id*. As noted in *Wynn*, such varying times weigh against transactional relatedness.

In addition, as specified above, Plaintiffs' domiciles are geographically scattered in eight different cities in seven different states across the country.  The locations of the positions at issue for each Plaintiff are similarly varied.  For example, Montgomery challenges a posted position in Dulles, Gadson in Newark, Robinson in Denver, and Hartsfield in San Francisco.  4AC ¶¶ 434, 450, 488, 563.  Johnson alleges discrimination in connection with posted positions in Chicago and Houston.  4AC ¶¶ 188-192.  Jones challenges posted positions in Chicago, Denver, Atlanta, San Francisco, Dulles, Los Angeles, and Houston.  4AC ¶¶ 211-225.  The lack of a common geographic connection weighs in favor of severance.

c) **The alleged discrimination involves different evidence.**

The evidence related to each posted position, unposted position, and special assignment at issue is different.  In a failure-to-promote case, the experience of a plaintiff must be measured against the requirements for each job that he or she challenges. *Lyons v England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (disparate treatment *prima facie* case requires showing that the plaintiff was qualified for the position but rejected despite his or her qualifications).  This test demonstrates the multiplicity of occurrences, because the jobs at issue call for different types of experience.  For example, an Area Manager job (sought by Montgomery) obviously has different candidate

1    requirements from the Chief Pilot or the Director of Diversity positions (challenged by John and

2    Jones, respectively).  Moreover, Plaintiffs bring equally diverse work experience to the analysis.

3    Some are 757/767 Captains (*e.g.* Minter and Noble), some are Airbus A320 Captains (*e.g.*

4    Crocker and Haney), others are Airport Operations Supervisors (*e.g.* Montgomery and Gadson).

5    4AC ¶¶ 19, 37, 55, 60, 64, 108.  Their flight hours differ.  For example, Johnson alleges over

6    20,000 flight hours, Ecung alleges over 15,000, and Roane alleges over 9,500.  4AC ¶¶ 8, 44, 69.

7    Some Plaintiffs served in the military (*e.g.* Johnson, Ecung, Palmer, and Noble).  FAC ¶¶ 55, 64,

8    83, 110.  Some worked for other airlines (*e.g.* Roane, Haynie).  FAC ¶¶ 139, 170.  Some have

9    graduate degrees (*e.g.* Robinson and John); others earned college degrees (*e.g.* Briscoe), and one

10   alleges high school as the highest degree received (*e.g.* Gadson).  FAC ¶¶ 102, 130, 278, 289.

11   Some Plaintiffs allege special assignment experience (*e.g.* Gadson and Montgomery), 4AC ¶¶

12   60, 64.  Others do not.  *E.g.* 4AC ¶¶ 187-192, 211-225,  265-270, 354.

13          Some even worked in the same positions that others complain about not receiving due to

14   discrimination.  For example, Ecung previously worked as a Flight Operations Duty Manager at

15   United, but voluntarily decided to leave the management team.  FAC ¶ 67.  In contrast, Sherman,

16   Wilson, and John allege discrimination in connection with their failure to receive the *same*

17   position: *Flight Operations Duty Manager.*  4AC ¶¶ 269, 303, 604.  Likewise, Crocker has over

18   ten years of Line Check Airman experience on the Airbus (FAC ¶ 184); whereas Manswell

19   claims discrimination in his failure to receive the Line Check Airman position on the Airbus

20   A320.  4AC ¶ 527.

21          Similarly, the evidence related to each Plaintiff's alleged experiences of discriminatory

22   animus is different.  The 4AC contains allegations about events at United in the 1970s through the

23   1990s — decades before the company's merger with Continental.  4AC ¶¶ 148-158.  Defendants

24   of course object to these allegations as outdated and irrelevant for any purpose.  Putting that

25   aside, however, they certainly have no bearing on the claims of plaintiffs who worked at pre-

26   merger Continental.  Similarly, the 4AC contains allegations about the experiences of

27   Continental's first African-American pilot, more than fifty years ago, and the experiences of a

28   focus group within "pre-merger Continental."  4AC ¶¶ 160, 164-166.  Again, Defendants object

1   to the relevance of such evidence.  Nevertheless, it cannot be disputed that Plaintiffs' experiences

2   at pre-merger Continental have nothing to do with the Plaintiffs hired by United, and thus that

3   evidence has no relevance to the claims of the pre-merger United employees.

