1  *Counsel of Record listed*
   *on following page*
2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11  ELDRIDGE JOHNSON, an individual,        CASE NO. 3:12-CV-02730-MMC

12              Plaintiff,                   **JOINT CASE MANAGEMENT
                                             CONFERENCE STATEMENT AND
13        vs.                                [PROPOSED] ORDER**

14  UNITED AIR LINES, INC.;
    CONTINENTAL AIRLINES, INC.; and
15  DOES 1-10,                               Date:        March 13, 2015
                                             Time:        10:30 a.m.
16              Defendants.                  Courtroom:   7
                                             Judge:       Hon. Maxine M. Chesney
17
                                             Complaint filed:    May 29, 2012
18                                           FAC filed:          July 20, 2012
                                             SAC filed:          Nov. 30, 2012
19                                           TAC filed:          May 20, 2013
                                             Corrected TAC filed: June 21, 2013
20                                           4AC filed:          January 3, 2014
                                             5AC filed:          March 2, 2015
21

22

23

24

25

26

27

28

SPENCER SMITH (SB# 236587)
spencer@smithpatten.com
DOW W. PATTEN (SB# 135931)
dow@smithpatten.com
SMITH PATTEN
353 Sacramento St., Suite 1120
San Francisco, CA 94111
Telephone:  1(415) 402-0084
Facsimile:  1(415) 520-0104

Attorney for Plaintiff
ELDRIDGE JOHNSON


DONNA M. MELBY (SB# 86417)
donnamelby@paulhastings.com
JENNIFER S. BALDOCCHI (SB# 168945)
jenniferbaldocchi@paulhastings.com
JI HAE KIM (SB# 275020)
jihaekim@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA  90071-2228
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

GARY T. LAFAYETTE (SB# 088666)
glafayette@lkclaw.com
LAFAYETTE & KUMAGAI LLP
100 Spear Street, Suite 600
San Francisco, CA 94105
Telephone:  1(415) 357-4600
Facsimile:  1(415) 357-4605

Attorneys for Defendants
UNITED AIRLINES, INC. AND CONTINENTAL AIRLINES, INC.

1     Plaintiff Eldridge Johnson ("Plaintiff") and Defendants United Airlines, Inc. and

2  Continental Airlines, Inc. ("Defendants") jointly submit this JOINT CASE MANAGEMENT

3  STATEMENT AND PROPOSED ORDER pursuant to the Standing Order for All Judges of the

4  Northern District of California dated November 1, 2014 and Civil Local Rule 16-9.

5

6  **1.     JURISDICTION & SERVICE**

7        **Plaintiff:**

8        The Court has jurisdiction over this action under 28 U.S.C. §1331 and 42 U.S.C. §2000e-

9  5(f)(3) and 42 U.S.C. §1981.  The action presents federal questions under Title VII of the Civil

10  Rights Act of 1964, 42 U.S.C. §2000e, et seq., as amended, and 42 U.S.C. §1981.  The Court has

11  supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because

12  the state law claims arise out of the same transactions and occurrences.

13        This case involves an African-American Captain, Eldridge Johnson, who has been

14  repeatedly passed over for promotion into mid and upper level management positions throughout

15  the company.  United has a series of practices which have kept African-American Captains out of

16  management.

17        Venue is proper in this District because under the special venue provisions of Title VII of

18  the Civil Rights Act of 1964, Plaintiff would have worked in the District, the Complaint alleges

19  unlawful employment practices in the State of California, and the records related to promotions

20  and special assignments are administered and located within the Northern District of California.

21  (*See*  42 U.S.C. §2000e5(f)(3)).

22        Defendant has had ample opportunity to provide the Court with the factual foundation for

23  its claims that the present form and forum of this case are improper, but continues to avoid

24  identifying the decision makers and the processes used to for promotions. The allegations in

25  Plaintiff's Fifth Amended Complaint identify the specific promotions and employment practices

26  at issue and are sufficient to venue this matter in Northern District of California, join the claims

27  properly, and provide a convenient forum for the resolution of Plaintiff's claims.

28

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT AND
[PROPOSED] ORDER (JOHNSON)

1   The Court has already granted Defendants' motion to sever this case from other actions to

2   address claims of claim specificity and confusion.  The Court ruled that Plaintiff has stated race

3   discrimination claims as to a number of special assignments and unposted promotions.  (*See* Dkt

4   # 2, 2:9-15; 9:8-11).   Plaintiff was precluded from applying for these temporary and permanent

5   promotions because of Defendants' pattern and practice of secretly hand-picking non-African-

6   Americans for these positions.   Accordingly, Defendants have been ordered to respond to the

7   Complaint by March 16, 2015, and presumably will do so.

8   How Defendants respond to the complaint is of course up to them and their counsel;

9   however, the Court should note that further motions intended to delay this matter being decided

10   on the merits are not well-taken.  For example, during the meeting of counsel Plaintiff's counsel

11   warned Defendant concerning its oft-repeated claim that it wishes to move to transfer venue.

