1  DONNA M. MELBY (SB# 86417)
   donnamelby@paulhastings.com
2  JENNIFER S. BALDOCCHI (SB# 168945)
   jenniferbaldocchi@paulhastings.com
3  JI HAE KIM (SB# 275020)
   jihaekim@paulhastings.com
4  PAUL HASTINGS LLP
   515 South Flower Street
5  Twenty-Fifth Floor
   Los Angeles, CA  90071-2228
6  Telephone:  1(213) 683-6000
   Facsimile:  1(213) 627-0705
7
   GARY T. LAFAYETTE (SB# 088666)
8  glafayette@lkclaw.com
   LAFAYETTE & KUMAGAI LLP
9  100 Spear Street, Suite 600
   San Francisco, CA 94105
10 Telephone:  1(415) 357-4600
   Facsimile:  1(415) 357-4605
11
   Attorneys for Defendants
12 UNITED AIRLINES, INC. AND
   CONTINENTAL AIRLINES, INC.
13

14

15                 UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17 ELDRIDGE JOHNSON, an individual,    CASE NO. 3:12-CV-02730-VC

18          Plaintiff,                 **DEFENDANTS' CASE MANAGEMENT**
                                       **CONFERENCE STATEMENT AND**
19     vs.                             **[PROPOSED] ORDER**

20 UNITED AIR LINES, INC.;
   CONTINENTAL AIRLINES, INC.; and
21 DOES 1-10,                          Date:        March 24, 2015
                                       Time:        1:30 p.m.
22          Defendants.                Courtroom:
                                       Judge:       Hon. Vince Chhabria
23
                                       Complaint filed:    May 29, 2012
24                                     FAC filed:          July 20, 2012
                                       SAC filed:          Nov. 30, 2012
25                                     TAC filed:          May 20, 2013
                                       Corrected TAC filed: June 21, 2013
26                                     4AC filed:          January 3, 2014
                                       5AC filed:          March 2, 2015
27

28
                                       DEFENDANTS' CASE MANAGEMENT
                                       CONFERENCE STATEMENT AND
   Case No. 3:12-CV-02730-VC                      [PROPOSED] ORDER

1

*Related cases:*
Ecung, Mario v. United Airlines, Inc. et al. 3:15-cv-00456 VC

2
Miller, Leon v. United Airlines, Inc. et al. 3:15-cv-00457 VC
Palmer, Xavier v. United Airlines, Inc. et al. 3:15-cv-00458 VC

3
Montgomery, United Airlines, Inc. et al. 3:15-cv-00459 VC
Gadson, Annette v. United Airlines, Inc. et al. 4:15-cv-00460 VC

4
Noble, Paul C. v. United Airlines, Inc. et al. 3:15-cv-00461 VC
Jones Jr., Johnnie E. v. United Airlines, Inc. et al. 3:15-cv-00462 VC

5
Robinson, Frederick v. United Airlines, Inc. et al. 4:15-cv-00463 VC
Roane, Glen v. United Airlines, Inc. et al. 3:15-cv-00464 VC

6
Ricketts, David v. United Airlines, Inc. et al. 3:15-cv-00465 VC
Tom, Lester v. United Airlines, Inc. et al. 3:15-cv-00466 VC

7
Haynie, Terry v. United Airlines, Inc. et al. 4:15-cv-00467 VC
Crocker, Sal v. United Airlines, Inc. et al. 3:15-cv-00468 VC

8
Manswell, Anthony v. United Airlines, Inc. et al. 3:15-cv-00469 VC
Minter, Karl v. United Airlines, Inc. et al. 3:15-cv-00470 VC

9
Washington, Erwin v. United Airlines, Inc. et al. 4:15-cv-00471 VC
Wilson, Darryl v. United Airlines, Inc. et al. 3:15-cv-00472 VC

10
Sherman, Leo v. United Airlines, Inc. et al. 3:15-cv-00473 VC
Haney, Ken v. United Airlines, Inc. et al. 3:15-cv-00474 VC

11
John, Richard v. United Airlines, Inc. et al. 3:15-cv-00475 VC
Briscoe, Odie v. United Airlines, Inc. et al. 3:15-cv-00476 VC

12
Hartsfield, Terrence v. United Airlines, Inc. et al. 3:15-cv-00477 VC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' CASE MANAGEMENT
CONFERENCE STATEMENT AND
[PROPOSED] ORDER

1   On March 17, 2015, counsel for Defendants United Airlines, Inc. and Continental

2   Airlines, Inc. ("Defendants") and counsel for Plaintiffs Johnson, Ecung, Miller, Palmer,

3   Montgomery, Gadson, Noble, Jones, Robinson, Roane, Ricketts, Tom, Crocker, Manswell,

4   Minter, Washington, Wilson, Sherman, Haney, John, Briscoe, and Hartsfield ("Plaintiffs")[1] met

5   and conferred regarding the Joint Case Management Conference Statement ordered by the Court

