PAGES 1 – 74

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE VINCE CHHABRIA

ELDRIDGE JOHNSON,                         ) NO. 12-CV-02730 VC
                                          ) AND RELATED CASES
                                          ) NO. 15-CV-00457 VC
  VS.                                     ) NO. 15-CV-00458 VC
                                          ) NO. 15-CV-00462 VC
UNITED AIRLINES, INC.;                    ) NO. 15-CV-00468 VC
CONTINENTAL AIRLINES, INC.; AND           ) NO. 15-CV-00471 VC
DOES 1-10,                                ) NO. 15-CV-00472 VC
                                          ) NO. 15-CV-00473 VC
                DEFENDANTS.               ) NO. 15-CV-00475 VC
                                          ) NO. 15-CV-00477 VC
_____ )

                              SAN FRANCISCO, CALIFORNIA
                              TUESDAY, OCTOBER 11, 2016

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  3:12 P.M – 3:51 P.M., 3:58 P.M. – 4:38 P.M.**


**APPEARANCES:**


**FOR PLAINTIFFS**        MILDENBERG LAW FIRM, PC
                          1735 MARKET STREET
                          SUITE 3750
                          PHILADELPHIA, PENNSYLVANIA  19103
                  **BY:  BRIAN R. MILDENBERG, ESQUIRE**


(FURTHER APPEARANCES ON FOLLOWING PAGE)


*TRANSCRIBED BY:  JOAN MARIE COLUMBINI,*
                  *RETIRED OFFICIAL COURT REPORTER*
                  *U.S. DISTRICT COURT*

**APPEARANCES (CONTINUED):**

**FOR PLAINTIFFS**      LAW OFFICE OF J. CONOR CORCORAN, P.C.
1500 J.F.K. BOULEVARD
SUITE 620
PHILADELPHIA, PENNSYLVANIA  19103
**BY: J. CONOR CORCORAN, ESQ.**


**FOR DEFENDANTS**      PAUL HASTINGS
515 SOUTH FLOWER STREET
25TH FLOOR
LOS ANGELES, CALIFORNIA  90071
**BY:  DONNA M. MELBY, ESQUIRE**
**PAUL KIND, ESQUIRE**
**SCOTT KLAUSNER, ESQUIRE**

```
 1    TUESDAY, OCTOBER 11, 2016                    3:12 P.M.

 2                        PROCEEDINGS

 3          THE CLERK:  CALLING CASE NUMBER 12-CV-2730, JOHNSON,

 4    ET AL. VERSUS UNITED CONTINENTAL HOLDINGS, INC., ET AL., AND

 5    ALL RELATED CASES.

 6          COUNSEL, PLEASE STEP FORWARD AND STATE YOUR

 7    APPEARANCES FOR THE RECORD.

 8          MR. MILDENBERG:  BRIAN MILDENBERG FOR PLAINTIFFS,

 9    YOUR HONOR.

10          MR. CORCORAN:  AND CONOR CORCORAN, YOUR HONOR.

11          THE COURT:  GOOD AFTERNOON.

12          MR. CORCORAN:  GOOD AFTERNOON.

13          MS. MELBY:  DONNA MELBY, PAUL HASTINGS, YOUR HONOR,

14    ON BEHALF OF THE DEFENDANTS.

15          MR. KIND:  PAUL KIND, PAUL HASTINGS, ON BEHALF OF

16    DEFENDANTS.

17          THE COURT:  GOOD AFTERNOON.

18          MR. KLAUSNER:  SCOTT KLAUSNER, PAUL HASTINGS, ON

19    BEHALF OF THE DEFENDANT.

20          THE COURT:  GOOD AFTERNOON.  REINFORCEMENTS, I SEE.

21          MS. MELBY:  YES.

22          THE COURT:  ALL RIGHT.  WHAT SHOULD WE TALK ABOUT

23    FIRST?  SHOULD WE TALK ABOUT CAPTAIN WASHINGTON FIRST?

24          MR. MILDENBERG:  YES, YOUR HONOR.

25          THE COURT:  OKAY.  WHAT'S THE STATUS?
```

1           **MR. MILDENBERG:**  WE HAVE COMPLETED HIS PRIVILEGE LOG

2   AND PRODUCTION.  HE'S NOT PRESENT AT THE MOMENT.  HE DID CALL

3   EARLIER THIS AFTERNOON, STATED IT WAS HIS INTENTION TO BE HERE.

4   BUT WE DID DO AS YOUR HONOR ASKED AND FINISHED THOSE TWO TASKS

5   ON HIS BEHALF.

6           **THE COURT:**  HAS HE PAID THE SANCTIONS THAT WERE

7   ORDERED?

8           **MR. MILDENBERG:**  NO, YOUR HONOR.

9           **THE COURT:**  OKAY.  THANK YOU.

10          **MR. MILDENBERG:**  YES, YOUR HONOR.

11          **THE COURT:**  OKAY.  WHAT ELSE DO WE NEED TO TALK

12  ABOUT?

13          **MR. MILDENBERG:**  YES, YOUR HONOR.  I BELIEVE THAT

14  THERE ARE SEVERAL ISSUES BEFORE THE COURT TODAY.

15          NUMBER ONE RELATED, AS YOUR HONOR KNOWS, TO THE

16  UNFORTUNATE SAGA OF OUR EMAIL PRODUCTION AND PRIVILEGE LOGS,

17  WHICH I AM VERY HAPPY -- EXCUSE ME -- HAPPY TO REPORT THAT THEY

18  ARE ALL FINISHED AS OF TODAY.  WE DID UPLOAD THE REMAINING

19  PRIVILEGE LOGS.  WE UPLOADED ALL OF THE REMAINING --

20          **THE COURT:**  WHEN YOU SAY UPLOADED --

21          **MR. MILDENBERG:**  YES, TO MS. MELBY, TO THE DEFENDANT.

22  AND THAT'S HOW WE TRANSFER THE FILES OVER.

23          **THE COURT:**  OKAY.  SO LET'S -- LET'S JUST SORT OF

24  TICK OFF THE ITEMS WE NEED TO DISCUSS.

25          **MR. MILDENBERG:**  YES.

1           **THE COURT:**  AS OPPOSED TO --

2           **MR. MILDENBERG:**  YES.

3           **THE COURT:**  -- AND THEN WE CAN GET INTO THEM.

4           **MR. MILDENBERG:**  YES.

5           **THE COURT:**  SO THERE'S THE EMAIL PRODUCTION, AND

6    THERE'S THE PRIVILEGE LOG.

7           **MR. MILDENBERG:**  YES.

8           **THE COURT:**  THERE IS DIFFICULTY THAT YOU CLAIM THAT

9    YOU'RE HAVING IN SCHEDULING DEPOSITIONS.

10          **MR. MILDENBERG:**  YES, YOUR HONOR.

11          **THE COURT:**  ONE OF YOUR CLIENTS JUST WALKED IN.  IS

12   THAT CAPTAIN WASHINGTON?

13          **MR. MILDENBERG:**  YES.

14          **THE COURT:**  OKAY.

15          **MR. MILDENBERG:**  GOOD.

16          **THE COURT:**  SO WE HAVE CAPTAIN WASHINGTON.

17          **MR. MILDENBERG:**  WE ALSO HAD A DISCOVERY LETTER ON

18   THE ADDITIONAL WITNESSES THAT ARE IN THE PROCESS OF BEING

19   DISCLOSED BY THE DEFENDANTS.

20          **THE COURT:**  MM-HMM.

21          **MR. MILDENBERG:**  THERE'S THE ISSUE OF WHETHER ANY

22   SANCTIONS WILL ISSUE THAT THE COURT HAS SET FORTH MAY ISSUE

23   WITH RESPECT TO COUNSEL AND THE PLAINTIFFS, WHICH WE VERY MUCH

24   HAD HOPED HAD TO MOLLIFY THE COURT TODAY.  WE APPRECIATE THE

25   OPPORTUNITY FOR AN EXPLANATION.

1              AND I THINK -- I THINK THAT'S ABOUT RIGHT.

2              **THE COURT:**  AND -- OKAY.  THE OTHER BELLWETHER

3    PLAINTIFFS, REMIND ME WHO THEY ARE AGAIN.

4              **MR. MILDENBERG:**  YES, THE BELLWETHER PLAINTIFFS

5    ARE -- SORRY.  CROCKER, JONES, JOHNSON -- CROCKER, JONES,

6    JOHNSON, HARTSFIELD, AND WASHINGTON.  THERE WAS A SIXTH WHO'S

7    BEEN PLACED IN THE VIRGINIA VENUE, AND THAT WOULD BE PLAINTIFF

8    ROANE.  THERE'S FIVE REMAINING.

9              **THE COURT:**  WHO WAS THE -- THERE WAS ONE -- AT THE

10   LAST CASE MANAGEMENT CONFERENCE, THERE WAS DISCUSSION OF

11   DISMISSAL OF ONE OF THE PLAINTIFFS.  WHO WAS THAT AGAIN?

12             **MR. MILDENBERG:**  PALMER.

13             **THE COURT:**  PALMER.

14             **MR. MILDENBERG:**  AND WE HAVE REACHED AN AGREEMENT I

15   BELIEVE TO STIPULATE TO SAID DISMISSAL.

16             **THE COURT:**  IS THAT RIGHT?

17             **MS. MELBY:**  YES, YOUR HONOR.  WE FORWARDED A

18   STIPULATION.  COUNSEL SUGGESTED SOME TWEAKS TO THE LANGUAGE,

19   AND WE'RE IN THE PROCESS OF MAKING THOSE.

20             **THE COURT:**  OKAY.  ALL RIGHT.  NOW, SO YOU -- LET ME

21   SEE.  WELL, SINCE CAPTAIN WASHINGTON IS HERE, MAYBE WE SHOULD

22   START WITH CAPTAIN WASHINGTON.

23             CAPTAIN WASHINGTON, COULD YOU PLEASE STEP FORWARD?

24             **CAPTAIN WASHINGTON:**  YES, SIR.

25             **THE COURT:**  OKAY.  CAPTAIN WASHINGTON, THERE HAS BEEN

1    THIS DISPUTE ABOUT THE PRODUCTION OF DOCUMENTS IN YOUR

2    POSSESSION THAT COULD BE RELEVANT TO THIS LITIGATION.  WHAT

3    HAVE YOU DONE -- CAN YOU DESCRIBE TO ME WHAT YOU HAVE DONE TO

4    COLLECT DOCUMENTS THAT MIGHT BE POTENTIAL TO -- MIGHT BE

5    POTENTIALLY RELEVANT TO THIS LITIGATION?

6              **CAPTAIN WASHINGTON:**  YES, SIR, I WILL.  AND FIRST OF

7    ALL, I WOULD LIKE TO APOLOGIZE FOR THE --

8              **THE COURT:**  WHY DON'T YOU PULL THE MICROPHONE UP A

9    LITTLE CLOSER TO YOU SO THAT THE MICROPHONE CAN CATCH YOU,

10   SINCE THIS HEARING IS ON THE RECORD?

11             **CAPTAIN WASHINGTON:**  YES, SIR, I CAN.  FIRST OF ALL,

12   I'D LIKE TO APOLOGIZE TO THE COURT FOR THE TARDINESS OF GETTING

13   THOSE -- THAT INFORMATION TO YOU.  THERE'S REALLY NO EXCUSE FOR

14   THAT.  THERE'S REASONS, BUT NO EXCUSE.

15             BUT THEN -- AND TO YOUR POINT, WHAT I DID TO COLLECT

16   FOR THEM, THERE WERE I ACTUALLY -- WHAT I FOUND WAS KIND OF

17   CURIOUS, IS THEY WANTED EMAILS FOR THAT, EMAILS HAVING TO DO,

18   BASICALLY, WITH ANY COMMUNICATIONS I HAD WITH ANY OTHER PARTIES

19   OF THIS -- TO THIS CASE, AS WELL AS UNITED OVER THE LAST FEW

20   YEARS, AND THERE WERE LITERALLY THOUSANDS AND THOUSANDS OF

21   THOSE EMAILS.  SO WHAT I DID IS I COLLECTED ALL THOSE EMAILS,

22   AND I SENT THEM OFF TO MY ATTORNEYS.

23             **THE COURT:**  HOW DID YOU -- HOW DID YOU COLLECT THOSE

24   EMAILS?

25             **CAPTAIN WASHINGTON:**  WELL, LET ME CORRECT THAT.  I

1   DIDN'T COLLECT ALL OF THEM.  THERE WAS ONE ACCOUNT THAT I

2   CANNOT ACCESS.  IT WAS A HOTMAIL ACCOUNT I CLOSED A FEW YEARS

3   BACK BECAUSE I WAS GETTING A LOT OF EMAILS IN THAT THAT WERE A

4   LITTLE BIT DISCONCERTING.  SO I CLOSED THAT HOTMAIL ACCOUNT,

5   AND I HAVEN'T BEEN ABLE TO GET INTO THAT HOTMAIL ACCOUNT,

6   ALTHOUGH I'VE TRIED FERVENTLY OVER THE LAST MONTH OR SO.  I

7   JUST CAN'T ACCESS IT.

8          BUT WHAT I DID IS THAT I WENT THROUGH AND JUST LOOKED

9   BACK THROUGH AT ANY EMAIL THAT HAD ANYTHING TO DO WITH UNITED

10  AIRLINES OVER THE LAST FEW YEARS.  IT TOOK ME A LITTLE BIT OF

11  TIME TO DO THAT AND THEN TRANSMITTED THOSE TO MY COUNSEL.

12          **THE COURT:**  SO YOU MADE THE DECISION ABOUT WHICH

13  EMAILS WERE RELEVANT AND WHICH EMAILS WERE NOT RELEVANT?

14          **CAPTAIN WASHINGTON:**  NO, SIR -- WELL, YES, SIR, I

15  DID, AND THOSE DECISIONS WAS BASED ON IF IT HAD ANYTHING TO DO

16  WITH UNITED AIRLINES.

17          **THE COURT:**  SO YOU WERE INSTRUCTED TO PROVIDE YOUR

18  COUNSEL WITH WHAT TYPES OF EMAILS?  LIKE WHAT WAS THE CRITERIA

19  FOR --

20          **CAPTAIN WASHINGTON:**  I CAN'T REMEMBER AT ALL EXACT

21  CRITERIA, BECAUSE IT WAS ENUMERATED, BUT THE -- BASICALLY, IT

22  SAID ANYTHING THAT HAD ANY COMMUNICATIONS WITH ANY OTHER

23  CLIENTS INVOLVED WITH THIS CASE, ANYTHING THAT HAD ANYTHING TO

24  DO WITH MY ALLEGATIONS FOR THIS CASE, ANYTHING THAT HAD TO DO

25  WITH UNITED AIRLINES, AS WELL AS DOCUMENTS CONCERNING MY PAY,

1    MY PROMOTIONS, MY TRAINING.  SO, BASICALLY, ANYTHING THAT HAD

2    TO DO WITH UNITED AIRLINES.

3            **THE COURT:**  OKAY.  AND WHEN DID YOU PROVIDE THESE

4    EMAILS TO YOUR COUNSEL?

5            **CAPTAIN WASHINGTON:**  IT WAS A -- I CAN'T REMEMBER THE

6    EXACT DATE.

7            **MR. MILDENBERG:**  IT WAS A SATURDAY.

8            **CAPTAIN WASHINGTON:**  IT WAS A SATURDAY.  I WAS

9    TRAVELING FOR A FUNERAL OVER THAT WEEKEND.  SO I WAS HAVING A

10   LITTLE TROUBLE DOING THAT, BECAUSE I WAS ACTUALLY DRIVING ONE

11   OF MY FRIENDS TO HER [SIC] FUNERAL.  SO I HAD A LITTLE TROUBLE

12   DOING THAT OVER THE ROAD.  SO WHEN WE GOT AWAY FROM THAT

13   PROCEEDINGS I TRANSMITTED THEM TO MY LAWYERS ON SATURDAY

14   EVENING.

15           DO YOU REMEMBER THE EXACT DATE?

16           **MR. MILDENBERG:**  IT WAS THE SATURDAY JUST BEFORE THE

17   MONDAY, YOUR HONOR, THAT YOUR HONOR HAD ORDERED.  I DON'T HAVE

18   THE EXACT DATE.

19           **THE COURT:**  I GUESS THE PROBLEM, CAPTAIN WASHINGTON,

20   IS THAT YOU -- IT'S CLEAR THAT YOU HAVE BEEN DERELICT IN YOUR

21   RESPONSIBILITY TO PRODUCE DOCUMENTS RELEVANT TO THIS CASE.  AND

22   THIS IS A LAWSUIT THAT YOU CHOSE TO FILE, YET YOU HAVE BEEN

23   DERELICT IN YOUR RESPONSIBILITY TO PROSECUTE THE LAWSUIT.  YOUR

24   LAWYERS HAVE BEEN DERELICT IN THEIR RESPONSIBILITY TO PROSECUTE

25   THE LAWSUIT, AND THERE ARE SERIOUS CONSEQUENCES TO THAT.  AND

1   SO THE QUESTION IS WHAT WILL THOSE CONSEQUENCES BE FOR YOUR

2   FAILURE TO PROPERLY PROSECUTE THE LAWSUIT THUS FAR, AND YOUR

3   CREATION OF DELAYS IN THE LAWSUIT THUS FAR?

4           WE HAVEN'T EVEN TALKED ABOUT WHETHER THE DOCUMENT

5   PRODUCTION THAT FINALLY HAS BEEN MADE IS ADEQUATE OR WHETHER

6   THE PRIVILEGE LOGS PROVIDED ARE ADEQUATE.  AND MY PRELIMINARY

7   ANSWER TO THE QUESTION WHETHER THE PRIVILEGE LOGS ARE ADEQUATE

8   IS CLEARLY NO.

9           BUT PUTTING THAT ASIDE FOR THE MOMENT, BECAUSE THAT

10  IS KIND OF MORE A LAWYER PROBLEM THAN A CLIENT PROBLEM, BUT

11  IT'S CLEAR WE HAVE A CLIENT PROBLEM HERE, AND IT'S CLEAR THAT

12  YOU -- YOU KNOW, YOU HAVE BEEN DERELICT IN YOUR RESPONSIBILITY

13  TO PROVIDE DOCUMENTS REQUESTED OF YOU A LONG, LONG TIME AGO,

14  AND IT HAS PUT THE DEFENDANT THROUGH A TREMENDOUS AMOUNT OF

15  UNFAIR BURDEN AND EXPENSE.

16          AND, FRANKLY, I THINK IT WOULD BE APPROPRIATE, GIVEN

17  WHAT YOU AND YOUR LAWYERS HAVE DONE, TO DISMISS YOUR CASE WITH

18  PREJUDICE AS A SANCTION FOR YOUR FAILURE TO RESPOND TO

19  DISCOVERY REQUESTS.

20          AN ALTERNATIVE -- DID YOU READ THE ORDER THAT I

21  ISSUED?

22          **CAPTAIN WASHINGTON:**  YES, SIR, I DID.

23          **THE COURT:**  YOU DID.  OKAY.