4                    **d)**         **The alleged discrimination involves different witnesses.**

5            This is a case that involves discrete decisions.  Plaintiffs have not and cannot point to

6   common decision-makers.  This lack of concerted action forecloses proper joinder.

7            Beyond the decision makers, the other witnesses will vary.  Plaintiffs' supervisors are

8   different, and varied over time, based on their diverse work experiences and the locations and

9   jobs implicated by their employment histories.  Individuals who are accused by Plaintiffs of

10  exhibiting discriminatory animus vary, as will those who allegedly witnessed the comments or

11  conduct on which each Plaintiff relies to prove his or her case.  Indeed, the First Amended

12  Complaint alleges discrimination based on Plaintiffs' assignments, performance evaluations,

13  reprimands, discipline, and the investigation or response to alleged complaints.  FAC ¶¶ 313-320.

14  Such allegations, by their very nature, implicate an array of witnesses, in many locations, unique

15  to each Plaintiff.

16           Further, the successful candidates for each alleged position are varied.  For example, John

17  alleges that he was rejected in favor of:  Troy Maddox, Ron Davis, Scott Klein, Richard Howard,

18  Mo Morsey, Martin Neary, John Quinn, Michael Weber, Jim Sasser, Kevin Harrigan, Jenifer

19  Duce, James Abell, Steve Adams, Clark Clodfelder, Rob Pikowski, Laszlo Horanyi, Dave

20  Sambrano, Mike McCasky, Omar Garcia, Carol Difeo, Robert Fuschino, Darius Pirzadeh, Lynn

21  Nelson, Bob Early, Mike Bowers, Jeffrey De Paolis, Andy Jost, James C. White, and Jeffery

22  Barath.  4AC ¶¶ 301-330.  These individuals are different from the recipients alleged by Jones:

23  Darwin West, Michael Carpenter, Van Pinter, Paul Swanson, Steven Cloud, Thomas Sully,

24  George Cartwright, Jenifer Duce, Martin Near, John Quinn, Rulon Starley, James Bell, Michael

25  Coyle, Tad Gordon, Alberto Diaz, Laura Logan, Christopher Dird, Omar Garcia, Jeffrey

26  Greenman, Darwin West, Jon Merritt, and Diedra Fontaine.  4AC ¶¶ 211-225.

27           Plaintiffs do not point to a single individual whom they all claim allegedly displayed

28  discriminatory animus.  For example, Montgomery focuses on Airport Operations Director Bill

1   Watts, who allegedly tried to persuade him to transfer to San Francisco so that he would cease

2   applying for an Area Manager position at Dulles.  FAC ¶ 99.  Bill Watts' testimony will have

3   absolutely no relevance in, for example, Johnson's case.

4        Likewise, Robinson focuses on statements from a Training Check-Captain, System Chief

5   Pilot Rick Moroney, and Bob McKay.  FAC ¶¶ 133-34.  Ricketts points to alleged remarks by

6   other Captains.  FAC ¶ 156.  Haynie alleges racial slurs from First Officer Charles Lindberg.

7   FAC ¶¶ 175, 178.  None of the other Plaintiffs make similar allegations regarding these

8   individuals.  Thus, each alleged incident arises not from the same transaction or occurrence, but

9   rather from separate situations, in different places at different times, which must be considered by

10  the Court or jury, Plaintiff by Plaintiff, only as to the particular Plaintiff involved.

11       This wide variety of relevant persons and witnesses is yet another demonstration of the

12  lack of a common transaction or occurrence.  In sum, the twenty-three Plaintiffs cannot satisfy the

13  transactional relatedness test.  Their claims must be severed.

14       **B.**     **Plaintiffs' Claims Fail The Second Prong Of Permissive Joinder Because No**

15           **Common Question Of Fact Or Law Arises.**

16       In order to satisfy the second prong of Rule 20, Plaintiffs must show common questions of

17  law or fact.  As the Ninth Circuit has explained, "the mere fact that all Plaintiffs' claims arise

18  under the same general law does not necessarily establish a common question of law or fact."