12   Plaintiff's counsel expressly warned Defendant's counsel that a venue motion, if made, will

13   contradict the sworn declaration of Defendants' Managing Director of Human Resources, Ron

14   Webb.   Defendant has already submitted Mr. Webb's sworn declaration in the main action,

15   stating that the records related to promotions are maintained in the airport domicile where the

16   positions are located (See 3:12-cv-02730-MMC, Declaration of Ron Webb in Support of

17   Defendants' Motion to Dismiss and Transfer and Request For Stay, Dkt #33-1, ¶6).   To the extent

18   that Plaintiff's Title VII, FEHA and 42 U.S.C. §1981 claims are based on the 21 California-based

19   special assignments pleaded in the Fifth Amended Complaint (Dkt # 8:  14:14-19:12) , venue is

20   clearly proper in the Northern District of California under all of Title VII's specific venue

21   provisions:  the District in which the employment records relevant to the dispute are maintained

22   and administered, and any District within the state where the unlawful employment practice

23   occurred, and the District in which Plaintiff would have worked but for the unlawful practice.

24   (*See* 42 U.S.C. §2000e5(f)(3); Dkt #8, 2:2-8).  As such, a motion based upon improper venue, has

25   no basis, and if filed will only serve to delay the resolution of this case on the merits.

26   As to Defendants' call for  a "solution-oriented process" and unspecified "efficient and

27   affirmative case management" to address "one-of-a-kind challenges",  Plaintiff is unsure of how

28

Case No. 3:12-CV-02730-MMC

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT AND
[PROPOSED] ORDER (JOHNSON)

1  to respond, as Defendants have offered precious little in terms of specifics as to what it desires as

2  part of such process.

3      Defendants' claim that some unspecified new procedure should be created for this case,

4  with new requirements of "foundation" and "evidence" is not fully articulated herein;

5  accordingly, Plaintiff cannot meaningfully respond to this suggestion. Plaintiff attempted to get

6  specifics of what new and special procedures would be; however Defendant's counsel would not

7  be more specific than to say that Plaintiff expressed an interest in the position, and that Plaintiff

8  was qualified for the position.  Those matters have been pleaded, and the Hon. Maxine M.

9  Chesney has ruled that these claims are stated under Fed. R. 12(b)(6).

10      Defendants' call for some new procedure is nonsensical, and is not based upon any

11  articulation of burden.  The attempt to post up a straw man of looming "chaos", with the threats

12  of "multitudes" of Plaintiffs "launching" discovery should be seen for what it is:  "a tale . . . full

13  of sound and fury, signifying nothing."[1]

14      **Defendants:**

15      The *Johnson* plaintiffs were on notice for nearly 3 years that Defendants intend to

16  _____

17  1    Defendants did not raise and the parties did not discuss the Manual for Complex
    Litigation (the "Manual") at the two telephonic conferences held for the preparation of this Joint
18  Case Management Statement; therefore, Plaintiff cannot fully respond to Defendants' references
    to the Manual.   First, it is not at all certain that this case qualifies as a "Complex"; nevertheless, a
19  number of the provisions of the Manual as they specifically relate to employment discrimination
    claims may be instructive.  For example, *all* the issues listed in Section 32.41 "Initial Pretrial
20  Conference" have already been resolved by Judge Chesney in the main action:  jurisdiction,
    statutes of limitation, administrative exhaustion, arbitration, and proper parties.   Furthermore,
21  the Manual contains cogent advice on the conduct of discovery in employment discrimination
    actions:

22      The judge can simplify and expedite discovery by directing the parties to exchange
        core information before discovery begins.  Core information includes
23      information required under Rule 26 or local rules. It also includes potentially
        relevant documentary materials, such as statements of employment policies, policy
24      manuals and guides, and an identification and general explanation
        (perhaps with samples) of the types of records that contain data that may be
25      relevant to the issues in the case.  After obtaining this information, plaintiffs
        may need to depose the personnel director or other individuals responsible for
26      maintaining such records in order to clarify the nature of the information
        contained in the records, how the information is coded or compiled, and how
27      data may be extracted from the various sources.

28      Manual, Section 32.431 "Discovery".

-3-

challenge venue.  In response, they each intentionally designed their cases to include overlapping special assignments and unposted positions for the ulterior and primary purpose of attempting to defeat the venue challenges they know are appropriate and to attempt to state a claim where none exists.  Defendants will not challenge venue for Plaintiff Johnson.  However, the deficiencies in Plaintiff's Fifth Amended Complaint ("5AC") call for a solution-oriented process to methodically address the sham pleading (by 21 plaintiffs including Johnson) of special assignments and allegedly unposted positions, many in the San Francisco Area, for the primary purpose of defeating venue challenges and for a secondary purpose of attempting to create an appearance of a claim where none exists in order to confuse and prejudice.

Plaintiff alleges race discrimination with respect to failure to promote him into *43* distinct special assignments and 6 allegedly unposted positions.  While there are myriad differences among the individual cases, not coincidentally, 21 plaintiffs (all but one represented by the same counsel)[2] implausibly allege discrimination with respect to overlapping special assignments and unposted positions, many of which happen to be in the Northern District.  Plaintiff Johnson *and 20 other Johnson Plaintiffs* complain of discrimination in connection with *43 identical* special assignments and *5 identical* unposted positions.  This transparent duplication speaks volumes.  All of these positions and special assignments could not possibly be viable; most or all are not alleged in good faith, but, rather, for ulterior motives, including the masquerade by plaintiffs of pretend contacts with the Northern District of California and the illusion of discrimination where no such viable claim exists.