6   on March 13, 2015.  *See* Declaration of Donna M. Melby ("Melby Dec.") ¶ 2.  The parties met

7   and conferred for a total of 80 minutes, towards the end of which Plaintiffs' counsel represented

8   that they would not participate in filing a Joint Case Management Conference Statement with

9   Defendants.  Melby Dec. ¶¶ 5-7.  Plaintiffs' counsel then directed defense counsel to

10  communicate to the Court their articulated reasons for refusal to participate in the preparation of a

11  Joint Statement, which Plaintiffs stated and Defendants understand to be as follows:  (1) Plaintiff

12  Haynie was not represented during the meet and confer discussion; (2) Plaintiffs' counsel believe

13  Defendants' positions are frivolous and therefore they will not participate in filing a joint

14  statement; (3) Defendants have not identified decision makers for special assignments or any

15  other unposted positions challenged by Plaintiffs; and (4) Plaintiffs' counsel did not believe there

16  was enough time to prepare and file the Case Management Conference Statement.  Melby Dec. ¶

17  8.

18       As a result of Plaintiffs' unwillingness to cooperate in preparing and filing a Joint

19  Statement, Defendants hereby submit DEFENDANTS' CASE MANAGEMENT STATEMENT

20  AND PROPOSED ORDER pursuant to the Standing Order for All Judges of the Northern

21  District of California dated November 1, 2014 and Civil Local Rule 16-9.

22

23  **JURISDICTION & SERVICE**

24       The plaintiffs, who were previously, improperly joined in *Johnson et al. v. United Airlines*

25  *et al.*, Case No. 12-cv-02730-MMC ("*Johnson*") have been on notice for nearly 3 years that

26

27  [1] On March 17, 2015, the Court vacated the Case Management Conference for Plaintiff Haynie, and rescheduled the conference for March 31, 2015.  The deadline to file the Case Management Conference Statement for Plaintiff Haynie is March 24, 2015.  *See* Order Pursuant to Stipulation to Change Time for Case Management Statement and Case Management Conference, Case No. 3:15-cv-00467-VC, Dkt. 14, filed 3/17/15.

28

Case No. 3:12-CV-02730-VC                          -1-                    DEFENDANTS' CMC STATEMENT
                                                                          AND [PROPOSED] ORDER

1    Defendants intend to challenge venue.  In response, they each intentionally designed their cases to

2    include overlapping special assignments and unposted positions for the ulterior and primary

3    purpose of attempting to defeat the venue challenges they know are appropriate and to attempt to

4    state a claim where none exists.[2]  Consistent with the *Johnson* Court's prior ruling and

5    Defendants' expressly preserved right to move to challenge venue after Rule 8 motions were

6    ruled upon, Defendants intend to file a Motion to Dismiss each plaintiff's Fifth Amended

7    Complaint ("5AC") for Improper Venue, Inconvenience and Transfer pursuant to Rule 12(b)(3)

8    of the Federal Rules of Civil Procedure ("FRCP") and/or 28 U.S.C. §§ 1404, 1406, in all cases

9    except *Hartsfield* and *Johnson*.  Title VII provides the controlling venue statute in this case, 42

10   U.S.C. § 2000e-5(f)(3), and prohibits the plaintiffs from forcing Defendants into an unfair and

11   inconvenient forum.  Further, FRCP 21, and 28 U.S.C. §§ 1404 and 1406 require transfer of

12   claims brought by plaintiffs in the interests of justice and convenience of the parties and witnesses

13   to the judicial district housing the airport where the plaintiffs are based.

14         The deficiencies in each plaintiff's 5AC, venue related and otherwise, call for a solution-

15   oriented process to methodically address the sham pleading of special assignments and allegedly

16   unposted positions in the San Francisco Area added to the 5AC for the primary purpose of

17   defeating venue challenges and for a secondary purpose of attempting to create an appearance of

18   a claim where none exists in order to confuse and prejudice.  The plaintiffs allege race

19   discrimination with respect to failure to promote them into numerous distinct special assignments

20   and allegedly unposted positions.  While there are myriad differences among the individual cases,

21   not coincidentally, 21 plaintiffs (all but one represented by the same counsel) implausibly allege

22   discrimination with respect to overlapping special assignments and unposted positions, many of

23   which happen to be in the Northern District.  These plaintiffs complain of discrimination in

24   connection with *43 identical* special assignments and *5 identical* unposted positions.  This

25   transparent duplication speaks volumes.  All of these positions and special assignments could not

26

27   _____

     [2] With the hope that it may assist the Court, Defendants will make available during the Case Management
28   Conference or at any earlier time that may be helpful, a chart that visually demonstrates the number of identical
     special assignments and unposted positions challenged by each of the Plaintiffs.

possibly be viable; most or all are not alleged in good faith, but, rather, for ulterior motives, including the masquerade of pretend contacts with the Northern District of California and the illusion of discrimination where no such viable claim exists.