24          AS I SAID IN THAT ORDER, I THOUGHT THAT A POTENTIAL

25  ALTERNATIVE TO DISMISSAL, ONE THAT WOULD COMPENSATE -- BEGIN TO

1  COMPENSATE THE DEFENDANTS APPROPRIATELY AND HOPEFULLY ENSURE

2  THAT YOU WOULD NOT CREATE ANY FURTHER DELAYS IN THE FUTURE

3  WOULD BE TO REQUIRE YOU TO PAY HALF THE COSTS OF -- THAT THE

4  DEFENSE INCURRED IN DEALING WITH YOUR DELAYS AND IN DEALING

5  WITH YOUR FAILURE TO PRODUCE DOCUMENTS AND FAILURE TO COOPERATE

6  IN MOVING THIS CASE FORWARD.

7          SO I WILL -- AND DID YOU SEE -- DID YOUR LAWYERS

8  PROVIDE YOU WITH THE DECLARATION THAT THE DEFENDANTS FILED

9  SETTING FORTH THEIR COSTS THAT THEY INCURRED IN DEALING WITH

10 THE DELAYS OF YOU AND YOUR LAWYERS?

11         **CAPTAIN WASHINGTON:**  NO, SIR, I HAVEN'T SEEN THAT.

12         **MR. MILDENBERG:**  I VERBALLY EXPLAINED IT TO HIM LAST

13 NIGHT, YOUR HONOR.

14         **THE COURT:**  YOU VERBALLY EXPLAINED IT TO HIM?

15         **MR. MILDENBERG:**  YES, AND HOW MUCH IT WAS.

16         **THE COURT:**  OKAY.  SO, YOU KNOW, FRANKLY, I GIVE YOU

17 THE CHOICE, AND YOU HAVE ONE OF TWO CHOICES.  YOUR CASE WILL

18 EITHER BE DISMISSED WITH PREJUDICE, OR YOU WILL PAY HALF THE

19 COSTS THAT UNITED INCURRED -- YOU PERSONALLY WILL PAY HALF THE

20 COSTS THAT UNITED INCURRED IN DEALING WITH YOUR DELAYS AND YOUR

21 IMPROPER CONDUCT, AND WE WILL SET A DATE BY WHICH YOU WILL MAKE

22 THAT PAYMENT.  AND THAT'S YOUR CHOICE.  IT WILL BE ONE OF THOSE

23 TWO SANCTIONS FOR YOUR FAILURE TO COOPERATE IN THIS CASE THAT

24 YOU FILED, SO FAR.

25         SO, WOULD YOU LIKE TO MAKE THAT CHOICE?

1          **MR. MILDENBERG:**  YOUR HONOR, MAY I JUST SIMPLY

2     REQUEST THAT MAYBE WE JUST BE GIVEN AN OPPORTUNITY OF TWO

3     MINUTES TO COUNSEL THE CLIENT.

4               (SIMULTANEOUS SPEAKING.)

5          **THE COURT:**  SURE.

6          **MR. MILDENBERG:**  THANK YOU, YOUR HONOR.

7          **THE COURT:**  CERTAINLY.

8          **MR. MILDENBERG:**  IT COULD BE EITHER RIGHT NOW OR WHEN

9     WE'RE DONE.  WHENEVER YOUR HONOR WISHES.

10         **THE COURT:**  I'M HAPPY TO WAIT --

11         **MR. MILDENBERG:**  COULD WE STEP OUTSIDE FOR TWO

12    MINUTES?

13         **THE COURT:**  WHATEVER YOU PREFER IS FINE.

14         **MR. MILDENBERG:**  I THINK THAT WOULD BE APPROPRIATE.

15         **THE COURT:**  OKAY.

16         **MR. MILDENBERG:**  THANK YOU, YOUR HONOR.

17         **MS. MELBY:**  BEFORE YOU LEAVE --

18         **MR. MILDENBERG:**  YES.

19         **MS. MELBY:**  -- JUST I WOULD ALSO LIKE TO HAVE TWO

20    MINUTES JUST TO WEIGH IN BEFORE --

21         **THE COURT:**  GO AHEAD.  WHY DON'T YOU DO THAT NOW?

22         **MS. MELBY:**  OKAY.  THANKS, YOUR HONOR.

23         MR. WASHINGTON WAS ASKED TO DO THREE THINGS BY THE

24    ORDER TO SHOW CAUSE.  NUMBER ONE WAS TO SHOW UP.  HE WAS 15

25    MINUTES LATE.  NUMBER TWO WAS TO PAY SANCTIONS IN FULL.  HE DID

1    NOT.

2              NUMBER THREE --

3         **THE COURT:**  SANCTIONS MEANING THE $50 A DAY IN

4    SANCTIONS THAT I ORDERED?

5         **MS. MELBY:**  RIGHT.  THAT'S $1,050.

6         **THE COURT:**  OKAY.

7         **MS. MELBY:**  THE THIRD THING IS THAT HE WAS TO

8    COMPLETE HIS DISCOVERY OBLIGATIONS, AND HE HAS NOT COME CLOSE

9    TO DOING THAT.

10              NOW, COUNSEL HAS SAID THAT SOME DOCUMENTS WERE

11    PRODUCED.  I CAN TELL YOU THAT I DID RECEIVE AN EMAIL FROM HIM

12    APPROXIMATELY ONE HOUR BEFORE THIS HEARING COMMENCED.  SO I

13    HAVE OBVIOUSLY NOT HAD A CHANCE TO REVIEW IT.  I HAVE LOOKED AT

14    THE PRIVILEGE LOG.  IT IS WOEFULLY DEFICIENT.

15         **THE COURT:**  WHEN YOU SAY "THE PRIVILEGE LOG", ARE YOU

16    REFERRING TO THE PRIVILEGE LOG THAT THEY SUBMITTED FOR CAPTAIN

17    WASHINGTON'S DOCUMENTS?

18         **MS. MELBY:**  CORRECT.

19         **THE COURT:**  OKAY.

20         **MS. MELBY:**  AND I HAVE ONLY HAD MOMENTS TO LOOK AT

21    IT, BUT IT APPEARS TO SUFFER FROM THE SAME MALADIES THAT THE

22    OTHER ONES THAT THE COURT'S ALREADY BEEN APPRISED OF.

23              IN ADDITION TO THAT, THERE ARE NO EMAILS -- AND

24    COUNSEL CAN CORRECT ME IF I'M WRONG, BUT THERE ARE NOT EMAILS

25    FROM THE HOTMAIL ACCOUNT.  THE HOTMAIL HAD ACCOUNT WAS EITHER

1    SPOLIATED --

2            **THE COURT:**  WELL, I THINK THAT'S WHAT HE SAID.  I

3    THINK HE SAID HE DISCONTINUED THAT ACCOUNT SEVERAL YEARS AGO,

4    AND HE TRIED TO GET BACK IN IT, AND HE COULDN'T DO IT.

5            **MS. MELBY:**  RIGHT, BUT THAT'S NOT ENOUGH.  HE SHOULD

6    BE TELLING THE COURT AND COUNSEL WHAT HE DID DO TO TRY TO

7    ACCESS THAT MATERIAL, AND WE HAVE NOTHING BUT A FOOTNOTE THAT

8    SAYS, WELL, NOT THERE, DON'T HAVE IT, BUT NOTHING ABOUT, I DID

9    THIS, I DID THIS, I DID THIS.  NONE OF THAT.  NO INFORMATION

10   ABOUT WHO THE VENDOR IS, NO INFORMATION ABOUT WHAT THE VENDOR

11   DID TO HELP WITH COMPLIANCE, IF ANYTHING.

12           **MR. MILDENBERG:**  THAT WOULD BE WITHIN (INDISCERNIBLE)

13   NOT WITHIN THE CLIENT'S (INDISCERNIBLE).

14           **MS. MELBY:**  AND ALSO I JUST WANT TO POINT OUT --

15           **THE COURT:**  BUT I WOULD BE INTERESTED IN KNOWING --

16   AND HOLD THAT THOUGHT, I'LL LET YOU CONTINUE -- BUT I WOULD BE

17   INTERESTED IN GETTING A LITTLE MORE DETAIL ABOUT HOW -- IT

18   SOUNDS LIKE CAPTAIN WASHINGTON SEARCHED FOR AND FOUND THE

19   EMAILS HIMSELF.

20           **MR. MILDENBERG:**  YES, THEY ALL DID.  AND I WILL

21   EXPLAIN THAT IN GREAT DETAIL.

22           **THE COURT:**  OKAY.

23           **MR. MILDENBERG:**  I WOULD LOVE TO.

24           **THE COURT:**  OKAY.

25           **MR. MILDENBERG:**  I PLEASE WILL ASK THE COURT FOR THE

1    OPPORTUNITY TO DO SO.

2              **THE COURT:**  OKAY.  GO AHEAD.

3          **MR. MILDENBERG:**  RIGHT THIS MINUTE?

4              **THE COURT:**  AS TO CAPTAIN WASHINGTON PLEASE EXPLAIN

5    TO ME WHAT HAPPENED.

6          **MR. MILDENBERG:**  YES.  IT'S THE SAME PROCESS WITH

7    EVERYONE.  IT'S JUST THAT -- I'M BEING ASKED TO SPEAK INTO THE

8    MICROPHONE.  IT'S ESSENTIALLY THE SAME PROCESS FOR EVERYONE.

9    IT'S JUST THAT CAPTAIN WASHINGTON HAD THE ISSUES THE COURT IS

10   AWARE OF WITH THE TIME THAT IT TOOK TO DO IT.

11            SO WHAT WE DID, YOUR HONOR -- FIRST OF ALL, WHEN WE

12   GOT THE CASE, OKAY, WE WERE GIVEN EMAILS, BUT WE WERE GIVEN

13   ONLY A SMALL AMOUNT OF EMAILS.  WE WERE GIVEN EMAILS WITHIN THE

14   FILES FROM PRIOR COUNSEL.  THE EMAILS -- WE DID PRODUCTIONS WAY

15   BEFORE THIS.  WE DID PRODUCTIONS EVEN WHEN WE TOOK THE CASE

16   OVER, THERE WAS PHASE ONE DISCOVERY.  AND PRODUCTION --

17   DISCOVERY WAS LIMITED FOR THE PLAINTIFFS, BUT IT WASN'T LIMITED

18   FOR THE DEFENDANTS.  SO WE ACTUALLY HAD TO COMPLETE SOME OF THE

19   THOSE PHASE ONE PRODUCTIONS.

20            AND AT THAT TIME WE HAD CLIENT EMAILS THAT WE TURNED

21   OVER.  I THINK THE MAXIMUM THAT ANY CLIENT THAT WE WERE AWARE

22   OF WAS SOMETHING LIKE 50 TO 60 EMAILS.  OKAY.

23             **THE COURT:**  THAT WAS WHEN?

24         **MR. MILDENBERG:**  ABOUT A YEAR AGO.

25             **THE COURT:**  SO ABOUT A YEAR AGO YOU FAILED TO TURN

```
1   OVER A BUNCH --

2           MR. MILDENBERG:  NO, NO.

3           THE COURT:  -- OF RESPONSIVE EMAILS?

4           MR. MILDENBERG:  NO, WE TURNED THEM OVER.  WE TURNED

5   OVER THE ONES THAT WE WERE AWARE OF, THAT WE, AS COUNSEL, WERE

6   AWARE OF.  WE DIDN'T WITH- --

7           THE COURT:  BUT THERE WERE A TON --

8           MR. MILDENBERG:  WE DIDN'T --

9           THE COURT:  -- EMAILS THAT WERE RESPONSIVE THAT WERE

10  NOT TURNED OVER.

11          MR. MILDENBERG:  WE DID NOT KNOW ABOUT THEM UNTIL --

12  UNTIL ONE CLIENT IN THE MOST RECENT SETS OF PRODUCTION, ON THE

13  EVE OF HIS DEPOSITION SENT US 2,000 EMAILS CONSTITUTING CHAIN

14  EMAILS THAT WERE GOING ON FOR THE LAST FOUR YEARS BETWEEN BOTH

15  THE CLIENTS THEMSELVES AS WELL AS THE CLIENTS AND THEIR

16  ATTORNEYS.

17          ABOUT HALF OR MORE OF THEM ARE BETWEEN THE GROUP OF

18  20 CLIENTS AND THE ATTORNEYS.  THOSE WERE NOT TURNED OVER TO

19  US.  WE DID NOT KNOW THEY EXISTED.  WE LEARNED THEY EXISTED

20  VERY RECENTLY, AND AS SOON AS WE SAW THE FIRST CACHE OF ONE

21  CLIENT, WE SAID, BOY, THIS IS 2,000 FOR ONE PERSON; THERE'S,

22  YOU KNOW, 18 OF THEM HERE.

23          IT TURNS OUT THAT -- I SAID 23,000 THE OTHER DAY IN

24  ONE OF OUR LETTERS.  IF YOU INCLUDE THE ONES THAT ARE ALL

25  AROUND THE DIFFERENT JURISDICTIONS, IT'S CLOSER TO 50,000
```

 1   ALTOGETHER.  50,000 EMAILS, WHICH, YOUR HONOR, IF WE KNEW ABOUT

 2   THEM, WE WOULD NOT PLAY ANY GAME WITH YOUR HONOR.  I MEAN, I

 3   THINK YOUR HONOR DOES KNOW THAT, BUT I ASSURE YOU THAT IT'S

 4   TRUE.

 5          SO AS SOON AS WE FOUND OUT WE START WRITING AND

 6   ASKING EVERYONE, GENTLEMEN, PLEASE GO BACK, I NEED YOU TO GO

 7   BACK FROM YOUR VERY FIRST INVOLVEMENT WITH ANY ALLEGATION OF

 8   DISCRIMINATION IN THIS CASE.  IF YOU WERE PART OF THE 2010

 9   SETTLEMENT THAT THE COURT KNOWS ABOUT, IT STARTS AS SOON AS YOU

10   MADE ANY TYPE OF ALLEGATION, AS SOON AS YOU WROTE TO ANY OTHER

11   PERSON, AS SOON AS YOU FORMED ANY TYPE OF COALITION OR JOINED

12   IT, ANY CORRESPONDENCE, COMMUNICATION THAT YOU HAVE CONCERNING

13   THAT, CONCERNING YOUR CLAIMS OF DISCRIMINATION, ANY

14   COMMUNICATIONS BY OR AMONG THE GROUP, WHETHER OR NOT WITH YOUR

15   COUNSEL, BECAUSE PEOPLE WERE UNDER A MISIMPRESSION THAT IF

16   IT'S --

17          **THE COURT:**  YOU DID THIS BY EMAIL?

18          **MR. MILDENBERG:**  EMAIL, VERBALLY, EVERYTHING.  OKAY?

19          AND THEN WE WAITED.  AND PEOPLE STARTED SLOWLY

20   GETTING THINGS TO US, BUT IT WAS TAKING A REALLY LONG TIME.  SO

21   YOU HAD -- CAPTAIN WASHINGTON WAS ACTUALLY -- ONCE HE WAS ABLE

22   TO START DOING IT, IS ACTUALLY PRETTY GOOD WITH COMPUTERS.  HE

23   DIDN'T HAVE THAT MUCH DIFFICULTY ACTUALLY DOING THE TECHNICAL

24   PROCESS.

25          BUT YOU DID HAVE SOME -- ACTUALLY, ONE OF OUR CLIENTS

1   WHO'S HERE IN THE ROOM WHO'S VERY -- PUT IN A LOT OF ENERGY IN

2   DOING THIS OVER SEVERAL DAYS WHEN HE FINALLY FIGURED OUT HOW TO

3   DO IT, BUT HE HAD DIFFICULTY WITH THE UPLOADING PROCESS.  HE

4   HAD DIFFICULTY WITH THE DOWNLOADING PROCESS.

5           SO THE EXACT PROCESS WAS, WHAT I ASKED THEM ALL TO

6   DO, AS YOU GO THROUGH YOUR EMAILS, PLACE EACH RESPONSIVE EMAIL

7   THAT YOU'RE PRODUCING INTO A SUBFOLDER IN YOUR EMAIL ACCOUNT.

8   WHEN YOU HAVE THEM ALL THERE, THEN CALL ME AND I WILL TELL YOU

9   WHAT TO DO.  THE NEXT STEP WAS, ONCE THEY'RE IN A SUBFOLDER,

10  YOUR HONOR, THEY CAN BE EXPORTED OUT OF THAT FOLDER INTO WHAT'S

11  CALLED AN MBOX OR A PST FILE, DEPENDING ON WHAT TYPE OF PROGRAM

12  YOU'RE USING.

13          UNFORTUNATELY SOME OF THE GENTLEMEN HERE, INCLUDING

14  MR. WILSON WHO'S HERE, HAD AOL AND AOL DIDN'T HAVE ANY WAY TO

15  DO WHAT NEEDED TO BE DONE.  SO MR. WILSON HAD TO GO OUT AND

16  DOWNLOAD OR PURCHASE A SEPARATE EMAIL PROGRAM LIKE OUTLOOK

17  OR -- AND HE TRIED THAT.  HE TRIED HOOKING UP HIS OUTLOOK -- A

18  NEW OUTLOOK PROGRAM TO HIS ACCOUNTS, DOWNLOADING ALL OF HIS

19  EMAILS, INCLUDING THE ONES IN THAT FOLDER, THEN GOING THROUGH

20  THE PROCESS OF EXPORTING INTO THE SPECIAL ARCHIVE FILE.

21          AND THIS IS RELEVANT BECAUSE -- AS WELL WITH

22  MR. WASH- -- CAPTAIN WASHINGTON, BECAUSE WHEN YOUR HONOR SAID

23  THIS COULD HAVE BEEN DONE SATURDAY, SUNDAY, BETWEEN MONDAY,

24  YOU'RE RIGHT, BUT IT WASN'T THAT TYPE OF EMAIL FILE.  IT'S AN

25  ARCHIVE FORMAT.  YOU GET IT AS A SINGLE FILE.  IT'S NOT, HERE

1   IS MY EMAILS, YOU CAN NOW READ THEM -- YES, IF I HAD A REGULAR

2   OLD CASE, WHICH IS THIS IS NOT, RIGHT?  IF I HAD A STANDARD

3   CASE AND SOMEONE WALKED IN MY OFFICE WITH 1,400 EMAILS, IN AN

4   EMERGENCY, YES, THAT COULD BE DONE AS YOUR HONOR SAID.

5             THAT'S NOT WHAT THIS IS, THIS IS THE UPLOADING OF A

6   PST OR MBOX FILE INTO OUR FOLDER THAT WE PROVIDED TO HIM.  THEN

7   WE DOWNLOAD THAT TO THE DISCOVERY VENDOR.  THE DISCOVERY VENDOR

8   THEN PROCESSES AND EXTRACTS ALL OF THE 1,400 EMAILS INTO A

9   READABLE AND PARSABLE FORMAT.

10            THE FIRST THING WE HAD THE DISCOVERY VENDOR DO AT

11  THAT POINT WAS RUN SEARCHES, FIND ALL THE EMAILS THAT

12  MENTION -- THAT COME FROM DOW PATTEN, FIND ALL THE EMAILS THAT

13  COME FROM SPENCER SMITH.  WE GAVE A LIST.  THESE ARE ALL THE

14  LAWYERS THAT WE KNOW --

15            **THE COURT:**  I REMEMBER THOSE GUYS.

16            **MR. MILDENBERG:**  I KNOW YOU DO.

17            THESE ARE ALL THE LAWYERS WE KNOW THAT WERE INVOLVED

18  IN THIS CASE, AND THERE WERE OTHERS, TOO, WE DIDN'T EVEN KNOW,

19  BUT THERE WERE.

20            EVEN AFTER WE GAVE THE LIST, AS WE WENT THROUGH

21  50,000, THERE WERE EVEN MORE.  THAT WAS ONE OF THE PROBLEMS.