19  *Coughlin*, 130 F.3d at 1351.  Rather, claims are not properly joined where each is based on

20  "discrete" facts with "different legal issues."  *Id.*  Where the Plaintiff's "claims require significant

21  'individualized attention,' they do not involve 'common questions of law or fact.'"  *Coalition for*

22  *a Sustainable Delta v. U.S. Fish & Wildlife Serv.*, 2009 WL 3857417, at *7 (E.D. Cal. Nov. 17,

23  2009) (quoting *Coughlin*, 130 F.3d at 1351).

24       Here, each Plaintiff's case *requires* individualized attention.  The only scintilla of

25  commonality alleged by Plaintiffs is the legal theory of discriminatory failure to promote.  Any

26  semblance of commonality ends there.  Indeed, instead of alleging a common question of law,

27  each Plaintiff seeks recovery under *different* laws.  *See supra* Section II.F.  Plaintiffs allege the

28  violation of different statutes (either Title VI, Section 1981, or FEHA), depending on their

1    positions at issue, the timeframe involved, their exhaustion of administrative remedies, and

2    whether the Plaintiffs' claims implicate California law and FEHA. *See supra* Section II.F.; 8/5

3    Order, Dkt. 117.

4         Further, the factual circumstances underpinning each Plaintiff's claims are vastly

5    different. Each has a unique employment history grounded in different domiciles, under different

6    supervisors, and each challenges distinct positions and assignments located throughout the United

7    States, which were based on unique job requirements, posted or filled in different years. No

8    common decision-maker is or can be identified. No common factual or legal questions can arise

9    from such widely divergent circumstances. Instead, each alleged instance of failure to promote

10   raises its own set of legal issues and unique questions that must be separately analyzed.

11        The answers to the myriad questions raised by one Plaintiff's claim challenging one

12   position or special assignment will have no impact on another Plaintiff's claim with respect to

13   another position. Consider, for example, the following: Sherman is a former employee of

14   Continental (until its merger with United), who is domiciled in Houston, and has over 19,000

15   hours of flight experience. FAC ¶¶ 32, 124. He challenges a 777 Flight Instructor position based

16   in Houston, for which he applied in 2009, before the merger, allegedly filled by Jeff Pierce. *See*

17   4AC ¶ 594. Any analysis or determination of whether or not Continental discriminatorily failed

18   to promote Sherman for the Flight Instructor position will have no bearing on whether or not

19   Plaintiff Montgomery (a nearly 30-year employee of United, domiciled in Dulles) was

20   discriminated against in his alleged failure to receive a non-flight Area Manager position at

21   Dulles, for which he applied in 2011 and which allegedly was filled by Alpha Diallo. 4AC ¶ 434.

22   Likewise, evidence relevant to Jones' challenge to the B767 Standards Captain position in

23   Denver, for which he allegedly applied in 2011 (4AC ¶ 212), will have no relation to the evidence

24   necessary to prove or disprove Johnson's challenge to the Managing Director of Technology and

25   Flight Test position in Chicago, for which he allegedly applied in 2010 (4AC ¶ 188).

26        No common facts or law can answer the central questions concerning the allegations of all

27   twenty-three Plaintiffs with respect to each of the challenged employment decisions dispersed

28   throughout the country. The court and the fact finder will have to give each Plaintiff's claim

individualized attention.  "Therefore, the claims do not involve common questions of law or fact."  *Coughlin*, 130 F.3d at 1351;  *Robinson v. Geithner*, 2011 U.S. Dist. LEXIS 2054, at *22 (E.D. Cal. Jan. 7, 2011) ("[B]ecause these claims arise out of separate employment decisions, in different divisions, with different supervisors, and Plaintiffs suffered different types of adverse employment decisions, Plaintiffs' claims are factually distinct and do not satisfy the commonality requirement.").

**C.     Bare Allegations Of A Common Discriminatory Policy Or Practice Do Not Tilt The Balance In Favor Of Joinder.**

The bare allegation that Plaintiffs were subject to a common policy or practice of discrimination is insufficient to support joinder.  In *Wynn v. NBC*, 234 F. Supp. 2d 1067 (C.D. Cal. 2002), the district court refused to join the defendant employers based on an alleged industry-wide pattern and practice of age discrimination in the hiring of television writers.  *Id.* at 1078-79.  The court focused on an absence of concerted action among the defendants to unite them in a discriminatory hiring scheme.  "Plaintiffs' allegations that joinder is warranted merely because each Defendant's (or some sub-group of Defendants') autonomous hiring decisions, when taken together, comprise an industry-wide discriminatory practice, has no basis in law."  *Id.* at 1080.