During the parties' meet and confer and in this CMC statement, Defendants have carefully presented a clear and comprehensive plan on how this case should proceed.  First, without any further delay, Plaintiffs must now credibly lay an initial evidentiary foundation, through competent evidence, before misuse of massive discovery into the 48 overlapping special assignments and unposted positions, allegedly denied to so many represented by the same

---

[2] On March 2, 2015, James Brown, Esq. of the Law Offices of James Leonard Brown and Willie E. Gary, Esq. of Gary, Williams, Lewis & Watson, P.L. entered appearances as associate counsel representing one of the *Johnson* plaintiffs, *Haynie v. United Airlines,* Case No. 15-cv-00467.  All other plaintiffs continue to be represented by counsel in the instant case who unfortunately launched this case initially as a 23 plaintiff case.

counsel.  At minimum, each plaintiff must provide a threshold foundation that withstands evidentiary rigor, for each unposted position and special assignment alleged.  Specifically, each must credibly demonstrate, likely through a focused limited deposition, his or her qualifications for and application to or expression of interest in each allegedly denied unposted position or special assignment, to whom such application or interest was communicated, when and where. Second, adjudication at the outset is necessary for a second, foundational issue regarding special assignments before wholesale discovery, namely, the fact that special assignments are not even promotions.  No foundation presently exists to support even a reasonable belief, much less proof, that a special assignment is a promotion.

A limited deposition of each plaintiff solely for the purpose of determining whether even the most minimal evidentiary foundation exists could accomplish what is needed; otherwise, a carefully prescribed court-supervised process as to acceptable evidence which lays a proper foundation for proof of basic foundational facts on each special assignment or unposted position is another, albeit second-best, potential approach to what all relevant facts and circumstances now demonstrate is an overwhelmingly improper inclusion of a huge number of claims which are shams.[3]  At the earliest possible time, in order to prevent chaos, confusion and prejudice, before an answer to the complaint, and before lifting the present stay on discovery and disclosures, Plaintiff must establish evidence of any foundation, some scintilla of good faith.

Defendants' approach is consistent with and contemplated by the Manual for Complex Litigation and the Federal Rules of Civil Procedure.  "Although not without limits, the court's express and inherent powers enable the judge to exercise extensive supervision and control of litigation."  Manual for Complex Litigation ("MCL"), Fourth, § 10.  For example, Federal Rule of Civil Procedure 16(c)(2)(L) specifically addresses complex litigation, authorizing the judge to adopt "special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." "Judges should tailor case-management procedures to the needs of the particular litigation and to

---

[3] For example, of the overlapping special assignments allegedly denied to 21 of the *Johnson* plaintiffs, 21 are allegedly in California, and 13 are allegedly in the San Francisco area.

-5-

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT AND
[PROPOSED] ORDER (JOHNSON)

1  the resources available from the parties and the judicial system." *Id.*  For example, Courts can

2  "use informal means to coordinate proceedings to the extent practicable.  Coordination methods

3  include arrangements made by counsel, communications between judges, joint pretrial

4  conferences and hearings at which all involved judges preside, and parallel orders.  Another

5  coordination method is to designate a 'lead' case in the litigation; rulings in the lead case would

6  presumptively apply to the other coordinated cases, and the judges in those cases may stay

7  pretrial proceedings in those cases pending resolution of the lead case." *Id.* at 10.12.

8      In addition to a discussion about these issues at the CMC, and with the hope that it will be

9  helpful to the court, counsel, and the efficient and fair litigation of this case, Defendants will

10  prepare and file, as appropriate, a motion with supporting detail, in support of one considered,

11  prudent and affirmative approach to the case at this critical time.  The proposed initial approach to

12  the case is outlined herein and urged as a case management tool to assist in the prevention of

13  chaos, and confusion.  Moreover, given the substantive and procedural case history, the recent

14  separation of 23 cases and the filing of 23 new complaints on March 2, 2015, a case which might

15  otherwise not be complex is complex.  The Manual for Complex Litigation provides appropriate

16  guidance and is consistent with Defendants' suggested approach.

17  **2.     FACTS**

18      **Plaintiff:**

19      Plaintiff Eldridge Johnson is an African-American male formerly employed by

20  Defendants as a Captain. Plaintiff Johnson has been employed by Defendants from approximately

21  April 1978 through 2014.  Plaintiff Johnson was the thirteenth African-American pilot hired by

22  United Airlines.  Plaintiff Johnson bid into the Captain position in Chicago, Illinois, then

23  transferred to the San Francisco domicile in 2009.  Plaintiff Johnson's seniority rank at the time of

24  the filing of the Complaint was  number 68, and Plaintiff Johnson had in excess of 20,000 total

25  flight hours.

26      Throughout his career, Plaintiff Johnson has been denied the opportunity to participate in

27  several management opportunities because the positions were not posted prior to the vacant

28  management position being filled.  The Court has ruled that as to six (6) such positions, Plaintiff

Case No. 3:12-CV-02730-MMC

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT AND
[PROPOSED] ORDER (JOHNSON)

1  Johnson has stated a 42 U.S.C. §1981 claim.

2          Throughout his career, Plaintiff Johnson has witnessed non-African-American pilots with

3  less seniority and fewer total flight hours obtain promotions into management for which he

4  interviewed and expressed interest.  The Court ordered that Plaintiff Johnson has stated a claim

5  for one (1) such position, the December, 2011 Senior Manager – Fleet Standards – 787 position

6  under both Title VII and 42 U.S.C. §1981.