During the parties' prior meet and confer meetings and in this CMC statement, Defendants have carefully presented a clear and comprehensive plan on how this case should proceed.  First, without any further delay, plaintiffs must now credibly lay an initial evidentiary foundation, through competent evidence, before misuse of volumes of discovery into the 48 overlapping special assignments and unposted positions, allegedly denied to so many represented by the same counsel.  At minimum, each plaintiff must provide a threshold foundation that withstands evidentiary rigor, for each unposted position and special assignment alleged. Specifically, each must credibly demonstrate, likely through a focused limited deposition, his or her qualification for, application to or expression of interest in each allegedly denied unposted position or special assignment, to whom such application or interest was communicated, when and where.  Second, adjudication at the outset is necessary for a second, and perhaps primary foundational issue regarding special assignments before wholesale discovery, namely, the fact that special assignments are not even promotions.  No foundation presently exists to support even a reasonable belief, much less proof, that a special assignment is a promotion.  This must be addressed before any plaintiffs may improperly rely on special assignments as the thread allegedly connecting them to this district.

A limited deposition of each plaintiff solely for the purpose of determining whether even the most minimal evidentiary foundation exists could accomplish what is needed; otherwise, a carefully prescribed court-supervised process as to acceptable evidence which lays a proper foundation for proof of basic foundational facts on each special assignment or unposted position is another, albeit second-best, potential approach to what all relevant facts and circumstances now demonstrate is an overwhelmingly  improper inclusion of a huge number of claims which are shams.[3]  At the earliest possible time, in order to prevent chaos, confusion and prejudice, before

---

[3] For example, of the overlapping special assignments allegedly denied to 21 of the *Johnson* plaintiffs, 21 are allegedly in California, and 13 are allegedly in the San Francisco area.

1    an answer to the complaint, and with an express reservation as to a venue challenge, and before

2    lifting the present stay on discovery and disclosures, plaintiffs must establish evidence of any

3    foundation, some scintilla of good faith.

4          Defendants' approach is consistent with and contemplated by the Manual for Complex

5    Litigation and the Federal Rules of Civil Procedure.  "Although not without limits, the court's

6    express and inherent powers enable the judge to exercise extensive supervision and control of

7    litigation."  Manual for Complex Litigation ("MCL"), Fourth, § 10.  For example, Federal Rule of

8    Civil Procedure 16(c)(2)(L) specifically addresses complex litigation, authorizing the judge to

9    adopt "special procedures for managing potentially difficult or protracted actions that may

10   involve complex issues, multiple parties, difficult legal questions, or unusual proof problems."

11   "Judges should tailor case-management procedures to the needs of the particular litigation and to

12   the resources available from the parties and the judicial system."  *Id.*  Courts can "use informal

13   means to coordinate proceedings to the extent practicable.  Coordination methods include

14   arrangements made by counsel, communications between judges, joint pretrial conferences and

15   hearings at which all involved judges preside, and parallel orders.  Another coordination method

16   is to designate a 'lead' case in the litigation; rulings in the lead case would presumptively apply to

17   the other coordinated cases, and the judges in those cases may stay pretrial proceedings in those

18   cases pending resolution of the lead case."  *Id.* at 10.12.

19          In addition to a discussion about these issues at the CMC, and with the hope that it will be

20   helpful to the court, counsel, and the efficient and fair litigation of this case, Defendants is

21   prepared to file, as appropriate, a motion with supporting detail, in support of one considered,

22   prudent and affirmative approach to the case at this critical time.  The proposed initial approach to

23   the case is outlined herein and urged as a case management tool to allow for a truthful and fair

24   examination of venue and to assist in the prevention of chaos and confusion.   Moreover, given

25   the substantive and procedural case history, the recent separation of 23 cases and the filing of 23

26   new complaints on March 2, 2015, a case which might otherwise not be complex is complex.

27   The Manual for Complex Litigation provides, in relevant part, appropriate guidance and is

28   consistent with Defendants' suggested approach.

DEFENDANTS' CMC STATEMENT
AND [PROPOSED] ORDER

**FACTS**

Defendants dispute each of the plaintiffs' allegations, which were originally entangled with the claims of 23 individuals in a procedural morass apparently intended to vaguely resemble a class action without class allegations.  Unraveling the claims in a way that recognizes the unique procedural posture of this case and addresses the beyond coincidental multiple overlapping special assignment claims calls for ingenuity, and a careful and prudent approach.  It is critical to address the transition from a 23 plaintiff case to individual cases early to ensure that the each case will be resolved efficiently and fairly.

This case was initially filed on May 29, 2012 as part of a single action involving 23 plaintiffs.  *See Johnson et al. v. United Airlines et al.*, Case No. 12-cv-02730-MMC, Fourth Amended Complaint.  Over the course of almost three years, Defendants filed multiple motions to dismiss and strike, which were granted in part and denied in part.  On October 13, 2014, Defendants filed a Motion to Sever Parties and Claims ("Severance Motion"), seeking to sever the remaining individual claims, which were improperly joined together.  The Court granted the Severance Motion on February 2, 2015.  *See* Order Granting Defendants' Motion to Sever; Directions to Clerk; Directions to Plaintiffs, Dkt. 2 ("Severance Order").