22  IT'S A MOVING TARGET, BECAUSE WE HAD A UNIVERSE AT FIRST OF 20,

23  30,000.  WE GAVE A LIST OF LAWYERS.  THEY RAN SEARCHES.  WE

24  START GOING THROUGH ONES THAT DIDN'T GET HIT IN THE SEARCH.  WE

25  FOUND OTHER LAWYERS THAT PEOPLE CONSULTED WITH.

1           CAPTAIN WASHINGTON'S CASE IS A GOOD EXAMPLE --

2           **THE COURT:**  BUT I -- YOU'RE.

3           **MR. MILDENBERG:**  THEN THEY HAD TO GO BACKWARDS.

4           **THE COURT:**  BUT YOU'RE SPENDING -- I'M SORRY TO

5    INTERRUPT.

6           **MR. MILDENBERG:**  YEAH, SORRY.

7           **THE COURT:**  I'M HAPPY TO LET YOU CONTINUE WHATEVER

8    YOU WERE SAYING.  BUT YOU'RE TALKING A LOT ABOUT SEARCHING FOR

9    COMMUNICATIONS WITH LAWYERS.

10          **MR. MILDENBERG:**  YES, BECAUSE THAT REMOVE -- IF THOSE

11   ARE THE ONES WE'RE GOING TO ASSERT PRIVILEGE ON, SO, IN OTHER

12   WORDS, RIGHT YOU HAVE TO IDENTIFY THOSE EMAILS.  NOW WHAT

13   HAPPENS IS --

14          **THE COURT:**  I MEAN, I'M A LITTLE BIT MORE CONCERNED

15   WITH THE INITIAL SEARCH AND WHETHER EVERYTHING WAS CAPTURED IN

16   THE INITIAL SEARCH THAT COULD BE --

17          **MR. MILDENBERG:**  I AGREE WITH YOU.

18          **THE COURT:**  -- POTENTIALLY RESPONSIVE WHETHER

19   PRIVILEGED OR NOT.

20          **MR. MILDENBERG:**  YOUR HONOR, I HAVE NOW REVIEWED WITH

21   CONOR CORCORAN.  WE'VE REVIEWED CLOSE TO 50,000 EMAILS.  I WILL

22   TELL YOU RIGHT NOW -- I'M NOT GOING TO HIDE ANYTHING FROM THE

23   COURT.  SOME CLIENTS GAVE US 2,000.  SOME CLIENTS GAVE US 200,

24   AND THEY MAY HAVE BEEN COPIED ON 2,000.  SO I'M NOT REALLY

25   SURE -- YOU KNOW, YOUR HONOR, I'M SO SORRY --

1          **THE COURT:**  ARE YOU -- ARE YOU AND YOUR CLIENTS

2  COMFORTABLE WAIVING THE PRIVILEGE TO THE EXTENT NECESSARY TO

3  SHOW THAT YOU'VE MADE A DILIGENT SEARCH -- TIMELY AND DILIGENT

4  SEARCH EFFORT FOR DOCUMENTS RESPONSIVE TO THEIR REQUESTS?

5          **MR. MILDENBERG:**  I THINK SO, BUT I WOULD HAVE TO

6  THINK ABOUT THAT, BUT I THINK SO, YES.  BUT I DON'T KNOW WHAT

7  YOU MEAN -- YOU KNOW, EXACTLY WHAT THE COURT MEANS.

8          **THE COURT:**  TO PROVE THAT YOU'VE MADE A DILIGENT AND

9  RESPONSIVE AND THOROUGH --

10          **MR. MILDENBERG:**  I'M GOING --

11          **THE COURT:**  -- EFFORT TO SEARCH FOR DOCUMENTS

12  RESPONSIVE TO THEIR REQUESTS.

13          **MR. MILDENBERG:**  I'M GOING TO STAND HERE AND TELL

14  YOUR HONOR --

15          **THE COURT:**  AND IT MAY BE --

16          **MR. MILDENBERG:**  YEAH.

17          **THE COURT:**  I WILL SAY I DON'T -- YOU KNOW, I WOULD

18  NEED TO STUDY THIS, I DON'T KNOW THE ANSWER, BUT IT MAY BE THAT

19  I COULD ORDER YOU TO PROVIDE THAT REGARDLESS --

20          **MR. MILDENBERG:**  YOU PROBABLY COULD.

21          **THE COURT:**  -- OF WHETHER YOU'RE WILLING TO WAIVE THE

22  PRIVILEGE.

23          **MR. MILDENBERG:**  YES.

24          **THE COURT:**  I MEAN, WE'RE SORT OF IN AN EXTREME --

25          **MR. MILDENBERG:**  YES.

1           **THE COURT:**  -- SITUATION NOW --

2           **MR. MILDENBERG:**  YES.

3           **THE COURT:**  -- WHERE I COULD PROBABLY ORDER A LOT OF

4     THINGS.

5           **MR. MILDENBERG:**  YOU COULD.

6           **THE COURT:**  I DON'T -- I HAVEN'T -- THEY'VE MADE

7     NOISE ABOUT HOW YOU'VE -- YOU KNOW, I COULD ORDER YOU TO TURN

8     OVER PRIVILEGED DOCUMENTS, AND I HAVEN'T BUCKLED DOWN AND

9     STUDIED THAT QUESTION YET.

10          **MR. MILDENBERG:**  WE WILL.  WE'LL COOPERATE.

11          BUT WHAT I WANT TO TELL YOU.  I'M NOT TRYING TO

12    SAY -- THIS IS VERY IMPORTANT -- IT MAY BE THE CASE THAT NOT

13    EVERYONE HAS DONE THAT.  I'M NOT GOING TO STAND HERE AND SAY

14    THE OPPOSITE.  I'VE ASKED FOR THAT TO OCCUR.  I DON'T KNOW WHAT

15    ELSE I COULD HAVE DONE WHEN SOME PEOPLE EITHER DON'T GIVE THE

16    WHOLE CACHE OF EMAILS OR THEY CLAIM THAT THIS IS ALL THEY HAVE

17    LEFT.  THAT'S BEYOND ME.

18          RESPECTFULLY, I'VE TRIED SO HARD TO EXPLAIN WHAT THE

19    RAMIFICATIONS WERE, AND I THINK THE ONE THING -- YOU KNOW, THE

20    CLIENTS WHO ARE HERE WILL CONFIRM THAT.  AND BOTH OF THEM THAT

21    ARE HERE DID THEIR BEST, I BELIEVE, TO GIVE ME ALL THEIR

22    EMAILS.

23          CAPTAIN WILSON WHO'S HERE GAVE HIS EMAILS.  THERE'S

24    NOT MISSING -- HE'S NOT ONE OF WHERE THERE'S ONLY A SMALL

25    NUMBER.  SOME OF THEM DO HAVE A SMALL NUMBER.

1          **THE COURT:**  WHICH RAISES REAL QUESTIONS ABOUT THE

2   PROCESS THAT YOU INSTITUTED TO GATHER THE DOCUMENTS POTENTIALLY

3   RESPONSIVE TO THEIR REQUESTS.

4          **MR. MILDENBERG:**  IT'S -- I SEE HOW YOUR HONOR COULD

5   FEEL THAT WAY, BUT I HAVE TO SAY THAT --

6          **THE COURT:**  I MEAN --

7          **MR. MILDENBERG:**  I'M SURPRISED THAT YOUR --

8          **THE COURT:**  WHAT OTHER --

9          (SIMULTANEOUS SPEAKING.)

10          **MR. MILDENBERG:**  I'M SURPRISED THAT YOUR HONOR ALWAYS

11   JUST FLIPS IT BACK ON -- WHEN WE'RE TRYING WE'RE TRYING TO GET

12   CLIENTS TO TURN IT OVER, IT'S NOT TURNED OVER, HOW -- WHAT ELSE

13   COULD I HAVE DONE?

14          **THE COURT:**  TAKE OVER THE PROCESS.

15          **MR. MILDENBERG:**  HOW?

16          **THE COURT:**  GIVE US YOUR ACCOUNTS, GIVE US ACCESS TO

17   YOUR ACCOUNTS, WE'LL GO THROUGH ALL YOUR EMAILS AND PULL OUT

18   EVERYTHING THAT'S POTENTIALLY RESPONSIVE.

19          **MR. MILDENBERG:**  BUT PEOPLE DON'T WANT TO NECESSARILY

20   DO THAT BECAUSE THEY DO HAVE PRIVATE THINGS.  I WENT THROUGH

21   THAT.  I WILL TELL YOU RIGHT NOW.

22          **THE COURT:**  OH, I'VE BEEN THROUGH IT, TOO --

23          **MR. MILDENBERG:**  I KNOW.

24          **THE COURT:**  -- AS A LAWYER.  I'VE REVIEWED VERY

25   PRIVATE STUFF.

1          **MR. MILDENBERG:**  I DID IT WITH THE FIRST ONE.

2          **THE COURT:**  I'VE REVIEWED VERY PRIVATE EMAILS.

3          **MR. MILDENBERG:**  I KNOW.

4          **THE COURT:**  FROM --

5          **MR. MILDENBERG:**  BUT THEY --

6          **THE COURT:**  -- FROM MY CLIENTS.

7          **MR. MILDENBERG:**  PEOPLE -- I DID IT FIRST WITH

8    JOHNSON.  OKAY?  HE WAS THE FIRST ONE THAT WE WERE ABLE TO GET

9    THE ARCHIVE FROM.  BUT HE HAD NO TECHNICAL ABILITY,

10   UNFORTUNATELY -- HE TRIED VERY HARD.  HE SENT US LINKS THAT HE

11   SAID, OKAY, I WENT THROUGH THE FOLDER, HERE'S A LINK TO THE

12   FOLDER, GO AHEAD, DOWNLOAD IT, AND THE LINK WAS JUST LIKE SOME

13   HTML LINK, WHICH IF YOU PULL IT DOWN FROM THE WEB PAGE, IT'S

14   NOT REALLY A LINK, IT'S JUST A LINK TO WHATEVER HTML WAS ON

15   THAT PAGE AT THAT TIME.

16          SO I HAD TO GO THROUGH IT WITH HIM IN BOTH -- IN

17   PERSON AS WELL AS OVER THE PHONE, OVER A -- OVER, LITERALLY, IT

18   TOOK A COUPLE OF WEEKS.  WHAT WE WOUND UP DOING, I HAD HIM

19   CREATE A GMAIL ACCOUNT.  HE HOOKED UP -- A NEW GMAIL ACCOUNT.

20   HE HOOKED UP THE GMAIL ACCOUNT TO GET OBTAIN ALL OF HIS EMAILS

21   FROM THE ACCOUNT AT ISSUE.  THEN HE GAVE ME THE PASSWORD TO HIS

22   GMAIL ACCOUNT.  THEN I LOGGED INTO THE GMAIL ACCOUNT, AND I

23   DOWNLOADED AND PERFORMED THE EXPORT FROM THE FOLDER WHERE HE

24   REPRESENTED THAT HIS ITEMS WERE.

25          AND SO, YOU KNOW, THAT'S WHAT WE DID.  EVERYONE ELSE

```
 1   WAS EITHER ABLE TO DO IT ON THEIR OWN, OR I WAS ABLE TO WORK

 2   WITH THEM ON THE PHONE.  BUT, YOU KNOW, YOU WANT ME TO GO

 3   THROUGH -- I HONESTLY HAVE NEVER GONE THROUGH A CLIENT'S ENTIRE

 4   EMAIL ACCOUNT OR HISTORY LIKE THAT IN ANY CASE.

 5           THE COURT:  WELL, YOU CAN --

 6           MR. MILDENBERG:  I ASK CLIENTS, THIS IS WHAT'S BEING

 7   ASKED, PLEASE GIVE IT TO US.

 8           THE COURT:  BUT YOU CAN USE -- I MEAN EXTREME TIMES

 9   CALL FOR EXTREME MEASURES.

10           MR. MILDENBERG:  YOU'RE RIGHT.

11           THE COURT:  RIGHT?

12           MR. MILDENBERG:  LOOKING BACK, YOU'RE RIGHT.  I'M

13   SORRY.

14           THE COURT:  I ACTUALLY THINK, YOU KNOW, GIVEN WHAT

15   YOU JUST SAID TO ME --

16           MR. MILDENBERG:  YES.

17           THE COURT:  -- AND YOUR CANDOR IS APPRECIATED

18   ALTHOUGH IT'S --

19           MR. MILDENBERG:  -- IS GETTING ME IN WORSE TROUBLE.

20           THE COURT:  TRUTH WOULD HAVE COME OUT ANYWAY.

21           MR. MILDENBERG:  WELL, SURE.

22           THE COURT:  YOU KNOW, I ACTUALLY THINK FOR ANY CLIENT

23   THAT HAS NOT PROVIDED -- FOR ANY CLIENT -- ANY PLAINTIFF THAT

24   STILL HAS NOT PROVIDED YOU WITH RESPONSIVE EMAILS AS OF TODAY.

25           MR. MILDENBERG:  THEY ALL HAVE TODAY IN CALIFORNIA.
```

1    IN OTHER PLACES --

2            **THE COURT:**  BUT YOU JUST SAID YOU'RE WORRIED THAT

3    SOME OF THEM --

4            **MR. MILDENBERG:**  THEY'RE NOT ALL THE SAME NUMBER OF

5    EMAILS.

6            **THE COURT:**  RIGHT.

7            **MR. MILDENBERG:**  BUT EVERYBODY --

8            **THE COURT:**  BUT FOR ANYBODY WHO HAS NOT WHO STILL HAS

9    RESPONSIVE EMAILS THAT THEY HAVEN'T DISCLOSED TO YOU AT THIS

10   POINT, I THINK IT WOULD BE ENTIRELY APPROPRIATE TO DISMISS

11   THEM.

12           **MR. MILDENBERG:**  BUT YOU DON'T KNOW IF THEY REALLY

13   HAVE THEM OR NOT.

14           **THE COURT:**  RIGHT.

15           **MR. MILDENBERG:**  IT COULD BE THE CASE THAT --

16           **THE COURT:**  AND WE'RE GOING TO HAVE TO -- I MEAN,

17   THAT'S -- YOU KNOW I'VE BEEN PONDERING THE IDEA OF, YOU KNOW,

18   APPOINTING A SPECIAL MASTER TO JUST SEARCH THROUGH YOUR

19   CLIENTS' EMAILS AND FIND RESPONSIVE DOCUMENTS AND SEARCH

20   THROUGH THE DOCUMENTS FOR PRIVILEGE, SO -- TO BE SURE THAT

21   NOTHING IS BEING WITHHELD HERE.

22           **MR. MILDENBERG:**  CAN I ADDRESS THE PRIVILEGE ISSUE AS

23   WELL, BECAUSE, YOUR HONOR, THERE'S BEEN CRITICISM OF OUR

24   PRIVILEGE LOG?

25           AND THE WAY THAT'S CREATED IS THAT IS A LIST OF EVERY

1  EMAIL THAT WE'VE IDENTIFIED AS EITHER SENT BY OR TO A LAWYER IN

2  THIS CASE, OR FROM A GROUP TO A LAWYER, OR AN EMAIL FROM A

3  LAWYER THAT IS NOT -- NO LONGER FROM THE LAWYER, BUT THE EMAIL

4  CONTAINS THE UNDERLYING EMAIL FROM THE LAWYER.  IT LISTS THAT

5  OUT.  IT IDENTIFIES THE SENDERS, THE RECIPIENTS, AND THE NATURE

6  OF THE COMMUNICATION.

7          NOW, IT'S TRUE, YOUR HONOR, THAT WE COULD GO THROUGH

8  THE 50,000 EMAILS AND GIVE A ONE- OR TWO-SENTENCE SUMMARY OF

9  THEM, IF YOU WANT US TO GO THAT FAR.  THAT IS TRUE.  BUT

10  INITIALLY, WE HAD TO SIMPLY IDENTIFY OF THE 50,000 WHICH ONES

11  WERE EVEN SUBJECT TO A PRIVILEGE CLAIM AND WHAT THAT PRIVILEGE

12  CLAIM WAS.

13          OKAY.  AND I DO HAVE AN EXEMPLAR AS WELL.  IT'S

14  PRETTY MUCH THE SAME AS WHAT YOU HAVE, BUT THIS IS THE FIRST 30

15  OF 300 PAGES.  BUT THE POINT OF THE EXEMPLAR, BECAUSE YOUR

16  HONOR SAID THAT CAPTAIN WASHINGTON GAVE IT TO US ON SATURDAY,

17  AND THERE'S NO REASON WHY THAT COULDN'T HAVE BEEN DONE.  IT WAS

18  JUST TO SHOW YOUR HONOR EVERY -- IF I HAD TO DO THAT BY HAND,

19  WHAT YOUR HONOR WAS BASICALLY SAYING, EVEN IF I COULD HAVE DONE

20  IT WITH THE ARCHIVE, WHICH I CAN'T -- IT REQUIRES THE SPECIAL

21  SOFTWARE.  BUT EVEN IF I COULD HAVE, YOUR HONOR WAS BASICALLY

22  SAYING THAT I WAS TO TYPE THIS WITH THESE 20 ENTRIES ON EVERY

23  SINGLE PAGE FOR 300 PAGES AND GO THROUGH ALL THE EMAILS AND

24  SEPARATE THEM BETWEEN SATURDAY AND MONDAY.  AND I --

25  RESPECTFULLY, IT'S JUST IMPOSSIBLE.

1          **THE COURT:**  OKAY.  WELL, LET ME ASK YOU -- LET'S TAKE

2     A LOOK AT THIS, YOU KNOW, EXHIBIT A.

3          **MR. MILDENBERG:**  YES.

4          **THE COURT:**  THIS EXCERPT FROM THE PRIVILEGE LOG --

5          **MR. MILDENBERG:**  YES.

6          **THE COURT:**  -- THAT YOU PROVIDED.  AND IS THIS

7     CAPTAIN JOHNSON'S.

8          **MR. MILDENBERG:**  THIS IS JOHNSON, AND IT'S THE FIRST

9     10 OF 300 PAGES.

10          **THE COURT:**  ALL RIGHT.  SO LET'S LOOK AT ITEM NUMBER

11     21.

12          **MR. MILDENBERG:**  YES, YOUR HONOR.

13          **THE COURT:**  JUST RANDOMLY SELECTED.

14          **MR. MILDENBERG:**  YES, 21.

15          **THE COURT:**  OKAY.

16          **MR. MILDENBERG:**  YES.

17          **THE COURT:**  SO WHO ARE ALL THESE PEOPLE ON THIS

18     EMAIL?

19          **MR. MILDENBERG:**  YEP.  SO THIS WAS AN EMAIL THAT WAS

20     FROM P.C. NOBLE, WHO IS A PLAINTIFF THAT YOUR HONOR TRANSFERRED

21     TO NEW JERSEY, TO GLEN ROANE, WHO IS A PLAINTIFF THAT YOUR

22     HONOR TRANSFERRED TOO.

23          **THE COURT:**  ITEM 21?  WHERE DOES IT -- HOW DOES IT

24     INDICATE THAT IT'S FROM P.C. NOBLE?

25          **MR. MILDENBERG:**  OKAY.  AT THE TOP ON PAGE 1 --

1          **THE COURT:**  OKAY.