Like *Wynn*, Plaintiffs present no allegations of fact showing an actual concert of action or common decision-maker.  The operative complaint contains only a skeletal list of alleged policies, devoid of factual content, which Plaintiffs originally advanced to support their now-dismissed disparate impact claims.  4AC ¶ 176.  Such threadbare allegations fall far short of a common practice of discrimination.   *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78, 681 (2009) ("[B]are assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim," for the purposes of ruling on a motion to dismiss, are not entitled to an assumption of truth.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Where the "incidents of alleged discrimination do not stem from the application or the implementation of a particular policy" and the "complained of conduct is distinct with regard to

each claim," Plaintiffs' claims cannot pass the transactional relatedness test. *Robinson*, 2011 U.S. Dist. LEXIS 2054, at *19-20.

## IV.    THE INTERESTS OF JUSTICE REQUIRE SEVERANCE

The Court's ability to sever parties under Rules 20 and 21 is not limited to curing the misjoinder of parties. While the elements of Rule 20 must be met in order to *allow* for the possibility of joinder where just, joinder is never *required.* Rather, even when the requirements of Rule 20 and Rule 21 are fulfilled, the trial court must "examine the other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principle of fundamental fairness." *Desert Empire Bank  v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980), *superseded on other grounds as stated in Gunn v. Wild*, 2002 U.S. Dist. LEXIS 3628 (N.D. Cal. Feb. 26, 2002)); *Wynn*, 234 F. Supp. 2d at 1078 ("Rule 20(a) is permissive in character; joinder in situations falling within the rule's standard is not required.") (citation, internal quotation marks and alterations omitted).

District courts have broad discretion to sever under Rules 20 and 21. Courts should sever claims to prevent unfair prejudice, avoid confusion of the issues, and waste of time. *See* Fec. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."); *Id*. Rule 20(b) (permitting courts to issue any order "to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party"). *See also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) ("Even once [the permissive joinder] requirements are met, a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side. Under Rule 20(b), the district court may sever the trial in order to avoid prejudice.") (internal citation omitted); *Applewhite v. Reichhold Chems., Inc*., 67 F.3d 571, 574 (5th Cir. 1995) (under Rules 20 and 21, a district court has discretion to sever an action if it might cause delay or prejudice).

Case No. 3:12-CV-02730-MM

DEFTS' NOTICE OF MOTION AND MOTION TO SEVER PARTIES AND CLAIMS

1 The joinder of twenty-three Plaintiffs in this case does not serve the interests of justice.

2 *Coughlin*, 130 F.3d at 1351; *Wynn*, 234 F. Supp. 2d at 1078 (courts must "examine the other

3 relevant factors in a case in order to determine whether the permissive joinder of a party will

4 comport with the principle of fundamental fairness").

5 **A.** **Severance Is Necessary To Prevent Unfair Prejudice To Defendants.**

6 As currently postured, this case is not manageable; rather, it is poised to create prejudice,

7 error, confusion, delay, and miscarriage of justice. Tremendous inefficiencies have already

8 presented. Unfair prejudice inevitably will result if the twenty-three Plaintiffs proceed in a single

9 lawsuit.

10 **1.** **Plaintiffs' Misjoinder Has Already Caused Prejudice.**

11 Misjoinder already has caused prejudicial confusion of the issues and waste of time and

12 resources. Since the original complaint was filed two years ago, Defendants have been forced to

13 file *fifteen* motions due to Plaintiffs' continued assertion of deficient claims, inability to keep

14 track of their own claims and facts, and refusal to stipulate. *See* Dkt. 15, 28, 33, 41, 45, 48, 58,

15 70, 78, 79, 87, 91, 92, 108, 111 (motions to dismiss, motions to strike, and administrative motions

16 to extend time, page limits, etc.). Even Plaintiffs have failed to keep their claims straight. In the

17 4AC, they reasserted *six* different categories of claims that were dismissed with prejudice.[9] In the

18 Corrected Third Amended Complaint, Plaintiff Johnson continued to plead a disparate impact

19 claim under FEHA, even though the Court previously dismissed it.[10] Defendants have already

20 spent immense amounts of time and resources attempting to unravel this case, distinguishing

21 dismissed claims from those remaining, and preparing motions to obtain a clear — and fair —

22 pleading. Enough is enough.