7          Throughout his career, Plaintiff Johnson has witnessed the practice of special assignments,

8  also known as ("a.k.a") temporary management positions, being given to pilots without posting

9  the assignment.  The Court ordered that Plaintiff Johnson has stated claims to forty-three (43)

10  such special assignments, including 21 such assignments in the State of California under 42

11  U.S.C. §1981.

12          **Defendants**:

13          Defendants dispute Plaintiff's allegations, which were originally entangled with the claims

14  of 22 other individuals in a procedural morass apparently intended to vaguely resemble a class

15  action without class allegations.  Unraveling the claims in a way that recognizes the unique

16  procedural posture of this case will call for forward-thinking ingenuity.  It is critical to address the

17  transition from 23 plaintiff case to individual cases early to ensure that the each case will be

18  resolved efficiently and fairly.

19          This case was initially filed on May 29, 2012 as part of a single action involving 23

20  plaintiffs.  *See Johnson et al. v. United Airlines et al.*, Case No. 12-cv-02730-MMC, Fourth

21  Amended Complaint, Dkt. 1.  Over the course of almost three years, Defendants filed multiple

22  motions to dismiss and strike, which were granted in part and denied in part.  On October 13,

23  2014, Defendants filed a Motion to Sever Parties and Claims ("Severance Motion"), seeking to

24  sever the remaining individual claims, which were improperly joined together.  The Court granted

25  the Severance Motion on February 2, 2015.  *See* Order Granting Defendants' Motion to Sever;

26  Directions to Clerk; Directions to Plaintiffs, Dkt. 2 ("Severance Order").

27          This case now lies at unique procedural crossroads.  The Severance Order resulted in 23

28  individual cases, including Plaintiff's lawsuit, with a common, nearly three-year history shared by

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT AND
[PROPOSED] ORDER (JOHNSON)

1   23 plaintiffs and the Defendants.  That history is extensive, and it affects each of the 23 individual

2   cases now filed in different courtrooms across the Northern District.  Over the years, the parties

3   and the Court devoted over 500 pages to motions to dismiss, motions to strike, a motion to

4   transfer venue, and related court orders.  The Severance Order expressly applies these past orders

5   to each individual case.  The *Johnson* plaintiffs filed six different versions of their complaint.

6   The last amendment in *Johnson*, the Fourth Amended Complaint ("4AC"), contained 659

7   paragraphs in 99 pages, which followed multiples of hundreds of pages which preceded the 4AC

8   in prior versions.

9         On March 2, 2015, the *Johnson* plaintiffs filed 23 individual Fifth Amended Complaints

10   before 11 different judges.  Severance was clearly required; each plaintiff's case is individual.  It

11   is critical at this juncture that the parties and the Courts work together to thoughtfully and

12   carefully examine, create, and implement appropriate solutions to deal with a unique procedural

13   posture, perhaps unprecedented, in order to avoid prejudice and to promote efficiency in the

14   transition of each individual case from its three-year shared history into a manageable individual

15   case going forward.

16         As noted above, addressing the sham nature of certain unposted positions and special

17   assignments early is crucial to maintain the fair and efficient litigation of this action without

18   opening the case to confusion, waste of resources, and unfocused, unbounded, duplicative, and

19   prejudicial discovery.  Beyond the fact that, on its face, it is highly unlikely that so many different

20   plaintiffs domiciled across the United States were allegedly discriminated against so many times

21   with respect to so many of the same positions in the Northern District, and notwithstanding the

22   potential conflict of interest issues presented by this patently suspect and inherently flawed

23   litigation strategy, the unusual and truly unique procedural and substantive history and current

24   posture of this case demands efficient and affirmative case management.[4]

25         The *Johnson* plaintiffs' claims were intentionally misjoined in a 99 page, 659 paragraph

26   4AC with a transparent design to create and maintain unmanageability, confusion of the issues,

27   and unavoidable prejudice.  The improper procedural tactics orchestrated chaos from the

28   ───────────────────
[4] All conflict of interest issues are expressly reserved.

inception of the case, leading to the intended result:  significant inconvenience and wasted time and resources of witnesses, the Court, and counsel.  Now that this case has been severed, Defendants hope to be able to end the already substantial prejudice created by the *Johnson* plaintiffs' tactics.  As this case proceeds, Defendants intend to work with the Court and opposing counsel to provide a foundational roadmap of how to proceed.  Initially, Defendants anticipate that some motion practice will be needed to ensure solution oriented case management that promotes the fair and efficient administration of justice.[5]

3.      **LEGAL ISSUES**

**Plaintiff**:

The principal legal issues from Plaintiff's perspective are:

1.   Whether Defendant can articulate a legitimate business reason for denying African-American Captains positions in management.

2.   Other legal issues may arise, depending upon the affirmative defenses asserted by United/Continental Airlines in the forthcoming answer.

**Defendants**:

The principal legal issues in dispute at the present time include:

•    Whether Plaintiff's claims are barred by the statute of limitations.

•    Whether the 5AC and each claim contained therein fails to state a claim upon which relief can be granted.