This case now lies at unique procedural crossroads.  The Severance Order resulted in 23 individual cases, with a common, nearly three-year history shared by 23 plaintiffs and the Defendants.  That history is extensive, and it affects each of the 23 individual cases now filed in different courtrooms across the Northern District.  Over the years, the parties and the Court devoted over 500 pages to motions to dismiss, motions to strike, a motion to transfer venue, and related court orders.  The Severance Order expressly applies these past orders to each individual case.  The *Johnson* plaintiffs filed six different versions of their complaint.  The last amendment in *Johnson*, the Fourth Amended Complaint ("4AC"), contained 659 paragraphs in 99 pages, which followed multiples of hundreds of pages which preceded the 4AC in prior versions.

On March 2, 2015, the *Johnson* plaintiffs filed 23 individual Fifth Amended Complaints.  Severance was clearly required; each plaintiff's case is individual.  Since then, the 23 cases have been assigned to this Court.  It is critical at this juncture that the parties and the Court work

-5-

1   together to thoughtfully and carefully examine, create, and implement appropriate solutions to

2   deal with a unique procedural posture, perhaps unprecedented, in order to avoid prejudice and to

3   promote efficiency in the transition of each individual case from its three-year shared history into

4   a manageable individual case going forward.

5          As noted above, addressing venue and the sham nature of certain unposted positions and

6   special assignments early is crucial to maintain the fair and efficient litigation of this action

7   without opening the case to confusion, waste of resources, and unfocused, unbounded,

8   duplicative, and prejudicial discovery.  It is highly unlikely , at best, that so many different

9   plaintiffs domiciled across the United States were allegedly discriminated against so many times

10  with respect to so many of the same special assignments and unposted positions in the Northern

11  District.  Notwithstanding the potential conflict of interest issues presented by this patently

12  suspect and inherently flawed litigation strategy, the unusual and truly unique procedural and

13  substantive history and current posture of this case demands efficient and affirmative case

14  management.[4]

15         The *Johnson* plaintiffs' claims were intentionally misjoined with a transparent design to

16  create and maintain unmanageability, confusion of the issues, and unavoidable prejudice.  The

17  improper procedural tactics orchestrated chaos from the inception of the case, leading to the

18  intended result:  significant inconvenience and wasted time and resources of witnesses, the Court,

19  and counsel.  Now that this case has been severed, Defendants hope to be able to end the already

20  substantial prejudice created by the *Johnson* plaintiffs' tactics.  As this case proceeds, Defendants

21  intend to work with the Court and opposing counsel to provide a foundational roadmap of how to

22  proceed.  Initially, Defendants anticipate that some motion practice will be needed to ensure

23  solution oriented case management that promotes the fair and efficient administration of justice.[5]

24  **LEGAL ISSUES**

25         The principal legal issues in dispute at the present time include:

26  ---
[4] All conflict of interest issues are expressly reserved.

27  [5] One item that may need careful management is discovery.  In the *Johnson* case, plaintiffs improperly served oppressive and improper "group" discovery, one set collectively on behalf of 21 pilots and one set collectively on

28  behalf of the two non-pilot plaintiffs.  Defendants anticipate that each plaintiff may seek overly broad discovery in this matter related to other cases.

- Whether the plaintiffs have brought claims related to special assignments and unposted positions improperly in order to establish venue, or improperly to create claims where none exist.

- Whether the plaintiffs (except Johnson and Hartsfield) have brought claims in an improper or inconvenient venue, requiring dismissal or transfer pursuant to FRCP 12(b)(3), 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. § 1404, 1406.

- Whether, in their 5ACs, plaintiffs improperly reallege a number of claims previously dismissed by the Johnson Court with prejudice.[6] Specifically:

  - All plaintiffs reallege generalized allegations challenging unposted positions and special assignments "from 2008 to the present in all domiciles," which previously were dismissed by the Court as insufficiently pled under Rule 8 of the Federal Rules of Civil Procedure. *See e.g.*, Briscoe 5AC ¶¶19-20, Gadson 5AC ¶19-20; see also Amended Order Granting In Part And Denying In Part Defendants' Motion To Strike; Granting In Part And Denying In Part Defendants' Motion To Dismiss; Dkt 117, filed 8/5/14 ("8/5 Order"), 8:3-6, 13:1-17, 15:23-26, 18:1-22 (dismissing all unposted position and special assignment claims except for certain limited positions and assignments specifically identified by the plaintiffs).

  - Plaintiff Minter reasserts 5 previously dismissed special assignments under Section 1981, alleging a total of 48 special assignments. *See* Minter 5AC ¶22 (10:25-11:12); 8/5 Order, 18:15-21 (dismissing all but 43 of Plaintiff Minter's special assignment claims under Section 1981).