2          **MR. MILDENBERG:**  I'M SORRY IT DIDN'T CARRY OVER.  THE

3    COLUMN HEADINGS DO APPEAR ON THE TOP OF PAGE 1.

4          **THE COURT:**  OKAY.

5          **MR. MILDENBERG:**  SO IT SAYS THE FIRST COLUMN, WHICH

6    IS COLUMN A, IS THE DOCUMENT EXTENSION.  COLUMN B IS FROM.

7    COLUMN C IS TO.  COLUMN D IS CARBON COPIED TO.  COLUMN E IS

8    BCC.

9          **THE COURT:**  I SEE.  OKAY.

10         **MR. MILDENBERG:**  OKAY.

11         **THE COURT:**  SO ROANE --

12         **MR. MILDENBERG:**  RIGHT.  YEP.

13         SO 21 IS P.C. NOBLE TO GLEN ROANE.

14         **THE COURT:**  ALL RIGHT.

15         **MR. MILDENBERG:**  CARBON COPY, DAVID RICKETTS, JOHN,

16   JONES, MONTGOMERY.  YOUR HONOR KNOWS ALL THESE NAMES, RIGHT?

17   SO CROCKER, WILSON, WHO'S HERE TODAY.  HANEY, JOHNSON,

18   HARTSFIELD, WASHINGTON, WHO'S STANDING NEXT TO ME, MANSWELL,

19   WHO YOUR HONOR IS FAMILIAR WITH.  BRISCOE, SHERMAN, PALMER,

20   MILLER, GADSON AND MILDENBERG.  THIS IS WHY IT'S PRIVILEGED

21   BECAUSE THIS ONE HAPPENED TO BE COPIED TO ME.

22         IT WAS SENT ON APRIL 16TH, WHICH IS COLUMN F, AT

23   7:57, AND IT TELLS YOU THAT IT'S AN EMAIL COMMUNICATION AMONG,

24   BETWEEN, FROM OR TO ATTORNEY AND PERSONS INVOLVED IN COMMON

25   REPRESENTATION OR COMMON INTERESTS.

1              THE COURT:  ALL RIGHT.  NOW LET'S LOOK AT 25.

2              MR. MILDENBERG:  YES, YOUR HONOR.

3              THE COURT:  TELL ME WHO ARE THE PEOPLE INVOLVED HERE.

4              MR. MILDENBERG:  YES, THAT WOULD BE -- I BELIEVE

5    THAT'S CAPTAIN WILSON TO CAPTAIN MILLER, AND THAT IT WOULD BE

6    CARBON COPY.

7              THE COURT:  FRESH PNCN IS CAPTAIN MILLER?

8              MR. MILDENBERG:  YES, IT IS.

9              I JUST WANT TO CONFIRM, CAPTAIN WILSON, ARE YOU

10   UNITED 320, CAPTAIN?  YES, HE IS.  OKAY.

11             I COULD GIVE CERTAINLY SOME NAMES NEXT TO IT.  JUST

12   SO YOUR HONOR KNOWS, I'M NOT THE ONE WHO TOOK A NAME OUT OR

13   ANYTHING.  THIS IS JUST HOW THEY CAME OUT, RIGHT?  FROM THE

14   EMAIL.  I DIDN'T OMIT NAMES OR ANYTHING OF THAT NATURE.

15             SO IT'S COPIED TO SAL CROCKER, LEN ROANE, RICHARD

16   JOHN.  E.J.R. IS JOHNSON.  AND ME, MYSELF.

17             AND IT'S AGAIN, 4/16, EMAIL COMMUNICATION AMONG AND

18   BETWEEN LAWYER AND CLIENTS OR TO LAWYER AND CLIENTS.

19             THE COURT:  OKAY.

20             MR. MILDENBERG:  SO I THOUGHT THAT WAS PRETTY FAIR IN

21   TERMS OF, YOU KNOW, IT'S PRETTY ACCURATE WHAT IT IDENTIFIES.

22   IT DOESN'T SAY WHAT IT'S ABOUT, BUT I -- IF THE COURT -- I'VE

23   NEVER HAD A JUDGE SAY, YOU KNOW, TELL THIS -- TELL PEOPLE WHAT

24   AN EMAIL -- OKAY.  IF I'M ON IT, I WOULD ASSUME THERE'S SOME --

25   BUT IF I'M NOT ON IT -- THERE ARE SOME WE'RE NOT ON -- THEN YOU

1    HAVE TO GET INTO THE DETAILS AT SOME POINT, CORRECT.  YES.

2              **THE COURT:**  ALL RIGHT.  NOW BEFORE CAPTAIN WASHINGTON

3    AND HIS LAWYER GO AND HAVE A LITTLE CHAT ABOUT WHICH SANCTION

4    THEY PREFER, OR HE PREFERS, IS THERE ANYTHING -- WE CAN COME

5    BACK, AND WE CAN TALK ABOUT OTHER STUFF, BUT ANYTHING RELEVANT

6    TO CAPTAIN WASHINGTON'S SITUATION AT THIS POINT THAT YOU'D LIKE

7    TO FINISH DISCUSSING?

8              **MS. MELBY:**  YES.

9              **THE COURT:**  OKAY.

10             **MS. MELBY:**  AND WHEN WE COME BACK, I WOULD ALSO LIKE

11   SCOTT KLAUSNER TO SPEAK ABOUT THE WHOLE PROCESS OF COLLECTING

12   THE DATA.

13             **THE COURT:**  GREAT.

14             **MS. MELBY:**  BUT, YES, AS TO CAPTAIN WASHINGTON, I

15   HADN'T QUITE FINISHED.

16             **THE COURT:**  GO AHEAD.

17             **MS. MELBY:**  ANOTHER THING IS THAT WITH WE -- IT HAS

18   BEEN REPRESENTED THE COURT, AND WE BELIEVE MISREPRESENTED TO

19   THE COURT, THAT ALL OF CAPTAIN WASHINGTON'S DOCUMENTS HAVE BEEN

20   PRODUCED.  HE TESTIFIED AT DEPOSITION VERY CLEARLY THAT THERE

21   WAS A LARGE NOTEBOOK THAT HE HAD AT HOME, AND HE TESTIFIED AS

22   TO WHAT THE CONTENTS OF THAT DOCUMENT WERE.  IT'S CLEAR THAT HE

23   GAVE A FEW OF THOSE.

24             **THE COURT:**  HE TESTIFIED AS TO THE CONTENTS OF THE

25   NOTEBOOK?

1              **MS. MELBY:**  OF THE NOTEBOOK.  THANK YOU.  I SHOULD

2      HAVE CLARIFIED THAT.

3              **MR. MILDENBERG:**  WELL, IT WAS A CALLED A BINDER.  IS

4      THAT WHAT YOU ARE REFERENCING?

5              **MS. MELBY:**  HE SAID IT WAS -- I THINK HE CALLED IT A

6      3-RING BINDER, BUT IT WAS VERY THICK.  AND HE TESTIFIED IN

7      DETAIL WHAT WAS IN THERE.  AND VERY LITTLE OF WHAT WAS IN

8      THERE, ALL OF WHICH IS RESPONSIVE, HAS BEEN PRODUCED.

9              SO TO THE EXTENT THAT THERE IS A REPRESENTATION TO

10     THE COURT THAT ALL DOCUMENTS HAVE BEEN PRODUCED, THAT ALSO IS

11     NOT TRUE.

12             ADDITIONALLY, THE PRIVILEGE LOG -- AND, AGAIN, I ONLY

13     GOT IT AN HOUR AGO, BUT THE ONE THAT WE JUST LOOKED AT AS A FOR

14     EXAMPLE, COUNSEL SAID, HERE IS AN EMAIL BETWEEN CLIENT AND

15     ATTORNEY, BUT THERE ARE EMAILS THERE IN THE ONES WE JUST LOOKED

16     AT THAT HAVE NAMES THAT WE COULD NEVER FIGURE OUT WHO THAT IS

17     OR FIGURE OUT IF THAT'S A CLIENT.

18             IT LOOKS LIKE IN SOME CASES WHERE WE ARE ABLE TO

19     DECIPHER -- AND IT REALLY IS A DECIPHERABILITY TEST -- THAT

20     THERE ARE NON-CLIENTS THAT ARE INCLUDED IN THOSE EMAIL

21     EXCHANGES.  AND WHERE THAT IS THE CASE, CERTAINLY THERE ARE

22     ISSUES.  LET'S LEAVE IT AT THAT.

23             SO -- AND THEN THERE WERE TEXTS WHICH CAPTAIN

24     WASHINGTON TESTIFIED BETWEEN HIM AND THE OTHER RELATED

25     PLAINTIFFS THAT WERE ALL DESTROYED.

1          SO -- AND THEN FINALLY, WITH RESPECT TO CAPTAIN

2     WASHINGTON IF HE -- IF HE EVEN -- IF HE HAVE COMPLIES WHICH I

3     DON'T THINK HE'S EVEN -- THAT'S EVEN REMOTELY POSSIBLE, BUT

4     EVEN IF HE WOULD DO THAT, SAY, TOMORROW, WE WOULD LITERALLY BE

5     STARTING FROM DAY ONE, BECAUSE CAPTAIN WASHINGTON IS ONE WHO'S

6     GOING TO NEED FOLLOWUP FOR SURE, BECAUSE HE'S INSERTED NEW

7     CLAIMS.  ALSO, HE'S GOING TO NEED AN INDEPENDENT MEDICAL

8     EXAMINATION.  ALSO, WHATEVER WITNESSES THAT HE DISCLOSES WE'RE

9     GOING TO OBVIOUSLY NEED TO FOLLOW UP ON.  WE'RE GOING TO NEED

10    TO LOOK AT A COMPLIANT PRIVILEGE LOG AND THEN ADDRESS PRIVILEGE

11    ISSUES, MANY OF WHICH ARE RAISED BY THOSE PRIVILEGE LOGS.

12          AND SO LITERALLY, IF CAPTAIN WASHINGTON'S CASE IS

13    ALLOWED TO SURVIVE -- CLEARLY, THE SANCTIONS SO FAR HAVE NOT

14    CAUSED HIM TO BE COMPLIANT, I DON'T THINK PAYING HALF OF WHAT

15    ARE NOT EVEN THE FULL AMOUNT OF THE COSTS OF UNITED IS GOING TO

16    HAVE ANY DETERRENT EFFECT, NOR DO I HAVE ANY CONFIDENCE THAT

17    THEY WOULD BE PAID BECAUSE HE DIDN'T SHOW UP ON TIME, HE DIDN'T

18    PAY HIS SANCTIONS AS ORDERED -- OR THE $1,050, AND HE HASN'T

19    COMPLIED.

20          AND IN ADDITION TO NOT COMPLYING, THERE HAS BEEN WHAT

21    I BELIEVE TO BE, OR WHAT WE THINK CLEARLY IS A

22    MISREPRESENTATION ABOUT COMPLIANCE.  AND THEN THERE'S THE

23    HOTMAIL ACCOUNT WHICH I WON'T RESTATE.

24          SO ALL OF THOSE THINGS, ESPECIALLY SINCE THE COURT

25    NEEDS TO -- THE COURT KNOWS THAT TERMINATING SANCTIONS HAVE

1    BEEN LOOMING IN MR. WASHINGTON'S CASE SINCE THE 19TH OF

2    SEPTEMBER, AND WASHINGTON, JUST FOR THE RECORD, HAS NEVER

3    PRODUCED BEFORE AN HOUR AGO EVEN ONE EMAIL.  SO THAT'S WORTH

4    NOTING.

5             **MR. MILDENBERG:**  JUST TO RESPOND ON -- JUST WITH

6    REGARD TO THE BINDER, THE HOME BINDER -- AND, AGAIN, I'M GOING

7    TO BAT FOR CAPTAIN WASHINGTON WITHOUT REGARDS TO WHAT HE WANTS

8    TO DO JUST BECAUSE IT'S MY DUTY TO DO SO, EVEN THOUGH WE'RE IN

9    A BIND BECAUSE OF THOSE ACTIONS.

10            BUT WITH REGARD TO THAT ASPECT, HE DID TESTIFY ABOUT

11   HIS HOME BINDER.  AFTER HIS DEPOSITION, HE DID PROVIDE US WITH,

12   I BELIEVE, THE -- THE MEDICAL -- ALL THE MEDICAL DOCUMENTATION

13   AND CERTIFICATIONS.

14            **CAPTAIN WASHINGTON:**  ABSOLUTELY.

15            **MR. MILDENBERG:**  THAT'S WHAT WAS THE BINDER, CORRECT?

16            **CAPTAIN WASHINGTON:**  YES.

17            **MR. MILDENBERG:**  AND WE DID PRODUCE THEM ALL.

18            SO I'M NOT REPRESENTING THAT I KNOW FOR SURE IT CAME

19   FROM THE BINDER, BUT, JUST FOR THE RECORD, THE REPRESENTATION

20   WAS THAT THE BINDER DOCUMENTS WERE PRODUCED.

21            **THE COURT:**  OKAY.  WHY DON'T YOU GO TAKE A --

22            **MR. MILDENBERG:**  THANK YOU.

23            **THE COURT:**  AND WHAT I WOULD PROPOSE IS THAT THE

24   PAYMENT -- IF THE PAYMENT OPTION IS CHOSEN, THE PAYMENT NEEDS

25   TO BE MADE BY A DATE CERTAIN.  AND IF THERE IS ANOTHER

1   VIOLATION, THE CASE WOULD BE DISMISSED, AND THE PAYMENT WOULD

2   STILL NEED TO BE MADE.  SO THAT'S WHAT YOU NEED TO THINK ABOUT,

3   IS -- CAPTAIN WASHINGTON, IS WHETHER YOU'RE WILLING TO RISK

4   PAYING THE SANCTION AND THEN IF YOU OR YOUR LAWYERS COMMIT

5   ANOTHER DISCOVERY VIOLATION, YOUR CASE WOULD STILL BE

6   DISMISSED.  AND SO THAT'S WHAT YOU STILL NEED TO THINK ABOUT.

7   YOU'VE HAD MORE THAN YOUR LAST CHANCE TO PARTICIPATE

8   MEANINGFULLY IN THIS LAWSUIT THAT YOU FILED.  AND ANY FURTHER

9   VIOLATION WILL RESULT IN DISMISSAL OF THE CASE REGARDLESS OF

10  WHETHER YOU PAY THE SANCTION THAT WE'RE CONTEMPLATING NOW.

11          ALL RIGHT.  BE BACK IN TWO MINUTES.

12          (RECESS TAKEN FROM 3:51 P.M. TO 3:58 P.M.)

13          **THE COURT:**  ALL RIGHT.  WHICH SANCTION DOES CAPTAIN

14  WASHINGTON CHOOSE?

15          **CAPTAIN WASHINGTON:**  MAY I SPEAK FOR MYSELF, SIR?

16          **THE COURT:**  SURE.

17          **CAPTAIN WASHINGTON:**  THE SANCTION I WILL CHOOSE IS TO

18  PAY THE FINE.

19          **THE COURT:**  OKAY.  WHAT SHOULD BE THE DEADLINE FOR

20  PAYING?

21          **CAPTAIN WASHINGTON:**  AS TO ME?

22          **THE COURT:**  YEAH.  END OF OCTOBER?

23          **CAPTAIN WASHINGTON:**  HOW ABOUT THE END OF DECEMBER?

24          **THE COURT:**  HOW ABOUT THE END OF NOVEMBER?

25          **CAPTAIN WASHINGTON:**  HOW ABOUT DECEMBER 25TH?

1           **THE COURT:**  HOW ABOUT DECEMBER 1ST?

2           **CAPTAIN WASHINGTON:**  14TH?

3           **THE COURT:**  1ST.

4           **CAPTAIN WASHINGTON:**  OKAY.

5           **THE COURT:**  OKAY.  SO CAPTAIN WASHINGTON IS ORDERED

6    TO PAY ONE HALF OF THE AMOUNT SUBMITTED IN THE DECLARATION FROM

7    THE DEFENDANTS TO THE DEFENDANTS BY NO LATER THAN DECEMBER 1ST.

8    AND THAT WILL FOR NOW ALLEVIATE THE POSSIBLY OF THE SANCTION OF

9    TERMINATION OF THE LAWSUIT.  BUT IF THERE IS ANY FURTHER

10   DISCOVERY VIOLATION, OR IF THERE'S ANY FURTHER UNREASONABLE

11   CONDUCT, CAPTAIN WASHINGTON'S LAWSUIT WILL BE DISMISSED.

12           ALL RIGHT.  THANK YOU.

13           **MR. MILDENBERG:**  MAY CAPTAIN WASHINGTON BE EXCUSED,

14   YOUR HONOR?

15           **THE COURT:**  OF COURSE.

16           **MR. MILDENBERG:**  THANK YOU.  THANK YOU, CAPTAIN

17   WASHINGTON.

18           **THE COURT:**  BY THE WAY, DO YOU ALL HAVE ANY

19   DEPOSITIONS ON THURSDAY?

20           **MR. MILDENBERG:**  YES.

21           **THE COURT:**  OF THIS WEEK?

22           **MS. MELBY:**  WELL, WE HAVE A UNITED WITNESS WHO'S

23   SCHEDULED FOR DEPOSITION IN CHICAGO THIS WEEK, BUT THAT'S

24   SOMETHING ELSE WE HAVE TO TALK ABOUT.

25           **THE COURT:**  ON THURSDAY?

1          **MR. MILDENBERG:**  YES.

2          **MS. MELBY:**  ON THURSDAY.

3          **THE COURT:**  OKAY.

4          **MR. MILDENBERG:**  IT'S PLAINTIFF'S DEPOSITION OF THE

5     UNITED WITNESS.

6          **THE COURT:**  RIGHT.  OKAY.

7          **MS. MELBY:**  WE HAVE MADE THE POINT, YOUR HONOR, THAT

8     WE ASKED FOR DATES, THEY ASKED FOR DATES.  I GOT NONE.  THEY

9     GOT ALL THAT THEY ASKED FOR.  AND SO ALL OF THE UNITED

10    WITNESSES ARE SCHEDULED.

11         ONE DATE HAS BEEN OFFERED FOR JOHNSON, WHO HAS NOT

12    COMPLIED WITH DISCOVERY COMPLETELY.  AND SO WE DON'T THINK THAT

13    IT IS FAIR THAT WE HAVE TO GO FORWARD WITH DEPOSITIONS WITHOUT

14    THE BENEFIT OF DISCOVERY, BECAUSE HOW AM I TO PROPERLY DEFEND

15    THE CASE?  WITHOUT HAVING THE OPPORTUNITY TO REVIEW DISCOVERY,

16    HOW AM I --

17         **THE COURT:**  I MEAN, ON THAT THEORY, NO DISCOVERY WILL

18    EVER HAPPEN, RIGHT?

19         **MS. MELBY:**  WELL, BUT THIS DISCOVERY --

20         **THE COURT:**  THERE'S NO RULE THAT SAYS YOU HAVE TO GET

21    EVERY DOCUMENT YOU WANT FROM THE OTHER SIDE BEFORE YOU HAVE TO

22    PUT ANY OF YOUR PEOPLE UP FOR DEPOSITION.

23         **MS. MELBY:**  THAT IS TRUE, YOUR HONOR.  HOWEVER, IN

24    THIS CASE, IT IS AN EQUITABLE ISSUE, BECAUSE IT WAS SIX MONTHS

25    AGO THAT WE PROPOUNDED DISCOVERY.  AND WE'VE WAITED FOR SIX

1    MONTHS.  AND IN SIX MONTHS, WE'VE NOT GOTTEN ANY EMAIL, SAVE

2    LESS THAN PROBABLY I WOULD ESTIMATE 50, MAYBE MAXIMUM A

3    HUNDRED, FOR ALL THESE GUYS, NOT COMPLIANT.

4              AND SO WE HAD A REASONABLE EXPECTATION.  WE HAD A

5    REASONABLE RIGHT TO RELY UPON UNDERSTANDING WHAT THE THEORIES

6    OF THESE PLAINTIFFS WERE, WHAT THE DISCOVERY IS.  WE HAD TO

7    TAKE THEIR DEPOSITIONS WITH NO DISCOVERY OR MINIMAL IN SOME

8    CASES --

9              **MR. MILDENBERG:**  SORRY.  SORRY, YOUR HONOR.