23 **2.** **Answering The Fourth Amended Complaint Is Impossible.**

24 Even the most basic task — answering Plaintiffs' Complaint — is impossible in its

25 present configuration. The 4AC does not reflect the remaining claims of each Plaintiff, does not

26 eliminate claims dismissed or stricken by order of the Court, and contains generalized allegations,

27

[9] *See* 8/5 Order, at 4-5, Dkt. No. 117.
28 [10] *See* 12/05/13 Order, at 4, Dkt. No. 89.

1   the applicability of which is often impossible to decipher.  Not only will the answer require

2   separate responses and defenses, on a Plaintiff-by-Plaintiff basis, to each of the individual

3   allegations of Plaintiffs' nearly 100-page Complaint, but even prior to doing so, Defendants must

4   first interlineate the Complaint for each of the twenty-three Plaintiffs to determine which

5   allegations remain pertinent to which Plaintiffs.  Even the time consuming interlineation process

6   does not provide clarity in light of the many generalized allegations, the applicability of which

7   remains uncertain on a Plaintiff-by-Plaintiff basis. The Court has recognized the time-consuming

8   challenge of engaging in a separate, fact-specific analysis for each of the twenty-three Plaintiffs:

9   "So, okay, now, we're go[ing] to a couple of other plaintiffs. . . .  And this is going to take a long

10  time because you are endeavoring, it appears to me, to file something in the nature of a class

11  action without a class."  Baldocchi Decl. Ex. A (Oct. 2012 Tr. 17:6-10).

12              **3.      Initial Disclosures And Discovery Will Prejudice Defendants.**

13              Defendants will be significantly prejudiced if forced to participate in initial disclosures

14  and discovery without severance.  Since the early stages of this case, Plaintiffs have embarked on

15  a relentless quest for sweeping discovery based on vague accusations, in an apparent attempt to

16  search for potential facts that might be used to cobble together a claim.  Their plan remains to

17  demand overbroad discovery into matters neither relevant nor narrowly tailored to each person's

18  case, under the pretense that their claims — because they are part of the same suit — must be

19  treated as related.

20              The interrogatories served by two Plaintiffs — Johnson and Montgomery — demonstrate

21  this point.  Johnson and Montgomery seek records pertaining to *all* pilots and *all* operations

22  managers hired by Defendants, including date of hire, date of birth, gender, race, education, job

23  title, flight hours, type ratings, union positions, and annual pay, from *2006 to the present*.

24  Baldocchi Decl. Exs. B, C.  Initially, Johnson's case does not even implicate alleged wrongdoing

25  before February 2011 (4AC ¶¶ 615, 626, 635), making the eight-year scope of his interrogatories

26  hopelessly overbroad.  Moreover, the requests seek private, privileged, and confidential

27  personnel-related information, which as a whole is not relevant to any Plaintiff's claims.

28

Johnson's First Requests for Production of Documents ("RFP") are similarly overbroad. Johnson requests documents on behalf of all twenty-three Plaintiffs. *Id.* at Ex. D. Johnson does not even challenge most of the positions about which he seeks discovery. *See id.* (RFP Nos. 16-82). He also requests employment records concerning job positions that do not match the operative complaint. *Id.* at Ex. D. For example, RFP 24 seeks records concerning the filling of Senior Manager - Flight Operations - 787 in Houston, a position absent from the 4AC. *Id.* RFP 31 and RFP 32 appear to seek records for two Manager - Flight Training 787 positions, one in Denver and one in Houston. The Complaint in contrast, alleges a single position based in Denver *and* Houston, to which Roane, *not Johnson*, allegedly applied. 4AC ¶ 375.

Plaintiffs' right to discovery must be evaluated on a request-by-request, person-by-person basis. The Supreme Court has made clear that the doors of discovery are unlocked only as to plausible claims for relief, properly pled in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (Rule 8 does not "unlock the doors of discovery" for a plaintiff armed with nothing more than conclusions). Plaintiffs' overreaching group-discovery is designed to harass and improperly search for evidence of unknown wrongs that they can use in each other's cases.