•    Whether triable issues of fact exist as to each of Plaintiff's claims.

•    Whether Plaintiff can prove a prima facie case of discrimination based upon race as to each position and/or special assignment which he alleges is at issue.

•    If Plaintiff establishes a prima facie case of discrimination for each position based upon race, then:  whether the decisions related to each specific promotion or special

---

[5] One item that may need careful management is discovery.  In the *Johnson* case, Plaintiffs improperly served oppressive and improper "group" discovery, one set collectively on behalf of 21 pilots and one set collectively on behalf of the two non-pilot Plaintiffs.  Defendants anticipate that Plaintiff may seek overly broad discovery in this matter related to other cases.

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT AND
[PROPOSED] ORDER (JOHNSON)

assignment at issue for each individual Plaintiff in the 5AC were made for legitimate, non-discriminatory reasons.

• If Plaintiff establishes a prima facie case and Defendants establish a legitimate, non-discriminatory reason, then: whether Plaintiff can prove that Defendants' proffered non-discriminatory reasons for rejecting Plaintiff for each promotion to an available position or special assignment at issue in the 5AC were actually a pretext for discrimination.

• Whether Plaintiff's 5AC is unmanageable.

• Whether the 5AC is filed improperly.

• Whether Plaintiff can prove any recoverable damage as a result of any alleged unlawful conduct by Defendants.

**4.    MOTIONS**

**Plaintiff:**

Plaintiff currently does not currently anticipate filing any motions, so long as the parties comply with their obligations under the Federal Rules. Plaintiff reserves the right to file a motion for leave to amend the pleadings to conform to the evidence as it is developed in discovery. Plaintiff intends to oppose the twelve (12) motions set forth by Defendant below, depending upon the basis for such motions, as Defendant has not disclosed the factual foundation for these motions.

**Defendants:**

Defendants anticipate the following motions at this time:

• Motion Addressing Case Management and Order of Proof: Specifically, if not resolved at an early CMC, Defendants will move for an order requiring an initial foundation be established, through competent evidence, as to each of the 6 unposted positions allegedly denied because of race and the 43 special assignments allegedly denied because of race.

• Motion for Protective Order to Stay Discovery Until After Plaintiff Makes Foundational Showing.

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT AND
[PROPOSED] ORDER (JOHNSON)

- Motion for Protective Order Concerning Improper Merits "Group" Discovery (to the extent Plaintiff serves discovery similar to that propounded in the *Johnson* case (*see below, Section 8*).
- Motion for Protective Order re: Confidentiality to Protect Proprietary, Confidential, Private Information (*to the extent the parties are unable to stipulate*).
- Motion to Bifurcate/Sever/Phase Litigation.
- Potential discovery motions.
- Motion for Discovery Referee (*as needed*).
- Motions for Summary Judgment or Partial Summary Judgment.
- Motions in Limine.
- Motion pursuant to FRCP 11.

**5.    AMENDMENT OF PLEADINGS**

**Plaintiff:**

The Court has taken great pains already to narrow the issues, permitting the properly-pleaded claims to proceed.  Plaintiff filed the Fifth Amended Complaint on March 2, 2015. Supplemental pleading may be required given the passage of time since the filing of the original Complaint.

**Defendants:**

Depending on the parties' ability to work out an acceptable stipulation regarding certain claims that were previously dismissed, greater certainty may be needed with respect to the operative pleading.  In that event, Defendants anticipate the potential need to work with the Court and counsel to ensure a complaint which accurately reflects only remaining claims for Plaintiff and eliminates dismissed, stricken, and extraneous material.[6]

---

[6] Defendants object to any amendment of the complaint to add any new claims or material and have communicated this clearly to Plaintiffs.  Defendants' position is consistent with the Severance Order.  *See* Severance Order at 10:21-25, 11:13-14 (Plaintiff "may not add new claims or new defendants without leave of court.").

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT AND
[PROPOSED] ORDER (JOHNSON)

**6.    EVIDENCE PRESERVATION**

**Plaintiff:**

Since Plaintiff's proof will turn in part upon statistical evidence, Plaintiff anticipates the need for such statistical evidence, and has repeatedly informed Defendant of the need to preserve such evidence over the years this case has been pending. Similarly, Plaintiff has put Defendant on notice that all email communications concerning the positions and special assignments be preserved.

**Defendants:**

The parties have reviewed the Guidelines for the Discovery of Electronically Stored Information ("ESI Guidelines"). The parties have represented to one another that they have taken reasonable steps to preserve relevant evidence and reasonably accessible sources of ESI. Defendants object to the use of statistical evidence in this case.

**7.    DISCLOSURES**

During the parties' Rule 26(f) conference in the *Johnson* case, the parties discussed the Rule 26 initial disclosure requirements.

**Plaintiff:**

Plaintiff proposes March 27, 2015 for the parties' exchange of initial disclosures.

**Defendants:**

Defendants objected during the *Johnson* Rule 26(f) conference and formally again object herein; initial disclosures of Defendants are not appropriate at this stage of litigation. The Manual for Complex Litigation contemplates that disclosures may be appropriately reserved in a case like this. "The scope of disputed issues and relevant facts in a complex case may not be sufficiently clear from the pleadings to enable parties to make the requisite disclosure. . . . To the extent the parties cannot agree during their conference, it sometimes helps to defer disclosure and fashion an order at the Rule 16 conference, defining and narrowing the factual and legal issues in dispute and establishing the scope of disclosure." MCL, Fourth, § 11.13.