---

[6] Defendants have met and conferred with plaintiffs' counsel regarding each of the 5AC deficiencies outlined above. With respect to the generalized allegations challenging unposted positions and special assignments "from 2008 to the present in all domiciles," plaintiffs' counsel stated that those allegations were included in each of the 5ACs for "background" purposes only. Defendants thereafter proposed a stipulation to eliminate those allegations, as well as the other previously dismissed claims, and to clarify the ambiguity surrounding plaintiff Crocker's posted position allegations. During meet and confer communications, plaintiffs' counsel verbally represented to defense counsel that they would sign a stipulation to remove any previously dismissed claims. This representation is counter to a prior representation that the inclusion of such previously dismissed content is appropriate as "background", and, therefore, will remain in the complaint. Counsel for Defendants are preparing a stipulation. In the event plaintiffs refuse to stipulate to remove the improperly re-pled claims or to limit the time frame of plaintiff Crocker's posted positions as previously pled in the 4AC, Defendants will be required to file a motion to dismiss and/or strike the deficient claims.

-7-

DEFENDANTS' CMC STATEMENT
AND [PROPOSED] ORDER

1    ▪    Plaintiff Montgomery reasserts one previously unposted position under Section

2         1981, alleging a total of three unposted positions.  *See* Montgomery 5AC ¶19

3         (4:16-17); 8/5 Order, 13:10-17 (dismissing all but two unposted positions

4         challenged by Montgomery under Section 1981).

5    ▪    Plaintiff Wilson reasserts 5 previously dismissed special assignments under

6         Section 1981, alleging a total of 48 special assignments.  *See* Wilson 5AC ¶22

7         (10:19-11:6); 8/5 Order, 18:15-21 (dismissing all but 43 of Plaintiff Wilson's

8         special assignment claims under Section 1981).

9    ▪    Plaintiff Crocker challenges 14 posted positions in his 5AC that, unlike his

10        corresponding allegations in the 4AC, is not modified by a time frame during

11        which he allegedly applied for those positions ("[f]rom December 2010 to

12        October 2011").  *Compare* Crocker 4AC ¶¶ 238-252 and Crocker 5AC ¶¶ 25-

13        38.  As such, clarification is needed with respect to Plaintiff Crocker's

14        challenge of the same 14 posted positions as alleged in his 4AC, and not 14

15        new claims not previously alleged.

16

17   •    Whether special assignments are, in fact, promotions, and, if not, whether special

18        assignment claims must be eliminated from the case.

19   •    Whether any foundational evidence can be established to support a good faith basis for

20        the multiple identical claims, overwhelmingly overlapping, for which plaintiffs seek

21        wholesale discovery.

22   •    Whether each plaintiff's claims are barred by the statute of limitations.

23   •    Whether the 5AC and each claim contained therein fails to state a claim upon which

24        relief can be granted.

25   •    Whether triable issues of fact exist as to each plaintiff's claims.

26   •    Whether each plaintiff can prove a prima facie case of discrimination based upon race

27        as to each position and/or special assignment which he alleges is at issue.

28   •    If each plaintiff establishes a prima facie case of discrimination for each position

based upon race, then:  whether the decisions related to each specific promotion or special assignment at issue for each individual plaintiff in the 5AC were made for legitimate, non-discriminatory reasons.

- If each plaintiff establishes a prima facie case and Defendants establish a legitimate, non-discriminatory reason, then:  whether each plaintiff can prove that Defendants' proffered non-discriminatory reasons for rejecting each plaintiff for each promotion to an available position or special assignment at issue in the 5AC were actually a pretext for discrimination.

- Whether each plaintiff can prove any recoverable damage as a result of any alleged unlawful conduct by Defendants.

**MOTIONS**

Defendants anticipate the following motions at this time:

- Motion Addressing Case Management and Order of Proof:  Specifically, if not resolved at the CMC, Defendants will move for an order requiring an initial foundation be established, through competent evidence, as to each of the unposted positions allegedly denied because of race and the special assignments allegedly denied because of race.

- Motion for Protective Order to Stay Discovery Until After Determination of  Venue, Or, Alternatively, to Limit the Scope of Any Discovery to the Facts and Circumstances Relevant to Venue Before Filing of Any Venue Motion (*see below, Section 8*).

- Motion to Dismiss and/or Transfer Each Plaintiff's 5AC for Improper/Inconvenient Venue ("Venue Motion").

- Motion to Dismiss/Strike Improperly Realleged Claims.

- Motion for Protective Order Concerning Improper Merits "Group" Discovery (to the extent plaintiffs serves discovery similar to that propounded in the *Johnson* case (*see below, Section 8*).

- Motion for Protective Order re: Confidentiality to Protect Proprietary, Confidential,

-9-

Private Information (*to the extent the parties are unable to stipulate*).