10             **MS. MELBY:**  -- WITHOUT THE EMAILS.

11             WE NOW HAVE TO TAKE THEIR DEPOSITIONS ONCE AGAIN NOW

12   THAT WE'VE GOTTEN DISCOVERY, BUT I KNOW THAT WE'LL BE BACK TO

13   THE COURT WITH ISSUES BECAUSE WE ALREADY KNOW THAT THERE ARE

14   ISSUES WITH THE PRIVILEGE LOG WHICH COUNSEL SEEMS TO THINK IS

15   COMPLIANT.

16             WE ALREADY KNOW THAT THERE ARE ISSUES WITH THE WAY

17   THAT THE DOCUMENTS HAVE BEEN COLLECTED --

18             **THE COURT:**  OKAY.  BUT LET ME CUT YOU OFF FOR A

19   SECOND.  WE ARE NOT TAKING ANY DEPOSITIONS OFF CALENDAR.  I

20   UNDERSTAND YOUR POINT.  I DO THINK THERE IS AN ELEMENT OF

21   UNFAIRNESS TO IT, BUT NOT THE TYPE OF PREJUDICIAL UNFAIRNESS

22   THAT WOULD REQUIRE THAT ANY OF THESE DEPOSITIONS BE TAKEN OFF

23   CALENDAR.

24             **MS. MELBY:**  WELL --

25             **THE COURT:**  SO WE'RE NOT -- WE WILL NOT TAKE THOSE

1    DEPOSITIONS -- ANY DEPOSITIONS OFF CALENDAR.  THAT IS NOT GOING

2    TO HAPPEN.  NOT GOING --

3            **MS. MELBY:**  I HEAR YOU, YOUR HONOR.

4            **THE COURT:**  -- TO HAPPEN.

5            **MS. MELBY:**  I WOULD ASK YOU TO CONSIDER THAT THE

6    PREJUDICE THAT YOU ARE LOOKING AT -- I HOPE YOU ARE LOOKING AT

7    NOT IN THE VACUUM, BUT FROM THE START OF THIS CASE WHEN THERE

8    WAS WERE MISJOINED TOGETHER AND STAYED THAT WAY FOR NO

9    CONCEIVABLE REASON.

10           **THE COURT:**  I UNDERSTAND THAT, AND MY --

11           **MR. MILDENBERG:**  THAT'S TRUE.

12           **THE COURT:**  I AGREE WITH YOUR SENTIMENT THAT THERE IS

13   AN ELEMENT OF UNFAIRNESS HERE, BUT WE ARE NOT TAKING ANY

14   DEPOSITIONS OFF CALENDAR.  IT'S NOT HAPPENING.  OKAY.

15           **MS. MELBY:**  THE ONLY ONES --

16           **THE COURT:**  WHOSE DEPOSITION IS BEING TAKEN ON

17   THURSDAY?

18           **MS. MELBY:**  GREG JONES, WHO IS THE HEAD OF DIVERSITY

19   AND INCLUSION AT UNITED AIRLINES.

20           THE ONLY DEPOSITIONS THAT ARE ON CALENDAR RIGHT NOW,

21   AGAIN, ARE UNITED AIRLINES DEPOSITIONS.

22           **THE COURT:**  I UNDERSTAND.

23           **MS. MELBY:**  YES.  AND --

24           **THE COURT:**  AND WE ARE NOT TAKING ANY OF THOSE

25   DEPOSITIONS OFF CALENDAR.  AND I'M SORRY IT'S WORKED OUT THAT

1  WAY, BUT WE ARE NOT TAKING DEPOSITIONS OFF CALENDAR.  WE'RE

2  JUST NOT GOING TO.

3          **MS. MELBY:**  I HEAR YOU, YOUR HONOR.  I JUST WANTED TO

4  MAKE MY POINT, AND I THINK THE COURT HAS HEARD ME.

5          **THE COURT:**  OKAY.  I HAVE, I HAVE.  AND, YOU KNOW, I

6  HAVE SYMPATHY FOR YOU, AND I'VE SAID THAT.  AND I HAVE SYMPATHY

7  FOR YOUR CLIENT, AND I'VE SAID THAT IN THE PAST.  BUT WE'RE NOT

8  GOING BACKWARDS AND TAKING DEPOSITIONS OFF CALENDAR.  SO --

9          **MS. MELBY:**  ONE OF THOSE DEPOSITIONS, YOUR HONOR --

10          **THE COURT:**  WHAT?

11          **MS. MELBY:**  ONE OF THE DEPOSITIONS I NEED TO TALK TO

12  THE COURT ABOUT.

13          **THE COURT:**  OKAY.  THIS IS THE PERSON WHO YOU

14  DETERMINED WAS SORT OF A HIGHER LEVEL PERSON THAN YOU THOUGHT

15  ORIGINALLY WHEN YOU AGREED TO THEIR DEPOSITION.

16          **MS. MELBY:**  THAT'S THE ONE.

17          **THE COURT:**  OKAY.  AND WHO IS THAT?

18          **MS. MELBY:**  HIS NAME IS HOWARD ATTARIAN.

19          **THE COURT:**  OKAY.  TALK.

20          **MS. MELBY:**  HOWARD ATTARIAN REPORTS TO THE COO OF

21  UNITED AIRLINES, AND, THEREFORE, HE IS -- SHOULD HAVE BEEN IN

22  THAT GROUP OF APEX DEPOSITIONS.  AND SO I THINK FOR THAT ONE,

23  WE NEED TO HAVE A REASON WHY HE SHOULD BE DEPOSED, AND THEN WE

24  HAVE TO GO THROUGH THE SAME PROCESS WITH THE APEX DEPOSITIONS

25  AS CONSISTENT WITH THE LAW.

1            **THE COURT:**  AND WHAT IS ATTARIAN'S TITLE?

2            **MS. MELBY:**  HE'S THE HEAD OF ALL OF FLIGHT OPERATIONS

3    GLOBALLY AT UNITED AIRLINES.

4            **MR. MILDENBERG:**  BUT WHEN YOU SAY --

5            **THE COURT:**  HOLD ON.  HOLD ON.

6            **MS. MELBY:**  HE IS A SENIOR VICE PRESIDENT.

7            **THE COURT:**  OKAY.  SENIOR VICE PRESIDENT OF -- WHAT'S

8    HIS ACTUAL TITLE?

9            **MS. MELBY:**  SENIOR VICE PRESIDENT, FLIGHT OPERATIONS.

10           **THE COURT:**  OKAY.  WHEN IS HIS DEPOSITION SCHEDULED

11   FOR?

12           **MS. MELBY:**  THE WEEK AFTER THIS WEEK.

13           **MR. MILDENBERG:**  (INDISCERNIBLE) AT THE VERY END.

14           **MS. MELBY:**  OH, I'M SORRY.  YEAH.  HE IS AT THE END

15   OF THIS MONTH.  HE'S THE 31ST OF OCTOBER.  HE'S ON HALLOWEEN.

16           **THE COURT:**  OKAY.  WELL, IT SOUNDS LIKE THERE'S

17   PLENTY OF TIME.  WE'LL KEEP THAT ON CALENDAR, OF COURSE.  IT

18   SOUNDS LIKE THERE'S PLENTY OF TIME TO MAKE --

19           **MR. MILDENBERG:**  YES.

20           **THE COURT:**  -- THE SHOWING YOU NEED TO MAKE, SO YOU

21   WILL BE REQUIRED TO MAKE THAT SHOWING.

22           **MR. MILDENBERG:**  SURE.

23           **THE COURT:**  SO WHAT IS THE PROCESS?

24           **MR. MILDENBERG:**  WE ALREADY HE -- WE HAVE FOR THE

25   OTHER THREE THAT YOUR HONOR IDENTIFIED, WE HAVE, IN FACT,

1  ALREADY PROVIDED DEFENDANTS WITH OUR REASONS FOR WANTING TO

2  DEPOSE THEM.  WE ARE, I GUESS, WAITING FOR AN ANSWER, WHICH I

3  THINK IT IS NO.

4            AND THEN YOUR HONOR ORDERED WE HAVE TO THEN BY

5  DISCOVERY LETTER FILE.  WE'RE BEYOND THE POINT WHERE WE COULD

6  HAVE DONE IT A DAY OR TWO AGO, BUT WE HAD FILED SO MANY

7  DISCOVERY LETTERS WITH YOUR HONOR, I DID NOT WANT TO -- I WANT

8  TO TAKE A LITTLE BREAK FROM FILING DISCOVERY LETTERS BEFORE

9  YOUR HONOR.  BUT SOMETIME IN THE COMING WEEK WE'LL HAVE TO FILE

10 THAT TO SAY --

11           **THE COURT:**  YOU'RE GOING TO TAKE A LONG BREAK FROM

12 FILING DISCOVERY LETTERS WITH ME BECAUSE I'M REFERRING THE CASE

13 FOR DISCOVERY PURPOSES TO MAGISTRATE JUDGE JACKIE CORLEY.

14           **MR. MILDENBERG:**  OKAY.  THAT'S FINE.

15           **THE COURT:**  AND SHE'S GOING TO SPEND LOT OF TIME WITH

16 YOU GUYS.  I THINK HER PLAN IS TO -- HER PLAN IS TO HAVE YOU IN

17 EVERY WEEK, I THINK.  I MEAN, IT WILL BE UP TO HER WHAT SHE

18 WANTS TO DO.

19           **MR. MILDENBERG:**  RIGHT.

20           **THE COURT:**  HER PLAN IS TO HAVE YOU IN PERSONALLY

21 EVERY WEEK AND SIMPLY TALK THROUGH --

22           **MR. MILDENBERG:**  YES.

23           **THE COURT:**  LET YOU DO YOUR MEET AND CONFER IN HER

24 PRESENCE AND TALK THROUGH.

25           **MR. MILDENBERG:**  THE FUNNY THING IS, YOUR HONOR,

```
1    WE'RE ACTUALLY VERY FRIENDLY WHEN WE'RE NOT IN A MEET AND

2    CONFER.  YOU KNOW, I VERY MUCH -- ON A PERSONAL LEVEL WE GET

3    ALONG VERY WELL.

4              THE COURT:  I DON'T CARE.

5              MR. MILDENBERG:  I KNOW YOU DON'T.

6              THE COURT:  I REALLY DON'T CARE.

7              MR. MILDENBERG:  BUT ALL YOU EVER HEAR ABOUT IS THE

8    ARGUING.  I KNOW YOU DON'T CARE.

9              THE COURT:  I REALLY DON'T CARE.

10             MR. MILDENBERG:  OKAY.  BUT I WANTED YOU TO KNOW

11   THAT.

12             THE COURT:  I APPRECIATE THAT.  I SORT OF LIKE THE --

13   LIKE THE IMAGE IN MY MIND OF YOU TWO HATING EACH OTHER'S GUTS.

14             MR. MILDENBERG:  NO, NOT AT ALL.

15             THE COURT:  IT'S SORT OF FUN.

16             MR. MILDENBERG:  IN THE COURTROOM AND IN THE BOXING

17   RING, SURE, BUT, YOU KNOW, WE ACTUALLY LAUGH A LOT AND

18   EVERYTHING ELSE OUTSIDE OF IT.

19             THE COURT:  ALL RIGHT.

20             MR. MILDENBERG:  I APOLOGIZE YOU'RE ONLY HEARING

21   ABOUT THE BAD STAFF.

22             THE COURT:  I THINK, YOU KNOW, HONESTLY, THE REASON

23   WHY I DECIDED TO DO THIS IS BECAUSE, YOU KNOW, I -- BECAUSE OF

24   ALL THE PROBLEMS THAT YOU ALL HAVE HAD, I MEAN, THIS REQUIRES

25   SOMEBODY -- LIKE I SAID, I WAS CONSIDERING APPOINTING A SPECIAL
```

1    MASTER AT THE PLAINTIFF'S EXPENSE, BUT THIS IS A CIVIL RIGHTS

2    CASE, AND I THINK THAT, YOU KNOW, COULD RAISE CONCERNS.

3            BUT THE PROBLEM IS THAT AS A LAWYER, I BASICALLY

4    NEVER DEALT WITH DISCOVERY, AND I NEVER HAD DISCOVERY DISPUTES

5    AND -- BECAUSE I WAS IN CRIMINAL DEFENSE FOR A LITTLE WHILE

6    THEN I WAS DEFENDING CONSTITUTIONAL CASES WHICH BARELY INVOLVED

7    ANY DISCOVERY FOR THE CITY OF SAN FRANCISCO.

8            SO, YOU KNOW, I HANDLE MY OWN DISCOVERY DISPUTES, AND

9    USUALLY I FIND I'M ABLE TO RESOLVE THEM PRETTY PROMPTLY, AND

10   IT'S NOT THAT HARD TO RESOLVE THEM, BUT I THINK I MIGHT BE A

11   LITTLE OUT OF MY DEPTH IN THIS.

12           **MR. MILDENBERG:**  I DOUBT IT.

13           **THE COURT:**  I THINK THAT THIS -- I THINK THAT THIS

14   REQUIRES SOMEBODY WHO CAN GIVE IT MORE ATTENTION AND SOMEBODY

15   WHO HAS MORE EXPERIENCE IN GIVING THESE KINDS OF PROBLEMS

16   ATTENTION.  SO THAT'S WHY I DECIDED I'M REFERRING YOU ALL TO

17   JUDGE CORLEY.

18           AND SHE WANTED -- SHE WAS HOPING TO SEE YOU ALL ON

19   THURSDAY, BUT, YOU KNOW, IF YOU HAVE A DEPOSITION -- WHO'S

20   TAKING -- ARE YOU DEFENDING THE DEPOSITION?

21           **MS. MELBY:**  I'M DEFENDING.  COUNSEL IS TAKING.

22           **THE COURT:**  IS THAT -- YOU KNOW, YOU NEED TO PLOW

23   AHEAD ON THAT, BUT YOU SHOULD GET IN TOUCH -- OR JUDGE CORLEY

24   WILL GET IN TOUCH WITH YOU -- OR YOU SHOULD GET IN TOUCH WITH

25   JUDGE CORLEY PROMPTLY TO SEE WHEN -- YOU SHOULD GET IN TOUCH

1    WITH JUDGE CORLEY'S STAFF, HER COURTROOM DEPUTY, ADA MEANS,

2    TOMORROW TO SCHEDULE YOUR FIRST MEETING WITH HER.

3             **MR. MILDENBERG:**  YOUR HONOR, I WILL BE OUT OF WORK

4    TOMORROW FOR YOM KIPPUR.

5             **THE COURT:**  SORRY?

6             **MR. MILDENBERG:**  I WON'T BE ABLE TO CALL HER

7    TOMORROW.

8             **THE COURT:**  OKAY.

9             **MR. MILDENBERG:**  I COULD CALL THURSDAY.

10            **THE COURT:**  OKAY.

11            **MR. MILDENBERG:**  THANK YOU, YOUR HONOR.

12            **THE COURT:**  SO, ANYWAY, ALL RIGHT.  SO WE HAVE -- BUT

13   I WOULD LIKE TO TRY TO HELP YOU BLOW THROUGH SOME OF PROBLEMS

14   THAT YOU HAVE CURRENTLY WHILE WE'RE HERE.

15            SO WE'VE ESTABLISHED THAT NO DEPOSITIONS WILL BE

16   TAKEN OFF CALENDAR.  ANYTHING ELSE REGARDING DEPOSITIONS?

17            **MS. MELBY:**  WELL, WASHINGTON NEEDS TO BE ORDERED BACK

18   TO DEPOSITION ONCE HE HAS COMPLETED HIS DISCOVERY OBLIGATIONS.

19            **THE COURT:**  LET'S SCHEDULE HIS -- YOU WANT TO

20   SCHEDULE HIS DEPOSITION NOW?

21            **MR. MILDENBERG:**  I THINK HE HAS NOW COMPLETED WHAT HE

22   CAN OTHER THAN THE HOTMAIL.  SO IT SOUNDS LIKE YOU'RE NOT GOING

23   TO GET THE HOTMAIL JUST BECAUSE HE CAN'T ACCESS IT.

24            **THE COURT:**  JUDGE CORLEY WILL HELP YOU FIGURE THAT

25   OUT.

1          **MR. MILDENBERG:**  RIGHT.  WE'RE HAPPY TO RESCHEDULE

2     HIS DEPOSITION IS WHAT I'M SAYING.

3          **MS. MELBY:**  THERE ARE A WHOLE LIST OF THINGS THAT HE

4     HAS NOT PROVIDED.  SO --

5          **THE COURT:**  YOU WANT TO SCHEDULE HIS DEPOSITION NOW,

6     OR DO YOU WANT TO WAIT TO SIFT THROUGH WHAT YOU'VE GOTTEN AND

7     SORT OF TAKE STOCK OF WHAT YOU BELIEVE YOU STILL DON'T HAVE?

8     HOW DO YOU WANT TO --

9          **MS. MELBY:**  WELL, WE HAVE A -- I GUESS I WOULD HAVE

10    TO SCHEDULE IT IN NOVEMBER.

11         **MR. MILDENBERG:**  YES.  SEE, WE HAVE THE DEADLINE

12    ISSUE, YOUR HONOR.  AND WE'RE HAPPY TO STIPULATE TO ADDITIONAL

13    TIME, BUT YOUR HONOR HAD NOT YET GRANTED IT.  SO THAT WAS PART

14    OF THE PROBLEM OF NOT WANTING TO GO BEYOND THE COURT'S ORDER OF

15    10/31, BUT NOT KNOWING HOW YOUR HONOR WAS GOING TO HANDLE THAT.

16         **THE COURT:**  I MADE VERY CLEAR LAST TIME THAT I

17    WOULD --

18         **MR. MILDENBERG:**  RIGHT.