Defendants will object, and discovery disputes will ensue. Countless hours will be spent distinguishing the parameters of each claim of twenty-three individuals, parsing out whether a particular request is relevant to any particular Plaintiff and opposing overreaching requests through costly and time-consuming protective orders and discovery motions. Harm and irrevocable prejudice will be unavoidable; the interests of justice will not be served.

### 4.     Motions And Rulings Will Be Unmanageable.

Absent severance, motions and rulings will be so unmanageable as to be impossible. Motion practice in this case already has created challenges on multiple fronts due to the large number of Plaintiffs and claims. *See* Baldocchi Decl. Ex. A (Oct. 2012 Tr. 27:24-28:3 ("I mean, you had a lot of things to try and talk about in a single motion . . . created by the fact that any issue was multiplied by 23.")). The misjoinder of 23 individual cases has created unnecessary and unfair burden and expense on Defendants over an extended period of time. Absent severance, the future will hold more of the same. Future motions, for example, ranging from discovery to

1   summary judgment, will require a level of detail and individualized analysis for each Plaintiff and

2   claim that is impossible to accomplish within the required page limits for a single brief.

3   Defendants foresee having to file multiple, Plaintiff-specific motions, which in turn will require

4   time-consuming review from the Court.  *See Coleman v. Blockbuster, Inc.*, 2008 U.S. Dist.

5   LEXIS 49957, at *9-10 n.4 (E.D. Pa. June 30, 2008) ("Although plaintiffs joined their claims in a

6   single complaint, each individual plaintiff's case must be considered separately. . . .  The

7   terminations and other adverse actions complained of by plaintiffs are separate events, involving

8   different factual and legal questions.  Therefore, each claim will be analyzed individually.").

9           **5.      Absent Severance Now, The Risk Of Unfair Bias, Prejudice and Error**

10                 **Is Acute.**

11          If the Plaintiffs' claims are tried together, a jury's consideration of one person's

12  allegations will taint its assessment of another Plaintiff's entirely different claims (which may

13  even implicate a wholly different employer, *i.e.* pre-merger Continental versus United), resulting

14  in unfair guilt by association.  *Coleman*, 232 F.3d at 1297 ("The district court properly considered

15  the potential prejudice to [the defendant] created by the parade of terminated employees and the

16  possibility of factual and legal confusion on the part of the jury.").  Plaintiffs' own allegations

17  betray their scheme to use evidence of alleged discrimination from one person's isolated

18  experiences to inculpate decision-makers in unrelated situations.  Such prejudicial tactics require

19  severance.  *Wynn*, 234 F. Supp.2d at 1089 ("In fact, if Plaintiffs' complaint is any indication, their

20  intention is precisely to use alleged ageist remarks from one employer to inculpate employers

21  who made no such remarks, which is exactly the type of conduct that warrants severance.").

22  *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 188 (3d Cir. 1990) ("Evidence that a party

23  committed wrongs other than those at issue in a case often creates a danger of 'unfair prejudice'

24  because such evidence may influence a jury to return a verdict based on a desire to punish for the

25  other wrongs.").

26          Without severance, the trier of fact is likely to impute one person's actions, with respect to

27  one Plaintiff or challenged position, to a different decision-maker with respect to an entirely

28  different Plaintiff and position.  The risk of such unfair prejudice and error is why unrelated

1    evidence of misconduct against persons other than the individual Plaintiff is neither discoverable

2    nor admissible.  *See, e.g.*, *Reyna v. City of Portland*, 270 F. App'x 682, 685-86 (9th Cir. 2008)

3    (affirming district court's denial of discovery into the defendant's selection process for a special

4    team, where the selection process was not at issue); *Kaiser Found. Health Plan v. Superior Court*,

5    2012 Cal. App. Unpub. LEXIS 2092, at *3-4 (Cal. Ct. App. 2012) ("Even at the discovery stage,

6    at a minimum, the 'me too' evidence should relate to actions by decision makers within the same

7    chain of command.  Unless real party in interest shows that others outside this chain of command

8    were involved in the decision to fire him, discovery should be limited to that pertaining to the

9    facility and HR department where real party in interest was employed.  The trial court opined that

10   if discovery were so limited, then only real party in interest's complaint would be disclosed.  So

11   be it.") (internal citation omitted); *Hatai v. Dep't of Transp.*, 214 Cal. App. 4th 1287, 1295-98

12   (2013) (discussing "me, too" evidence and affirming a trial court's ruling barring evidence of

13   discrimination against racial groups other than that of the plaintiff), *review denied*, 2013 Cal.