Discovery and initial disclosures are currently stayed pursuant to of the Court's order in *Johnson,* which attaches to this case. Aug. 8, 2014 Tr. at 25:18-26:20. Defendants' discussion

1  above is incorporated herein by reference.  As previously explained, the *Johnson* plaintiffs have

2  been on notice that Defendants intend to challenge venue.  In response, they each intentionally

3  designed their cases to include overlapping, indeed nearly identical, special assignments and

4  unposted positions for the ulterior and primary purpose of attempting to defeat the venue

5  challenges they know are appropriate and to attempt to state a claim where none exists.  Other

6  foundational issues exist with respect to these claims such as, for example, whether a special

7  assignment is a promotion (it is not).  The fair and efficient management of the cases can be

8  accomplished through limited depositions of each plaintiff at the outset, and/or potentially

9  through agreed-upon and sound admissible evidence as the basis for potential offers of proof to be

10  provided in agreeable form on an agreed upon timetable.[7]  For these and other reasons,

11  disclosures should not proceed until the appropriate later time.  An order requiring a necessary

12  preliminary foundational showing as to the huge number of special assignments and unposted

13  positions currently identically pleaded in this and 20 other complaints will conserve party

14  resources, assist in avoidance of certain confusion of the issues and claims, undue consumption of

15  time, and will avoid unfair prejudice.  Proceeding forward with the discovery plan that Plaintiff

16  seeks can only result in confusion, a waste of resources of the court and counsel and a prejudicial

17  miscarriage of justice.

18  **8.      DISCOVERY**

19          The parties disagree on the proper scope and timing of discovery, as discussed in more

20  detail herein.

21          <u>**Plaintiff**</u>**:**

22          Plaintiff believes that the bulk of discovery in this matter can be achieved through targeted

23  written discovery.  To that end, Plaintiff will serve a set of Rule 34 Requests for documents

24  related to the positions and special assignments identified in the Fifth Amended Complaint.

25  Plaintiff will also propound a set of targeted interrogatories seeking the demographic information

26  _____

[7] Should Defendants be permitted to take the deposition of each plaintiff, this time should not be
included in the seven hour maximum.  Furthermore, unless some affirmative approach is adopted

27  to dealing with the disingenuous, overlapping/identical claims many more hours than seven
would be necessary for the deposition of the plaintiff.  Defendants will need and request

28  additional time to conduct Plaintiff's deposition.

1    of the management promotions and special assignments within United, Continental, during the

2    relevant time period.

3        Plaintiff anticipates having relevant documents in hand and reviewing those documents

4    prior to the noticing of any depositions of any individual management persons at Defendants

5    which may be identified in Defendant's Rule 26 disclosures.

6        Concerning deposition testimony, while deposition testimony may be necessary to identify

7    particular damages, the question of liability relates to the factual questions surrounding United's

8    uniform company-wide promotional policies, which can hopefully be elucidated through (1)

9    document production; (2) custodian of records deposition; and (3) Fed. R. Civ. P. 30(b)(6)

10   testimony.

11       **Defendants:**

12       **Objection to Discovery Until After Manageability Has Been Addressed And**

13   **Evidentiary Foundation Laid**

14       During an August 8, 2014 Case Management Conference, the Court stayed discovery

15   Aug. 8, 2014 Tr. at 25:18-26:20.  According to the Manual for Complex Litigation, "[e]arly

16   identification and clarification of issues . . . is essential to discovery control."  MCL, Fourth, §

17   11.41.  For the reasons outlined above, proceeding with discovery at this stage is unmanageable,

18   impractical, will confuse the issues, and is extremely prejudicial to the defense.  Discovery and

19   initial disclosures should remain temporarily stayed until after (1) the Court addresses

20   manageability; and (2) Plaintiff establishes a proper evidentiary foundation, including for

21   example, through limited depositions of the Plaintiff as discussed above, and/or through other

22   additional competent evidence, with regard to all unposted positions and special assignments.

23       The approach to merits discovery will depend upon rulings of the Court and how many

24   positions, if any, potentially remain as part of the case after the completion of the focused

25   procedure outlined above.  Any discussion of disclosures, or discovery, particularly on the merits,

26   should be delayed until after Plaintiff makes a foundational showing by competent evidence to

27   demonstrate that he actually expressed interest in the special assignments and unposted positions

28

at issue, to whom, when, and that he was actually qualified for each. The issue as to whether a special assignment is a promotion (it is not) must also be addresses at the outset.

Following assessment of any foundational evidence which plaintiff is able to establish and Defendants' position as to the same, including examination of Plaintiff's ability to establish a prima facie case, the Court may then best consider all issues, including what positions, if any, remain at issue. This process is critical to fairness and efficiency and to appropriately address the many, and oftentimes overlapping, claims Plaintiff seeks to assert, and 43 special assignments under 42 U.S.C §1981 – as a first step to any productive discovery, particularly where application records and evidence of qualification may not exist.

**9.     CLASS ACTIONS**

  <u>**Plaintiff:**</u>

   Plaintiff anticipates that class certification may be necessary to enjoin invidious discriminatory policies and practices pursuant to Fed. R. Civ. P. 23(b)(2).