• Motion to Bifurcate/Sever/Phase Litigation.

• Potential discovery motions.

• Motion for Discovery Referee (*as needed*).

• Motions for Summary Judgment or Partial Summary Judgment.

• Motions in Limine.

• Motion pursuant to FRCP 11.

**AMENDMENT OF PLEADINGS**

Depending on the parties' ability to work out an acceptable stipulation regarding certain claims that were previously dismissed, greater certainty will be needed with respect to the operative pleading.  In that event, Defendants anticipate the potential need to work with the Court and counsel to ensure a complaint which accurately reflects only remaining claims for each plaintiff and eliminates dismissed, stricken, and extraneous material.[7]  Defendants may have to file a motion to dismiss/strike.

**EVIDENCE PRESERVATION**

Defendants have reviewed the Guidelines for the Discovery of Electronically Stored Information ("ESI Guidelines").  The parties have represented to one another that they have taken reasonable steps to preserve relevant evidence and reasonably accessible sources of ESI. Defendants object to the use of statistical evidence in this case.

**DISCLOSURES**

During the parties' Rule 26(f) conference in the *Johnson* case, the parties discussed the Rule 26 initial disclosure requirements.

Defendants objected during the *Johnson* Rule 26(f) conference and formally again object herein; initial disclosures of Defendants are not appropriate at this stage of litigation.  The Manual

---

[7] Defendants object to any amendment of the complaint to add any new claims or material and have communicated this clearly to plaintiffs.  Defendants' position is consistent with the Severance Order. *See* Severance Order at 10:21-25, 11:13-14 (Plaintiff "may not add new claims or new defendants without leave of court.").

-10-

1   for Complex Litigation contemplates that disclosures may be appropriately reserved in a case like

2   this.  "The scope of disputed issues and relevant facts in a complex case may not be sufficiently

3   clear from the pleadings to enable parties to make the requisite disclosure. . . . To the extent the

4   parties cannot agree during their conference, it sometimes helps to defer disclosure and fashion an

5   order at the Rule 16 conference, defining and narrowing the factual and legal issues in dispute and

6   establishing the scope of disclosure."  MCL, Fourth, § 11.13.

7        Discovery and initial disclosures are currently stayed pursuant to of the Court's order in

8   *Johnson,* which attaches to this case.  Aug. 8, 2014 Tr. at 25:18-26:20.  Defendants' discussion

9   above is incorporated herein by reference.   As previously explained, the *Johnson* plaintiffs have

10  been on notice that Defendants intend to challenge venue.  In response, they each intentionally

11  designed their cases to include overlapping, indeed nearly identical, special assignments and

12  unposted positions for the ulterior and primary purpose of attempting to defeat the venue

13  challenges they know are appropriate and to attempt to state a claim where none exists.  Other

14  foundational issues exist with respect to these claims, such as, for example, whether a special

15  assignment is a promotion (it is not).  The fair and efficient management of the cases can be

16  accomplished through limited depositions of each plaintiff at the outset, and/or potentially

17  through agreed-upon and sound admissible evidence as the basis for potential offers of proof to be

18  provided in agreeable form on an agreed upon timetable.[8]  For these and other reasons,

19  disclosures should not proceed until the appropriate later time.  Waiting until after any foundation

20  has been established as to the huge number of special assignments and unposted positions

21  currently identically pleaded in the complaints, and after Defendants' motions to dismiss and

22  strike and/or venue motion, will conserve party resources, assist in avoidance of certain confusion

23  of the issues and claims, undue consumption of time, and will avoid unfair prejudice.  Proceeding

24  forward with the discovery plan that plaintiffs seek can only result in confusion, a waste of

25  resources of the court and counsel and a prejudicial miscarriage of justice.

26

27  [8] Should Defendants be permitted to take the deposition of each plaintiff, this time should not be included in the
    seven hour maximum.  Furthermore, unless some affirmative approach is adopted to deal with the disingenuous,
28  overlapping/identical claims many more hours than seven would be necessary for the deposition of the plaintiff.
    Defendants will need and request additional time to conduct each plaintiff's deposition.

**DISCOVERY**

The parties disagree on the proper scope and timing of discovery.  Defendants' position is discussed in more detail herein.