19         **THE COURT:**  -- HAPPILY ENTERTAIN AN EXTENSION OF THE

20    DISCOVERY DEADLINE, AS LONG AS THERE WAS SOME EVIDENCE THAT

21    PROGRESS HAD BEEN MADE.

22         **MR. MILDENBERG:**  YEAH.  AND WE HAVE NOW SCHEDULED --

23    I THINK THE ISSUE WAS -- AND, UNDERSTANDABLY, FROM DEFENDANT'S

24    PERSPECTIVE THEY DIDN'T WANT TO AGREE TO IT, BUT WE HAVE MADE

25    THAT PROGRESS.  WE'VE SCHEDULED ALL OF THE DEPOSITIONS WE WANT.

```
 1   WE'VE NOW PRODUCED EVERYTHING THAT WE HAVE.

 2           WE FINISHED THE PRIVILEGE LOGS, EVEN THOUGH, YOUR

 3   HONOR, THERE'S GOING TO BE ISSUES ABOUT DO SOME ITEMS NEED MORE

 4   IN DETAIL?  SURE, THERE MAY BE.  THAT MAY COME UP.  BUT THERE

 5   IS A FULL LOG OF THE EMAILS THAT WE'VE IDENTIFIED AS BEING --

 6   CONTAINING ATTORNEY-CLIENT INFORMATION.

 7           SO FROM OUR PERSPECTIVE, WE HAVE RESPONDED TO EVERY

 8   LAST REQUEST FOR PRODUCTION, ALL SIX OF THEM.  WE'VE ISSUED OUR

 9   OWN REQUEST FOR PRODUCTION.  WE'VE DONE AN UNBELIEVABLE,

10   ACTUALLY, AMOUNT OF DISCOVERY.  EVEN THOUGH IT SOUNDS LIKE

11   WE'RE NOT RESPONDING, IT'S ACTUALLY NOT TRUE.

12           THE COURT:  OKAY.  BY THE WAY --

13           MR. MILDENBERG:  WE FEEL LIKE WE'RE DONE.

14           THE COURT:  BY THE WAY ON THE ISSUES OF SANCTIONS,

15   OKAY?  WITH RESPECT TO CAPTAIN WASHINGTON, I'M NOT GOING TO

16   ORDER YOU TO PAY THE OTHER HALF --

17           MR. MILDENBERG:  THANK YOU, YOUR HONOR.

18           THE COURT:  -- OF THE COSTS INCURRED BY THE

19   DEFENDANTS.

20           MR. MILDENBERG:  THANK YOU.

21           THE COURT:  HOWEVER, I ORDERED THE OTHER BELLWETHER

22   PLAINTIFFS --

23           MR. MILDENBERG:  YES.

24           THE COURT:  -- TO BE SANCTIONED TO $25 A DAY AND YOU

25   AT $25 A DAY.
```

```
 1              MR. MILDENBERG:  YES.

 2              THE COURT:  STARTING -- I CAN'T REMEMBER THE DATE.

 3              MR. MILDENBERG:  IT WAS ABOUT TWO WEEKS AGO.  WE'RE

 4    AWARE OF IT, AND WE WILL PAY IT.

 5              THE COURT:  OKAY.

 6              MR. MILDENBERG:  YEP.

 7              THE COURT:  SO WHEN YOU ARE GOING TO PAY?

 8              MR. MILDENBERG:  WE DIDN'T KNOW HOW MUCH IT WAS GOING

 9    TO BE UNTIL TODAY.

10              THE COURT:  ALL RIGHT.  SO WHEN YOU ARE GOING TO PAY?

11    NOW YOU HAVE --

12              MR. MILDENBERG:  YES.

13              THE COURT:  -- YOU ARE PERSONALLY ON FOR $25 PER DAY.

14              MR. MILDENBERG:  YES, I KNOW.  I KNOW.

15              THE COURT:  FOR --

16              MR. MILDENBERG:  ABSOLUTELY, I WILL.

17              THE COURT:  OKAY.  AND THEY ARE ALSO --

18              MR. MILDENBERG:  WE WILL GET IT TAKEN CARE OF.  AND

19    IF YOU --

20              THE COURT:  BY WHEN?

21              MR. MILDENBERG:  CAN YOU GIVE US SEVEN DAYS TO GET IT

22    ALL DONE?

23              THE COURT:  SEVEN DAYS TO MAKE THE PAYMENT OF THE

24    SANCTIONS?

25              MR. MILDENBERG:  YES.
```

1              **THE COURT:**  YES.

2              **MR. MILDENBERG:**  YES.  THANK YOU, YOUR HONOR.

3              **MR. CORCORAN:**  YOUR HONOR, THAT CHECK IS MADE OUT TO

4    CLERK OF COURT?

5              **THE COURT:**  SINCE YOU'RE NOT PAYING THEM FOR THE

6    OTHER HALF, WHY DON'T YOU PAY IT TO THEM?

7              **MR. CORCORAN:**  DIRECTLY TO PAUL HASTINGS?

8              **THE COURT:**  YEAH, WHY DON'T YOU PAY IT TO THE

9    DEFENDANTS?

10             **MR. CORCORAN:**  THANK YOU, YOUR HONOR.  TO UNITED OR

11   TO PAUL HASTINGS?  I'M SORRY.

12             **THE COURT:**  WHATEVER THEY PREFER.

13             **MR. MILDENBERG:**  WHATEVER THEY PREFER.

14             **THE COURT:**  OKAY.  WHAT DO YOU PREFER?

15             **MS. MELBY:**  PAUL HASTINGS.

16             **THE COURT:**  WHAT A SURPRISE.

17             SO -- AND THAT PAYMENT -- THE PAYMENT OF THAT

18   SANCTION HAS TO OCCUR WITHIN SEVEN DAYS.

19             **MR. MILDENBERG:**  OKAY.

20             **THE COURT:**  ALL RIGHT.  SO --

21             **MR. MILDENBERG:**  BUT THAT'S ONLY FOR -- JUST SO WE'RE

22   CLEAR, THAT'S FOR THE BELLWETHER, THOSE ARE -- THAT ORDER --

23             **THE COURT:**  THE SANCTION ORDER THAT I ISSUED.

24             **MR. MILDENBERG:**  WHAT YOU WROTE.  YES.  THANK YOU,

25   YOUR HONOR.  YES.  GOT IT.

1              **THE COURT:**  OKAY.  IS THERE ANYTHING ELSE WE NEED TO

2    DO ON DEPOSITION SCHEDULING?

3              **MS. MELBY:**  WELL, TWO THINGS.  ONE, THE CLOCK IS

4    STILL RUNNING ON THOSE IF THEY HAVEN'T COMPLIED.  SO THEY

5    CAN --

6              **THE COURT:**  I AGREE, BUT THEY PRODUCED THAT TODAY,

7    THAT STUFF TODAY, RIGHT?

8              **MS. MELBY:**  WHICH I HAVE OBVIOUSLY NOT LOOKED AT.

9              **THE COURT:**  THEY HAVE TO PAY UP TO TODAY.  IF THERE

10   ARE PROBLEMS WITH THE PRODUCTION, IF IT'S STILL DEFICIENT, THEY

11   WILL HAVE TO CONTINUE TO PAY AFTER TODAY.  BUT WITHIN SEVEN

12   DAYS, I WANT THEM PAID UP UP TO TODAY.

13             **MR. MILDENBERG:**  BUT YOUR HONOR --

14             **THE COURT:**  DOES EVERYBODY UNDERSTAND THAT?

15             **MR. MILDENBERG:**  THERE'S ALWAYS THINGS YOU CAN

16   COMPLAIN ABOUT SOMEONE'S PRODUCTION, RIGHT?  I MEAN --

17             **THE COURT:**  YEAH.

18             **MR. MILDENBERG:**  ARE YOU GOING TO HOLD US, EVEN IF

19   THERE'S ONE PAGE MISSING AT SOME POINT --

20             **THE COURT:**  NO, BUT THAT WILL BE UP TO JUDGE CORLEY.

21             **MR. MILDENBERG:**  OKAY.  I UNDERSTAND.  THANK YOU,

22   YOUR HONOR.

23             **MS. MELBY:**  BUT THE COURT DOES KNOW, AND THANKFULLY

24   IS WILLING TO TACKLE SOME OF THE ISSUES.  AND ONE MAJOR ISSUE

25   THAT IS AN EASY ONE IS THAT THESE PRIVILEGE LOGS, YOU CANNOT

1   TELL FROM THESE EMAIL ADDRESSES WHO THE PEOPLE ARE.  YOU CANNOT

2   TELL FROM THE DESCRIPTION WHETHER OR NOT -- THERE'S NO ABILITY

3   TO MAKE ANY ASSESSMENT, BOTH BY VIRTUE --

4           **THE COURT:**  OKAY.  BUT DO YOU AGREE LIKE THE EXAMPLES

5   THAT MR. MILDENBERG AND I WENT THROUGH, THE COUPLE OF EXAMPLES

6   THAT I RANDOMLY PICKED, YOU'RE NOT ASKING FOR ANYTHING MORE

7   ABOUT THOSE EXAMPLES, ARE YOU?

8           **MS. MELBY:**  YES, BECAUSE, FOR EXAMPLE, IF WE GO BACK

9   TO THEM, P.C. NOBLE IS WHAT HE SAID.  I SAW A P.C. THERE.  I

10  SAW A NOBLE NOWHERE.  THERE WAS ANOTHER NAME --

11          **MR. MILDENBERG:**  OKAY.  WE CAN --

12          **THE COURT:**  BUT WHAT --

13          **MS. MELBY:**  EXCUSE ME.

14          (SIMULTANEOUS SPEAKING.)

15          **THE COURT:**  WHAT MORE ARE YOU ASKING FOR?

16          **MS. MELBY:**  I'M ASKING FOR A CLEAR IDENTIFICATION OF

17  THE NAMES, NOT THE EMAIL ADDRESSES, BUT THE NAMES OF THE

18  SENDER, THE RECEIVER, THE CCS, THE BCCS, AND A DESCRIPTION

19  SUFFICIENT ENOUGH TO ALLOW AN ASSESSMENT AS TO WHETHER OR NOT

20  THE PRIVILEGE APPLIES, BECAUSE WE ALL KNOW --

21          **THE COURT:**  OKAY, BUT WAIT A MINUTE.  I MEAN, YOU

22  KNOW, LET'S BE REASONABLE HERE.  IF THE COMMUNICATION SOLELY

23  AMONG MILDENBERG AND EIGHT OF THE PLAINTIFFS IN THIS CASE,

24  SURELY, YOU DO NOT NEED A DESCRIPTION ABOUT THE -- WHAT THEY'RE

25  COMMUNICATING ABOUT.  SURELY, YOU'RE WILLING TO LET -- RELEASE

1    YOUR VICE GRIP ON THAT EMAIL COMMUNICATION AND NOT SEEK MORE.

2          **MS. MELBY:**  WELL --

3          **THE COURT:**  RECOGNIZING, AS I'M SURE YOU'RE CAPABLE

4    OF, AT LEAST I HOPE YOU'RE CAPABLE OF, THAT SOMETIMES IT'S JUST

5    NOT WORTH THE EFFORT, RIGHT?  BECAUSE IT'S OBVIOUS -- LIKE,

6    SOMETIMES IT'S WORTH JUST BEING REASONABLE, AND SAYING, OKAY,

7    THIS IS A COMMUNICATION PURELY AMONG THE LAWYER AND EIGHT OF

8    THE CLIENTS, AND I DON'T NEED ANYTHING MORE TO KNOW THAT I

9    DON'T NEED -- THAT I'M NOT GOING TO GET THAT EMAIL.

10         **MS. MELBY:**  WELL, AS AN INITIAL PASS AND ONLY

11   TEMPORARILY, BECAUSE I CANNOT CONCEDE THAT ISSUE BECAUSE NOT

12   EVERY COMMUNICATION BETWEEN A LAWYER AND A CLIENT IS

13   PRIVILEGED, AS THE COURT WELL KNOWS AND IN THIS CASE --

14         **THE COURT:**  RIGHT, BUT IN MOST CASES, IN THE LIMITED

15   EXPERIENCE IN DISCOVERY THAT I'VE HAD, IF IT'S AN EMAIL BETWEEN

16   A LAWYER AND A CLIENT, THE OTHER SIDE JUST SAYS, FINE, THAT'S

17   ALL I NEED TO KNOW.

18         **MS. MELBY:**  ORDINARILY.

19         **THE COURT:**  RIGHT?

20         **MS. MELBY:**  HOWEVER, IN THIS CASE -- AND I'M SURE

21   THAT THESE DOCUMENTS THAT WE ARE GOING TO GET, MANY OF WHICH

22   HAVE BEEN WITHHELD BECAUSE THEY AREN'T JUST BETWEEN ATTORNEY

23   AND CLIENT, THERE ARE OTHER PEOPLE IN THEM SO --

24         **THE COURT:**  SO WHAT I'M GOING TO ORDER NOW -- AND I

25   WILL LEAVE THE REST OF IT FOR RESOLUTION DOWN THE LINE.  I'M

1    GOING TO ORDER THEM TO PROVIDE A KEY OF ALL THE EMAIL ADDRESSES

2    AND INDICATE -- INDICATE TO YOU WHO THOSE EMAIL ADDRESSES --

3    WHOSE EMAIL ADDRESSES THOSE ARE.

4          **MS. MELBY:**  TOGETHER WITHIN THOSE CASES WHEREVER

5    THERE ARE OTHERS IN THERE WHO ARE NOT CURRENT CLIENTS, WE NEED

6    TO HAVE SOME DESCRIPTION THAT ALLOWS US TO ASSESS --

7          **THE COURT:**  WHO THEY ARE?

8          **MS. MELBY:**  NOT ONLY WHO THEY ARE, BUT WHETHER OR NOT

9    ANY KIND OF PRIVILEGE SHOULD APPLY.  I MEAN, OBVIOUSLY -- FOR

10   EXAMPLE, I SAW IN ONE OF THE ONES THE COURT JUST LOOKED AT,

11   THERE WAS A GUY NAMED ROBINSON IN THERE.

12         **MR. MILDENBERG:**  YEAH, FRED ROBINSON.

13         **MS. MELBY:**  AND THERE WAS ANOTHER ONE WITH AN ICLOUD

14   ADDRESS WHOSE NAME I'VE NEVER SEEN BEFORE IN ANYTHING.  AND SO

15   IT WASN'T --

16         **THE COURT:**  OKAY.

17         **MS. MELBY:**  -- IT WASN'T REALLY STRAIGHTFORWARD.

18         **THE COURT:**  RIGHT.  FOR NOW WHAT I'M ORDERING IS --

19   THE PRIVILEGE LOG MAY BE INADEQUATE.  IT PROBABLY IS

20   INADEQUATE.  BUT WHAT I'M ORDERING IS THEY PROVIDE YOU A KEY

21   DESCRIBING EVERY EMAIL ADDRESS AND WHOSE EMAIL ADDRESS THAT IS.

22   AND THEN WITH THAT YOU CAN GO THROUGH AND YOU CAN CULL AND YOU

23   CAN FIGURE OUT WHAT YOU REALLY WANT TO GO AFTER.  AND,

24   HOPEFULLY, YOU WILL BE REASONABLE ABOUT IT.

25         I'M ORDERING THEM TO PROVIDE THAT KEY IDENTIFYING

```
 1    WHOSE EMAIL ADDRESS ALL OF THOSE EMAIL ADDRESSES ARE BY THE END
 2    OF THIS WEEK.
 3              MS. MELBY:  THANK YOU, YOUR HONOR.
 4              MR. MILDENBERG:  THAT'S -- WITH -- YOUR HONOR?
 5              THE COURT:  WHAT?
 6              MR. MILDENBERG:  IT'S IMPOSSIBLE.  BY THE END OF THIS
 7    WEEK?  DO YOU KNOW HOW MANY EMAIL ADDRESSES ARE IN THERE?
 8              THE COURT:  YOU SHOULD HAVE -- I MEAN, A PROPER
 9    PRIVILEGE LOG WOULD HAVE IDENTIFIED THE RECIPIENTS BY NAME.  I
10    MEAN IT IS NOT APPROPRIATE TO JUST --
11              MR. MILDENBERG:  YOUR HONOR, IT'S NOT TRUE.  MOST, IF
12    NOT ALL OF THEM ARE -- I WILL SHOW YOU HOW -- I'M NOT MAKING
13    THIS UP.  IF YOU'LL TURN TO PAGE 8, I WILL GIVE YOU AN EXAMPLE.
14              THE COURT:  NO, I'M DONE.
15              MR. MILDENBERG:  THEY ARE IDENTIFIED BY NAME.
16              (SIMULTANEOUS SPEAKING.)
17              THE COURT:  OKAY.  I'M ORDERING --
18              MR. MILDENBERG:  THANK YOU.
19              THE COURT:  WITHIN SEVEN DAYS.
20              MR. MILDENBERG:  YES.
21              THE COURT:  YOU ARE ORDERED TO PROVIDE A KEY.
22              MR. MILDENBERG:  THAT IS POSSIBLE, YES.  THANK YOU,
23    YOUR HONOR.
24              BUT I ASK YOU ONE MORE THING -- AND I'M SORRY TO
25    ALWAYS ASK FOR THINGS.  SEVEN DAYS, OKAY, BUT THERE ARE IN THIS
```

1    COURT ALONE, THERE'S TEN, RIGHT, TEN CLIENTS.  THIS IS WHAT HAS

2    TO BE DONE.  JUST PLEASE CONSIDER THE PRACTICALITY.

3            NOW, WE HAVE TO CULL EACH INDIVIDUAL EMAIL ADDRESS,

4    DEDUP IT, AND CREATE A LIST.  THEN I HAVE TO SENT IT TO EACH OF

5    THE PILOTS, AND I SAY, GENTLEMEN, FILL IN THE SPREADSHEET WITH

6    THE REAL NAMES --

7            **THE COURT:**  SHOULD HAVE BEEN DONE MONTHS AGO, MONTHS

8    AGO.

9            **MR. MILDENBERG:**  I DIDN'T HAVE THEM MONTHS AGO.  I

10   ACTUALLY DIDN'T HAVE THEM MONTHS AGO, BUT YOU'RE RIGHT.

11           **THE COURT:**  THAT'S THE FAULT OF YOU AND YOUR CLIENTS.

12           **MR. MILDENBERG:**  I DO NOT WANT TO --

13           **THE COURT:**  SO GET IT DONE.

14           **MR. MILDENBERG:**  OKAY.  I WILL GET IT DONE.  BUT I'M

15   JUST -- I'M SAYING THOUGH -- I WILL GET THAT OUT.

16           **THE COURT:**  OKAY.  WHAT ELSE DO WE NEED TO TALK

17   ABOUT?

18           **MR. MILDENBERG:**  OKAY.

19           **MS. MELBY:**  SO WE OBJECT TO WRITTEN EXTENSION TIME

20   FOR MORE WRITTEN DISCOVERY FROM THE PLAINTIFFS.  THE PLAINTIFFS

21   ISSUED NO WRITTEN DISCOVERY UNTIL THREE HOURS BEFORE MIDNIGHT

22   ON THE DISCOVERY CUTOFF LAST DAY.  AND SO --

23           **MR. MILDENBERG:**  THAT'S NOT -- SORRY.

24           **MS. MELBY:**  IT'S PREJUDICIAL.  IT'S NOT FAIR.  IT'S

25   NOT EQUITABLE IN ANY WAY.

1          **THE COURT:**  SO YOU'RE SAYING IF THE DISCOVERY CUTOFF

2    IS EXTENDED, IT SHOULD ONLY BE EXTENDED TO THE LIMITED EXTENT

3    NEEDED TO ACCOMPLISH A CERTAIN NUMBER OF TASKS?

4          **MS. MELBY:**  CORRECT, BECAUSE --

5          **THE COURT:**  WELL, SO, I'M VERY COMFORTABLE AT THIS

6    POINT SAYING NO MORE WRITTEN DISCOVERY FROM THE PLAINTIFFS.

7    I'M VERY COMFORTABLE SAYING THAT.

8          **MR. MILDENBERG:**  WE'VE ALREADY ISSUED OUR WRITTEN --

9          **THE COURT:**  YEAH.

10          **MR. MILDENBERG:**  I HAVE TWO THINGS TO SAY TO THAT.