14   LEXIS 4848 (June 12, 2013).

15          Given the potential for unfair bias, a single trial of a combined 23 Plaintiffs is

16   unmanageable on every level:  complicating evidentiary rulings and depriving all concerned of

17   the  Court's discretion to rule on the admissibility of marginally relevant but highly prejudicial

18   evidence.

19          **B.      <u>Severance Is Necessary To Prevent Confusion.</u>**

20          Even if there is no unfair bias, the risk for confusion and error will be high.  The current

21   misjoinder creates confusion for the parties, the Court, and jury.  If these individual cases remain

22   together, it will continue to be difficult, in the extreme, to follow the contentions of twenty-three

23   different Plaintiffs and to parse who did or said what, to whom, and for what reason.  *Henderson*

24   *v. AT&T Corp.*, 918 F. Supp. 1059, 1063 (S.D. Tex. 1996) (directing in part that the claims of

25   former employees from separate offices, which alleged various combinations of race, age, and

26   national origin discrimination be severed because the claims were "highly individualized" and

27   would be "extraordinarily confusing for the jury . . . requiring the jury to keep separate more than

28   twenty claims of five Plaintiffs").  Ultimately, the case will morph into twenty-three cases within

1    a case.  Plaintiff by Plaintiff, the parties will litigate the individual Plaintiff's challenged list of

2    positions and special assignments.  The reason for each selection decision will vary widely and

3    the evidence proving or disproving each discrimination claim also will differ.  Because Plaintiffs'

4    claims will be governed by different laws, discovery and trial will become more hopelessly

5    confused, complicated and unmanageable.

6         For example, when considering a certain position, the Court and jury will have to keep

7    straight that Briscoe alleges violations of Title VII and Section 1981 based on posted and

8    unposted positions, and adds FEHA to the list of statutes for special assignments; that Crocker

9    alleges Title VII, Section 1981 *and* FEHA for posted positions, and Section 1981 for unposted

10   positions and special assignments; that Ecung has no claim based on posted positions, but alleges

11   Title VII, Section 1981 based on unposted positions, and Title VII, Section 1981 and FEHA

12   based on special assignments.  4AC ¶¶ 235-57, 461-466, 614-39; 8/5 Order, Dkt. 117.  Plaintiffs'

13   different combinations of legal claims are dizzying.

14        Severance will not prejudice the parties; to the contrary, it will benefit the parties, court

15   and counsel by allowing for proper allocation of time, resources, and focus.  Critically

16   importantly, severance is the only way to allow for fair and manageable discovery and trial,

17   avoiding prejudice, error, and confusion.

18   **V.      CONCLUSION**

19        Plaintiffs' claims are misjoined and must be severed now.  They arise from separate

20   transactions and occurrences and implicate distinct questions of fact and law.  An individualized

21   inquiry is necessary to determine whether or not each plaintiff suffered an allegedly

22   discriminatory adverse employment action.  Disparate treatment claims like this one do not meet

23   either of the requisite prongs for permissive joinder.

24        Further, joinder in this case does not serve the underlying policy of Rule 20 to promote

25   judicial economy, and to reduce inconvenience, delay, and added expense.  Instead, this group

26   action accomplishes the opposite — prejudice, delay, waste of time, and increased expense.

27

28

1      For all of the foregoing reasons, and in order to prevent miscarriage of justice Defendants

2  respectfully urge the Court grant its Motion To Sever Parties And Claims Pretrial And For Trial.

3

4  DATED:  October 3, 2014            PAUL HASTINGS LLP
                                      DONNA M. MELBY
5                                     JENNIFER S. BALDOCCHI
                                      JI HAE KIM
6

7

8                                     By:  _____/s/ Donna M. Melby_____
                                              DONNA M. MELBY
9
                                      Attorneys for Defendants UNITED AIRLINES, INC.;
10                                     AND CONTINENTAL AIRLINES, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28