  <u>**Defendants:**</u>

   The present suit is not a class action.

**10.     RELATED CASES**

  <u>**Plaintiff:**</u>

   Neither party has filed an administrative motion pursuant to L.R. 3-12 in this or any of the matters severed from this action.

  <u>**Defendant:**</u>

   This case is one of 23 cases that were severed as a result of the Severance Order. The severed actions include:

| | Case Name | Case No. |
|---|---|---|
| **1.** | Briscoe, Odie v. United Airlines, Inc. et al. | 3:15-cv-00476 HSG |
| **2.** | Crocker, Sal v. United Airlines, Inc. et al. | 3:15-cv-00468 CRB |
| **3.** | Ecung, Mario v. United Airlines, Inc. et al. | 3:15-cv-00456 HSG |
| **4.** | Gadson, Annette v. United Airlines, Inc. et al. | 4:15-cv-00460 JSW |
| **5.** | Haney, Ken v. United Airlines, Inc. et al. | 3:15-cv-00474 MMC |
| **6.** | Hartsfield, Terrence v. United Airlines, Inc. et al. | 3:15-cv-00477 JST |
| **7.** | Haynie, Terry v. United Airlines, Inc. et al. | 4:15-cv-00467 YGR |

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT AND
[PROPOSED] ORDER (JOHNSON)

| 8. | John, Richard v. United Airlines, Inc. et al. | 3:15-cv-00475 TEH |
| 9. | Johnson, Eldridge v. United Airlines, Inc. et al. | 3:12-cv-02730 MMC |
| 10. | Jones Jr., Johnnie E. v. United Airlines, Inc. et al. | 3:15-cv-00462 CRB |
| 11 | Manswell, Anthony v. United Airlines, Inc. et al. | 3:15-cv-00469 WHO |
| 12. | Miller, Leon v. United Airlines, Inc. et al. | 3:15-cv-00457 TEH |
| 13. | Minter, Karl v. United Airlines, Inc. et al. | 3:15-cv-00470 EMC |
| 14. | Montgomery, United Airlines, Inc. et al. | 3:15-cv-00459 VC |
| 15. | Noble, Paul C. v. United Airlines, Inc. et al. | 3:15-cv-00461 JST |
| 16. | Palmer, Xavier v. United Airlines, Inc. et al. | 3:15-cv-00458 HSG |
| 17. | Ricketts, David v. United Airlines, Inc. et al. | 3:15-cv-00465 EMC |
| 18. | Roane, Glen v. United Airlines, Inc. et al. | 3:15-cv-00464 WHO |
| 19. | Robinson, Frederick v. United Airlines, Inc. et al. | 4:15-cv-00463 YGR |
| 20. | Sherman, Leo v. United Airlines, Inc. et al. | 3:15-cv-00473 WHO |
| 21. | Tom, Lester v. United Airlines, Inc. et al. | 3:15-cv-00466 SI |
| 22. | Washington, Erwin v. United Airlines, Inc. et al. | 4:15-cv-00471 JSW |
| 23. | Wilson, Darryl v. United Airlines, Inc. et al. | 3:15-cv-00472 VC |

**11.    RELIEF**

**Plaintiff:**

Plaintiff has prayed for both injunctive relief and damages, including a mandatory injunction directing Defendants to cease and desist in discriminating against Plaintiff on the basis of race; and providing for proactive procedures and the monitoring of same to remedy the pattern and practice of racial discrimination and retaliation. Plaintiff seeks back and front pay, general damages, attorneys' fees, and punitive damages.

**Defendants:**

Defendants deny that Plaintiff is entitled to any of the relief sought.

**12.    SETTLEMENT AND ADR**

**Plaintiff:**

Plaintiffs have requested that Defendants engage in private mediation.  Plaintiffs are amenable to private mediation and panel mediation.

**Defendants:**

Defendant does not wish to engage in alternative dispute resolution at this time.

**13.    CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

The parties do not consent to have a magistrate judge conduct further proceedings.

**14.    OTHER REFERENCES**

The case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.    NARROWING OF ISSUES**

**Plaintiff:**

Plaintiff is unaware of any issues that may be narrowed, except by admissions and stipulations of the parties.

**Defendants:**

Affirmative case management of the court and counsel consistent with the Manual for Complex Litigation provisions mentioned above, and, including the focused, methodical, and efficient procedure outlined above is proposed in order to narrow issues substantially, avoid prejudice, confusion and to provide for orderly and efficient administration of justice.

Defendants intend to file motions to dismiss or strike, as discussed above, absent resolution of the issues which support those motions.  Defendants will also file an appropriate motion to detail the need to approach the case as outlined above.  The timing and outcome on Defendants' motions remain important to the assessment of various best options.

**16.    EXPEDITED TRIAL PROCEDURE**

This case is not suitable to be handled under the Expedited Trial Procedure of General Order 64, Attachment A.