**Objection to Discovery Until After Manageability Has Been Addressed, Evidentiary Foundation Laid, And Venue Motion Is Decided**

During an August 8, 2014 Case Management Conference, the *Johnson* Court stayed discovery, and directed that once the Severance Motion has been resolved, the parties and the Court will address briefing the Venue Motion and the possibility of limited discovery related solely to venue.  Aug. 8, 2014 Tr. at 25:18-26:20.  According to the Manual for Complex Litigation, "[e]arly identification and clarification of issues . . . is essential to discovery control."  MCL, Fourth, § 11.41.  For the reasons outlined above, proceeding with discovery at this stage is unmanageable, impractical, will confuse the issues, and is extremely prejudicial to the defense.  Discovery and initial disclosures should remain temporarily stayed until after (1) the Court addresses manageability; (2) each plaintiff establishes a proper evidentiary foundation, including for example, through limited depositions of the plaintiff as discussed above, and/or through other additional competent evidence, with regard to all unposted positions and special assignments; and (3) the Court considers and rules upon the venue motion.[9]

The approach to merits discovery will depend upon rulings of the Court and how many positions, if any, potentially remain as part of the case after the completion of the focused procedure outlined above.  Disclosures, and discovery on the merits and potentially venue, are best delayed until after each plaintiff makes a foundational showing by competent evidence to demonstrate that he actually expressed interest in the special assignments and unposted positions at issue, to whom, when, and that he was actually qualified for each.  The critical and primary foundational issue as to whether a special assignment is a promotion (it is not) must also be addresses at the outset.  Following assessment of any foundational evidence which plaintiff is able to establish and Defendants' position as to the same, including examination of each

---

[9] This court has ordered venue discovery in one case which is potentially applicable to other cases.  Responses to discovery are due on March 20, 2015.

DEFENDANTS' CMC STATEMENT
AND [PROPOSED] ORDER

1  plaintiff's ability to establish a prima facie case, the Court may then best consider all issues,

2  including what positions, if any, remain at issue.  This process is critical to fairness and efficiency

3  and to appropriately address the many, and oftentimes identical and overlapping, special

4  assignment and unposted position claims that so many plaintiffs seek to assert as a first step to

5  any productive discovery, particularly where application records and evidence of qualification

6  may not exist.

7  **CLASS ACTIONS**

8         The present suit is not a class action.

9  **RELATED CASES**

10        23 cases were severed as a result of the Severance Order.  These severed actions have

11  been assigned to the same Court, and include:

12

| | Case Name | Case No. |
|---|---|---|
| **1.** | Briscoe, Odie v. United Airlines, Inc. et al. | 3:15-cv-00476 VC |
| **2.** | Crocker, Sal v. United Airlines, Inc. et al. | 3:15-cv-00468 VC |
| **3.** | Ecung, Mario v. United Airlines, Inc. et al. | 3:15-cv-00456 VC |
| **4.** | Gadson, Annette v. United Airlines, Inc. et al. | 4:15-cv-00460 VC |
| **5.** | Haney, Ken v. United Airlines, Inc. et al. | 3:15-cv-00474 VC |
| **6.** | Hartsfield, Terrence v. United Airlines, Inc. et al. | 3:15-cv-00477 VC |
| **7.** | Haynie, Terry v. United Airlines, Inc. et al. | 4:15-cv-00467 VC |
| **8.** | John, Richard v. United Airlines, Inc. et al. | 3:15-cv-00475 VC |
| **9.** | Johnson, Eldridge v. United Airlines, Inc. et al. | 3:12-cv-02730 VC |
| **10.** | Jones Jr., Johnnie E. v. United Airlines, Inc. et al. | 3:15-cv-00462 VC |
| **11** | Manswell, Anthony v. United Airlines, Inc. et al. | 3:15-cv-00469 VC |
| **12.** | Miller, Leon v. United Airlines, Inc. et al. | 3:15-cv-00457 VC |
| **13.** | Minter, Karl v. United Airlines, Inc. et al. | 3:15-cv-00470 VC |
| **14.** | Montgomery, United Airlines, Inc. et al. | 3:15-cv-00459 VC |
| **15.** | Noble, Paul C. v. United Airlines, Inc. et al. | 3:15-cv-00461 VC |
| **16.** | Palmer, Xavier v. United Airlines, Inc. et al. | 3:15-cv-00458 VC |
| **17.** | Ricketts, David v. United Airlines, Inc. et al. | 3:15-cv-00465 VC |
| **18.** | Roane, Glen v. United Airlines, Inc. et al. | 3:15-cv-00464 VC |
| **19.** | Robinson, Frederick v. United Airlines, Inc. et al. | 4:15-cv-00463 VC |
| **20.** | Sherman, Leo v. United Airlines, Inc. et al. | 3:15-cv-00473 VC |
| **21.** | Tom, Lester v. United Airlines, Inc. et al. | 3:15-cv-00466 VC |
| **22.** | Washington, Erwin v. United Airlines, Inc. et al. | 4:15-cv-00471 VC |
| **23.** | Wilson, Darryl v. United Airlines, Inc. et al. | 3:15-cv-00472 VC |

DEFENDANTS' CMC STATEMENT
AND [PROPOSED] ORDER

**RELIEF**

Defendants deny that each plaintiff is entitled to any of the relief sought.

**SETTLEMENT AND ADR**

Defendants do not wish to engage in alternative dispute resolution at this time.

**CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

Defendants do not consent to have a magistrate judge conduct further proceedings.