11    NUMBER ONE, THAT'S NOT TRUE THAT WE DIDN'T ISSUE WRITTEN

12    DISCOVERY.  WHAT HAPPENED, IF YOUR HONOR WILL RECALL, WHEN WE

13    CAME IN THE CASE, THERE WAS A BUNCH OF WRITTEN DISCOVERY

14    OUTSTANDING THAT WERE ISSUED BY PRIOR COUNSEL.  WE WERE RELYING

15    ON THAT TO BE OUR DISCOVERY, ALTHOUGH YOUR HONOR HAD ISSUES

16    WITH -- LOT OF ISSUES WITH THEIR PERFORMANCE, THEY HAD

17    SUBMITTED FAIRLY STANDARD SETS OF REQUESTS FOR PRODUCTION OF

18    DOCUMENTS AND ALL THAT.

19          THERE HAS BEEN UNDER THAT DISCOVERY ABSOLUTELY NOT A

20    SINGLE DOCUMENT PRODUCED BY THE DEFENDANTS.  AND THEN AT A CASE

21    MANAGEMENT CONFERENCE ABOUT TWO MONTHS AGO --

22          **THE COURT:**  DO YOU NEED ANY MORE WRITTEN DISCOVERY?

23          **MR. MILDENBERG:**  ON THE BELLWETHERS, NO, WE'VE

24    ALREADY DONE IT.

25          **THE COURT:**  OKAY.

1          **MR. MILDENBERG:**  BUT TIME OUT.  THERE'S ONE THING I

2     DO NEED.

3          IF YOUR HONOR WILL PLEASE RECALL MY DISCOVERY LETTER,

4     ALL THESE NEW WITNESSES THAT WERE NEVER IDENTIFIED ARE COMING

5     UP IN HER -- AND THESE ARE LIKE MAJOR PEOPLE.  THESE ARE THE

6     PEOPLE THAT MADE THE DECISIONS TO NOT HIRE THESE GUYS.  SO

7     NOW -- I MEAN, I DON'T THINK I NEED WRITTEN DISCOVERY, BUT I

8     DON'T KNOW WHAT'S COMING.  SO THAT IS ALSO --

9          **THE COURT:**  NO ADDITIONAL WRITTEN DISCOVERY WITHOUT

10    LEAVE OF THE COURT.

11          **MR. MILDENBERG:**  FOR THE BELLWETHER PLAINTIFFS?

12          **THE COURT:**  YEAH.

13          **MR. MILDENBERG:**  WE'VE ALREADY -- WE'VE ALREADY

14    ISSUED OUR WRITTEN DISCOVERY FOR THEM.

15          **THE COURT:**  OKAY.

16          **MR. MILDENBERG:**  SO THAT WOULD BE --

17          **THE COURT:**  OTHERWISE, THE DISCOVERY CUTOFF IS

18    EXTENDED TO DECEMBER 1ST.

19          **MR. MILDENBERG:**  WHAT ABOUT THE -- WE HAVE TO DEPOSE

20    THE PEOPLE THAT THEY'RE IN THE PROCESS OF IDENTIFYING, AND THEY

21    HAVE NOT YET COMPLETED IDENTIFYING THEM.  THAT'S INITIAL

22    DISCLOSURE ISSUE, NOT WRITTEN DISCOVERY.

23          **THE COURT:**  RIGHT.  AND I COULDN'T DISCERN FROM WHAT

24    I READ --

25          **MR. MILDENBERG:**  YES.

1          **THE COURT:**  -- WHO -- YOU KNOW WHO -- WHO WAS NOT

2     DISCLOSED IN THE INITIAL -- WHO WAS NOT IDENTIFIED IN THE

3     INITIAL DISCLOSURES ORIGINALLY THAT ARE BEING IDENTIFIED NOW

4     AND WHETHER YOU WERE ON NOTICE OF ANY OF THEM.

5          **MR. MILDENBERG:**  JOHNNY JONES --

6          **THE COURT:**  I COULDN'T --

7          **MR. MILDENBERG:**  JOHNNY JONES HAD 24 --

8          **THE COURT:**  BUT THE MATERIALS THAT YOU ALL SUBMITTED,

9     I JUST COULDN'T DISCERN THAT.  I DON'T FEEL LIKE I'M CAPABLE OF

10    ADDRESSING THAT.

11         **MR. MILDENBERG:**  WELL, IT'S PARTIALLY THE --

12    PARTIALLY BECAUSE WE'RE LIMITED TO NOT ATTACHING ANYTHING,

13    WHICH IS SMART OF YOUR HONOR TO MAKE THAT RULE, OR ELSE YOU'D

14    BE DEALING WITH --

15         BUT THAT'S WHY WE COULDN'T SUBMIT TO YOU THE COPIES

16    OF THE DIFFERENT THINGS.  BUT THE ISSUE HERE IS JOHNNY JONES

17    HAD 24 JOB APPLICATIONS.  EVEN IN HER SUPPLEMENTAL THAT WE JUST

18    GOT, IN DEFENDANTS' SUPPLEMENTAL, THEY ONLY PROVIDED FACT

19    WITNESSES FOR EIGHT OF THEM.

20         **THE COURT:**  OKAY.  SO WHAT IS THE RELIEF THAT YOU'RE

21    SEEKING IN CONNECTION WITH THIS?

22         (SIMULTANEOUS SPEAKING.)

23         **MR. MILDENBERG:**  THE ONLY RELIEF I WANT IS THAT

24    DEFENDANTS HAVE AGREED NOW TO SUPPLEMENT THOSE DISCLOSURES AND

25    IDENTIFY THE RELEVANT WITNESSES.  WHEN THAT HAPPENS -- AND I'M

```
1    NOT PRESSURING.  I'M NOT SAYING I NEED THAT TOMORROW, BUT SOME
2    REASONABLE PERIOD OF TIME, TEN DAYS, TWO WEEKS.  ONCE THAT
3    HAPPENS, NOW THERE'S ANOTHER 20 PEOPLE THAT WE HAD NO IDEA WHO
4    THEY WERE.  SEE, WE CREATED OUR --
5              THE COURT:  OKAY.  BUT I'M EXTENDING THE DISCOVERY
6    DEADLINE TO DECEMBER 1ST.
7              MR. MILDENBERG:  ONLY TILL NOVEMBER?  ONLY UNTIL THE
8    END OF NOVEMBER, THOUGH?
9              THE COURT:  RIGHT.
10             MR. MILDENBERG:  SO I HAD ASKED FOR IT TO GO INTO
11   DECEMBER FOR THE BELLWETHERS SO THAT I COULD GET THIS DONE FOR
12   THE BELLWETHERS.
13             THE COURT:  OKAY.
14             MR. MILDENBERG:  JUST FOR DEPOSITIONS OF THOSE NEW
15   PEOPLE THAT ARE BEING IDENTIFIED.
16             THE COURT:  YOU'LL NEED TO MAKE A SHOWING THAT YOU
17   DIDN'T KNOW WHO THEY WERE AND YOU DIDN'T KNOW THAT THERE WAS A
18   POSSIBILITY THAT -- YOU DIDN'T --
19             MR. MILDENBERG:  HOW COULD MY CLIENTS KNOW WHO MADE
20   THE DECISION, THE ACTUAL DECISION MAKER, TO DENY THEIR
21   APPLICATION AND PICK SOMEONE ELSE?
22             THE COURT:  I DON'T KNOW WHETHER YOU KNEW OR NOT.
23             MR. MILDENBERG:  RIGHT.
24             THE COURT:  I'M JUST TELLING YOU YOU HAVE TO MAKE A
25   SHOWING THAT YOU DIDN'T KNOW.
```

```
 1            MR. MILDENBERG:  OKAY.

 2            THE COURT:  AND YOU CAN DO THAT WITH JUDGE CORLEY.

 3            MR. MILDENBERG:  IF WE WANT TO GO BEYOND THE END OF

 4    NOVEMBER?

 5            THE COURT:  YEAH.

 6            MR. MILDENBERG:  OKAY.  THANK YOU, YOUR HONOR.

 7            MS. MELBY:  AND THEN IN THE -- AND WE HAVE RESPONDED

 8    TO THAT LETTER, AND I THINK THAT ADEQUATELY EXPLAINS

 9    EVERYTHING.  BUT WE HAVE TO --

10            THE COURT:  YOU MEAN, IN YOUR CASE MANAGEMENT

11    STATEMENT?

12            MS. MELBY:  NO, NO.

13            THE COURT:  I DIDN'T SEE A SEPARATE LETTER FROM YOU

14    IN RESPONSE TO --

15            MS. MELBY:  NO, WE FILED IT TODAY --

16            THE COURT:  OH, OKAY.

17            MS. MELBY:  -- THAT'S WHY, YOUR HONOR.

18            THE COURT:  I HAVEN'T SEEN THAT.

19            MS. MELBY:  WE FILED --

20            MR. MILDENBERG:  THEY ONLY FILED ONE, AND WE FILED

21    TWO, JUST FOR THE RECORD.

22            MS. MELBY:  NO, WE FILED A RESPONSE TO BOTH.

23            THE COURT:  DOES THAT MEAN YOU WIN?

24            MR. MILDENBERG:  NO, BUT --

25            THE COURT:  OH.
```

1          **MR. MILDENBERG:**  IT DOESN'T MEAN WE WIN, BUT I WANT

2     YOUR HONOR TO KNOW, BECAUSE WE'RE ALWAYS BEING ACCUSED OF ONLY

3     DOING THIS OR ONLY DOING THAT BY THEM, AND THEY POINT OUT WHEN

4     WE DIDN'T --

5          **THE COURT:**  OKAY.  BUT I DON'T FEEL -- I MEAN, I

6     HAVEN'T READ YOUR RESPONSE.

7          **MR. MILDENBERG:**  YES.

8          **THE COURT:**  I DON'T FEEL THAT I'VE BEEN GIVEN THE

9     TOOLS TO ADDRESS THIS.

10          **MR. MILDENBERG:**  OKAY.

11          **THE COURT:**  OTHER THAN TO SAY I'M EXTENDING THE

12     DISCOVERY --

13          **MR. MILDENBERG:**  THANK YOU.

14          **THE COURT:**  -- DEADLINE TO DECEMBER 1ST.  I ASSUME

15     YOU HAVE NAMES NOW?

16          **MR. MILDENBERG:**  ONLY SOME, BUT --

17          **THE COURT:**  OKAY.

18          **MR. MILDENBERG:**  -- YES, I HAVE SOME MORE.

19          **THE COURT:**  WELL, IF YOU WANT TO TAKE ANY OF THEIR

20     DEPOSITIONS --

21          **MR. MILDENBERG:**  OKAY.

22          **THE COURT:**  -- NOTICE THEIR DEPOSITIONS.

23          **MR. MILDENBERG:**  NOW THAT I HAVE THE EXTENSION, I

24     DEFINITELY WILL.  THANK YOU.

25          **MS. MELBY:**  WE NEED TO TAKE IN THAT VERY SHORT PERIOD

1    OF TIME EVERY PLAINTIFF WHO'S BEEN LISTED AS A WITNESS.

2    THERE'S AN ISSUE AS TO WHETHER OR NOT THEY'LL BE -- OR WHETHER

3    OR NOT WE SHOULD SUBPOENA THEM OR WHETHER COUNSEL IS GOING TO

4    JUST PRESENT THEM FOR DEPOSITION.  SO THERE'S THAT ISSUE.

5             **THE COURT:**  OKAY.  LET'S GET THEM CALENDARED.  LET'S

6    GET THEM SCHEDULED RIGHT NOW.

7             **MS. MELBY:**  THAT'S FINE.  THEY HAVE TO BE DEPOSED

8    AS -- THE PLAINTIFFS HAVE TO BE DEPOSED AS PLAINTIFFS, AND THEY

9    HAVE TO BE DEPOSED AS WITNESSES IN THE BELLWETHER CASES, SO --

10            **THE COURT:**  YOU CAN DEPOSE THEM AS BOTH AT THE SAME

11   TIME.

12            **MS. MELBY:**  WELL, THAT'S TRUE, BUT THERE ARE -- EACH

13   BELLWETHER PLAINTIFF HAS LISTED 15 OR MORE OF HIS CO-PLAINTIFFS

14   OR CO-RELATED -- FORMER CO-PLAINTIFFS THAT ARE RELATED AS

15   WITNESSES.

16            **THE COURT:**  SO GO TAKE THEIR DEPOSITIONS.

17            **MS. MELBY:**  I'M HAPPY TO.  DO I NEED TO SUBPOENA THEM

18   OR NOT?

19            **MR. MILDENBERG:**  THE ONLY ONES THAT IT WOULD EVER BE

20   AN ISSUE THAT COUNSEL WOULD HAVE TO SUBPOENA ARE THE ONES WHO

21   AREN'T IN THIS COURT.  THE ONES WHO WORK AND LIVE IN VIRGINIA

22   THAT YOU HAD TRANSFERRED THERE --

23            **THE COURT:**  BUT YOU STILL REPRESENT THEM, RIGHT?

24            **MR. MILDENBERG:**  I DO.  I'M NOT SAYING I WON'T DO IT,

25   BUT THIS WAS THE PROBLEM.  WE HAD TO SERVE SO FAR TWO SUBPOENAS

1   ON UNITED WITNESSES THAT THEY WON'T ACCEPT SERVICE FOR.

2   **MS. MELBY:**  WELL, THEY --

3   **MR. MILDENBERG:**  I SAID, WAIT, MY CLIENTS ARE

4   SPENDING MONEY NOW ON A PROCESS SERVER RUNNING AROUND HOUSTON

5   AND RUNNING AROUND CHICAGO, WHICH WE, THANK GOODNESS, DID HAVE

6   SUCCESS ON ONE OF THEM SO FAR TODAY.  THEY WERE SERVED.  THEY

7   WOULDN'T ACCEPT SERVICE FOR THEIR OPEN EMPLOYEE.

8   SO THEY CALLED US BACK AND SAID, WE WANT TO SERVE --

9   WE WANT TO NOW DEPOSE ALL YOUR PEOPLE IN THE CALIFORNIA CASES,

10  ALL YOUR PEOPLE THAT WE HAD TRANSFERRED TO VIRGINIA AND NEW

11  JERSEY AND TEXAS, SO WILL YOU ACCEPT SERVICE?

12  AND I SAID, SURE.  WILL YOU ACCEPT SERVICE FROM ME?

13  NO.

14  WELL, I SAID I HAVE TO GO ASK MY CLIENTS.

15  **MS. MELBY:**  WHAT COUNSEL --

16  **MR. MILDENBERG:**  DIDN'T I?

17  **MS. MELBY:**  -- IS FAILING TO INCLUDE IS THAT I DID --

18  **MR. MILDENBERG:**  IF THEY'RE --

19  **MS. MELBY:**  COUNSEL.

20  **MR. MILDENBERG:**  WHY CAN'T IT BE A TWO-WAY STREET?

21  THAT'S ALL I'M SAYING.  I'D LOVE IT TO BE A TWO-WAY STREET.

22  **MR. CORCORAN:**  IT IS THE SITCOM YOU IMAGINE

23  SOMETIMES, YOUR HONOR.

24  **MS. MELBY:**  THE FORMER MANAGER FLIGHT -- FORMER

25  MANAGER --

```
 1            THE COURT:  HOLD ON A SECOND.  HERE'S YOUR
 2   OPPORTUNITY TO BE THE BIGGER PERSON.
 3            MR. MILDENBERG:  FINE.  I'LL ACCEPT SERVICE.
 4            THE COURT:  ALL RIGHT.  SO YOU'RE ACCEPTING SERVICE
 5   OF SUBPOENAS FOR ALL THE PEOPLE YOU PEOPLE YOU REPRESENT.
 6            MR. MILDENBERG:  WELL, BUT THE THING -- I WOULD
 7   LIKE -- LET ME JUST SAY THIS, SOME OF MY CLIENTS MIGHT BE UPSET
 8   AT ME FOR DOING THAT WITHOUT ASKING THEM.  THE ONES IN VIRGINIA
 9   MIGHT SAY, BRIAN, WHY DID YOU DO THAT WITHOUT OUR PERMISSION.
10            THE COURT:  LET'S BE --
11            MR. MILDENBERG:  IT'S TRUE.
12            (SIMULTANEOUS SPEAKING.)
13            THE COURT:  LET'S BE REALISTIC.
14            MR. MILDENBERG:  YOUR HONOR, IT'S TRUE.  THEY DO GET
15   UPSET AT THINGS LIKE THAT.  IT'S TRUE.  YOU DON'T BELIEVE IT?
16            THE COURT:  OKAY.
17            MR. CORCORAN:  YOUR HONOR, THESE ARE THE FIRST SETS
18   OF CLIENTS WE'VE EVER HAD THAT HAD ACCESS TO PACER AND
19   REGULARLY CHECK IT.  THESE ARE INVOLVED --
20            MR. MILDENBERG:  IT'S EVERY LITTLE THING, AND WE'VE
21   HAD TO BE VERY CAREFUL, BUT HERE'S WHAT I'LL SAY -- I WILL
22   ABSOLUTELY -- AND I WILL SAY IT ON THE RECORD IN OPEN COURT.  I
23   WILL ACCEPT SERVICE AND RECOMMEND TO EACH OF MY CLIENTS THAT I
24   ACCEPT SERVICE.
25            IF THERE'S A PARTICULAR CLIENT WHO HAS THEIR OWN
```

1    REASON FOR NOT ALLOWING ME, I JUST ASK YOUR HONOR TO ALLOW ME

2    TO ADVISE YOU THAT THIS CLIENT SAID, NO, AND HERE'S WHY,

3    DESPITE MY RECOMMENDATION.

4            **THE COURT:**  OKAY.  SO CAN WE SCHEDULE THE

5    DEPOSITIONS?  WHY CAN'T WE --

6            **MR. MILDENBERG:**  NO, BECAUSE THEIR NOVEMBER BIDS

7    DON'T COME OUT UNTIL OCTOBER 16TH, AT WHICH POINT IN TIME EACH

8    OF THEM IS GOING TO GIVE US THEIR FLIGHT CALENDAR FOR THE MONTH

9    OF NOVEMBER, AND WE ARE GOING TO QUICKLY SCHEDULE THOSE

10   DEPOSITIONS.  BUT WE CAN'T DO IT UNTIL OCTOBER 16TH BECAUSE

11   THEIR FLIGHT BIDS ARE NOT OUT YET, AS THEY KNOW.  WE CAN'T DO

12   IT TODAY.

13           **THE COURT:**  OKAY.

14           **MR. MILDENBERG:**  BUT I PROMISE AS SOON AS THOSE --

15           **THE COURT:**  ALL RIGHT.

16           **MR. MILDENBERG:**  -- BIDS ARE OUT WE WILL DO IT.

17           **THE COURT:**  WHAT ELSE CAN WE GET DONE TODAY?