**17.    SCHEDULING**

**Plaintiff:**

Plaintiff proposes the following schedule:

- Last Day to Amend Pleadings:  March 31, 2015
- Fact Discovery Cut-Off (including last day to hear fact discovery-related motions): Thursday, December 24, 2015
- Expert Disclosures:  Monday, January 11, 2016

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT AND
[PROPOSED] ORDER (JOHNSON)

- • Rebuttal Expert Disclosures:  Thursday, January 28, 2016
- • Expert Discovery Cut-Off (including last day to hear motions):  Thursday, March 4, 2016
- • Last Day to File Dispositive Motions:  Monday, April 11, 2016
- • Pretrial Conference:  Tuesday, August 2, 2016
- • Trial Date:  Monday, August 15, 2016

**Defendants**:

Defendants propose the following case scheduling:

- • **March 2, 2015**:  Plaintiff filed 5AC.
- • **March 13, 2015**:  Case Management Conference.
- • **April 2015**:  Evidentiary foundation for allegedly denied special assignments and unposted positions, including potentially focused deposition of Plaintiff.
- • **May 2015**:  Further Case Management Conference.

## 18.    TRIAL

**Plaintiff:**

Plaintiff anticipates 5 days of jury trial.

**Defendants:**

It is not possible or productive to attempt to estimate the expected length of trial at this time.

## 19.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

**Plaintiff:**

None.

**Defendants:**

Defendants filed a Certification of Interested Entities or Persons on August 29, 2012 in the *Johnson* matter.  Defendants certify as of this date, pursuant to Civil L.R. 3-15, that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT AND
[PROPOSED] ORDER (JOHNSON)

1  that could be substantially affected by the outcome of this proceeding:  Defendants United

2  Airlines, Inc. and United Continental Holdings, Inc.

3  **20.    PROFESSIONAL CONDUCT**

4       The attorneys of record for the parties have reviewed the Guidelines for Professional

5  Conduct for the Northern District of California.

6  **21.    OTHER MATTERS THAT MAY FACILITATE THE JUST, SPEEDY, AND**

7  **INEXPENSIVE DISPOSITION OF THIS MATTER**

8       <u>**Plaintiff**</u>**:**

9       Plaintiff does not believe that phasing of discovery will assist in the resolution of this

10  matter on the merits.  The unspecified procedures requested by Defendant are both unintelligible

11  and nonsensical.  The order severing this matter from the main action and the filing of the Fifth

12  Amended Complaint have resolved any issues of claim specificity or confusion.  Accordingly, the

13  unspecified special procedures or novel management techniques suggested by Defendants are

14  unnecessary and inappropriate.

15       <u>**Defendants**</u>**:**

16       This is a case which is subject to consideration consistent with the provisions of the

17  Manual for Complex litigation set forth above.  It requires the adoption of an approach such as

18  the one outlined above.  Additionally, Defendants request that before any discovery commences,

19  the Court enter a *Lone Pine* Order or similar procedural device in its discretion to facilitate the

20  just, speedy and inexpensive disposition of this matter.  *Lone Pine* Orders take their name from a

21  New Jersey case, *Lore v. Lone Pine Corp.*, No. L-33606-85, 1986 N.J. Super. LEXIS 1626 (N.J.

22  Super. Ct. Law Div. Nov. 18, 1986), in which the court required plaintiffs to submit evidence

23  shortly after the case was filed regarding both plaintiffs' exposure to toxic substances, and

24  medical expert evidence showing that toxins were the cause of their injuries.  Although *Lone Pine*

25  Orders began in toxic tort litigation, courts have used this approach in other types of cases, and

26  recently the Ninth Circuit approved their use.  *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d

27  828, 833 (9th Cir. Cal. 2011).  The purpose of a *Lone Pine* Order is to require plaintiffs to make

28  certain prima facie showings to lessen the burden on the court and defendants.  It stands to reason

-19-

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT AND
[PROPOSED] ORDER (JOHNSON)

1  that prejudice can also be avoided in this way.  Because this is one of 23 cases that were recently

2  severed, effective tools, limited coordination, and focused case management may be needed to

3  manage the complex and costly issues arising from the *Johnson* plaintiffs' convoluted 4AC.

4       Finally, as highlighted above, potential conflict of interest issues will need attention.

5  Defendants reserve all rights as to conflict of interests which arise from the representation of

6  multiple plaintiffs as to exactly the same claims alleging failure to promote as to the same

7  positions.

8  DATED:  March ___, 2015          SPENCER SMITH
                                     DOW W. PATTEN
9                                    SMITH PATTEN

10

11                                   By: _____ /s/ Dow W. Patten _____
                                              DOW W. PATTEN
12

13                                   Attorneys for Plaintiff

14

15  DATED:  March __, 2015           DONNA M. MELBY
                                     JENNIFER S. BALDOCCHI
16                                   JI HAE KIM
                                     PAUL HASTINGS LLP
17

18

19                                   By: _____ /s/ Jennifer S. Baldocchi _____
                                              JENNIFER S. BALDOCCHI
20

21                                   Attorneys for Defendants

22

23

24

25

26

27

28

1

## <u>CASE MANAGEMENT ORDER</u>

2

3          The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is

4   approved as the Case Management Order for this case and all parties shall comply with its

5   provisions.

6          In addition, the Court makes the further orders stated below:

7   _____

8   _____

9   _____

10  _____

11

12  IT IS SO ORDERED.

13

14  Dated: _____, 2015          _____

15                                                 Maxine M. Chesney
                                                 United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:12-CV-02730-MMC

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT AND
[PROPOSED] ORDER (JOHNSON)