**OTHER REFERENCES**

The case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**NARROWING OF ISSUES**

Affirmative case management of the court and counsel consistent with the Manual for Complex Litigation provisions mentioned above, and, including the focused, methodical, and efficient procedure outlined above is proposed in order to narrow issues substantially, avoid prejudice, confusion and to provide for orderly and efficient administration of justice.

Defendants intend to file motions to dismiss or strike and a venue motion, as discussed above, absent resolution of the issues which support those motions.  Defendants will also file an appropriate motion to detail the need to approach the case as outlined above.  The timing and outcome on Defendants' motions remain important to the assessment of various best options.

**EXPEDITED TRIAL PROCEDURE**

This case is not suitable to be handled under the Expedited Trial Procedure of General Order 64, Attachment A.

**SCHEDULING**

Defendants propose the following case scheduling:

- **March 2, 2015**:  Plaintiffs filed 5ACs.

- **March 24, 2015**: Case Management Conference.

- **April 2015**: Evidentiary foundation as outlined above for allegedly denied special assignments and unposted positions, potentially through a focused deposition of each plaintiff.

-14-

1      • **May 2015**: Further Case Management Conference.

2    **TRIAL**

3          It is not possible or productive to attempt to estimate the expected length of trial at this

4    time.

5    **DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

6          Defendants filed a Certification of Interested Entities or Persons on August 29, 2012 in the

7    *Johnson* matter.  Defendants certify as of this date, pursuant to Civil L.R. 3-15, that the following

8    listed persons, associations of persons, firms, partnerships, corporations (including parent

9    corporations) or other entities (i) have a financial interest in the subject matter in controversy or

10   in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party

11   that could be substantially affected by the outcome of this proceeding:  Defendants United

12   Airlines, Inc. and United Continental Holdings, Inc.

13   **PROFESSIONAL CONDUCT**

14         The attorneys of record for Defendants have reviewed the Guidelines for Professional

15   Conduct for the Northern District of California.

16   **OTHER MATTERS THAT MAY FACILITATE THE JUST, SPEEDY, AND**

17   **INEXPENSIVE DISPOSITION OF THIS MATTER**

18         This is a case which is subject to consideration consistent with the relevant provisions of

19   the Manual for Complex litigation set forth above.  It requires the adoption of an approach such

20   as the one outlined above or some substantially similar, well thought out approach that allows for

21   efficiency, fairness, and eliminates prejudice.

22         Additionally, Defendants request that before any further discovery commences, whether

23   related to venue or the merits, the Court consider entering a *Lone Pine* Order or similar

24   procedural device in its discretion to facilitate the just, speedy and inexpensive disposition of this

25   matter.  *Lone Pine* Orders take their name from a New Jersey case, *Lore v. Lone Pine Corp.*, No.

26   L-33606-85, 1986 N.J. Super. LEXIS 1626 (N.J. Super. Ct. Law Div. Nov. 18, 1986), in which

27   the court required plaintiffs to submit evidence shortly after the case was filed regarding both

28   plaintiffs' exposure to toxic substances, and medical expert evidence showing that toxins were the

1  cause of their injuries.  Although *Lone Pine* Orders began in toxic tort litigation, courts have used

2  this approach in other types of cases, and recently the Ninth Circuit approved their use.  *Avila v.*

3  *Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. Cal. 2011).  The purpose of a *Lone*

4  *Pine* Order is to require plaintiffs to make certain prima facie showings to lessen the burden on

5  the court and defendants.  It stands to reason that prejudice can also be avoided in this way.

6  Because this is one of 23 cases that were recently severed, effective tools, limited coordination,

7  and focused case management may be needed to manage the complex and costly issues arising

8  from the *Johnson* plaintiffs' convoluted 4AC.

9          Finally, as highlighted above, potential conflict of interest issues will need attention.

10  Defendants reserve all rights as to conflict of interests which arise from the representation of

11  multiple plaintiffs as to exactly the same claims alleging failure to promote as to the same

12  positions.

13

14

15  DATED:  March 17, 2015          DONNA M. MELBY
                                    JENNIFER S. BALDOCCHI
16                                  JI HAE KIM
                                    PAUL HASTINGS LLP
17

18

19                                  By: _____/s/ Donna M. Melby_____
                                              DONNA M. MELBY
20
                                    Attorneys for Defendants
21

22

23

24

25

26

27

28

Case No. 3:12-CV-02730-VC                    -16-               DEFENDANTS' CMC STATEMENT
                                                               AND [PROPOSED] ORDER

1

## CASE MANAGEMENT ORDER

2

3      The above DEFENDANTS' CASE MANAGEMENT STATEMENT & PROPOSED

4 ORDER is approved as the Case Management Order for this case and all parties shall comply

5 with its provisions.

6      In addition, the Court makes the further orders stated below:

7 _____

8 _____

9 _____

10 _____

11

12 IT IS SO ORDERED.

13

14 Dated: _____, 2015      _____

15                                             Vince Chhabria
                                           United States District Judge
16

17

18

19

20

21

22

23

24

25

26

27

28