18   ANYTHING?

19           **MS. MELBY:**  OH, ONE OTHER THING -- WELL, TWO OTHER

20   THINGS.

21           ONE IS WE WILL -- I JUST WANT TO ALERT THE COURT -- I

22   THINK WE PUT THIS IN THE CMC, BUT WE WILL BE FILING LEAVE TO

23   AMEND THE ANSWER.  WE WISH THAT WE DIDN'T HAVE TO DO THAT.  IT

24   WOULD BE NICE TO JUST HAVE A STIPULATION ON THAT, BUT WE DON'T

25   HAVE IT, SO WE'LL BE FILING LEAVE TO AMEND THE ANSWER.

1          **THE COURT:**  WHAT ARE -- YOU'RE GOING TO ADD SOME

2     AFFIRMATIVE DEFENSES OR SOMETHING, OR WHAT?

3          **MS. MELBY:**  NO, WE'RE GOING TO ADD A -- THE

4     COUNTERCLAIM NOW, AND IT WILL ONLY THAN AGAINST -- RIGHT NOW I

5     THINK ONE AND POSSIBLY TWO OF THE PLAINTIFFS, AND IT WILL ONLY

6     BE ON THE COVENANT NOT TO SUE, NOT ON THE CONFIDENTIALITY

7     PROVISION.  SO IT DOESN'T EVEN REQUIRE ANY DISCOVERY.  IT'S

8     EITHER THAT IT WAS BREACHED OR IT WASN'T SO...

9          **MR. MILDENBERG:**  BUT THAT WOULD BE A COMPULSORY

10    COUNTERCLAIM, AND --

11         **MS. MELBY:**  THAT HASN'T BEEN DETERMINED.

12         **MR. MILDENBERG:**  OKAY.  THEY'RE GOING TO FILE A

13    MOTION, AND WE'LL RESPOND TO IT, I GUESS.

14         **THE COURT:**  OKAY.

15         **MR. MILDENBERG:**  UNLESS YOU WANT TO HEAR ARGUMENT

16    NOW, RIGHT, YOUR HONOR?

17         **THE COURT:**  I MEAN, I'D BE PRETTY SURPRISED IF I

18    DIDN'T ALLOW IT.  BUT THEY CAN FILE THEIR MOTION.

19         **MR. MILDENBERG:**  THAT'S GOOD TO SAY, BECAUSE THEN

20    MAYBE SINCE YOU SAID THAT, MAYBE WE'LL TAKE THAT UNDER

21    ADVISEMENT AND, YOU KNOW, SAVE EVERYBODY SOME TIME.

22         **MS. MELBY:**  AND, YOUR HONOR --

23         **MR. MILDENBERG:**  BUT YOUR HONOR DID SAY BEFORE THAT

24    YOU DIDN'T WANT TO DO SOMETHING THAT WAS GOING TO PUSH THE

25    TRIALS BACK OR CHANGE IT.

1          **THE COURT:**  RIGHT, WHICH IS WHY I REFUSED TO SIGN THE

2     STIPULATION THAT SAID THEY HAVE A DEADLINE TO FILE COMPULSORY

3     COUNTERCLAIMS UNTIL LIKE JULY OF 2017.

4          **MR. MILDENBERG:**  BUT THAT WASN'T -- IT WASN'T -- IF

5     THEY HADN'T IT BY TRIAL, THEY WOULD HAVE WAIVED THEIR RIGHT TO

6     FILE IT.  THAT WAS MY UNDERSTANDING.  IT WASN'T TRYING TO GET

7     BEYOND THE TRIAL.

8          **MS. MELBY:**  I DON'T -- A, I DON'T THINK THAT'S RIGHT,

9     BUT EVEN IF IT WERE RIGHT, IT'S WAIVED BECAUSE COUNSEL SIGNED A

10    STIPULATION FOR AN EXTENSION AT THE URGING -- AFTER WE MET WITH

11    JUDGE KIM.

12         **THE COURT:**  IT WOULD BE -- GIVEN HOW MUCH I'VE BENT

13    OVER BACKWARDS FOR THE PLAINTIFFS IN THIS CASE IN ALLOWING THEM

14    TO AMEND THEIR COMPLAINTS --

15         **MR. MILDENBERG:**  YES, YOUR HONOR, TRUE.

16         **THE COURT:**  AND GOING WAY, I THINK, ABOVE AND BEYOND

17    THE CALL IN ACCOMMODATING THE PLAINTIFFS, I WILL BE VERY

18    INTERESTED TO SEE ANY OPPOSITION TO A REQUEST ON THEIR PART TO

19    AMEND.

20         **MR. MILDENBERG:**  TO SUE THEM, THOUGH.  IT'S NOT JUST

21    AMEND.  IT'S NOT JUST AMEND AN AFFIRMATIVE DEFENSE.

22         **THE COURT:**  RIGHT.

23         **MR. MILDENBERG:**  THEY'RE SAYING --

24         **THE COURT:**  THAT'S WHAT I ALLOWED YOUR CLIENTS TO DO.

25         **MR. MILDENBERG:**  BUT THEY WERE ALREADY SUING THEM.

1    IT'S JUST SUING THEM IN A DIFFERENT WAY.

2              **THE COURT:**  THEIR LAWSUITS WERE DISMISSED REPEATEDLY.

3          **MR. MILDENBERG:**  THEY WERE AT ONE POINT.

4              **THE COURT:**  AND THEY WERE GIVEN REPEATED

5    OPPORTUNITIES TO REVIVE THEIR LAWSUITS.

6          **MR. MILDENBERG:**  THAT IS TRUE.

7          **MS. MELBY:**  ANY OTHER DISCOVERY LETTERS, YOUR HONOR,

8    DO THOSE GO TO THE MAGISTRATE JUDGE CORLEY?

9          **THE COURT:**  YEAH.  I'M GOING TO -- WHAT HAPPENS IS A

10   LOT OF THE STUFF YOU FILED IS SOMEWHAT OUT OF DATE NOW ALREADY

11   AND WHATNOT.  SO I'M -- YOU KNOW, ANY -- I'VE RESOLVED SOME

12   STUFF.  WE'VE RESOLVED SOME STUFF HERE.

13          THERE'S OBVIOUSLY STUFF STILL PENDING ABOUT THE

14   ADEQUACY OF THE PRIVILEGE LOG, ABOUT THE ADEQUACY OF THE EMAIL

15   PRODUCTIONS, ABOUT WHAT NEEDS TO BE DONE TO SCRUTINIZE THE

16   PLAINTIFFS' EFFORTS TO SEE IF THEY'VE DONE ENOUGH TO MAKE SURE

17   THAT THEY'VE IDENTIFIED ALL POTENTIALLY RESPONSIVE DOCUMENTS.

18          THERE'S A LOT THAT STILL NEEDS TO BE DONE, BUT I

19   DON'T THINK THAT ANY OF THE MATERIALS THAT YOU ALL HAVE FILED

20   SO FAR SHOULD BE KIND OF HANDED OVER TO JUDGE CORLEY, BECAUSE

21   IT WILL BE EVEN HARDER TO UNDERSTAND THAN YOU ALL'S STUFF

22   USUALLY IS TO UNDERSTAND.

23          AND SO I THINK YOU NEED TO TEE -- WHATEVER IS LEFT IN

24   THE WAKE OF OUR MEETING TODAY -- AND I'LL ISSUE MY USUAL ORDER

25   FOLLOWING THE CASE MANAGEMENT CONFERENCE.  WHATEVER IS LEFT IN

1  THE WAKE OF THAT YOU TEE UP IN FRONT OF JUDGE CORLEY.

2          **MS. MELBY:**  AND LASTLY, I ASKED COUNSEL BEFORE ABOUT

3  A DISCOVERY -- SOME 30 DAYS TO RESPOND TO PENDING WRITTEN

4  DISCOVERY AND HE -- HE WASN'T SURE THAT HE COULD --

5          **MR. MILDENBERG:**  I SAID AS LONG AS IT WAS OKAY WITH

6  THE COURT, I WOULD, OF COURSE, PROVIDE A REASONABLE EXTENSION.

7  BUT SINCE THE TIME THAT COUNSEL WAS ASKING FOR -- WELL, NOW THE

8  COURT JUST EXTENDED US THE DISCOVERY DEADLINE UNTIL END OF

9  NOVEMBER, RIGHT?  SO WE CAN TALK ABOUT IT NOW WITHOUT THE COURT

10 GETTING INVOLVED.

11         **MS. MELBY:**  WELL, I JUST NEED TO KNOW IF WE HAVE THAT

12 OR NOT.

13         **MR. MILDENBERG:**  I DON'T KNOW THE EXACT BOUNDARIES OF

14 IT, BUT YOU WILL HAVE A REASONABLE EXTENSION, YES.  I DON'T

15 KNOW WHAT YOU'RE ASKING FOR, WHAT THE TIME FRAME THAT YOU'RE

16 ASKING IS.

17         **MS. MELBY:**  OH, I HAD ASKED FOR 30 DAYS.

18         **MR. MILDENBERG:**  YOUR HONOR, DO YOU WANT THIS DONE

19 BEFORE YOU -- IN FRONT OF YOU, OR IS THIS SOMETHING WE SHOULD

20 CONFER ABOUT?

21         **THE COURT:**  WHEN ARE THE RESPONSES DUE?

22         **MR. MILDENBERG:**  THEY'RE DUE ON THE LAST DAY OF

23 OCTOBER, CURRENTLY.  THE ONLY ISSUE IS I'D LIKE TO HAVE SOME OF

24 INFORMATION BEFORE I DO MY DEPS.

25         **THE COURT:**  I DON'T THINK YOU SHOULD BE RESPONDING TO

1    THEIR DOCUMENT REQUESTS ON THE LAST DAY OF DISCOVERY.

2              **MS. MELBY:**  WELL --

3              **MR. MILDENBERG:**  BUT YOU JUST --

4              **THE COURT:**  RIGHT.

5              **MR. MILDENBERG:**  BUT YOU JUST GAVE US -- YOU GAVE US

6    AN EXTENSION.

7              **THE COURT:**  RIGHT.  BUT YOU'RE NOW ASKING FOR AN

8    EXTENSION TO THE NEW LAST DAY OF DISCOVERY.

9              **MS. MELBY:**  WELL, WE'VE HAD NO EXTENSION.  WE JUST

10   GOT THIS.  IT'S A MASSIVE AMOUNT OF DISCOVERY.  IT'S A MASSIVE

11   AMOUNT OF EMAIL THAT WE HAVE TO GO THROUGH.  IT'S WAY MORE THAN

12   WHAT WE'VE TALKED ABOUT HERE TODAY.

13             **MR. MILDENBERG:**  BUT IT'S ONLY FOR THE BELLWETHERS.

14   IT'S ONLY FIVE CASES, AND YOU'VE HAD --

15             **MS. MELBY:**  IT'S NOT AN ONLY --

16             **MR. MILDENBERG:**  -- YOU ACTUALLY HAD DISCOVERY.

17             **MS. MELBY:**  COULD I JUST --

18             **THE COURT:**  YOU CAN -- IF YOU GUYS CANNOT WORK OUT AN

19   EXTENSION, YOU CAN TAKE IT UP WITH JUDGE CORLEY WHEN YOU FIRST

20   SEE HER.

21             **MS. MELBY:**  OKAY.  I DO WANT TO NOTE THAT COUNSEL HAS

22   HAD SIX -- SIX MONTHS.

23             **THE COURT:**  I'M REALLY ENJOYING SAYING:  YOU CAN TAKE

24   IT UP WITH JUDGE CORLEY.

25             **MR. MILDENBERG:**  THAT FEELS GOOD, RIGHT?

1          **THE COURT:**  I'M REALLY ENJOYING THAT.

2          **MR. MILDENBERG:**  IT TOOK YOUR HONOR A LONG TIME TO

3   FIGURE THAT OUT.

4          **THE COURT:**  NO, I DON'T LIKE -- I DON'T LIKE -- ON

5   SOME LEVEL I DON'T LIKE THAT I'M DOING IT.  I LIKE TO KEEP MY

6   OWN DISCOVERY.  I THINK IT'S IMPORTANT FOR US -- I THINK IT'S

7   GOOD PRACTICE TO KEEP OUR OWN DISCOVERY.  I ALMOST ALWAYS KEEP

8   MY OWN DISCOVERY DISPUTES.  BUT THIS JUST NEEDS MORE ATTENTION

9   THAN I CAN GIVE IT AND MORE EXPERIENCE THAN I CAN BRING TO IT.

10          SO IS THERE ANYTHING ELSE I CAN DO FOR YOU ALL NOW?

11          **MR. MILDENBERG:**  JUST THANK YOUR HONOR FOR YOUR

12   CONSIDERATION.

13          **MS. MELBY:**  THANKS, YOUR HONOR.  I THINK WE'VE

14   COVERED EVERYTHING.

15          **MR. MILDENBERG:**  THANK YOU.

16          **THE COURT:**  GOOD.  THEN I GUESS THAT RAISES A

17   QUESTION OF WHEN WE SHOULD HAVE ANOTHER CASE MANAGEMENT

18   CONFERENCE, KNOWING THAT OUR CASE MANAGEMENT CONFERENCES ARE NO

19   LONGER GOING TO BE AS LONG AND INCLUDE ALL THIS BICKERING ABOUT

20   DISCOVERY.

21          **MR. CORCORAN:**  MAY I ALSO SUGGEST, YOUR HONOR, IF IT

22   DOESN'T GET THAT INVOLVED, THAT PERHAPS WE COULD CONDUCT THEM

23   BY COURT CALL OR WHATEVER PROCEDURE YOUR COURT USES SINCE IT IS

24   NOT INVOLVING DISCOVERY?

25          **THE COURT:**  POTENTIALLY.  BUT THE OTHER THING IS

1    JUDGE CORLEY WAS TALKING ABOUT HAVING YOU IN EVERY WEEK.  AND

2    SO, IF THAT -- MY USUAL CASE MANAGEMENT CONFERENCES ARE

3    TUESDAYS.  BUT IF SHE'S HAVING YOU GO IN LIKE EVERY WEDNESDAY,

4    THEN YOU CAN COME SEE ME, YOU KNOW, ONCE A MONTH OR SOMETHING

5    LIKE THAT.

6              **MR. MILDENBERG:**  YOUR HONOR --

7              **THE COURT:**  WHAT?

8              **MR. MILDENBERG:**  THE ONLY THING I WOULD SAY -- AND WE

9    ARE BOTH SAYING IT.  WE HAVE DEPOSITIONS BETWEEN NOW AND THE

10   END --

11             **THE COURT:**  WELL, YOU CAN WORK THAT OUT.  I MEAN,

12   SHE'S EXPERIENCED AT DEALING --

13             **MR. MILDENBERG:**  OKAY.  FINE.

14             **THE COURT:**  SHE CAN WORK OUT OF --

15             **MR. MILDENBERG:**  GREAT.

16             **THE COURT:**  -- SORT OF.

17             **MR. MILDENBERG:**  EVERY ONE OF OUR DAYS IS --

18             **THE COURT:**  YEAH.

19             **MR. MILDENBERG:**  I KNOW.

20             **THE COURT:**  YEAH, BUT --

21             **MR. MILDENBERG:**  I WANT -- COULD I JUST --

22             **THE COURT:**  IT WILL BENEFIT EVERYBODY TO GET HER

23   INVOLVED IN THIS.  SO, YES, YOU CAN -- WHY DON'T WE SCHEDULE

24   THE NEXT CASE MANAGEMENT CONFERENCE FOR SOMETIME IN LIKE MID

25   NOVEMBER.  AND WE'LL HAVE IT BE IN PERSON, BUT YOU CAN -- WE

```
 1   CAN --

 2             MS. MELBY:  THE WEEK THAT HAS OCTOBER 17 IN IT,

 3   THAT'S A BAD WEEK FOR ME.

 4             THE COURT:  OKAY.  WELL, I'M -- OCTOBER 17TH?

 5             MS. MELBY:  I MEAN NOVEMBER 17.  I APOLOGIZE.

 6             THE COURT:  OKAY.  HOW ABOUT NOVEMBER 8TH, ELECTION

 7   DAY?

 8             MR. MILDENBERG:  IS THE COURT OPEN THAT DAY?  I GUESS

 9   IT IS.  SOMETIMES THE COURTS --

10             THE COURT:  WE DON'T LIKE TO LET OUR PEOPLE VOTE.

11             MS. MELBY:  THAT SHOULD BE OKAY, I THINK.

12             MR. MILDENBERG:  WELL, I DO -- I AM ATTACHED IN OUT

13   OF STATE ON THE 9TH, BUT I COULD BE HERE ON THE 8TH, IF THAT'S

14   THE BEST TIME FOR THE COURT.

15             THE COURT:  OR THE 10TH, NOVEMBER 10TH?

16             MR. MILDENBERG:  I'M OPEN ON THE 10TH.

17             THE COURT:  LET'S SCHEDULE A FURTHER CASE MANAGEMENT

18   CONFERENCE FOR THE AFTERNOON OF THE 10TH AT 2:00 P.M.  AND IF

19   YOU ALL DECIDE THAT -- YOU KNOW, IF WE ALL DECIDE THAT IT'S

20   FINE TO DO IT TELEPHONICALLY, OR IF THERE'S NOTHING YOU NEED TO

21   TALK WITH ME ABOUT, WE CAN EVEN TAKE IT OFF CALENDAR.

22             MR. MILDENBERG:  OKAY.

23             MS. MELBY:  AND, ALSO, ONE LAST QUESTION.  IF THERE

24   ARE ANY ISSUES WITH CAPTAIN WASHINGTON, DO THOSE COME HERE OR

25   GO TO THE MAGISTRATE?
```

1           **THE COURT:**  THAT'S A GOOD QUESTION.  THAT'S A VERY

2     GOOD QUESTION.  ISSUES WITH THE ADEQUACY OF HIS PRODUCTION OR

3     THAT SORT OF THING?

4           **MS. MELBY:**  YES.

5           **THE COURT:**  ACTUALLY, I THINK THAT -- IT WOULD

6     PROBABLY BE APPROPRIATE FOR YOU TO BRING ANY ISSUES WITH

7     CAPTAIN WASHINGTON TO ME, GIVEN THAT HE'S SORT OF ON THE

8     PRECIPICE OF HAVING HIS CASE DISMISSED.  SO, YES, I THINK

9     THAT'S A GOOD POINT.  SO I'M GOING TO REFER ALL THE CASES

10    EXCEPT FOR CAPTAIN WASHINGTON'S CASE TO JUDGE CORLEY FOR

11    DISCOVERY PURPOSES.

12          **MS. MELBY:**  OKAY.  THANK YOU, YOUR HONOR.

13          **THE COURT:**  BUT TO THE EXTENT IT'S NOT A CAPTAIN

14    WASHINGTON-SPECIFIC --

15          **MS. MELBY:**  RIGHT, YES.

16          **THE COURT:**  -- ISSUE, JUDGE CORLEY IS GOING TO BE

17    BETTER EQUIPPED TO DEAL WITH IT.  DOES THAT MAKE SENSE?

18          **MS. MELBY:**  YES, IT DOES, YOUR HONOR.

19          **THE COURT:**  OKAY.

20          **MS. MELBY:**  THANK YOU.

21          **THE COURT:**  THANK YOU.

22          **MR. MILDENBERG:**  THANK YOU, YOUR HONOR.

23          **MR. CORCORAN:**  THANK YOU, YOUR HONOR.

24          (PROCEEDINGS ADJOURNED AT 4:38 P.M.)

25

1          **CERTIFICATE OF TRANSCRIBER**

2

3          I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

4     TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF

5     THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE

6     U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE

7     PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE

8     ABOVE MATTER.

9          I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,

10    RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN

11    WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT

12    FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE

13    ACTION.

14

15                    *JMColumbini*

16                    JOAN MARIE COLUMBINI

17                    OCTOBER 17, 2016

18

19

20

21

22

23

24

25